# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

       Plaintiff and Counterdefendant,

vs.                                                                           No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants and Counterclaimants,

vs.

DR. CHARLES GOODIS,

       Counterdefendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the on Plaintiff/Counterdefendant Guidance Endodontics, LLC and Counterdefendant Dr. Charles J. Goodis' Motion for Entry of Protective Order, filed March 4, 2009 (Doc. 65). The Court held a hearing on March 10, 2009. The primary issue is whether the Court should permit Brian M. Addison, Defendant and Counterclaimant Dentsply International, Inc.'s Vice President, Secretary, and General Counsel, to access Plaintiff and Counterdefendant Guidance Endodontics, LLC's most sensitive information. Because the Court believes that it can reduce considerably, with certain conditions, the risk that disclosure of such information to Mr. Addison will result in harm to Guidance or to Counterdefendant Dr. Charles J. Goodis, the Court will enter the protective order largely in the form that Guidance has submitted, but will not prohibit Mr. Addison from accessing most of what Guidance has dubbed "Competitively

Sensitive Confidential Information."

## FACTUAL BACKGROUND

In an earlier opinion, the Court has discussed in detail much of the background on this lawsuit Guidance has brought against its suppliers and rivals Dentsply and Defendant Tulsa Dental Specialties for breach of contract and unfair trade practices. See Memorandum Opinion and Order at 1-10, entered December 15, 2008 (Doc. 30). Mr. Addison is Dentsply's General Counsel and Secretary and one of its Vice Presidents. In addition to being an attorney, he also holds an MBA from Pennsylvania State University and is listed under the "Management" section of Dentsply's website. See http://www.dentsply.com/default.aspx?pageid=40 (last visited April 6, 2009). Dentsply's most recent Form 10-K report to the Securities Exchange Commission names him as an executive officer. See Exhibit 4 to Memorandum, Dentsply International, Inc.'s Form 10-K (2008)(Doc. 66-2). In 2007, Mr. Addison's total compensation was $1,000,590.00. See Exhibit 7 to Memorandum at 1. Of this total compensation, $331,000.00 was base salary. The remainder of his compensation came in the form of restricted stock awards, option awards, "non-equity incentive plan compensation," and $50,000.00 in unspecified compensation. Id. Guidance believes that this breakdown shows that the majority of Mr. Addison's annual compensation is tied to Dentsply's success in the marketplace.

Guidance also believes that Mr. Addison's actions before the start of this lawsuit indicate that he will be a fact witness. He sent a letter to Guidance dated September 25, 2008, in which he demanded that Guidance "immediately cease and desist from making" various marketing statements. Exhibit 5 to Memorandum, Letter from Brian M. Addison to Dr. Charles Goodis at 1 (Doc. 66-2). Mr. Addison sent his letter to Goodis on the same day that William Newell, Vice President and General Manager of Dentsply's subsidiary, Tulsa Dental, sent a letter to Goodis making similar

allegations about Guidance's marketing and advising Guidance that the Defendants intended "to discontinue the supply of the obturator product." Exhibit 6 to Memorandum, Letter from Bill Newell to Dr. Charles Goodis (dated September 25, 2008)(Doc. 66-2).

## PROCEDURAL BACKGROUND

When Guidance filed this lawsuit against the Defendants, it moved for a temporary restraining order. At the December 8, 2008 hearing on that motion, Thomas Gulley, the Defendants' counsel, characterized Mr. Addison as a "decision maker" who "happens to be a lawyer." Transcript of Hearing at 191:4-5 (taken December 8, 2008, filed December 14, 2008)(Gulley)(Doc. 29)("Tr."). These comments were made in the context of having a Dentsply representative with settlement authority present at a mediation session. Goodis had indicated he would not appear in person and Mr. Gulley argued that, if Goodis was not appearing in person, then neither should Mr. Addison or Newell. Mr. Gulley stated:

> I'm happy to go to Dallas and meet with the lawyers and have my people on the phone. I think that is a process very likely to result in absence of success, just because my experience in mediation – and typically mediators require the persons to be present with decision-making authority, and I just think the chances of success decrease dramatically if the principals are not present.

Id. at 191:17-24.

Guidance now moves for a protective order restricting the availability of information that will be shared during discovery. With one exception, the parties have agreed on a protective order covering both sides' confidential information. The proposed protective order includes an agreed-upon definition of "Confidential Information," but also carves out a subset -- "Competitively Sensitive Confidential Information" -- that is even more sensitive and which is to be restricted to litigation counsel and expert witnesses. See Proposed Protective Order for the Production and Exchange of Confidential Information ¶ 10, at 5 (Doc. 66-2). The portion of the protective order

about which the parties disagree is that this "Competitively Sensitive Confidential Information" is not to be "shared with any of the parties (including in-house counsel for any of the parties)." Id. Guidance and Goodis contend that Mr. Addison should not be allowed to access this attorneys' eyes-only information. They argue that, because of Mr. Addison's position at Dentsply, there is a significant risk that competitively sensitive information disclosed to Mr. Addison would be used in the course of the Defendants' business decisions, to Guidance's detriment. See Memorandum in Support [of] Plaintiff and Counterdefendants' Motion for Entry of a Protective Order at 5-8, filed March 4, 2009 (Doc. 66)("Memorandum").

The Defendants are withdrawing their Motion for Entry of Confidentiality Order, filed January 29, 2009 (Doc. 51), and are responding to this motion. The Defendants advocate that the Court should allow Mr. Addison access to attorneys' eyes-only documents. See Dentsply/TDP's Response to Guidance/Goodis' Motion for a Protective Order and Memorandum in Support at 2, filed March 6, 2009 (Doc. 68)("Response"). The Defendants have also submitted an affidavit from Mr. Addison, in which, among other things, he acknowledges that he is subject to the Court's contempt powers and will remain under the Court's jurisdiction after the close of this case with respect to relevant matters. See Exhibit B to Response, Affidavit of Brian M. Addison ¶¶ 13-14, at 3 (executed March 6, 2009)(Doc. 68-3)("Addison Aff.").

At the hearing, John Kelly, Guidance's counsel, indicated that he was concerned primarily with Mr. Addison having access to Guidance's customer lists and Guidance's financial data, particularly Guidance's net worth and credit lines, but less concerned about Guidance's projected sales data being available to Mr. Addison. See Federal Digital Tape Recorder at 11:15:40-11:18:55 (taken February 20, 2009)(Kelly). The Court stated that it would have the names and addresses redacted from the information that Mr. Addison was allowed to access, but that, for the time being,

Mr. Addison would be allowed access to all of Guidance's financial data that would be turned over in discovery.

### LAW REGARDING DISCLOSURE OF CONFIDENTIAL INFORMATION TO IN-HOUSE COUNSEL

"An unacceptable risk of disclosure that cannot be adequately mitigated by a protective order is a factor in limiting access to confidential information." Intel Corp. v. VIA Technologies, Inc., 198 F.R.D. 525, 529 (N.D. Cal. 2000). The United States District Court for the District of Kansas has stated that confidential information should not be disclosed to an in-house attorney involved as a competitive decision-maker if "there is an unacceptable risk of or opportunity for inadvertent disclosure of information." Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC, 2008 U.S. Dist. LEXIS 70669, at * 6 (D. Kan.)(citing Autotech Techs. Ltd. P'ship v. Automation-direct.com, Inc., 237 F.R.D. 405, 407 (N.D. Ill. 2006)). "A court should consider whether a particular attorney is involved in competitive decision-making, which includes advising or participating in pricing, product design, marketing or other decisions made in light of similar or corresponding information about a competitor." Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC, 2008 U.S. Dist. LEXIS 70669, at * 6-7 (internal quotation marks omitted).

The United States Court of Appeals for the Federal Circuit has defined "competitive decision-making" as "shorthand for a counsel's activities, associations, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).

In Intel Corp. v. VIA Technologies, Inc., the United States District Court for the Northern District of California refused to allow an in-house attorney to access the confidential information

of a competitor based largely on the parties' status as direct competitors in the "highly competitive" chipset market and on the fact that Intel, the party seeking to allow its in-house counsel to access the confidential information, was a "dominant player" in the market. 198 F.R.D. at 531. The district court also relied on the fact that the in-house counsel was actively involved in negotiating the terms of licensing agreements as part of settling lawsuits. See id. at 530.

In FTC v. Foster, 2007 WL 2219410 (D.N.M.)(Browning, J.), the Court entered a protective order limiting the defendants' general counsels from accessing certain confidential information. While the plaintiff in that case, the Federal Trade Commission, had sought to prohibit the general counsels from accessing any confidential information, the Court modified the protected order to allow limited access. See id. at *9. The Court based its decision on a number of factors, including the plaintiff's failure to adequately show the harm it asserted would flow from disclosure, the defendants' need for their general counsels to have access to the information for giving well-informed legal advice, the limited number of counsel at issue, and the general counsels' affidavits stating that they were not competitive decision makers in their respective companies. See id.

## ANALYSIS

From Guidance and Goodis' perspective, the purpose of paragraph 10 is to discourage and to prevent the parties from using Competitively Sensitive Confidential Information for competitive business purposes. They contend that, because Mr. Addison is a competitive decision-maker, the Court should not allow him access to Guidance's Competitively Sensitive Confidential Information. Conversely, the Defendants contend that Mr. Addison's role with Dentsply and Tulsa Dental justifies allowing him access to Competitively Sensitive Confidential Information to the same extent as Mr. Gulley and the staff of Lewis and Roca LLP will have access to that information. Ultimately, the Court believes that Guidance and Goodis have not made a sufficient showing that Mr. Addison

is a competitive decision-maker who should be barred from accessing the information, but will place special restrictions on his access.

## I.     IT IS NOT CLEAR FROM THE RECORD THAT MR. ADDISON IS A <u>COMPETITIVE DECISION-MAKER.</u>

Guidance and Goodis contend that the Court should deny Mr. Addison access to Guidance's Competitively Sensitive Confidential Information because Mr. Addison is a "decision maker" who "happens to be a lawyer." Tr. at 191:4-5. They assert that Mr. Addison's status as a senior corporate officer at Dentsply is similar to Goodis' status at Guidance and that the Court should deny Mr. Addison, like Goodis, access to Competitively Sensitive Confidential Information. Guidance and Goodis argue that there is an unacceptable business risk of disclosure and use of their information for purposes outside of the litigation which cannot be effectively mitigated through a protective order.

Guidance and Goodis argue that, to prohibit Dentsply's in-house counsel from accessing the confidential information of Guidance and Goodis, Guidance must show: (i) that the information it seeks to prevent Mr. Addison from accessing qualifies for protection under rule 26(c)(1)(G) of the Federal Rules of Civil Procedure; and (ii) that there is a probability that such disclosure to in-house counsel would cause competitive harm. See Sprint Communs. Co. L.P., 2008 U.S. Dist. LEXIS 70669, at *7-8. Assuming that the test in Sprint Communs. Co. L.P. is the correct one to use, the Court nonetheless concludes that Guidance and Goodis cannot show that the second prong is satisfied in this case.

### A.     THE INFORMATION GUIDANCE SEEKS TO PREVENT MR. ADDISON FROM ACCESSING QUALIFIES FOR PROTECTION UNDER RULE 26(c)(1)(G).

It is undisputed that the information defined in the proposed protective order as

Competitively Sensitive Confidential Information qualifies for protection under rule 26(c)(1)(G). Both parties recognize the sensitive nature of the sales and projected sales data and the customer lists. That recognition has caused the proposed access to be more restrictive for Competitively Sensitive Confidential Information than for other confidential information. Thus, Guidance satisfies the first prong of the analysis.

> **B.   MR. ADDISON'S STATUS AS A SENIOR CORPORATE OFFICER, HIS INVOLVEMENT WITH THE NEGOTIATION AND TERMINATION OF THE SUPPLY AGREEMENT, ADMISSIONS CONCERNING HIS ROLE AT DENTSPLY DURING THE TRO HEARING AND HIS COMPENSATION PACKAGE DO NOT ESTABLISH HIS STATUS AS A COMPETITIVE DECISION-MAKER.**

Given Mr. Addison's status as an executive officer, and specifically as Vice President, Secretary, and General Counsel at Dentsply, it is appropriate to consider him more than a lawyer. From that characterization, however, Guidance and Goodis draw the conclusion that his "activities at Dentsply likely extend well beyond the domain of legal advice, and well into the company's strategic business decision making." Memorandum at 5. They also contend that the record suggests that Mr. Addison is one of the key figures involved in planning and executing the Defendants' business strategy with respect to Guidance in the fall of 2008. These conclusions, however, do not find an adequate foundation in the record.

Although Guidance and Goodis point out that Mr. Addison appears on the Management section of Dentsply's website and that he is listed in the company's Form 10-K as an executive official, those labels tell little about Mr. Addison's actual role at Dentsply. High-ranking lawyers can be corporate executives without becoming competitive decision-makers. Titles alone show little about what Mr. Addison does.

Nor does Mr. Addison's role in the negotiations of the Supply Agreement or in sending a

letter to Goodis show much.  Contracts are a core concern for many in-house counsel.  And the cease-and-desist letter that Mr. Addison sent deals with alleged legal violations, which is something that it is not surprising to find a General Counsel addressing.

While Mr. Gulley referred to Mr. Addison as a decision-maker during the TRO hearing, the context of that statement is important.  The Court was discussing the impending mediation with the parties and the general requirement that someone with settlement authority for each side attend such a session.  Mr. Gulley's statements indicate that Mr. Addison has settlement authority, but not that he is a broader corporate decision-maker.  Settlement authority is something that it would not be surprising for a company's General Counsel to possess without him being involved more generally in marketing and business decisions.

Guidance and Goodis also contend that Mr. Addison's "compensation package is so closely intertwined with the success of the company that there is substantial risk of inadvertent disclosure of Guidance Endodontics' Competitively Sensitive Confidential Information in connection with Dentsply International's future business decisions and strategy."  Memorandum at 6-7.  They suggest that, like Goodis, Mr. Addison's personal compensation is inextricably linked to his company's competitive performance.  Without more, however, Mr. Addison having a relatively standard executive compensation package does little to show that he is necessarily a competitive decision-maker. Dentsply is a large corporation.  This litigation is not likely to have much impact on its financial success or on Mr. Addison's compensation from stock grants and options.  Moreover, as General Counsel, Mr. Addison's compensation package is likely tied more to his legal acumen than his marketing skills.  Some detail about his compensation package might show a strong incentive to participate in marketing and related decisions, but Guidance has not shown the necessary evidence.

One of the primary problems with Guidance and Goodis' argument is that it is based largely on conclusory allegations. In the end, these conclusory allegations must bow to the factual statements, made under oath, that the Defendants have submitted. Mr. Addison's sworn affidavit indicates that he plays "no role in Dentsply's decisions relating to pricing of products, product design, marketing, or sales efforts with respect to the [Tulsa Dental] business other than as it might relate to legal issues." Addison Aff. ¶ 5, at 2. In sum, Guidance and Goodis have primarily mustered a handful of facts that do not adequately support the conclusion that Mr. Addison is a competitive decision-maker, while the Defendants have introduced a sworn statement to the contrary. On this record, the Court concludes that Guidance and Goodis have not met their burden under the second prong.

**C.  THE RECORD DOES NOT SUPPORT A FINDING THAT DISCLOSING GUIDANCE'S CONFIDENTIAL INFORMATION TO MR. ADDISON POSES A SUBSTANTIAL RISK OF COMPETITIVE INJURY.**

Guidance and Goodis argue that the potential injury from inadvertent disclosure of Guidance's Competitively Sensitive Confidential Information is significant, because Dentsply is the dominant player in the endodontic instruments market and because Guidance is an up-and-coming competitor seeking to establish itself. They contend that, given the parties' relative positions, there is a high risk that the inadvertent disclosure will cause significant harm to Guidance if shared with Mr. Addison. Given that the record does not reveal Mr. Addison playing any significant role in Dentsply's marketing or sales or similar decisions, the Court cannot say that there is a significant threat posed here. What risk there is can be adequately mitigated through restrictions that the Court will place on Mr. Addison's access to the information and other safeguards. In conclusion, the Court will not prohibit Mr. Addison from accessing Guidance's confidential information.

## II. THE COURT WILL MODIFY THE PROPOSED PROTECTIVE ORDER TO ALLOW MR. ADDISON ACCESS TO MOST OF GUIDANCE'S COMPETITIVELY SENSITIVE CONFIDENTIAL INFORMATION, SUBJECT TO CERTAIN RESTRICTIONS.

As the Court informed the parties during the hearing, the Court will allow Mr. Addison to have access to Guidance's Competitively Sensitive Confidential Information under certain restrictions. While the Court does not believe that Mr. Addison should be barred from all access to such information, the Court considers some special restrictions warranted because of his placement within Dentsply's corporate hierarchy. Mr. Addison will enter an appearance as an attorney on this case. Mr. Addison will also file a new affidavit with the Court, reiterating his acknowledgment that he is subject to the Court's contempt power and that the Court will continue to have jurisdiction over him regarding matters related to this case after the case is concluded. The Court will allow Mr. Addison access to all Competitively Sensitive Confidential Information, including Guidance's balance-sheet information, with some limitations. The names and addresses of Guidance's customers will be redacted from any customer lists before Mr. Addison may view them. Additionally, should Mr. Kelly come across some particularly sensitive piece of financial information of which he was not aware before the hearing, he may seek to have that information redacted from the data provided to Mr. Addison. If Guidance and the Defendants are unable to reach an agreement on the redaction, Guidance may approach the Court on the issue. Finally, Mr. Addison may review the Competitively Sensitive Confidential Information only at Lewis and Roca's offices, or at some other location, provided Dentsply or an affiliated company does not own or control the location. While Mr. Addison may make notes about such information, he may not remove the documents or his notes, which will remain in the custody of Dentsply's outside counsel.

**IT IS ORDERED** that Plaintiff/Counterdefendant Guidance Endodontics, LLC and

Counterdefendant Dr. Charles J. Goodis' Motion for Entry of Protective Order is granted in part and denied in part. The Court will enter the proposed protective order as modified in this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundam, Frome, Rosenweiz
  & Woldosky, LLP
New York, New York

-- and --

John J. Kelly
Ryan Flynn
Adam Greenwood
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Thomas P. Gulley
Rebecca L. Avitia
Lewis and Roca LLP
Albuquerque, New Mexico

    *Attorneys for the Defendants*