IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

        Plaintiffs,

vs.                                                No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

        Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

        Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

        Counter Defendant.

MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion in Limine to Exclude

Certain Evidence Related to Guidance's Damages Claims, filed July 31, 2009 (Doc. 219).  The

Court held a hearing on September 2 and 3, 2009.  The primary issues are: (i) whether Plaintiff and

Counter Defendant Guidance Endodontics, LLC may, in the current litigation, introduce evidence

of, and seek as damages, attorneys' fees incurred in a prior case; (ii) whether Guidance may seek

any damages other than the $1.2 million described in Dr. M. Brian McDonald's original expert

report; and (iii) whether Guidance may seek the damages set forth in McDonald's original report even though the report has an allegedly insufficient factual basis. Because the Court concludes that attorneys' fees are relevant to issues in this case -- though it will not permit Guidance to recover the fees incurred in the prior litigation as damages in this case -- the Court will deny the motion to the extent that evidence of Guidance's attorneys' fees are independently relevant to the implication that Guidance was operating under a flawed business model. The Court will grant the motion to the extent that it seeks exclusion of evidence related to Guidance's damages not included in McDonald's expert report, or not otherwise unequivocally and clearly sought by Guidance during pretrial proceedings. Before Guidance attempts to introduce evidence of damages other than attorneys' fees and those included in the McDonald report, Guidance must approach the bench with evidence of when it clearly and unequivocally sought those damages in pretrial proceedings, provided the Defendants with a computation of those alleged damages, and provided any data related to that category of damages. The Court will then determine whether Guidance's failure to put the category of damages in its initial disclosures and answers to interrogatories is substantially justified or harmless. The Court will deny the motion with respect to McDonald's testimony and original report.

## PROCEDURAL BACKGROUND

On January 23, Guidance made its initial disclosures. See Certificate of Service of Rule 26 Initial Disclosures, filed January 23, 2009 (Doc. 47). Under rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, a party is required to make a fairly detailed disclosure with respect to damages early in the case. The party must provide the opposing party with:

> a computation of each category of damages claimed by the disclosing party--who
> must also make available for inspection and copying as under Rule 34 the documents
> or other evidentiary material, unless privileged or protected from disclosure, on

> which each computation is based, including materials bearing on the nature and extent of injuries suffered

Fed. R. Civ. P. 26(a)(1)(A)(iii).  Guidance's and Counter Defendant Goodis' initial disclosure statement described their damages in general terms and stated that damages were not yet quantified.  See Motion Exhibit B, at 3-4, filed July 31, 2009 (Doc. 219-3).  That disclosure, in its entirety, stated:

1. Damages caused by Defendants' breach of the Supply Agreement and violation of the covenant of good faith and fair dealing, as alleged in Counts I, II, and III, but not yet quantified.

2. Damages caused by Defendants' violation of the Delaware Deceptive Trade Practices Act and the New Mexico Unfair Practices Act, as alleged in Counts IV and V, but not yet quantified.

3. Damages caused by Defendants' violation of the Lanham Act, as alleged in Count VI, but not yet quantified.

4. Damages caused by Defendants' tortious conduct, as alleged in Count VII, but not yet quantified.

5. Damages caused by Defendants' anticompetitive behavior, to be alleged in Plaintiff's Amended Complaint, but not yet quantified.

    Plaintiff reserves the right to modify or supplement its disclosure as necessary and appropriate to include additional materials, documents and damages relevant to support its defenses.

Motion Exhibit B at 3-4.  On January 26, 2009, the Defendants served an interrogatory on Plaintiff Guidance Endodontics, LLC and Charles Goodis, seeking more specificity as to Guidance's damages.  It asked Guidance to "[i]dentify all damages you claim in this case, and identify all documents which support your damages claims."  Motion Exhibit A, at 1, filed July 31, 2009 (Doc. 219-2).  Guidance and Goodis answered the interrogatory on March 3, 2009, stating only that "Guidance seeks damages to the full extent permitted by law, including but not limited to treble damages and attorneys' fees."  Id.  Guidance and Goodis have never supplemented these answers --

its initial disclosure or its response to the Defendants' interrogatory on damages -- to more fully specify the measures of damages they seek, see Motion at 1-2, and the deadline for such supplementation was June 25, 2009, see Order at 1, filed June 3, 2009 (Doc. 133).

### LAW REGARDING SUPPLEMENTATION

Under rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, each party at the beginning of the case must present to the other certain information, even if it is not requested.  In that initial disclosure, a party must include "[a] computation of each category of damages claimed by the disclosing party . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii).  This rule required Guidance to include in its initial disclosures what categories of damages it intended to seek from the Defendants.  A party also has a duty to respond honestly and completely to any appropriate interrogatory propounded by the opposing party.  See Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

Rule 26(e) of the Federal Rules of Civil Procedure requires a party to supplement its disclosure and interrogatory response in a timely manner if the disclosure or response is incomplete, unless the additional information has otherwise been made known to the other party during discovery or in writing.  See Fed. R. Civ. P.  26(e).  The penalty for failing to supplement is severe. Rule 37 provides that, if one "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The penalty for completely failing to respond to an interrogatory is even more steep: the court may dismiss the action or enter judgment by default if the other side so requests.  See Robison v. Transamerica Ins. Co., 368 F.2d 37, 39 (10th Cir. 1966).

Rule 37 gives a district court a wide variety of remedies and penalties with which to deal

with failures to comply with discovery rules.  See Robinson v. Transamerica Ins. Co., 368 F.2d at 39.  "The administration of the rules lies necessarily within the province of the trial court with power to fashion such orders an may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit."  Id.  Furthermore, "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the trial court." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). And although evidence proffered after a rule 26(a) violation is admissible upon a showing that the violation was substantially justified or harmless, a district court need not make explicit findings on those issues.  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993. Nevertheless, certain "factors should guide [the district court's] discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Id.

## ANALYSIS

Because the attorneys' fees incurred in prior litigation and in this case are relevant to the viability of Guidance as a going concern, and because that issue is relevant to the case, the Court will allow Guidance to present evidence of its attorneys' fees and costs in both this and prior litigation.  The Court will not allow Guidance to seek damages, or to introduce evidence of such damages, outside of McDonald's report unless Guidance can show that it timely put the Defendants on notice of those damages in the litigation process, provided the Defendants with a computation of that category of damages, and provided any documents related to that category of damages. McDonald may not testify to any damages other than what is in his original expert report.

-5-

McDonald may, however, testify to the damages in that report.

## I.    GUIDANCE MAY PRESENT EVIDENCE OF ITS ATTORNEYS' FEES AND COSTS FROM CURRENT AND PRIOR LITIGATION, BUT ONLY FOR LIMITED <u>PURPOSES</u>.

In its motion, the Defendants assert: "In its pleadings, motions, depositions, and hearings, Guidance has suggested that its attorneys' fees and costs in the ITC and patent litigation (together "prior litigation") between it and Dentsply should be included within the damages to be awarded by the jury in this case."  Motion at 12.  Its theory behind seeking those damages in this case is that Guidance agreed to pay its own fees in the prior litigation only because the Defendants agreed to enter the Supply Agreement, and now that the Defendants have allegedly breached the Supply Agreement, the prior fees constitute damages flowing from that breach.  <u>See</u> Response at 18-19.  In other words, if Guidance had known that the Defendants would breach the Supply Agreement, it would not have settled the prior case and -- if successful in that case -- could have recovered its fees.

The Defendants argue that the Court should not permit Guidance to offer evidence of these prior fees and costs because the claim is precluded by a prior consent judgment wherein the United States District Court for the Middle District of Pennsylvania stated that "[e]ach party shall bear its own costs and attorneys' fees."  Motion at 12 (alteration in original).  <u>See</u> <u>Dentsply Int'l Inc. v.</u> <u>Guidance Endodontics, LLC</u>, Civ. No. 1:08-CV-0155, Consent Judgment and Order at 4 (M.D. Pa., filed August 15, 2008)(Doc. 44-2)("Consent Judgment"); Application for Temporary Restraining Order Exhibit A, at 20-22, filed November 21, 2008 (Doc. 2-2) (the unsigned, proposed consent judgment).  They further argue that the Court should bar Guidance from providing evidence of the fees from the current litigation because the appropriate mechanism for requesting attorneys' fees in a particular case is by motion after the entry of judgment, not before, unless a particular claim requires them to be proven as a substantive element.  <u>See</u> <u>id.</u> at 13.

In response, Guidance argues that the Court should allow it to offer evidence of the attorneys' fees expended in prior litigation with the Defendants to prove that the fees were one reason why Guidance had financial difficulties.  See Plaintiff's Response to Dentsply/TDP's Motion in Limine to Exclude Certain Evidence Related to Guidance's Damages Claims [Doc. 219] at 17-18, filed August 17, 2009 (Doc. 253)("Response").  Guidance predicts that the Defendants will assert that Guidance's financial difficulties were the fault of a bad business model, and that it will wish to counter the Defendants' evidence with evidence showing how much money it had to spend litigating with the Defendants.  Regarding attorneys' fees from the current litigation, Guidance makes the same argument -- that evidence of those fees goes to explaining why Guidance is not more financially successful.

## A.   IF GUIDANCE WISHES TO RECOVER ITS FEES FROM PRIOR LITIGATION, IT SHOULD SEEK THEM IN PENNSYLVANIA.

The Court largely agrees with the Defendants' general proposition: Guidance has failed to properly notify the Defendants of its intent to seek damages other than those specified in the McDonald report -- and the attorneys' fees, about which the Defendants admit notice.  Guidance failed to mention that it sought attorneys' fees in its initial disclosure, and never supplemented that disclosure.  See Motion Exhibit B, at 3-4, filed July 31, 2009 (Doc. 219-3).  In response to an interrogatory, Guidance gave a stock response that references attorneys' fees, see Motion Exhibit A, at 1, filed July 31, 2009 (Doc. 219-2), but such a response implies that the answering party will seek attorneys' fees related to this action, not some unspecified prior litigation.  The initial disclosures do not give proper and adequate notice of Guidance's intent to seek, in this action, attorneys' fees from the previous case.  Because of that failure, rule 37 mandates that the information not disclosed -- Guidance's other damages theories -- cannot be used at trial, unless the

failure to disclose was harmless or substantially justified.  See Fed. R. Civ. P. 37(c).

> **1.      The Defendants Have Admitted They Knew Guidance Would Seek These Fees, and Are Therefore Not Prejudiced By Lack of Notice.**

Although Guidance bears the burden of demonstrating that its failure satisfies the standard of rule 37(c), see Hirpa v. IHC Hosps., Inc., 50 Fed. Appx. 928, 932 (10th Cir. 2002), it does not argue either of these points.[1]  Further, in the September 2, 2009 hearing, its attorney, Emil Kiehne spoke for Guidance and said that he did not believe Guidance had ever indicated it was seeking these fees in its Complaint or disclosures.  See Transcript of Hearing at 19:10-17 (taken September 2, 2009)(Kiehne)("Sept. 2 Hearing").  Nevertheless, this is not the death knell for Guidance's ability to seek these fees.  The Defendants admit that, "[i]n its pleadings, motions, depositions and hearings, Guidance has suggested that its attorneys' fees and costs in the ITC and patent litigation (together, "prior litigation") between it and Dentsply should be included within the damages to be awarded by the jury in this case."  Motion at 12.  This filing, by a representative of the Defendants, constitutes an admission.  See Rooms v. S.E.C., 444 F.3d 1208, 1213 (10th Cir. 2006); Mann v. Fernandez, 615 F. Supp. 2d 1277, 1287 (D.N.M. 2009)(imputing counsel's actions to the client "if the course of action is the result of a deliberate strategy" but not if it "result[ed] from mere inattention").  Also, in the hearing, Rebecca Avitia, attorney for the Defendants, stated she recalled attorneys' fees being mentioned in the deposition of Brian McDonald.  See Sept. 2 Hearing at 23:23-24:7 (Avitia).

The Court finds that Guidance's delay and failure to amend its discovery responses is not substantially justified.  Guidance was well aware of the discovery deadlines in this case.  It has also known full well that it incurred attorneys' fees in prior litigation, and that it continues to incur fees

---

[1]Guidance focuses only on (i) other purposes for which evidence of those damages would be relevant, (ii) whether the damages were causally related to its breach-of-contract claim, and (iii) whether claim preclusion would bar it from seeking those fees.  See Response at 17-19.

in this case.  It appears, however, that the failure to disclose was harmless to the Defendants.  If Guidance has been indicating that it intended to seek these fees all along, as the Defendants concede, they cannot justifiably contend they were caught unawares when Guidance, in fact, sought those fees.  If the Defendants failed to pursue evidence to rebut a claim for these fees because it believed that the evidence would be excluded under rule 37(c), the Court does not believe that this harm, if any, is sufficient prejudice to justify excluding the evidence pre-trial.

> **2.      The Court Will Not Disturb the Parties' Consent Judgment, Over Which the Middle District of Pennsylvania Retains Jurisdiction.**

Although rule 37(c) does not prohibit Guidance from seeking its prior attorneys' fees in this case, the Court will nevertheless not allow Guidance to recover them.  The "prior litigation" was a patent infringement lawsuit that Dentsply brought against Guidance in the Middle District of Pennsylvania.  See Consent Judgment at 1.  In that case, the Defendants asserted that Guidance's V-Taper file infringed upon certain of their patents.  See Consent Judgment ¶¶ 3-4, at 2-3.  The case was resolved by Dentsply and Guidance entering into a settlement agreement, and requesting the court in Pennsylvania to enter a judgment on terms upon which both parties agreed.  See Application for Temporary Restraining Order Exhibit A, pp. 18-22, filed November 21, 2008 (Doc. 2-2)("TRO App."); Consent Judgment at 1-3.

That judgment provided that "[e]ach party shall bear its own costs and attorneys' fees." Consent Judgment at 4.  Both parties agreed to this provision as part of their settlement agreement.  See TRO App. Exhibit A ¶ 2, p. 18.  The judgment also provided that the Middle District of Pennsylvania would "retain[] jurisdiction over the parties for the purpose of enforcing the terms and conditions of this Order and of the Settlement Agreement and Release attached thereto, the terms and conditions of which are incorporated herein."  Consent Judgment ¶ 8, at 3. For two reasons, the

Court believes Guidance cannot seek the attorneys' fees from the prior dispute as damages in this proceeding.

First, the Court is not convinced by Guidance's causation argument. Guidance agreed to pay its own fees as part of the Settlement Agreement and Release, which it signed on July 28, 2009. See TRO App. Exhibit A, pp. 19. The parties entered into a Manufacturing and Supply Agreement pursuant to its Settlement Agreement and Release, which arguably satisfied the Defendants' obligations under that contract. See id. Exhibit A at 18-19. The breach that Guidance alleges in this case is of the Manufacturing and Supply Agreement, and not of the Settlement Agreement and Release. See Verified Complaint and Demand for Jury Trial ¶¶ 158-79, at 30-32, filed November 21, 2008 (Doc. 1). If the attorneys' fees can be considered damages at all, which the Court does not find, it is of a breach of the Settlement Agreement and Release. Further, the Court and parties can only speculate as to who would have bore the costs and attorneys' fees of the prior litigation if it had gone to trial and reached judgment. The Court is therefore convinced that the damages sought are too remote causally from the breach alleged in this case to be awarded as damages.

Second, the Court is concerned that, if it were to allow Guidance to recover these legal fees, it would be impliedly overturning part of a judgment entered by another district court.

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."

Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys., 189 F.3d 477, at *2 (10th Cir. Sept. 2, 1999)(unpublished)(quoting Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 917 (5th Cir. 1997)). The Honorable John E. Jones III, United States District Judge of the Middle District of Pennsylvania, entered the Consent Judgment and expressly retained jurisdiction over it and the

Settlement Agreement and Release, which included the directive that each party bear their own costs and attorneys' fees.  See Consent Judgment ¶ 8, at 3-4.  The Court does not believe it is at liberty to unilaterally change the decision of a sister district court, particularly when the sister court expressly retained jurisdiction over that matter.  See Lipari v. U.S. Bancorp NA, Nos. 08-3287, 08-3338, 08-3345, 2009 WL 2055125, at *1 (10th Cir. July 16, 2009) (slip op.) (recognizing a "first to file" rule wherein, "when two district courts have jurisdiction over the same controversy, [the latter should afford] deference to the first filed lawsuit").  The Tenth Circuit specified in Lipari v. U.S. Bancorp NA that the rule does not apply to separate disputes "in seriatim," but the attorneys' fees issue in this case is the same issue that Judge Jones decided and over which he chose to retain jurisdiction.  In this situation, if Guidance wishes to recover those attorneys' fees, the proper course is to return to the Middle District of Pennsylvania and ask that court for relief in equity.  "It was long ago laid down by Chief Justice Marshall as a salutary rule that 'In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.'"  Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) (quoting Smith v. McIver, 22 U.S. 532, 535 (1824)).  The Court will therefore grant the motion with respect to evidence of Guidance's attorneys' fees from prior litigation to the extent that such evidence goes to prove Guidance's damages.

### B.    FEES FROM THE CURRENT LITIGATION SHOULD BE SOUGHT POST-TRIAL.

As to fees from the current litigation, the Court agrees that the proper time to request such fees is in a motion filed after the entry of judgment.  See Fed. R. Civ. P. 54(d)(2) ("Unless a statute or a court order provides otherwise, [a] motion [requesting attorney's fees] must: (i) be filed no later than 14 days after the entry of judgment . . . ."); D.N.M.LR-Civ. P. 54.5 ("A motion for attorney's fees . . . must be filed and served within thirty (30) calendar days after entry of judgment.").  The

evidence of attorneys' fees from prior or current litigation is therefore properly excluded insofar as it is used to prove Guidance's damages.

### C.    EVIDENCE OF FEES CAN BE OFFERED FOR PURPOSES OTHER THAN AS EVIDENCE OF GUIDANCE'S DAMAGES.

The Court does not feel that exclusion is justified, however, where the evidence is offered only to rebut the implication that Guidance's business model was fundamentally flawed.[2]  While it does not clearly prove that Guidance would have otherwise been successful, it does show that litigation with the Defendants was a substantial draw on Guidance's time and financial resources. The Court will therefore exercise its discretion to allow evidence of prior and current attorneys' fees for the purpose of explaining one potential reason why Guidance has not been more successful.  The Court believes this limited-purpose admission is more in line with the purpose of rule 37, in that the Court's ruling prohibits use of the evidence to establish damages, the topic about which Guidance failed to properly disclose, yet does not wholly remove the underlying facts from the evidentiary landscape.  The Court will therefore exclude the evidence of fees for the purpose of establishing damages, but admit such evidence for the limited purpose of explaining why Guidance's financials may look deceptively dire.[3]

---

[2]The Defendants' motion makes clear that they intend to make this argument.  <u>See</u> Motion at 7 ("A bit about Goodis: . . . Guidance has been unsuccessful and is bleeding red ink.  Its prior business model -- employing a sales manager, sales representatives and an operations manager -- was a flop.").

[3] From an evidentiary standpoint, the Court is unconvinced by the Defendants' *res judicata* argument.  While the Court might agree that such prior litigation forecloses further litigation on the same cause of action, it is aware of no precedent holding that facts relevant to prior litigation cannot be used for other purposes in subsequent suits.  Because the Court will not allow Guidance to recover these damages, the Court need not consider whether such recovery is barred by *res judicata*.

II.   **EVIDENCE OF DAMAGES NOT REFERENCED IN THE McDONALD REPORT ARE EXCLUDED FOR FAILURE TO DISCLOSE PURSUANT TO RULE 37 UNLESS GUIDANCE CAN POINT TO PLACES IN THE PRETRIAL RECORD WHERE THEY CLEARLY SOUGHT OTHER CATEGORIES OF DAMAGES, PROVIDED COMPUTATIONS OF THOSE DAMAGES, AND PROVIDED ALL <u>DOCUMENTS RELATED TO THOSE CATEGORIES OF DAMAGES.</u>**

The Defendants argue that the Court should not allow Guidance to submit evidence of damages other than those disclosed in the McDonald report because of Guidance's unsatisfactory initial disclosure and over-general response to the Defendants' interrogatories. <u>See</u> Motion at 10-11. They point to rule 37, discussed above, as barring Guidance from presenting evidence of those undisclosed theories of damages. <u>See</u> Motion at 10-11. They contend that permitting Guidance to present evidence of these other damages would prejudice them, as the deadline for discovery was one month before the date on which the motion was filed, and Guidance had not supplemented any of its discovery responses regarding damages. <u>See</u> <u>id.</u> at 11. Furthermore, when they filed this motion, the trial of the case was set to begin in approximately six weeks. <u>See</u> <u>id.</u> They imply that including new damages theories would require them to engage in additional discovery to rebut the evidence that Guidance would present to establish those damages. Guidance responds that it was unable to properly amend or supplement its responses because the Defendants had refused to turn over certain documents that Guidance had requested in discovery. <u>See</u> Response at 17. They do not address the standard of rule 37(c) nor argue that the addition of these other measures of damages would be "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1).

The Court has held that, even if the Defendants had failed to turn over certain documents, McDonald could have calculated at least some of the damages that he discusses in his supplemental report. <u>See</u> Memorandum Opinion and Order, filed September 24, 2009 (Doc. 358)(relating to the motion to amend McDonald's expert report). Once a party -- here, the Defendants -- has established

-13-

that the other has failed to make appropriate disclosures, it is the party seeking to present evidence of those undisclosed items -- here, Guidance -- that must prove that its failure is substantially justified or harmless.  See Hirpa v. IHC Hosps., Inc., 50 Fed. Appx. at 932 (10th Cir. 2002). Guidance has not made this showing.  McDonald's failure to disclose this significant damages estimate was not harmless, and it was not substantially justified because the Court has concluded that he could have done so much earlier.  The Court will grant the motion and exclude all evidence of Guidance's damages that were not disclosed in McDonald's expert report, unless Guidance can point to clear-and-unequivocal evidence in the record that they sought some other categories of damages in the pretrial proceedings, provided a computation of those damages, and disclosed all documents used in that calculation of damages.  Guidance has not pointed to any other categories of damages -- other than attorneys' fees -- that is not included in McDonald's expert report and for which it made appropriate disclosure.  Thus, before Guidance attempts to introduce any evidence of damages other than fees -- for the limited purpose discussed above -- or those in McDonald's report, Guidance must approach the bench with evidence of when it clearly sought those damages in pretrial proceedings, provided a calculation of those damages, and provided all non-privileged documents on which that calculation was based.  Only then will the Court be able to reasonably assess whether the introduction of other evidence of additional damages would be harmless.

## III.    GUIDANCE CAN PRESENT EVIDENCE OF THE DAMAGES DESCRIBED IN THE McDONALD EXPERT REPORT.

The Defendants argue that, because McDonald's expert report is based on factually flawed speculation by a lay witness, the Court should prevent Guidance and Goodis from presenting evidence or arguing at trial that it is entitled to any damages.  Guidance responds that McDonald's report does not rely entirely on Goodis' testimony, and even those portions that do rely on that

-14-

expected testimony are admissible because, under rule 703 of the Federal Rules of Evidence, an expert may rely on facts or data that are themselves inadmissible.  See Response at 1-2.  Guidance asserts that the Defendants' objections go to the weight, not admissibility, of McDonald's testimony.  See id. at 3.  Finally, they argue that Goodis' testimony can come in either as lay testimony under rule 701 or as expert testimony under rule 702.  See id. at 10-17.

### A.   McDONALD'S OPINION AND THE TESTIMONY ON WHICH IT IS BASED.

Perhaps giving a nod to their cousin Vinny, the Defendants liken McDonald's original opinion to a house of cards.  See Motion at 2; My Cousin Vinny (Twentieth Century Fox, 1992).  They assert that McDonald's opinion is built from "cards" of improper assumption and that, as a result, the entire testimony is fundamentally flawed and inadmissible.  See id.  The core assumption of which the Defendants complain is that a large percentage of customers who bought the V-Taper variable tapered file will also purchase the V2 file, an .04 constant tapered file.  See id. at 2-3 & Exhibit C.  Related to that contention is the Defendants' skepticism of McDonald's assumption that dentists who purchased the V-Taper through Patterson Dental, a retailer, will now purchase the V2 file through Guidance.  See id.  They argue that the combination of the difference in design between the V2 file and the V-Taper file, the availability of substitutes for the V-Taper file available through Patterson Dental, and the likely propensity of dentists and endodontists to do all of their shopping at one place make this assumption unwarranted.  The capstone of the Defendants' concerns over McDonald's testimony is that the above assumptions are made, they argue, based purely on the lone testimony of the V2 designer, Goodis.

The Defendants imply that Guidance needs admissible evidence of the facts underlying McDonald's report for his opinion to be admissible.  See id. at 4.  They argue that Goodis will not

be able to testify to the assumptions that underlie McDonald's expert opinion because (i) Goodis would only be able to testify as a lay witness and lay witness testimony cannot be speculative; and (ii) Goodis has not been designated as an expert on the topic of consumer behavior and preferences, and could not qualify for such designation. See id. at 5-6.  In their reply, they further argue that McDonald's opinion cannot be based on Goodis' statements because those statements are false and speculative.  See Reply in Support of Dentsply/TDP's Motion in Limine to Exclude Certain Evidence Related to Guidance's Damages Claims [Doc. 219] at 4-5, filed August 19, 2009 (Doc. 266)("Reply").

Guidance first argues that McDonald's report is not solely based on Goodis' opinion, and so therefore the Defendants' motion must fail.  It then asserts that the Defendants have no issue with McDonald's methodology or qualifications, only with the facts upon which he bases his opinion, and so the only issue for the Court to consider is whether McDonald's opinion can properly be based on the underlying opinion of Goodis.

### 1.    Guidance's Expert Testimony Relies on Evidence it Expects to Procure from Goodis, but Such Underlying Evidence Need Not Be Admissible.

McDonald's testimony relies on the assumption that V-Taper customers would buy the V2. The very nature of McDonald's opinion requires it: he is estimating damages from "the inability of Guidance to sell the Guidance-designed, fixed taper (0.04) rotary endodontic file to *existing* customers of its variable taper file (V Taper file)."  Report of M. Brian McDonald, Ph.D. at 1, filed July 31, 2009 (Doc. 219-4)(emphasis in original)("McDonald's Report").  Furthermore, McDonald clearly states that he is making such an assumption.  He states that his report:

> assumes that . . . Guidance would have been able to achieve sales of the V2 file . . . . equal to its actual historical direct sales of the V file [and] would have been able to achieve additional sales of the V2 file . . . equal to most of the historical sales of the V file by its largest distributor, Patterson Dental.

McDonald's Report at 3, 6.

The Rules of Evidence state that an expert's opinion must be based on facts or data, but "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted," so long as those facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid. 702, 703.  See Head v. Lithonia Corp., Inc., 881 F.2d 941, 944 (10th Cir. 1989) ("[E]xperts are given wide latitude to testify on facts otherwise not admissible in evidence.").  This rule permits experts to give the same opinions to a jury that they would make if working on their own.  See Head v. Lithonia Corp., Inc., 881 F.2d at 944 ("[T]he rule broadens the basis on which expert opinions may be offered to bring the judicial practice into line with the practice of the experts themselves when not in court.") (citing Fed. R. Evid. 703 Advisory Committee's Notes).

The Defendants appear to argue that the "facts" are not as Goodis will testify and that because there are no "facts" that underlie McDonald's opinion, his opinion is inadmissible.  See Motion at 7; Reply at 5.  They point to evidence that indicates that, if Goodis states that the V2 is an acceptable product substitute for the V-Taper file, those statements would contradict prior statements by Goodis.  See Motion at 5.  That inconsistency does not, however, establish that either statement was false, or that both are inaccurate.  If the Defendants want to show that McDonald's opinion is based on flawed assumptions, this conflict in Goodis' statements presents the Defendants with an opportunity to impeach Goodis.  See Fed. R. Evid. 613 (discussing process for questioning a witness regarding a prior statement); Fed. R. Evid. 801(d)(2)(A) (excluding admissions by a party opponent from the definition of hearsay).  Defendants' argument is more properly made to the jury, rather than in asking the Court to precluding McDonald from testifying.

The Defendants also appear to attack McDonald's testimony on the fact that it is based on

"*future* [sic] testimony."  See Reply at 5.  This argument appears to misread the Rules of Evidence.  Rule 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those . . . made known to the expert at . . . the hearing."  Fed. R. Evid. 703.  There is no requirement that an expert report have attached admissible evidence of all facts upon which it is based.

The pivotal issue underlying this motion is whether the business projections of a business owner are data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  Fed. R. Evid. 703.  The United States Court of Appeals for the Tenth Circuit has held that it is implicit in rule 703 that the district court must make a preliminary determination "whether the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions."  Head v. Lithonia Corp., Inc., 881 F.2d at 944 (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 703[03], at 703-16 (1982)).  The Tenth Circuit described this test as "a case-by-case" analysis that "should focus on the reliability of the opinion and its foundation."  Head v. Lithonia Corp., Inc., 881 F.2d at 944  (citing Soden v. Freightliner Corp., 714 F.2d 498, 503 (5th Cir. 1983)).  The requirement of being reliable enough to constitute a factual basis underlying an expert's assumption, however, is not particularly onerous.  As the Advisory Committee noted, "[a] review of the caselaw after Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993),] shows that the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702 Advisory Committee's Notes to the 2000 Amendments.  The Committee quoted the Supreme Court of the United States's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., where the Supreme Court said: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Fed. R. Evid. 702 Advisory

Committee's Notes to the 2000 Amendments (quoting <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. at 595).

The Court is comfortable in holding that the business projections of a small business owner are the kind of data upon which a consulting financial expert would rely when estimating the future profits for that business. A consulting financial expert often questions a business' assumptions and projections, but the consultant does not often do an audit to verify each and every assumption. The consultant often qualifies parts of his advice, identifying clearly what are assumptions and what is original product. Such qualifications and limitations alone do not *ipso facto* render the consultant's conclusions invalid.

In this case, Goodis has invested millions of dollars into his company. While Guidance is a new company, it is not without any operating history. It has generated millions of dollars in sales. The assumptions of the owner of such a company thus has some indicia of reliability. The Court believes the proper means of attacking the foundation of McDonald's testimony in this case is by cross-examination and contrary evidence, and not by excluding McDonald's testimony entirely. The Court will thus deny the Defendants' motion to the extent that it seeks to exclude the testimony of McDonald.

> **2.** **<u>The Tenth Circuit Counsels for Liberality in Permitting Lost-Profits Damages with Minimal of Evidence of the Prior Sales, Particularly when the Defendant is Accused of Causing that Dearth of Sales.</u>**

The theme of the Defendants' motion is that, because Guidance has no sales data relating to the V2 file, it cannot possibly prove lost sales from its inability to sell the V2. They argue that McDonald's opinion cannot be based on Goodis' opinion that his existing customers would have purchased the V2 file because that opinion is too speculative. <u>See</u> Reply at 6. Guidance asserts that much of the uncertainty in the facts underlying McDonald's opinion are the Defendants' fault, and

so they cannot be heard to complain about that speculation.  See Response at 8.

The Tenth Circuit has held that, where a wrongdoer's conduct creates uncertainty as to the amount of lost-profits damages, such uncertainty is not a bar to the admission of damages testimony. In World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467 (10th Cir. 1985), a retailer sought to recover lost profits from a manufacturer who committed antitrust violations, but the district court refused to allow the retailer to present proof of lost profits damages on the grounds that such evidence would be speculative.  See id. at 1478-79.  Specifically, World of Sleep sought to recover lost profits from its inability to sell La-Z-Boy chairs -- the profits it would have made from the sale of those chairs -- at two of its stores.  See id. at 1477.  The district court held that those damages were too speculative to be recovered because "there is no history at all of any profit or loss on these dealings during the years involved in this case ... [and] no evidence that La-Z-Boy would have consented to such an operation."  Id. at 1478 (quoting the appellate record).  The Tenth Circuit reversed.  See 756 F.2d at 1479.

The Tenth Circuit in World of Sleep, Inc. v. La-Z-Boy Chair Co. was clear that, "[i]f the plaintiff has demonstrated some damage, the actual amount need not be proven to the same degree of certainty."  Id. at 1478.  The Tenth Circuit then quoted the Supreme Court of the United States, stating:

> [W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.

756 F.2d at 1478 (quoting Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931)).  "If proof of a profit and loss history were required, no plaintiff could ever recover for

losses resulting from his inability to enter a market."  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d at 1478.

The evidence provided to the district court in World of Sleep, Inc. v. La-Z-Boy Chair Co. was different in kind from the evidence presented in this case.  See id. at 1478-79.  If anything, however, the foundation for and reliability of Goodis' sales assumptions and projections makes his testimony better than the proffered testimony in World of Sleep, Inc. v. La-Z-Boy Chair Co. Guidance has some track record and is not without a sales record.

The Court believes that Guidance has shown some damages.  Because Guidance has sold its products, it is not a completely new start-up company, but has a fairly substantial track record with millions of dollars in sales.  Guidance initiated and employed a similar strategy with the V2 file. Given its successful strategy of undercutting the Defendants' prices with a considerably less expensive but similar product, the Court believes that Guidance has established damage.  The issue is therefore the amount of damages.  On that issue, the Tenth Circuit has indicated that district courts should be more lenient than on the issue of the existence of damages.  Accordingly, it would be inappropriate to deny Guidance the benefit of McDonald's testimony because it lacks evidence of sales of the V2 file, particularly when the V2 was unavailable because of the Defendants' alleged wrongful conduct.   See Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 525 (10th Cir. 1987)("Although the quantum of damages, as distinguished from entitlement, must be demonstrated with specificity, courts may engage in 'some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing.'")(quoting PPX Enters. Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 271 (2d Cir.1987)).

-21-

**B.    GOODIS MAY PROPERLY TESTIFY AS A LAY WITNESS TO HIS
       EXPECTED CUSTOMER BASE BASED ON HIS POSITION AS THE
       OWNER OF GUIDANCE.**

Although the Defendants' motion is aimed at excluding the testimony of McDonald, both parties argue whether Goodis should be permitted to testify as to the underlying assumptions referred to above -- that is, whether Goodis can testify as to his opinion that customers of his V-Taper file would purchase the V2.   The gist of the Defendants' argument is that Goodis could not possibly testify as an expert -- and, even if he would be qualified to, Guidance did not timely designate him as an expert -- and that Goodis could not testify to this fact as a lay witness without engaging in improper speculation.  See Motion at 4-7.  Guidance responds that, as a business owner, Goodis can give lay testimony about the effect of the Defendants' conduct on his business.  See Response at 10-12.  It also argues that he should be allowed to testify as an expert, even though he was not properly disclosed in Guidance's initial disclosure, because permitting him to testify as such would be "both substantially justified and harmless."  Response at 12-14.

**1.    The Court Will Permit Goodis' Testimony as Proper Lay Testimony.**

Under rule 701, a witness who is not qualified as an expert can provide opinion testimony so long as that opinion is: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  The rule was amended to add subsection (c) in the year 2000, and the Advisory Committee commented that the amendment was intended to stop parties from attempting to sneak in expert testimony, which would otherwise have to meet the more stringent requirements of rule 702, as lay testimony.  The Committee cautioned, however, that it was "not intended to affect the prototypical examples of the type of evidence contemplated by the adoption of Rule 701," such as  testimony of

a "owner or officer of a business . . . to the value or projected profits of the business."  Fed. R. Evid.

701 Advisory Committee's Notes (internal alternations and quotations omitted).   The Committee

went on to explain that "[s]uch opinion testimony is admitted not because of experience, training

or specialized knowledge within the realm of an expert, but because of the particularized knowledge

that the witness has by virtue of his or her position in the business.  The amendment does not purport

to change this analysis."  Id.

Guidance points the Court to one case from another circuit applying the post-amendment

rule.[4]  The United States Court of Appeals for the Eleventh Circuit affirmed a Florida district court

that allowed lay testimony as to such topics as (i) industry standards, (ii) estimated costs of ship

repairs, (iii) estimates of comparable prices in the industry, and (iv) the fairness of prices charged.

See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1216-21

(11th Cir. 2003).   The Eleventh Circuit looked to the Advisory Committee's notes and to a

memorandum from the Advisory Committee regarding the amendment process in coming to its

conclusion that rule 701 would permit these statements to be offered as lay testimony.  See 320 F.3d

at 1222-23.  The Eleventh Circuit noted that an initial proposed version of rule 701(c) provided only

that "opinion testimony could not be admitted if it was based on 'scientific, technical or other

specialized knowledge.'" 320 F.3d at 1222.  The last portion, "within the scope of Rule 702," was

added after the period of public comment on the proposed rule.  320 F.3d at 1222.  The Eleventh

Circuit concluded that this purposeful addition was intended to emphasize that the rule was not

intended to require "anyone who testifies based on specialized knowledge they possess, whether

---

[4]Guidance cited another case that was issued after the amendment, but a close reading indicates that the court was applying the pre-amendment rule.  See Mississippi Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002)("At the time of trial, this Rule read: . . .").

through experience or professional learning, is subject to expert disclosure rules." 320 F.3d at 1222.

Thus, the Eleventh Circuit incorporated pre-amendment cases into its analysis, and concluded that

the testimony fell into the category of lay testimony and not of expert testimony.  320 F.3d at 1222.

Tenth Circuit cases decided before the 2000 amendment to rule 701 have allowed similar

testimony from lay witnesses.  See Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996) (holding

that it was within district court's discretion to allow a defendant in a medical malpractice suit to give

a lay opinion, based on his experiences as a physician, regarding appropriate standard of care and

cause of the plaintiff's injuries);   Malloy v. Monahan, 73 F.3d 1012, 1016 (10th Cir.

1996)(recognizing that an owner of a house is specially qualified to testify regarding its value);

United States v. Stanley, 896 F.2d 450, 451 (10th Cir. 1990)(holding it was within district court's

discretion to allow postal inspector with experience investigating child pornography to give lay

opinion that models in photographs were under eighteen years old); see also Mississippi Chem.

Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002)(finding no abuse of discretion where

district court allowed a "director of risk management and property taxation" to testify to company's

lost profits, and recognizing that "[o]ther circuits that have addressed this question have allowed lost

profit testimony by a layperson witness if the witness has direct knowledge of the business accounts

underlying the profit calculation.").[5]  Given that the amendment was not intended to change the rule

with regard to this "prototypical" category of lay opinion testimony, the Court believes the Tenth

Circuit would reach the same conclusion in these cases today.

The Court is convinced that it should permit Goodis to provide lay-opinion testimony, based

---

[5]The Defendants distinguish many of the cases that Guidance cites as allowing lay testimony regarding a lost-profits calculation only when the calculation was very straightforward.  See Reply at 6.  Guidance, however, is not proposing that Goodis testify as to the calculation of lost profits. The only fact that McDonald allegedly lacks is that V-Taper customers would purchase the V2.

on his experience running his company, regarding whether his existing customers would purchase the V2 file if it was available.  The Defendants are then free to cross-examine him and present rebuttal evidence to impeach that testimony.

### 2.  The Court Will Not Allow Guidance to Proffer Goodis as an Expert Witness.

As the Court has expressed numerous times, Guidance has been aware of the deadlines in this case and has had ample opportunity to determine which witnesses they wished to designate as experts.  More important, the Court is not inclined to believe that the testimony which Guidance seeks to elicit from Goodis requires him to be designated as an expert.  So far as the Court understands, this entire dispute regarding Goodis boils down to whether he will be permitted to say: "Based on my experience as the owner of my business and speaking with my customers, I think customers who bought the V-Taper file would buy the V2 file."  To this extent, the Court does not feel that expert designation is necessary, but Goodis' lay knowledge may be useful to the jury.

The Court will therefore deny the motion to the extent that it seeks to exclude the testimony of McDonald.  His expert opinion need not be based on admissible evidence, and the Court finds it reasonable for him to rely on the business projections of a business owner. The Court is hesitant to exclude evidence of lost sales when the jury may conclude that it was the Defendants' fault that the lost sales cannot be calculated with greater certainty.

**IT IS ORDERED** that Dentsply/TDP's Motion in Limine to Exclude Certain Evidence Related to Guidance's Damages Claims is granted to the extent that it seeks exclusion of evidence related to Plaintiff Guidance Endodontics, LLC's damages which are not included in Dr. M. Brian McDonald's original expert report and of which Guidance did not otherwise (i) clearly and unequivocally give the Defendants notice during pretrial proceedings, (ii) provide a damages

computation, and (iii) disclose all related documents. Before introducing any evidence of damages other than attorneys' fees or those contained in the McDonald report, Guidance must approach the bench with evidence of when it had clearly and unequivocally sought those damages during pretrial proceedings and provided a computation that would render its non-disclosure in the initial disclosures and answers to interrogatories harmless. The motion is denied with respect to McDonald's testimony, and denied to the extent that evidence of Guidance's attorneys' fees are independently relevant to rebut the implication that Guidance was operating under a flawed business model.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundam, Frome, Rosenweiz
    & Woldosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
   Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and –

Thomas P. Gulley
Rebecca L. Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

*Attorneys for the Defendants and Counter-Plaintiffs*