IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,

       Plaintiff,

vs.                                                                            No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

       Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

       Counter Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants and Counter Plaintiffs Dentsply

International, Inc. and Tulsa Dental Products, LLC's Motion in Limine to Exclude Desrosiers'

"Supplemental Report" and Testimony Regarding the Same, filed September 20, 2009 (Doc. 340).

The primary issues are: (i) whether the Court should exclude certain expert testimony by John

Desrosiers, a proffered expert witness of Plaintiff Guidance Endodontics, LLC, on the ground that

Desrosiers is not qualified to give those opinions or because the amendment was untimely; and (ii)

whether Desrosiers can give the opinions in his expert report as lay testimony.  The Court orally ruled on the motion during the trial, at 2:53 p.m. on September 28, 2009.  For reasons stated on the record and more fully set forth below, the Court finds that the opinions in Desrosiers' supplemental report are properly considered expert opinions and that the amendment was untimely.  The Court therefore will grant the motion.

## FACTUAL BACKGROUND

This case concerns a suit that Guidance, a small endodontic-equipment company, has brought against Defendants Dentsply International, Inc. and Tulsa Dental Products, LLC (collectively "the Defendants"), who are both Guidance's rivals and its suppliers.  More background on the lawsuit is set forth in the Court's earlier opinion.  See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 2008 WL 6013069, at *1-5 (D.N.M. Dec. 15, 2008)(Browning, J.).  Based on a dispute, the Defendants failed to supply a particular endodontic file -- the V2 file -- to Guidance.  Guidance now seeks lost-profits damages based on its inability to sell the V2 file to its customers.

## PROCEDURAL BACKGROUND

On December 17, 2008, the Court entered an Initial Scheduling Order.  See Initial Scheduling Order, filed December 17, 2008 (Doc. 34).  In it, the Court ordered the parties to make their initial disclosures by January 22, 2009.  See id. at 1-2.  The Court also ordered the parties to develop a Joint Status Report and Provisional Discovery Plan by January 15, 2009.  See id. at 1.

### 1.      The Court and Parties Set the Schedule for Disclosing Experts.

On January 16, 2009, the parties submitted a Joint Status Report and Provisional Discovery Plan.  In that document, the parties proposed deadlines of May 24 and April 23, 2009 to identify experts.  See Joint Status Report and Provisional Discovery Plan at 13, filed January 16, 2009 (Doc.

46).  On January 23, 2009, the Court held an initial scheduling conference.  At that hearing, the

Court expressed its agreement with how the parties proposed to handle the majority of pretrial

matters, and orally ordered that Guidance must identify its expert witnesses and provide their expert

reports no later than April 23, 2009.  The Court also stated that, while Guidance's experts did not

have to be deposed on that date, they should be ready to go to depositions at that time.  The Court

also ordered that the parties had to identify rebuttal witnesses soon thereafter, on May 19, 2009.

After the conference, the Court issued a written order, stating:

> Plaintiff shall identify to all parties in writing any expert witness to be used
> by Plaintiff at trial and to provide expert reports pursuant to Fed. R. Civ. P.
> 26(a)(2)(B) no later than **April 23, 2009**.  All other parties shall identify in writing
> any expert witness to be used by such parties at trial and to provide expert reports
> pursuant to Fed. R. Civ. P. 26(a)(2)(B) no later than **April 23, 2009**.
>         **The parties shall identify rebuttal experts no later than May 19, 2009.**
>         **The parties shall have their experts ready to be deposed at the time they
> identify them and produce their reports.**

Scheduling Order at 2, filed March 4, 2009 (Doc. 62)(emphasis in original).

Since the initial scheduling order, the Court has repeatedly extended the deadline to identify

experts and provide their reports.  First, the parties were to identify experts by April 23, 2009 and

by May 19, 2009 for rebuttal experts.  See Scheduling Order at 2.  The deadline was then extended

to May 22, 2009.  See Order Granting Joint Motion for Extension of Time to File Expert Reports

at 1, filed May 1, 2009 (Doc. 101).  On May 19, 2009, the parties filed a motion seeking to extend

the Court's initial scheduling deadlines.  See Joint Motion to Amend the March 4th and May 1st

Scheduling Orders, filed May 19, 2009 (Doc. 115).  The parties agreed to the following schedule

for the disclosure of experts:

> The parties shall identify in writing any expert witness to be used at trial and
> provide expert reports pursuant to Rule 26(a)(2)(B) no later than June 5, 2009.

> The Parties shall identify rebuttal experts and provide expert reports pursuant

to Rule 26(a)(2)(B) no later than June 30, 2009.

Id. Exhibit A, p. 2.  The Court, pursuant to this request, extended the deadline to June 5, 2009 and,

for rebuttal experts, to June 30, 2009.  See Order to Amend Scheduling Order (Dkt. No. 62) and

(Dkt. No. 101) at 2, filed June 3, 2009 (Doc. 133).

### 2.       The June 15, 16, and 17, 2009 Inspection and Desrosiers' Deposition.

On June 15, 16, and 17, 2009, Desrosiers visited one of the Defendants' facilities in Johnson

City, Tennessee.  See Motion at 1 & 2.  There, he inspected a piece of machinery that one of the

Defendants' employees referred to as a "CNC machine."  See Electronic-Mail Transmission from

John Desrosiers to John Kelly at 1 (dated September 18, 2009), filed September 20, 2009 (Doc. 341-

2).  Based on that inspection and "some recent research," Desrosiers concluded that the machine was

not a CNC machine, but was instead a manual grinding machine that had been "retro-fitted" with

equipment to make it function like a CNC machine.  Id.

The Defendants deposed Desrosiers on July 11, 2009.  In that deposition, Thomas Gulley,

attorney for the Defendants, probed whether Desrosiers would testify regarding opinions garnered

from the June inspection.  See Transcript of Deposition at 15:20-16:9 (taken July 11,

2009)("Desrosiers Depo")(Q.  (BY MR. GULLEY) Well, was there anything about what you heard

or saw in Johnson City . . . that you thought or you believe something in your report needed to be

modified, updated, revised?").  Desrosiers responded that he would not be amending his report

unless Mr. Kelly asked him to address additional questions.  See Desrosiers Depo at 16:7-9, 16:17-

19.  He stated that he could "think of nothing that [he] would want to change in the report."  Id. at

17:10-12.  As the deposition was coming to an end, Mr. Gulley asked a similar question: "Do you

have any other opinions that you plan to express at trial other than what's in your report?"  Id. at

143:1-2.  At this point, Desrosiers' answered differently: "Yes, opinions related to CNCs."  Id. at

143:3.  Mr. Gulley then asked John Kelly, counsel for Guidance, specifically, "Are you going to supplement that?"  Id. at 143:4-5.  Mr. Kelly responded ambiguously that "it's not clear that he's going to be providing expert testimony," "I haven't decided," and "[h]e may just be a rebuttal witness."  Id. at 143:6-17.  Guidance did not immediately supplement Desrosiers' expert report.

### 3.   Guidance Attempts to Supplement Desrosiers' Expert Report on the First Day of Trial.

The trial of this case commenced at 9:00 a.m. on Friday, September 18, 2009, with jury selection.   At 8:05 a.m. on that same day -- fifty-five minutes before jury selection began -- Guidance forwarded the Defendants an electronic mail transmission from Desrosiers containing what Guidance referred to as a "supplemental report."  Motion at 1-2 & Exhibit A ("Here is a supplemental report from John Desrosier [sic] on which he may testify.").  On September 20, 2009, the Defendants filed this motion, requesting that the Court prohibit Guidance from supplementing the expert report of Desrosiers and asking that the Court prohibit Desrosiers from testifying to the opinions set forth in the electronic mail transmission.  See Motion at 5.  Guidance opposes the motion.  See Plaintiff's Response to Motion in Limine to Exclude John Desrosiers' Supplemental Report and Testimony Regarding Same, filed September 23, 2009 (Doc. 355)("Response").  The September 18, 2009 supplemental report states that, based on a June 17, 2009 inspection of the Defendants' Johnson City facility and "some recent research," Desrosiers has arrived at new opinions:  (i) whether the machine at the Defendants' Johnson City facility is, in fact, a "CNC machine;" (ii) the expected work life of the machine; and (iii) the availability and cost of a genuine CNC machine. See Electronic Mail Transmission from John Desrosiers to John Kelly at 1-2 (dated September 18, 2009).

## LAW REGARDING SUPPLEMENTATION OF EXPERT REPORTS

To address the Defendants' motion, the Court must consider the interplay between Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1).  Rule 26(a)(2)(B) provides that an expert witness's report should contain "a complete statement of all [the] opinions" he or she will be expressing. Fed. R. Civ. P. 26(a)(2)(B).  As the United States Court of Appeals for the Tenth Circuit has noted, the purpose of rule 26(a) expert disclosures is "not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002) (citing Fed. R. Civ. P. 26(a)(2) Advisory Committee Notes to the 1999 Amendments).  The Tenth Circuit believes that "[s]uch disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Jacobsen v. Deseret Book Co., 287 F.3d at 953 (citing Fed. R. Civ. P. 26(a)(2) Advisory Committee Notes to the 1999 Amendments). Pursuant to rule 26(e), a party is under a duty to supplement a rule 26(a)(2)(B) expert report "if the party learns that in some material respect the information disclosed is incomplete and if the additional or corrective information has not otherwise been made known to the other parties . . . ." Fed. R. Civ. P. 26(e).

The penalty for failure to satisfy rule 26(e) is severe.  Rule 37 states that, if one "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Whether a rule 26(a) violation is justified or harmless is a question for the district court's broad discretion. Woodworkers Supply, Inc. v. Principal Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (holding that a damage theory purportedly not disclosed until trial did not warrant exclusion).  The Tenth Circuit has described this standard as follows:

A district court need not make explicit findings concerning the existence of a

substantial justification or the harmlessness of a failure to disclose.  Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.

## ANALYSIS

The Court's Order required the parties to serve their expert reports on one another by June 5, 2009.  See Order to Amend Scheduling Order (Dkt. No. 62) and (Dkt. No. 101) at 2, filed June 3, 2009 (Doc. 133).  Rule 26(e) further directs that "any additions or changes" to an expert report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e).  Under the scheduling order, pretrial disclosures in this case were due August 31, 2009.  See Order to Amend Scheduling Order (Dkt. No. 62) and (Dkt. No. 101) at 2.  Guidance did not supply the Defendants with Desrosiers' supplement until the morning of September 18, 2009, the day of jury selection and more than two weeks past the deadline for supplementing expert reports.  See Response at 3.  Guidance admits that this supplement was untimely.  See id.  It makes its argument toward the issue of whether the Defendants would be prejudiced if the Court allowed Desrosiers to testify to the opinions in his supplemental report.  See Fed. R. Civ. P. 37(c)(1).  Even that standard, however, does not favor Guidance.

## I.    THE COURT CONCLUDES THAT THIS LATE SUPPLEMENTAL EXPERT REPORT IS NEITHER SUBSTANTIALLY JUSTIFIED NOR HARMLESS.

The Court concludes that it should not permit Guidance to supplement Desrosiers' expert report at this late date.  Because Guidance has conceded that its supplemental report is untimely, the pivotal issue is whether this supplement is either substantially justified or harmless.  Guidance has been aware of the deadlines in this suit.  Furthermore, Desrosiers has had all of the information

necessary to develop this supplemental report since June 17, 2009 -- two weeks before the deadline for designating rebuttal experts, a month and a half before the deadline for supplementing expert reports, and three months before trial -- yet this supplement was not given to the Defendants until the day the trial began.  The Court therefore finds that the untimely supplement is not justified.

The Court also finds that the late supplement is not harmless.  The factors to consider in determining whether the failure to satisfy rule 26 was harmless are: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.  As the Tenth Circuit noted in Jacobsen v. Deseret Book Co., the purpose of these disclosures is to put the opposing party on notice of the substance of the testimony that the expert is going to tender on direct examination.  287 F.3d at 953.  The Tenth Circuit in Jacobsen v. Deseret Book Co. was dealing with whether the district court abused its discretion when it allowed experts to testify even though their expert reports were incomplete and each report stated, in effect, that the expert was going to continue research and refine those opinions.  See id.  In that decision, the Tenth Circuit performed a rule 37(c) analysis to decide whether to allow those witnesses to testify, even though their reports did not satisfy rule 26(a).  See id.  The Tenth Circuit appeared to find that the fact that the opposing party was unaware of the substance of the witnesses direct examination testimony was sufficient prejudice to weigh against permitting amendment.  See id. ("[T]o avoid prejudice Dr. Jacobsen needed to know the substance of the experts' testimony.  After reviewing the expert reports, it appears likely the experts' testimony at trial will contain substantially more information than was presented in the expert reports.").

Desrosiers' original report satisfied the rule 26(a) standard, so testifying on the topics

discussed in his first report does not cause the same problem.  The Court, however, finds the Tenth Circuit's prejudice analysis in <u>Jacobsen v. Deseret Book Co.</u> instructive regarding testimony on topics in Desrosiers' supplemental report.  While the Defendants are not entirely in the dark regarding Desrosiers' testimony, the timing of the supplemental report is such that it will impede the Defendants' ability to rebut any testimony based on it.  The trial of a case is a substantial undertaking that consumes most or all of an attorney's time.  Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful.  There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.

In this case, the Defendants have little if any time to prepare a new or existing expert witness by sending the witness to the Johnson City facility nor doing additional research to rebut Desrosiers' new expected testimony.  Furthermore, the supplemental report ambiguously references "some recent research" that underlies these new opinions.  Electronic Mail Transmission from John Desrosiers to John Kelly at 1-2 (dated September 18, 2009).  With no indication what that research was and no properly informed expert witness to prepare the Defendants' counsel, the Defendants would be left going fishing in the expert's superior knowledge on cross-examination, which is never an enviable position for one to be in.  Also, neither party can substantially decrease the level of prejudice.  The trial is underway, and the Defendants are still compelled under a preliminary injunction, so the Defendants will be prejudiced whether the Court lets the trial go forward or attempts to put it on hold.  Along the same vein, if the Court were to put the trial on hold to allow the Defendants to prepare for this testimony, even if it only took one day, someone would have to rework the travel arrangements of many of the out-of-town witnesses and the trial would not be completed within the three weeks that the Court has allotted for it.  In short, it would severely disrupt the trial.

It therefore appears that, of the factors that should inform a district court's decision whether to permit testimony related to an untimely expert report, at best, one weighs in favor of Guidance. The Court is not willing to find that Guidance acted with bad faith or willfulness.  A party's good faith, however, is "not enough to overcome the other factors." Jacobsen v. Deseret Book Co., 287 F.3d at 954.  The Court will therefore grant the motion to strike Desrosiers' supplemental expert report.  It follows that the Court will not permit Desrosiers to give expert testimony as to any opinion that Desrosiers expressed in that report which is not set forth in his original expert report.

## II.   THE OPINIONS IN DESROSIERS' SUPPLEMENTAL REPORT ARE EXPERT OPINIONS, SO DESROSIERS WILL NOT BE ALLOWED TO GIVE THEM AS LAY TESTIMONY.

That Desrosiers cannot testify to facts as an expert, however, does not automatically mean that he cannot testify at all.  Sometimes a witness can be peculiarly qualified to testify to things within his specialized knowledge as a lay witness.  See Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996) (holding that it was within district court's discretion to allow the defendant in a medical malpractice suit to give lay opinion, based on his experiences as a physician, regarding appropriate standard of care and cause of plaintiff's injuries);  Malloy v. Monahan, 73 F.3d 1012, 1016 (10th Cir. 1996)(recognizing that an owner of a house is specially qualified to testify regarding its value); United States v. Stanley, 896 F.2d 450, 451 (10th Cir. 1990)(holding it was within district court's discretion to allow postal inspector with experience investigating child pornography to give lay opinion that models in photographs were under eighteen years old); see also Mississippi Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002)(finding no abuse of discretion where district court allowed a "director of risk management and property taxation" to testify to company's lost profits, and recognizing that "[o]ther circuits that have addressed this question have allowed lost profit testimony by a layperson witness if the witness has direct knowledge of the business accounts

-10-

underlying the profit calculation."). While Desrosiers has done work for Guidance and is a fact witness for some purposes, the new testimony appears to arise directly out of his work as a retained expert in this case. He is not primarily a fact witness who happens to draw on his personal expertise, but was being paid to go to Johnson City to view the Defendants' equipment. This case does not appear to be an appropriate case to allow a lay or fact witness to testify with reference to his specialized personal experience. Rather, he is an expert offering expert testimony. The Court notes that, in addition to the very technical nature of the opinions expressed in the supplemental report, Desrosiers did not come to his new opinions by merely looking at the equipment at the Johnson City facility. On the contrary, he had to engage in "some [] research" in conjunction with his visit to come to his conclusions. Guidance and Goodis are offering Desrosiers' specialized knowledge, for which he appears competent to testify, based on his expertise in this case and not his experience as a fact witness. The Court will therefore not permit Desrosiers to give the opinions in his supplemental expert report as lay testimony.

        **IT IS ORDERED** that Defendants and Counter Plaintiffs Dentsply International, Inc. and Tulsa Dental Products, LLC's Motion in Limine to Exclude Desrosiers' "Supplemental Report" and Testimony Regarding the Same is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kyle C. Bisceglie
Renee M. Zaytsev
Olshan Grundman Frome Rosenzweig
   & Wolosky, LLP
New York, New York

-- and --

-11-

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris
  & Sisk, P.A.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca LLP
Albuquerque, New Mexico

 *Attorneys for the Defendants and Counterplaintiffs*