IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

       Plaintiffs,

vs.                                                                                                                No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

       Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

       Counter Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Amend Complaint and for Leave to File Exhibits in Excess of 50 Pages, filed August 31, 2009 (Doc. 286). The primary issue is whether the Court shall deny Plaintiff Guidance Endodontics, LLC leave to file a proposed Amended Complaint which would add four new causes of action and numerous additional factual allegations on grounds of undue delay, undue prejudice, bad faith or dilatory motive, or futility. The Court must also address whether to permit Guidance to attach documents to its motion in excess of

fifty pages. Because it has not been opposed and the Court sees no prejudice to the Defendants in permitting the exhibits, the Court will allow the motion for leave to attach exhibits in excess of fifty pages. The Court is convinced, however, that Guidance unduly delayed in moving to amend its Complaint and that the amendment would cause undue prejudice to the Defendants. Further, it appears that Guidance might have sought the amendment for the purpose of delaying trial of the case. For those reasons, the Court will deny the motion to amend.

## **FACTUAL BACKGROUND**

This case concerns a suit that Guidance, a small endodontic-equipment company, has brought against Defendants Dentsply International, Inc. and Tulsa Dental Products, LLC ("TDP") (collectively "the Defendants"), who are both Guidance's rivals and its suppliers. More background on the lawsuit generally is set forth in the Court's earlier opinion. See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 2008 WL 6013069, at **1-5 (D.N.M. Dec. 15, 2008)(Browning, J.). The Defendants are manufacturers and suppliers of a variety of dental/endodontic products that compete with Guidance's products, including endodontic obturators, files, and ovens. See Verified Complaint and Demand for Jury Trial ¶¶ 32, at 7, filed November 21, 2008 (Doc. 1)("Complaint"). Dentsply holds itself out as "the world's largest designer, developer, manufacturer and marketer of a broad range of products for the dental market," and has over $2.3 billion in sales annually. Complaint ¶¶ 30, 34, at 7.

On or about July 29, 2008, Guidance and Dentsply entered into a Manufacturing and Supply Agreement (the "Supply Agreement"), pursuant to which the Defendants agreed to manufacture all of Guidance's proprietary endodontic products, and Guidance agreed to purchase all of its requirements for such products from TDP on an exclusive basis. See Declaration of Kyle C. Bisceglie in Opposition to Defendants' Motion for Summary Judgment, ¶ 7, at 2 & Exhibit 5,

(executed July 29, 2009), filed July 31, 2009 (Doc. 228)("Bisceglie Dec."). Section 4.5 of the Supply Agreement requires TDP to manufacture and to provide endodontic files or obturators that are improvements or successor products to the Guidance Files or Guidance Obturators, as those terms are defined in the Supply Agreement, if Guidance supplies product specifications to TDP. See Bisceglie Dec. at 6. Because the Supply Agreement prohibited Guidance from obtaining a particular file -- the V-Taper file -- from its prior supplier, Guidance was in the process of developing a new file -- the V2 file -- which is designed to replace the V-Taper file. See Complaint ¶¶ 124-25, at 25. Guidance intended to begin offering the V2 file for sale on November 1, 2008. See Complaint ¶ 127, at 25. Because of a dispute, the details of which are not important to this motion, Guidance sued the Defendants for breach of contract and other related claims on November 21, 2008.

## PROCEDURAL BACKGROUND

In the parties' Joint Status Report and Provisional Discovery Plan, the parties agreed that Guidance would amend its pleadings by February 23, 2009. See Joint Status Report and Provisional Discovery Plan at 2, filed January 16, 2009 (Doc. 46). At the Court's Initial Scheduling Conference, the Court orally adopted the parties' proposed deadlines. By order entered March 4, 2009, the Court adopted the parties' deadlines as its own. See Order Adopting Joint Status Report and Provisional Discovery Plan, filed March 4, 2009 (Doc. 63). Guidance has never sought to have the Court extend those deadlines.

In this motion, Guidance seeks to amend its Complaint to add claims for reformation, unjust enrichment and restitution, breach of fiduciary duty, and prima-facie tort. See Motion at 1. The Amended Complaint also includes 88 new factual allegations. The motion further asks the Court to allow Guidance to "amend its previously asserted counts of breach of implied covenant of good faith and fair dealing and violation of the New Mexico Unfair Practices Act to clarify the facts and

-3-

theories upon which those counts are based." Motion at 1. Guidance argues that such amendments will not prejudice the Defendants and that they did not unduly delay in moving for leave to amend. See Motion at 2. The Defendants disagree with these assertions and further argue that the Court should deny leave to amend because of Guidance's bad faith and dilatory motive, and because three of the proposed amendments would be futile. See Dentsply/TDP's Response to Guidance's Motion to Amend Complaint at 1, filed September 9, 2009 (Doc. 306)("Response").

## LAW REGARDING MOTIONS TO AMEND

When a court has not entered a scheduling order in a particular case, rule 15 of the Federal Rules of Civil Procedure governs amendments to a plaintiff's complaint. Rule 15(a)(2) provides that after a responsive pleading has been filed: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When a scheduling order governs the pace of the case, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order. See Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The rule "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schools, No. Civ 02-1146 , 2007 U.S. Dist. LEXIS 56492, at *3 (D.N.M. June 5, 2007)(Browning, J.). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Id.

Some federal circuits have interpreted rule 16 as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case. See Minter v. Prime

Equipment Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." Id. The United States Court of Appeals for the Tenth Circuit has not answered whether a motion to amend a complaint in a case governed by a rule 16 scheduling order must meet both the "good cause" standard of rule 16 and the 15(a)(2) amendment standard. See 451 F.3d at 1205 n.4. It recognized, however, that the standards are very similar, and the Defendants do not make any arguments in their response that go only to the "good cause" standard. The Court will therefore analyze this motion primarily under the rule 15(a)(2), as the Tenth Circuit did in Minter v. Prime Equipment Co. See 451 F.3d at 1205 n.4.

While a court should generally permit amendment when justice requires, denial of amendment is "justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993). See Foman v. Davis, 371 U.S. 178, 182 (1962). It is "well settled" in the Tenth Circuit "that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." Frank v. U.S. West, Inc., 3 F.3d at 1365-66 (internal citations omitted). "[P]rejudice to the opposing party need not also be shown." Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).[1] "Where the party seeking

---

[1] The Court notes that there is authority in the Tenth Circuit that seems to be to the contrary. See R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)("Lateness does not of itself justify the denial of the amendment."). Minter v. Prime Equipment Co. seems to clarify that the distinction is between "delay" and "undue delay." Minter v. Prime Equipment Co., 451 F.3d 1196, 1205-06 (10th Cir. 2006). Delay is undue "when the party filing the motion has no adequate explanation for the delay." Id. at 1206. The Court, however, does not rely purely on untimeliness in granting this motion, so the Court's decision need not investigate this potential conflict.

amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d at 1185 (quoting State Distributors, Inc. v. Glenmore Distilleries Co., 738 F.2d 405 (10th Cir.1984)). Along the same vein, the Court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amended its complaint.

## ANALYSIS

Generally, Guidance argues that it has not acted with dilatory motive or bad faith, that there have been no previous amendments, and that its proposed amendments are not futile. See Motion at 2. Therefore, Guidance argues, the only bases for denying amendment that the Court should consider are whether the Defendants would be prejudiced by the amendments or whether Guidance has acted with "undue delay." Id. Guidance asserts, in short, that the amendments will not prejudice the Defendants because the new claims are all based on facts that were either already pleaded or were known to the Defendants. See id. at 2-3. With respect to undue delay, Guidance argues that its delay was not "undue" because the discovery deadline came after the deadline to amend, and the amendments are, in part, based on information to which it did not have access until after the February 23, 2009 amendment deadline.

The Defendants argue in response that the Court should deny the amendments because Guidance had access to all information necessary to make these amendments six months before it filed the motion and yet it filed the motion a mere 10 days before the trial was set to begin. They also argue that they will be unduly prejudiced if these amendments are allowed because it will require additional discovery to properly respond to the allegations, will require additional last-minute trial preparation, and will further complicate an already tumescent jury charge. Furthermore,

they assert that this amendment is made in bad faith or with dilatory motive and that several of the amendments would be futile. The Court addresses each argument in turn.

**I.      GUIDANCE UNDULY DELAYED MOVING FOR THIS AMENDMENT.**

Guidance filed this case on November 21, 2008, and the deadline to amend the complaint was February 23, 2009. See Scheduling Order at 1, filed March 4, 2009 (Doc. 62). Guidance had access to enough information to generate its Amended Complaint in early March of 2009. Guidance did not file its motion to amend the complaint, however, until August 31, 2009 -- approximately six months after it had enough information to do so. Guidance also filed the motion ten days before trial, even though Guidance has been aware of the trial date -- September 14, 2009 -- since June 3, 2009.[2] See Order to Amend Scheduling Order (Dkt. No. 62) and (Dkt. No. 101) at 2, filed June 3, 2009 (Doc. 133). Guidance appears to argue that, because this information was not known until after the deadline for amending the complaint had passed, that its amendment was not unduly delayed when it was filed on August 31, 2009. See Plaintiff's Reply Memorandum in Support of Motion to Amend Complaint (Doc. 286) at 2-3, filed September 14, 2009 (Doc. 319)("Reply").

Just because a litigation deadline has passed does not mean that acting with haste is no longer necessary. To the contrary, if a deadline has passed, it should be clear to litigants that time is all the more of the essence. In other words, just because Guidance learned of information necessary to raise one of its claims a week after the deadline for amending complaints had passed does not mean it was free to wait an additional six months to file its motion to amend. The Court will therefore deny Guidance's amendment based on this undue delay.

---

[2] The trial has since been pushed back slightly and began on September 18, 2009.

### A. GUIDANCE'S CLAIM OF REFORMATION IS BASED ON FACTS KNOWN TO IT AS EARLY AS MARCH 2, 2009.

Guidance's Amended Complaint asserts a claim for reformation of the Supply Agreement into which Guidance and the Defendants entered. See Motion at 4-5; Proposed First Amended Complaint and Demand for Jury Trial ¶¶ 236-240, at 42-43, filed August 31, 2009 (Doc. 286-2)("Proposed Amended Complaint"). The factual allegations that underlie this claim are that the Defendants allegedly represented that Exhibit 1 to the Supply Agreement included engineering drawings with sufficient specifications to create the EndoTaper file, but the specifications turned out to be insufficient. See Proposed Amended Complaint ¶¶ 236-40, at 42-43. In that claim, Guidance also asserts that the parties agreed that the Defendants would manufacture Guidance's V2 file in a full range of tip sizes, but that the Supply Agreement reflected that the Defendants would only provide the file in three specific sizes. See Motion at 5; Proposed Amended Complaint ¶¶ 241-47, at 43-44. The Defendants have provided evidence that these facts were known to Guidance as early as March 2, 2009. See Letter from Kyle C. Bisceglie to Thomas Gulley at 2-3 (dated March 2, 2009), filed September 9, 2009 (Doc. 306-7). It appears to the Court, therefore, that with respect to Guidance's claim for reformation, it knew of the facts underlying its claim for approximately six months before filing this motion. Given the lack of justification provided for this delay and the fact that Guidance has been aware of the impending trial date -- ten days after it filed this motion -- Guidance's delay in filing this motion was "undue."

### B. GUIDANCE HAS HAD ENOUGH INFORMATION TO ASSERT ITS RESTITUTION AND UNJUST ENRICHMENT CLAIM SINCE IT FILED THIS LAWSUIT.

Guidance's claim for restitution and unjust enrichment is based on the same conduct that is claimed to be wrongful in its initial complaint. See Motion at 5-6. Guidance argues that it is not

guilty of "undue delay" in moving for this amendment because it seeks to recover profits wrongfully gained by the Defendants' based on its refusal to supply the V2 file to Guidance. See id. It contends that it did not, until recently, have access to the Defendants' sales data and, without that data, could not properly calculate the Defendants wrongful gains. See id. The Defendants argue that not having accurate financial data does not justify Guidance's failure to plead unjust enrichment at the time it filed suit. The Court agrees that Guidance could have asserted this claim earlier. At the time of filing suit, Guidance accused the Defendants of wrongfully breaching a contract to supply goods to Guidance and of attempting to convert Guidance's customers to buy the Defendants' products instead. See, e.g., Complaint ¶¶ 144-57, at 28-30.

Guidance was aware of facts on which it could have based its restitution and unjust enrichment claim. The very nature of Guidance's claims implied that Guidance believed the Defendants were attempting to sabotage Guidance because they saw it as a business threat. Even if Guidance did not contemplate that the Defendants would reap benefits from rendering Guidance unable to provide files and obturators to its customers, the facts were available on which Guidance could have based this claim. See Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d at 1185 ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."). It appears to the Court that Guidance's failure to assert this claim in its initial complaint, or at least shortly thereafter, was from inadvertence, and it had abundant time to cure that defect between November 21, 2008, when it filed its complaint, and the February 23, 2009 deadline for amendments.

### C. GUIDANCE HAS KNOWN THE FACTS UPON WHICH IT BASES ITS CLAIM FOR BREACH OF FIDUCIARY DUTY SINCE IT FILED ITS COMPLAINT.

Guidance seeks to add a claim for breach of fiduciary duty against the Defendants. See Proposed Amended Complaint ¶¶ 291-93, at 49. This claim asserts that, because Guidance was required to purchase from the Defendants, because Guidance was in a vulnerable financial position as a result of prior litigation, and because the Defendants were in control of Guidance's supply of goods, the Defendants were in a fiduciary relationship with Guidance. Much like its restitution and unjust enrichment claims, Guidance has known about the facts that underlie this claim since the day it filed its initial complaint, if not before. Guidance does not even argue why there was no undue delay in amending to add this claim. See id. The Court finds that this amendment was unduly delayed.

### D. GUIDANCE HAS KNOWN THE FACTS THAT UNDERLIE ITS PRIMA-FACIE TORT CLAIM SINCE IT FILED ITS COMPLAINT.

The last new claim asserted by Guidance is one for prima-facie tort. Proposed Amended Complaint ¶¶ 313-17, at 51-52. Guidance bases this claim on "Defendants' actions in negotiating the Supply Agreement, prototyping the files, discontinuing the supply of obturator [sic], refusing to manufacture the V2 file, and creating a false and misleading engineering drawings and other related conduct." Id. ¶ 314, at 52. The Defendants respond that there is no reason why Guidance could not have included this Claim in its original Complaint. The Court agrees.

Under New Mexico law, which the Court concludes would be applicable to this claim,[3] the elements of prima-facie tort are (i) an intentional and lawful act, (ii) an intent to injure the plaintiff,

---

[3] In this case, because the harm alleged is to the financial condition of a New Mexico company, New Mexico law applies to Guidance's tort claims. See Memorandum Opinion and Order at 10-11, filed September 11, 2009 (Doc. 316).

(iii) injury to the plaintiff as a result of the intentional act, and (iv) the absence of justification for the injurious act. See Kitchell v. Public Service Co., 126 N.M. 525, 529, 972 P.2d 344, 348 (1998). These elements are relatively easy to meet at the pleading stage and it appears from the Complaint that Guidance was aware of ample facts that could support each. All of the acts alleged in the Amended Complaint, except perhaps those associated with "prototyping the files," occurred and were known to Guidance when it filed its Complaint. Any one of those acts would have arguably satisfied the essential elements of a claim for prima-facie tort. There is therefore no justification -- and Guidance does not assert any -- for waiting until the eve of trial to move to amend the complaint and add this claim.

### E. GUIDANCE HAS KNOWN ABOUT THE NEW FACTS IT ALLEGES FOR AT LEAST SIX MONTHS BEFORE IT FILED ITS MOTION TO AMEND.

The Court reviewed the new portions of Guidance's Proposed Amended Complaint. Every new factual allegations appears to be based on facts that were, or should have been, known to Guidance since the beginning of this lawsuit. Guidance does not argue otherwise, except its assertion that Guidance did not realize until after the suit was filed that the Supply Agreement provided insufficient engineering drawings of the EndoTaper and provided that only three sizes of V2 file would be produced. Those facts were known to Guidance, at the latest, by March 2, 2009, when it sent a letter regarding those issues to the Defendants' counsel. See Letter from Kyle C. Bisceglie to Thomas Gulley (dated March 2, 2009), at 2-3, filed September 9, 2009 (Doc. 306-7). Guidance knew everything that it needed to know to amend its complaint for six months before it filed this motion, and it knew that the trial was scheduled to begin in mid-September. Because the trial is right around the corner, the deadline for amending pleadings has long past, and because Guidance has provided no justification for waiting almost six months to amend its Complaint, the

Court finds that Guidance unduly delayed in filing its motion.

## II.   THE ADDITIONAL CLAIMS AND THEORIES WOULD UNDULY PREJUDICE THE DEFENDANTS.

In its motion, Guidance argues whether the amendment would cause "undue prejudice" is the "most important" factor that a court must consider when determining whether to allow an amendment to a complaint. See Motion at 2. Even if this assertion is true, however, it does not benefit Guidance. This amendment would involve significant prejudice to the Defendants.

Guidance argues that these amendments will cause no prejudice to the Defendants, because "[e]ach amendment is based either on facts that are already pleaded in Guidance's complaint, or on facts that have arisen in discovery, and of which the parties are already aware . . . ." Motion at 3.[4] In response, the Defendants contend that this case is ready for trial, and the additional claims would require the Defendants to do additional discovery aimed at finding facts necessary to rebut those claims. See Response at 6. They further argue that it would require last-minute trial preparation to be ready to deal with these additional claims by the time the trial commences on September 18, 2009. See id. at 8. In short, the Defendants argue that these late amendments would substantially prejudice them.

The Court believes that this amendment would substantially prejudice the Defendants. First, simply because all of the facts underlying certain claims are known to both parties does not mean that amending to add the claims, particularly this late in the litigation process, would not prejudice the other party. The facts in this case are very complex. That the Defendants were aware of those

---

[4] In fact, Guidance argues that the Defendants had been aware of Guidance's intent to assert its Reformation claim since April 3, 2009. See Motion at 4. Guidance does not, however, explain why it did not amend to raise that claim in April, rather than waiting approximately five months until the very end of August.

-12-

facts does not mean that they should have been preparing their case with an eye toward defending against every possible claim that Guidance might raise. The specific counts in the Complaint allowed the Defendants to focus their discovery on what they believed necessary to defend against the claims actually asserted. The Defendants have pointed to numerous of Guidance's new allegations on which they would seek discovery, and the Court would be reluctant to deny them discovery if the Court allowed the amendment.

Additional discovery, however, would not cure all prejudice to the Defendants. If the Court allowed additional discovery, it would also have to vacate its trial setting, currently scheduled for September 18, 2009. The Defendants are currently compelled under a preliminary injunction. See Memorandum Opinion and Order, filed December 22, 2008 (Doc. 39). Delay of the trial to avoid prejudicing the Defendants on these new claims will prejudice the Defendants by forcing them to continue to perform under the injunction. Given the lack of justification by Guidance for its delay in moving to amend, and that the amendments were sought long after the deadline for amending pleadings, the Court will not subject the Defendants to the lesser of two forms of prejudice when denying the amendment will avoid both.

Guidance points out, however, that the amendments to add additional factual allegations to the Complaint do not prejudice the Defendants. See Reply at 6-9. The Court agrees, but believes the new factual allegations are not necessary to Guidance. Guidance was not required to add additional facts to support its existing claims and could present whatever admissible evidence it had to establish the elements of those claims. The amendment, to that extent, could not possibly prejudice the Defendants.

The situation is slightly different with respect to the new allegations in Guidance's Unfair Practices Act claim. See Proposed Amended Complaint ¶¶ 269-70, 272, at 46-47. These new

-13-

paragraphs, however, only pinpoint the conduct that Guidance contends are a breach of the New Mexico UPA.  See Proposed Amended Complaint at 46 (specifying NMSA 1978, § 57-12-1, *et seq.*).  The Court believes that these new facts only indicate more precisely which instances of the conduct alleged in the Complaint will be the basis for Guidance's claim of violation of the UPA. See NMSA 1978, § 57-12-2D (specifying what conduct constitutes an "unfair or deceptive trade practice" and citing examples).  Nevertheless, the Court will deny the amendment in whole, including the factual allegations, based on Guidance's undue delay and the fact that these amendments are not necessary to Guidance.  In doing so, the Court does not necessarily hold that Guidance is prohibited from presenting evidence of this conduct or pursuing these theories of liability under the UPA.

The Court finds that, at least to the extent that the amendment asserts new claims, the late amendment unduly prejudices the Defendants.  To the extent that the amendment seeks to assert new facts, these new factual allegations are unnecessary.

### III.	FUTILITY, BAD FAITH OR DILATORY MOTIVE.

While Guidance was quick to hem the issues on this motion to undue prejudice and undue delay, the Defendants assert that Guidance's motion is made in bad faith, with a dilatory motive, and is, in many respects, futile.  See Response at 8-10.  In reply, Guidance argues that the accusation of bad faith and dilatory motive is meritless and its delay in seeking amendment was a result of the Defendants' delays in discovery.  See Reply at 10-11.  It further asserts that it has not requested that the trial setting be vacated, and implicitly argues that it is the Defendants that seek to delay the trial. See id. at 11.  To the Defendants' assertion that Guidance's amendment would be futile with respect to its claims of unjust enrichment, breach of fiduciary duty, and prima-facie tort, Guidance argues that there are sufficient facts to support the amendments and that they are therefore not futile.

### A.  WHILE GUIDANCE'S TIMING IS PROBLEMATIC, THE COURT DOES NOT FIND THAT GUIDANCE ACTED IN BAD FAITH OR WITH A DILATORY MOTIVE.

The Court has discussed the issue of delaying the trial. The Court is not convinced by Guidance's argument that it is the Defendants, not Guidance, that would seek to delay the trial if the Court were to grant this motion. As Guidance is aware, if it succeeds on this motion, the ruling will be to the Defendant's disadvantage, not to Guidance's. It is possible, however, that Guidance filed its motion at this late date understanding that, if the Court granted the motion, the Defendants would seek additional time for discovery, which would likely require the trial setting to be vacated. Guidance could then argue that it was the Defendants, and not Guidance, that sought to delay the trial, even though the catalyst was Guidance's untimely motion to amend. While the Court will not find that Guidance acted in bad faith or with a dilatory motive, it does note that Guidance's timing of this motion suggests that it does not want a trial at this time, given the proximity to trial and the ample time that Guidance has had to seek amendment.

### B.  SOME OF GUIDANCE'S CLAIMS ARE FUTILE.

"An amendment is futile if it . . . fails to state a legal theory, or could not withstand a motion to dismiss." 3 E. Sherman & M. Squiers, Moore's Federal Practice - Civil § 15.15[3], at 15-57 (3d ed. 2009). The Defendants assert that Guidance's motion to amend is futile with respect to its claims for unjust enrichment/restitution, breach of fiduciary duty, and prima-facie tort. See Response at 9-10.

#### 1.  Guidance's Amendment to Add a Claim for Unjust Enrichment or Restitution Is Futile.

As to Guidance's unjust enrichment/restitution count, the Defendants argue that the claim is futile because the Court has stated it is inclined not to allow damages claims that Guidance had

-15-

not asserted by the discovery deadline. See Response at 9. Guidance asserts that the Court should grant the amendment because it did not have certain information allegedly necessary to asserting this claim until after the discovery deadline. See Reply at 11-12. As the Court discussed above, however, it did not need information about how much the Defendants benefitted from Guidance's inability to sell obturators and files to allege that the Defendants were unjustly enriched. Because this claim alleges new damages well beyond the discovery deadline, and Guidance has no justification for waiting until after that deadline to assert it, the Court will find that this claim is futile. Furthermore, Guidance would be seeking a category of damages on which the Court would not allow evidence, because it did not disclose this category or the calculation of these damages in its initial disclosures, in its answers to the Defendants' interrogatories, or in Dr. M. Brian McDonald's expert report.

### 2. Guidance's Amendment to Add a Breach of Fiduciary Duty Claim is Futile.

The Defendants argue that amending to add the breach of fiduciary duty claim is futile because there is no law in Delaware or New Mexico wherein two parties, negotiating at arms length, both represented by counsel and with the ability to walk away from the contract, were found to be in a fiduciary relationship. See Response at 9-10. Guidance responds that there are sufficient facts in the pleading and record to support a claim that a fiduciary relationship exists between the Defendants and Guidance. See Reply at 12. In New Mexico, "[a] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." Allsup's Convenience Stores, Inc. v. North River Ins. Co., 127 N.M. 1, 15, 976 P.2d 1, 15 (1998) (quoting State ex rel. Udall v. Colonial Penn, 112 N.M. 123, 131, 812 P.2d 777, 785

(1991)).[5] Neither side, however, addresses the fact that the Court is to "determine 'whether a particular defendant owes a duty to a particular plaintiff' as a question of law . . . ." Moody v. Stribling, 127 N.M. 630, 636, 985 P.2d 1210, 1216 (1999) (quoting Calkins v. Cox Estates, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990)).

Without being shown any authority for the existence of a fiduciary duty between two commercial entities, represented by counsel, and negotiating at arms length, the Court is unwilling to conclude that, under New Mexico law, a fiduciary duty would exist between Guidance and the Defendants. Guidance did not have a "special" confidence in the Defendants, but had a commercial relationship born out of a heavily negotiated commercial contract. Outside of the Supply Agreement that is the subject of this lawsuit, Guidance and the Defendants are rivals, and their relationship has been characterized by repeated litigation. New Mexico law appears to require far more to constitute a fiduciary relationship. See Chapman v. Varela, 146 N.M. 680, 213 P.3d 1109, 1118 (2009)(finding a fiduciary relationship where one relied on the other for transportation, meals, and housekeeping and had given the other a power of attorney and access to her bank accounts); Peters Corp. v. New Mexico Banquest Investors Corp., 144 N.M. 434, 188 P.3d 1185 (2008)(recognizing fiduciary duty that a director or controlling shareholder owes to the company); Hydro Resources Corp. v. Gray, 143 N.M. 142, 153, 173 P.3d 749, 760 (2007) (recognizing that an agency relationship is a fiduciary relationship, but a mineral lease creates only a contractual relationship

---

[5] The Court believes that the Supreme Court of New Mexico would categorize breach of fiduciary duty as a tort and apply New Mexico's doctrine of *lex loci delicti* to select the substantive law to apply to such a claim. See Restatement (Second) of Torts § 874, cmt. b (1979) ("A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act."); GCM, Inc. v. Kentucky Cent. Life Ins. Co., 124 N.M. 186, 190-91, 947 P.2d 143, 147-48 (1997) (adopting the cause of action described in comment c of § 874 and noting that "the duty involved in a fiduciary relationship cannot be distinguished from other tort duties in this context."). As the harm occurred in New Mexico, the Court applies New Mexico substantive law.

with no fiduciary duties). Guidance treats the Defendants at arm's length rather than putting any special confidence in them. If a duty existed, and the allegations of the Complaint were found true, the alleged facts might constitute a breach of fiduciary duty. Because no fiduciary duty exists in the circumstances of this case, however, the Court finds that an amendment to add this claim would be futile.

### 3. Guidance's Amendment to Add a Prima-Facie Tort Claim Will Likely Be Futile.

Amending to add a prima-facie tort claim is futile, the Defendants argue, because such a claim is not a "catch-all" claim. Response at 10. Guidance responds that it has provided sufficient facts to support this claim and amendment to add it is not futile. See Reply at 11. As the Court recounted above, to state a claim of prima-facie tort in New Mexico, one must allege (i) an intentional and lawful act, (ii) an intent to injure the plaintiff, (iii) injury to the plaintiff as a result of the intentional act, and (iv) the absence of justification for the injurious act. See Kitchell v. Public Service Co., 126 N.M. at 529, 972 P.2d at 348. Guidance's complaint alleges:

> 314. The Defendants' actions in negotiating the Supply Agreement, prototyping the files, discontinuing the supply of obturator [sic], refusing to manufacture the V2 file, and creating false and misleading engineering drawings and other related conduct was intentional.
>
> 315. Defendants acted and failed to act with a plan, purpose, goal and objective of harming Guidance.
>
> 316. Alternatively, Defendants knew with certainty that their conduct would harm Guidance.
>
> 317. Defendants' conduct was not justified under all the circumstances.

These allegations, combined with the facts alleged in paragraphs 1 to 157 of the original Complaint, would adequately state a claim. The Court cannot say that this amendment would be futile at this time. The Court has, however, recently commented on the "last resort" nature of a prima-facie tort

-18-

claim and noted that, when such a claim "depends upon the same supporting facts as another tort, [the Court will] submit only one of the claims to a jury." Mountain Highlands, LLC v. Hendricks, No. CIV 08-0239 JB/ACT, 2009 U.S. Dist. LEXIS 65543, at **44-45 (D.N.M. July 27, 2009). The claim might therefore still fail to reach the jury.

Thus it appears that two of these proposed amendments would be futile, and one will likely become futile at the time the Court submits this case to the jury. Based on Guidance's undue delay in moving to amend and the undue prejudice that the amendment would impose on the Defendants, the Court will deny the motion to amend. Notably, although neither party made arguments directly going to the rule 16 "good cause" standard for amending the scheduling order, Guidance's unexplained delay in seeking to amend its Complaint also fails to show that it could not meet the deadlines "despite [its] diligent efforts." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schools, No. Civ 02-1146 , 2007 U.S. Dist. LEXIS 56492, at *3 (D.N.M. June 5, 2007)(Browning, J.). The Court will therefore also deny the motion on the basis that Guidance has not shown "good cause" to deviate from the scheduling order. Scheduling Order at 1, filed March 4, 2009 (Doc. 62) (setting deadline to amend pleadings at February 23, 2009).

**IT IS ORDERED** that Plaintiff's Motion to Amend Complaint and for Leave to File Exhibits in Excess of 50 pages is granted to the extent that the Court permits Guidance to attach exhibits to its motion in excess of 50 pages. The motion is otherwise denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca L. Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

  *Attorneys for the Defendants and Counter-Plaintiffs*