**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

      Plaintiffs,

vs.  No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

      Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

      Counter Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion in Limine for Exclusion of Course of Dealing Remarks and Evidence, filed July 21, 2009 (Doc. 221). The Court held a hearing on September 2, 2009. The primary issues are: (i) whether the Court should find, as a matter of law, that there was no course of dealing between Plaintiff and Counter-Defendant Guidance Endodontics, LLC on the one hand and Defendants and Counter-Plaintiffs Dentsply International, Inc. and Tulsa Dental Products, LLC (collectively, "the Defendants") on the other; and

(ii) whether the Court should grant the Defendants the relief sought in this motion, excluding all evidence and argument related to course of dealing. Although the Court finds that, as a matter of law, there is no course of dealing between Guidance and the Defendants, the Court will deny the motion in large part because the relief that the Defendants seek is too broad and would exclude substantial relevant evidence.

## **FACTUAL BACKGROUND**

This case concerns a suit that Guidance, a small endodontic-equipment company, has brought against Defendants Dentsply International, Inc. and Tulsa Dental Products, LLC ("TDP") (collectively "the Defendants"), who are both Guidance's rivals and its suppliers. More background on the lawsuit generally is set forth in the Court's earlier opinion. See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 2008 WL 6013069, at **1-5 (D.N.M. Dec. 15, 2008)(Browning, J.). The Defendants are manufacturers and suppliers of a variety of dental/endodontic products that compete with Guidance's products, including endodontic obturators, files, and ovens. See Verified Complaint and Demand for Jury Trial ¶¶ 32, at 7, filed November 21, 2008 (Doc. 1)("Complaint"). Dentsply holds itself out as "the world's largest designer, developer, manufacturer and marketer of a broad range of products for the dental market," and has over $2.3 billion in sales annually. Complaint ¶¶ 30, 34, at 7.

On or about July 29, 2008, Guidance and Dentsply entered into a Manufacturing and Supply Agreement (the "Supply Agreement"), pursuant to which the Defendants agreed to manufacture all of Guidance's proprietary endodontic products, and Guidance agreed to purchase all of its requirements for such products from TDP on an exclusive basis. See Declaration of Kyle C. Bisceglie in Opposition to Defendants' Motion for Summary Judgment, ¶ 7, at 2 & Exhibit 5, (executed July 29, 2009), filed July 31, 2009 (Doc. 228)("Bisceglie Dec."). Because the Supply

Agreement prohibited Guidance from obtaining a particular file -- the V-Taper file -- from its prior supplier, Guidance was in the process of developing a new file -- the V2 file -- which was designed to replace the V-Taper file. See Complaint ¶¶ 124-25, at 25. Guidance intended to begin offering the V2 file for sale on November 1, 2008. See Complaint ¶ 127, at 25.

According to the Defendants, the parties "were involved in only one transaction, the preparation for manufacture and supply of Guidance's EndoTaper [endodontic file] as part of the settlement of patent litigation between the parties, which culminated in the Supply Agreement." Motion at 3. Guidance does not dispute this fact, and the Court is unaware of any previous contracts entered into by the parties other than the settlement agreement that put to rest the patent litigation to which the Defendants refer.

## PROCEDURAL BACKGROUND

In this motion, the Defendants ask the Court to exclude (i) "remarks to the jury in [Guidance's] opening statement or elsewhere that a 'course of dealing' is relevant to interpretation of the Supply Agreement;" and (ii) "testimony or documentary evidence that implies [that] a 'course of dealing' between the parties is relevant to the parties' obligations under the Supply Agreement." Motion at 5. Guidance asserts in response that course of dealings and course of performance are relevant and admissible. See Plaintiff's Response to Defendants' Motion in Limine for Exclusion of Course of Dealing Remarks and Evidence [Doc 221] at 2-8, filed August 17, 2009 (Doc. 248) ("Response"). It further argues that the Defendants' motion is so vague that, even if the Court were to grant it, Guidance would not know exactly what was excluded. See Response at 9-10. The Court agrees with both parties to a degree, and will ultimately deny the motion in part and grant it in part.

## DELAWARE LAW[1] ON USE OF EXTRINSIC EVIDENCE IN CONTRACT INTERPRETATION

In construing a contract, a court is to determine the meaning of the contract solely from its face. See Delaware Bay Surgical Servs., P.C. v. Swier, 900 A.2d 646, 650 (Del. 2006) ("[W]e review de novo a question of contract interpretation as a question of law."); OSI Systems, Inc. v. Instrumentarium Corp., 892 A.2d 1086, 1090 (Del. Ch. 2006)("[T]he proper interpretation of language in a contract, while analytically a question of fact, is treated as a question of law both in the trial court and on appeal.")(internal quotes omitted)(citing Pellaton v. Bank of N.Y., 592 A.2d 473, 478 (Del. 1991)); Del. P.J.I. Civ. § 19.15 Comment (2000). Delaware courts use an objective standard: "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992).

When the parties' intent, as expressed in the contract language, is clear and unambiguous, a court is not to consider any extrinsic evidence in determining the parties' intent; when there is no ambiguity, such extrinsic evidence could only be used either to create ambiguity or reinforce an already clearly correct interpretation. See Halliburton Co. v. Highlands Ins. Grp., Inc., 811 A.2d 277, 280 n.9 (quoting Eagle Industries, Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997)). On the other hand, where the contract language is ambiguous -- subject to two or more reasonable interpretations, see id. at 1232 -- the Court may consider things outside the text of the contract to determine its meaning, see Pellaton v. Bank of N.Y., 592 A.2d at 478 ("When there is uncertainty in the meaning and application of the terms of the contract, . . . the trial court, will

---

[1] As the Court will explain more fully in its analysis, it concludes that Delaware law will apply to issues involving the Supply Agreement.

consider testimony pertaining to antecedent agreements, communications and other factors which bear on the proper interpretation of the contract."). One must be wary, though, because "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992). In the face of an ambiguity, however, the Court is permitted to consider any extrinsic evidence that might shed light on the meaning of the ambiguous provisions. See Pellaton v. Bank of N.Y., 592 A.2d at 478; Eagle Industries, Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1232 (stating that, when there is an ambiguity, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.").

At common law, this general principle overlapped with the parol-evidence rule. The parol-evidence rule is a "common-law principle that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing." Black's Law Dictionary 1227 (9th ed. 2009). See Hynansky v. Vietri, No. 14645-NC, 2003 WL 21976031, at *2 (Del. Ch. Aug. 7, 2003). In other words, if parties have a comprehensive written agreement, neither party can attempt to "add to, vary, or contradict" the terms expressed in the writing by using evidence of agreements made before, or at the same time as, the comprehensive written agreement. See 11 R. Lord, Williston on Contracts § 33:1 (4th ed.). Conversely, if the contract does not appear to be "fully integrated" -- i.e. to be a complete embodiment of the parties' agreement -- one can use extrinsic evidence of prior or contemporaneous agreements to explain the terms of an unambiguous contract

**LAW ON EVIDENCE OF COURSE OF PERFORMANCE, COURSE OF DEALING, TRADE USAGE UNDER THE UCC**

Because the Supply Agreement is a contract primarily for the sale of goods by the

Defendants to Guidance, it is governed by the Uniform Commercial Code ("UCC"). Del. Code Ann. tit. 6, §§ 1-101 to 2-725. The UCC codified the parol evidence rule and added some apparent exceptions. See 3 R. Duesenberg, H. Gabriel, W. Henning, Sales & Bulk Transfers Under the UCC § 4.08 (Matthew Bender 2009)("[T]he parol evidence rule as it has traditionally been expressed and applied is . . . substantially narrowed."); 1 J. White & R. Summers, Uniform Commercial Code § 2-12 (5th ed. 2006); 11 R. Lord, supra § 33:5 ("The Uniform Commercial Code also codifies the parol evidence rule with respect to sales [in Section 2-202]."). The Delaware UCC expressly provides:

> Terms . . . which are . . . set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) By course of performance, course of dealing, or usage of trade (§ 1-303); and
>
> (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Del. Code Ann. tit. 6, § 2-202 (2004). Subsection (b) seems to embody the traditional parol-evidence rule, that evidence of "consistent additional terms" is admissible unless the contract appears to be a fully integrated agreement. The difference appears to be in subsection (a), which permits the agreement to be "explained or supplemented" by evidence of course of performance, course of dealing, and trade usage. 11 R. Lord, supra § 33:5 ("Cases interpreting the [UCC]'s parol evidence provisions indicate that, *except to the extent the admissibility of evidence of a course of dealing, usage of trade and course of performance are concerned*, they liberalize the traditional parol evidence rule only slightly.")(emphasis added). Notably, subsection (a) seems to apply regardless whether the contract is fully integrated, whereas subsection (b) is limited to the situation

where the court finds that the contract is not "intended . . . as a complete and exclusive statement of the terms of the agreement." Del. Code Ann. tit. 6, § 2-202 (2004). "Such [contracts] are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased." Del. Code Ann. tit. 6, § 2-202 Official Comments (2001). The parties only discuss the first two categories of extrinsic evidence -- course of dealing and course of performance. The Court will do the same.

### 1. **Course of Performance.**

Course of performance refers to the parties' conduct in carrying out an agreement -- conduct occurring under the agreement has been made. See 3 R. Duesenberg, H. Gabriel, W. Henning, supra § 4.08[b][i]("'Course of performance' is defined essentially as the conduct of the parties during their performance of their agreement. Its reference is post-agreement."). The Delaware UCC defines "course of performance" as:

> a sequence of conduct between the parties to a particular transaction that exists if: (1) The agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) The other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

Del. Code Ann. tit. 6, § 1-303(a) (2005). Under the UCC, this evidence is admissible to construe ambiguous terms in the contract, or to add to terms that are already in the contract, even when such terms would be inconsistent with the written language of the contract. See 3 R. Duesenberg, H. Gabriel, W. Henning, supra § 4.08[b][i].

### 2. **Course of Dealing.**

The UCC defines "course of dealing" as "a sequence of conduct concerning previous transactions between the parties . . . that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Del. Code Ann. tit. 6, § 1-

303(b) (2005). "Obviously, a single act would probably not constitute a course of prior dealing; as with course of prior performance, a series of repeated occurrences would seem almost essential for without this there would be no 'sequence' of previous conduct." 3 R. Duesenberg, H. Gabriel, W. Henning, supra § 4.08. Accordingly, a number of jurisdictions have determined that a single transaction does not constitute a course of dealing between the parties. See Kern Oil & Refining Co. v. Tenneco Oil Co., 792 F.2d 1380, 1385 (9th Cir. 1986)("Tenneco argues that the district court improperly excluded evidence relating to the prior course of dealings between Tenneco and Kern Oil. In fact, the evidence that was excluded related to the negotiation of a single prior contract. '[A] single transaction cannot constitute a course of dealing.'"); Breckenridge Creste Apts, Ltd. v. Citicorp Mortg., Inc., 826 F. Supp. 460, 465 (N.D. Ga. 1993)("[T]aking the mere allegation of a similar dealing as true, the Court concludes that there is no course of dealing in this case, as a single transaction does not constitute a course of dealing."). The Court likewise finds that, under Delaware UCC law, "previous transactions," plural, are required to establish a course of dealing.

## ANALYSIS

The Defendants assert that Guidance has implied that a "course of dealing" between the Defendants and Guidance could be relevant in interpreting the Supply Agreement. Motion at 1. They contend that no course of dealing exists between the parties as a matter of law and that, if Guidance is permitted to imply otherwise to the jury, the jury might be "irretrivably tainted." Motion at 1-2, 4. Guidance argues that the Defendants' motion is impermissibly vague and that evidence of course of dealing and course of performance is "important, relevant, appropriate, and useful to the jury in understanding the facts and Plaintiff's theories of recovery." Plaintiff's Response to Defendants' Motion in Limine for Exclusion of Course of Dealing Remarks and Evidence [Doc 221] at 1, filed August 17, 2009 (Doc. 248)("Response"). The Defendants are not

clear upon what ground they seek exclusion of the challenged content, but their argument appears to be aimed at avoiding prejudicing the jury, see Motion at 4, so the Court will treat this objection as based on relevance and unfair prejudice, see Fed. R. Evid. 402, 403.

As an initial matter, the Court notes that the Supply Agreement appears to be a fully integrated agreement. Section 12.8 of the Supply Agreement provides:

> 12.8   No Reliance on Additional Representations, Undertakings & Warranties. Each of the parties acknowledges and agrees that in entering into this Agreement it does not rely upon and shall have no remedy in respect of any statement, representation, warranty or undertaking (whether negligently or innocently made) of any person (whether a party to this Agreement or not) other than as expressly set out in this Agreement.

TRO App. Exhibit A § 12.8, at 15. This provision appears to state that this contract is the complete agreement between the parties and that neither party relied on any other collateral agreement in entering into the contract. The Court will therefore not analyze whether the evidence would be permitted under Section 2-202(b) of the UCC, because that provision requires that the Court find that the contract is not fully integrated. See Del. Code Ann. tit. 6, § 2-202(b) (2004) (stating that contracts "may be explained or supplemented" by extrinsic evidence "unless the court finds the writing to have been intended [] as a complete and exclusive statement of the terms of the agreement.").

## I.   THE COURT WILL APPLY DELAWARE LAW TO INTERPRETATION OF THE SUPPLY AGREEMENT.

The Supply Agreement included a choice-of-law provision. See Application for Temporary Restraining Order Exhibit A § 12.11, at 16, filed November 21, 2008 (Doc. 2-2)("TRO App."). That provision states: "This agreement shall be deemed to have been made and entered into pursuant to the laws of the State of Delaware. In the event of any dispute thereunder, this Agreement shall be governed by and construed according to the laws of the State of Delaware." Id. In filing the

underlying suit, Guidance invoked the Court's diversity jurisdiction, so the Court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005) ("In a diversity action, we apply the substantive law of the forum state, including its choice of law rules."). The Court therefore applies New Mexico choice-of-law principles in determining what substantive law to apply to interpretation of the Supply Agreement.

Ordinarily, New Mexico will apply the choice-of-law rule of *lex loci contractus* -- the law of the place of contracting -- to issues involving contracts. See Ferrel v. Allstate Insurance Co., 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008). Like most states, however, "New Mexico respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." Fiser v. Dell Computer Corporation, 144 N.M. 464, 467, 188 P.3d 1215, 1218 (2008) (citing NMSA 1978, § 55-1-301(A)). See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108 N.M. 467, 470, 775 P.2d 233, 236 (1989). "[W]hen application of the law chosen by the parties offends New Mexico public policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and apply New Mexico law instead." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218. "New Mexico courts will not give effect to another state's laws where those laws would violate some fundamental principle of justice." Id. (internal quotations omitted).

The choice-of-law provision requires that "any dispute" arising under the Supply Agreement "shall be governed by and construed according to the laws of the State of Delaware." TRO App. Exhibit A § 12.11, at 16. Neither party has argued that application of Delaware contract law would violate any New Mexico public policy, nor have they cited any authority to that effect. In the absence of argument by counsel to the contrary, the Court is not willing to find that Delaware law,

in general,"violate[s] some fundamental principle of justice." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218. The Court will therefore apply Delaware UCC law to interpret the Supply Agreement.

## II.   GUIDANCE AND THE DEFENDANTS HAVE NO COURSE OF DEALINGS, AND ONLY EVIDENCE OF CONDUCT OCCURRING AFTER THE PARTIES ENTERED INTO THE CONTRACT IS COURSE OF PERFORMANCE EVIDENCE.

A course of dealing is "a sequence of conduct concerning previous transactions between the parties . . . that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Del. Code Ann. tit. 6, § 1-303(b) (2005). The Defendants assert that, "[p]rior to entry into the Supply Agreement, Guidance and [the Defendants] were involved in only one transaction, the preparation for manufacture and supply of Guidance's EndoTaper as part of the settlement of patent litigation between the parties." Motion at 3. In response, Guidance argues that "[t]he development of the .06 [EndoTaper] file involved a whole series of transactions between the parties. There was a great deal of back-and-forth between the parties as Defendants developed multiple prototypes of the .06 file, ultimately leading to a production-ready design." Response at 4. More specifically, it asserts that one "key issue" in the case is "whether [Guidance] was required to provide engineering drawings of the V2 (.04) file before Defendants were required to manufacture that file under the Manufacturing and Supply Agreement." Response at 1. Guidance contends that the Supply Agreement requires engineering drawings for "future modifications or minor changes to [the EndoTaper and V2 files]" and "new products," but does not require them for the initial production of the EndoTaper and V2 files. Response at 1-2. Guidance apparently wants to show that the Defendants never requested detailed engineering drawings for the initial production of the EndoTaper file but have stated that such engineering drawings were a prerequisite to the Defendants' obligation to supply the V2 file. See

Response at 2. In other words, Guidance wants to use the fact that the Defendants' designed and produced the EndoTaper file without detailed engineering drawings as a "course of dealing" or "course of performance" from which the jury should imply that the Supply Agreement also did not require such drawings for the V2 file. These facts, if established, arguably show that the Defendants breached the Supply Agreement by failing to supply the V2 because there was no precondition that Guidance supply engineering drawings. The Defendants feel they would be substantially prejudiced if Guidance argues this to the jury. See Motion at 4-5.

### A. GUIDANCE HAS ONLY ENGAGED IN ONE "TRANSACTION" WITH THE DEFENDANTS, THUS THERE IS NO COURSE OF DEALING.

The parties appear to disagree about the scope of the term "transaction" as used in the Delaware statute. Does "transaction" refer to a simple interaction -- conversation, question and answer, correspondence -- as Guidance implies or does it refer to a contractual relationship as the Defendants propose? Neither party was able to point the Court to Delaware law on this issue, nor has the Court found any.

The Court first notes that the original Article 1 of the Uniform Commercial Code defined "course of dealing" as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Unif. Comm. Code, Art. 1, § 205 (2004). In Revised Article 1, this definition changed from "a sequence of previous conduct between the parties" to "a sequence of conduct concerning previous transactions between the parties." Unif. Comm. Code, Revised Art. 1, § 303 (2004). This change implies that the National Conference of Commissioners on Uniform State Laws believed there must exist something more than prior "conduct;" rather, there must be prior "transactions." Delaware had initially adopted Article 1,

defining course of dealing in terms of conduct, and then moved to Revised Article 1 in 2004. See Del. Code Ann. tit. 6, § 1-303(b) (2005); An Act to Amend Title 6 of the Delaware Code Relating to the Uniform Commercial Code, 2004 Del. Laws ch. 332, sec. 1, § 1-303(b) (2004) (striking the previous Article 1 in its entirety and replacing it with Revised Article 1).  Delaware appears to have agreed, then, that the new definition of "course of dealing" was more appropriate.  Other provisions of Delaware's UCC indicate what the drafters meant by "transaction."  For instance, Section 2-102 specifies that Article 2 "applies to transactions in goods."  Del. Code Ann. tit. 6, § 2-102 (2005). And the comments to Section 2-106 states that, although the term "contract for sale" is used in Article 1, "the rights of the parties do not vary according to whether the transaction is a present sale or a contract to sell unless the Article expressly so provides."  Del. Code Ann. tit. 6, § 2-102, cmt. to changes to subsection (1) (2005).  These provisions indicate that, by "transaction," Section 1-303(b) refers to commercial transactions such as purchases, sales, or contracts for the same.  The Court therefore finds that Guidance's "great deal of back-and-forth" while developing the EndoTaper does not constitute prior transactions that could establish a course of dealing.

Furthermore, the Court is not convinced that it is such bad policy to decline to interpret a contract in light of prior non-contractual conduct or conduct under one contract, as opposed to performance under multiple prior contracts, that the Court should decline to adopt the Defendants' construction of the Delaware UCC.  A party may well act differently before entering a contract -- when the relationship between it and the other party may be poorly defined -- than afterward.  Once the parties enter the contract, they know what is expected of them in their relationship.  Before the contract is entered, that clarify may be absent.  Sometimes a seller does things to lure a buyer that a seller would not agree to do in a long-term supply agreement.  Moreover, contracts generally require parties to engage in conduct that they would not engage in absent the contract; otherwise the

-13-

contract would be unnecessary. In other words, it is not patently nonsensical for Delaware to conclude that a course of non-contractual conduct in one transaction would not be a reliable indicator of what parties intended their contract to require. On the other hand, when two parties enter into multiple similar contracts, it is reasonable to assume that the parties entered into the later contracts because they were satisfied with the results of the earlier ones. In that case, the parties probably desire the subsequent contracts to turn out like the prior ones, and so the conduct that occurred under the prior contracts is likely to be what they expected from those that follow. It makes logical sense, therefore, to interpret the subsequent contracts in light of the prior contractual performance. The Court does not believe that the non-contractual "back-and-forth" within a single transaction between Guidance and the Defendants constitutes a course of dealing under Delaware's UCC.

### B. THE DEFENDANTS' RELATIONSHIPS WITH THIRD PARTIES CANNOT BE THE BASIS FOR A COURSE OF DEALING.

The Defendants argue that their relationships with third parties -- entities other than Guidance and Goodis -- cannot be used to establish a course of dealing that might be used to interpret the Supply Agreement. Guidance does not appear to disagree with this assertion, and the Court also agrees. As discussed above, the course of dealing is "a sequence of conduct concerning previous transactions between the parties . . . ." Del. Code Ann. tit. 6, § 1-303(b) (2005). This statutory language indicates that only previous transactions "between the parties" -- the parties to the contract -- can constitute the basis for a "course of dealing." See 3 R. Duesenberg, H. Gabriel, W. Henning, supra § 4.08[b][ii] ("[T]he conduct must have been between the parties [which] would seem to assure that a standard practice of one party could not be forced on the other, since a course of dealing with a third party is not within the definition of the section.").

### C.  ONLY THE POST-CONTRACTUAL CONDUCT BETWEEN GUIDANCE AND THE DEFENDANTS CONSTITUTES A COURSE OF PERFORMANCE.

Another category of extrinsic evidence that a party can use to "explain[] or supplement[]" a contract, even if that contract is fully integrated, is evidence of "course of performance." Del. Code Ann. tit. 6, § 2-202(b) (2005). Course of performance refers to "a sequence of conduct between the parties to a particular transaction." Here again, the drafters used the word "transaction." A course of performance can exist between parties to a transaction only under specified circumstances. At this point, Guidance and the Defendants have entered into a transaction or series of transactions that the Supply Agreement now governs. A course of performance has therefore begun. See Del. Code. Ann. § 1-303(a) (stating that a course of performance exists "between the parties to a particular transaction" when "[t]he agreement of the parties . . . involves repeated occasions for performance by a party . . ."). As discussed above, however, a course of performance can occur only moving forward from the formation of a contract. See 3 R. Duesenberg, H. Gabriel, W. Henning, supra § 4.08[b][i]. Any conduct that occurred before the parties entered into the Supply Agreement is not course of performance evidence, and thus the jury should not consider pre-contract performance evidence in interpreting the Supply Agreement. The jury should consider only conduct in which the parties engaged after they entered into the Supply Agreement in determining the meaning of that agreement pursuant to Section 2-202.

### III.  THE COURT WILL NOT EXCLUDE ALL EVIDENCE THAT MIGHT IMPLY A COURSE OF DEALING, SO THE DEFENDANTS MUST OBJECT TO EACH SUBMISSION.

The Court has concluded that there exists no course of dealing between the Defendants and Guidance. It follows that any evidence offered only to prove a course of dealing is not relevant to this case. The motion is therefore well taken in an abstract, academic sense. The Court, however,

will not exclude all "remarks to the jury," and "testimony or documentary evidence that implies a 'course of dealing' between the parties is relevant to the parties' obligation under the Supply Agreement." Motion at 5. Such an order might exclude admissible evidence that is relevant to other facts that Guidance must establish. The Court will partially deny the motion.

### A. EVIDENCE THAT COULD PROVE COURSE OF DEALING MIGHT BE RELEVANT TO OTHER FACTS THAT GUIDANCE MUST PROVE.

Guidance argues that evidence that might go to show a course of dealing is independently relevant to other issues in the case. See Response at 3. Specifically, Guidance asserts that such evidence might go to prove such things as the "Defendants' motive, intent, conscious wrongdoing, credibility[,] bad faith[,] damages," and "contractual breach." Response at 3. The Defendants appear to respond only with their argument that such evidence would unduly prejudice the jury. See Motion at 4-5.

The Court would probably agree with Guidance if it understood what the Defendants meant by "testimony or documentary evidence that implies a 'course of dealing' between the parties is relevant to the parties' obligations under the Supply Agreement." Motion at 5. At its most conservative, it would include only evidence that actually implies that the jury should be construing the contract with that evidence of course of dealing in mind. At its most liberal, it might include any evidence that even hints that the parties dealt with one another in the past. Evidence or testimony about a meeting between representatives of Guidance and of the Defendants might imply that there is a course of dealing between the parties, yet that would also be relevant to establishing any of the facts underlying almost any of Guidance's substantive claims (breach of contract, breach of implied covenant of good faith and fair dealing, New Mexico Unfair Practices Act and the Lanham Act). The Defendants have correctly pointed out that there is no course of dealing between the parties in

-16-

this case. The Court, however, is not comfortable categorically excluding a substantial body of evidence that might be relevant and admissible on some other basis.[2] Nor is the Court convinced that such evidence is so inherently prejudicial to the Defendants that it warrants exclusion under rule 403. See Fed. R. Evid. 403.

> **B.    GUIDANCE WILL NOT REFER TO THE RELATIONSHIP BETWEEN GUIDANCE AND THE DEFENDANTS AS A "COURSE OF DEALING" AND WILL NOT REFER TO CONDUCT AS A "COURSE OF PERFORMANCE" UNLESS IT OCCURRED AFTER CONTRACT FORMATION.**

The Defendants' motion requests relief that is too broad to be granted in whole, but the Court will grant it in part. As the Court has noted, there exists no course of dealing between the parties in this case. It therefore is reasonable to restrict Guidance from stating that a "course of dealing" exists or from indicating that such "course of dealing" should be considered when the jury attempts to discern the meaning of the contract. Also, if the Court finds the contract is ambiguous -- which it does not find at this time -- then the body interpreting the meaning of the contract would be permitted to use any extrinsic evidence available to discern the parties' intent and resolve the ambiguity.[3] That includes the conduct of the parties before and after entering the agreement. On the other hand, even contract ambiguity does not "create" a course of dealing between the parties. The Court will, therefore, bar Guidance from referring to this relationship as a "course of dealing," but not categorically exclude all evidence that might imply that such a course of dealing exists. The Defendants may object to evidence that it believes too strongly implies the existence of a course of

---

[2] It is possible, of course, that the Court "totally over-thinks this motion." Transcript of Hearing at 59:23-24 (taken September 2, 2009)(Gulley). The Court therefore next addresses what it views as the more practical side of the Defendants' motion, which is seeking to restrict Guidance "from making remarks to the jury in their opening statement or elsewhere that a 'course of dealing' is relevant to interpretation of the Supply Agreement." Motion at 5.

[3] At this point, neither party appears to argue that this contract is ambiguous.

dealing on a case-by-case basis.

**IT IS ORDERED** that Dentsply/TDP's Motion in Limine for Exclusion of Course of Dealing Remarks and Evidence is granted to the extent that the Court will restrict Plaintiff and Counter Defendant Guidance Endodontics, LLC from referring to the relationship between Guidance and Defendants and Counter Plaintiffs Dentsply International, Inc. and Tulsa Dental Products, LLC as a "course of dealing" or arguing that the jury should consider such "course of dealing" in interpreting the meaning of the Supply Agreement. The motion is otherwise denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kyle C. Bisceglie
Renee M. Zaytsev
Olshan Grundman Frome Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris
  & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca LLP
Albuquerque, New Mexico

    *Attorneys for the Defendants and Counterplaintiffs*