IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

       Plaintiff,

vs.                                                                                                                             No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

       Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

       Counter Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion to Compel Production of Certain Documents on G/G's Amended Privilege Log, filed August 5, 2009 (Doc. 231). The Court held a hearing on September 2, 2009. The primary issue is whether the Court should compel Plaintiff and Counter Defendant Guidance Endodontics, LLC to produce certain documents that it has withheld from discovery on the basis of privilege. Because the Court concludes that the

privilege should apply to two of the documents withheld, but not to the others, the Court will grant in part and deny in part Defendants and Counter Plaintiffs Dentsply International, Inc. and Tulsa Dental Products, LLC's motion to compel.

This case centers around a Manufacturing and Supply Agreement into which both Guidance and the Defendants have entered. Each party alleges that the other breached the agreement. During the course of discovery, Guidance supplied Dentsply and Tulsa Dental with a privilege log that described documents that Guidance had withheld on the basis of various privileges. Based on the descriptions in that log -- specifically, who received the documents -- Dentsply and Tulsa Dental challenge Guidance's assertion of privilege as to those documents.

On August 5, 2009, Dentsply and Tulsa Dental filed this motion asking the Court to compel Guidance to produce documents numbered 2, 3, 5, 48, 55, 64, 65, 68, 69, 72, 73, 74, 75, 76, and 77. See Motion at 6. The motion is primarily directed, however, at documents numbered 48, 55, and 68/69. See Motion at 2-4.[1] As to each, Dentsply and Tulsa Dental argue that one of the recipients is an individual that is neither an attorney nor an employee of Guidance, and, as a result, the attorney-client privilege has been waived as to those communications. See id. Dentsply and Tulsa Dental also seek attorneys fees and costs associated with filing this motion. See id. at 4-6. In each case, Guidance denies that the privilege has been waived. See Response to Dentsply/TDP's Motion to Compel Production of Certain Documents on Plaintiffs' Amended Privilege Log at 2, 5, 6, filed August 17, 2009 (Doc. 255)("Response").

---

[1] Moreover, Guidance informs the Court that it produced documents 2, 3, 5, 64, 65, 72, 73, 74, 75, 76, and 77 on August 10, 2009, leaving only documents 48, 55, 68 and 69 in issue. See Response to Dentsply/TDP's Motion to Compel Production of Certain Documents on Plaintiffs' Amended Privilege Log at 1 & n.3, filed August 17, 2009 (Doc. 255).

**1.     Document 48.**

Document 48 is an electronic-mail transmission chain occurring in October of 2009, originating with Andrew Schmidt, an attorney at Kenyon & Kenyon, LLP., that appears to be regarding Guidance trademarks. See Motion at 2. Dentsply and Tulsa Dental point out that one of the recipients of the transmission was Neal Williams. See Motion at 2. They argue that, although Williams was an employee of Guidance at one point, he was no longer employed there as of August 18, 2009, and the electronic-mail transmission was sent after that date. See id. Because Williams was not an employee at that time, they assert, the Defendants waived the privilege when Schmidt shared the communication with him. In response, Guidance argues first that Williams never received the message because, as soon as Williams was no longer officially employed with Guidance, all of his electronic mail was automatically forwarded to Sharon Bettes-Groves -- still a Guidance employee -- and Williams could no longer access it. See Response at 2. In other words, the communication was not sent to Williams; it was sent to Bettes-Groves, and thus there was no waiver. Guidance also argues that the context of the message makes clear that, when Schmidt sent that message to Williams' electronic-mail address, Williams was acting in a professional capacity for Guidance and thus the privilege should maintain.

The Court has now reviewed the content of document 48 and will deny the motion to compel largely for the reasons stated on the record and further reasons consistent with those already stated. The Court is not certain of Schmidt's position within Kenyon & Kenyon, but is hesitant to consider Guidance's privilege waived. Schmidt may have had no idea that Williams was no longer at Guidance, Williams never received the communication, and the person who took Williams' position as operations manager within Guidance did receive it. It appears that Schmidt intended his electronic-mail message to go to Guidance's operations manager, and so it did. The Court will not

find that Guidance has waived its privilege and will deny the motion to compel document 48.

**2.      Document 55.**

Document 55 in Guidance's privilege log is described as an "[e]mail chain with counsel re: documentation of disparaging statements for litigation." Motion Exhibit A, at 9. One of the recipients of that document is Samuel Kratchman, a purported "consultant" of Guidance. See id. Dentsply and Tulsa Dental assert that Guidance has provided no evidence that Kratchman is a consultant other than being listed as such in the privilege log. See Motion at 2-3. They further argue that, even if Kratchman is a consultant, Guidance has provided no evidence of how or why he would be a consultant for the issue of documenting disparaging statements for litigation. See Motion at 3. Guidance responds that Kratchman consults with Guidance on a number of issues and receives monthly compensation from Guidance, making him, in effect, a *de facto* employee. See Response at 3. It also argues that Kratchman is an important witness in Guidance's case, who will testify about "disparaging statements" that Brian Rooney, a representative of Dentsply and Tulsa Dental, made to him about Guidance. See Response at 3. Guidance argues that it is about these statements that Guidance was communicating with Kratchman, making them both attorney-client and work-product privileged. See id.

The Court has reviewed the document in its entirety and, for the reasons stated on the record and further reasons consistent with those already stated, will allow the assertion of privilege to stand. As stated during the hearing, Kratchman seems to be a very heavily integrated consultant receiving a regular wage from Guidance, making him very much like an employee. Furthermore, the communication at issue appears to relate directly to the efforts of Guidance's attorneys to collect testimony from Kratchman for use in this case. The Court will therefore uphold Guidance's assertion of both attorney-client and work-product privileges.

    3.      **Documents 68 and 69.**

Documents 68 and 69 are described in Guidance's privilege log as "[electronic-]mail to counsel re: settlement with Dentsply" and "[electronic-]mail re: documentation to send to counsel for litigation." Motion Exhibit A, at 11. As to these documents, Dentsply and Tulsa Dental point out that Jim Van Der Geest, identified by Guidance as its accountant, is identified as a recipient. See Motion at 3. They assert that there is no "accountant-client" privilege and that therefore the document was improperly withheld. Id. Further, they argue that, because Van Der Geest was present, not to aid in the provision of legal services, but to provide accounting services, his presence destroys the attorney-client privilege for all involved. See id. at 3-4. The Defendants therefore request that the document be produced in non-redacted form or be produced with the communications directed specifically at Van Der Geest not redacted. See id. at 4. Guidance argues, essentially, that Van Der Geest should be treated like an employee of Guidance because of his close work with Guidance, the infeasibility of Guidance hiring a full-time accountant, and Van Der Geest's peculiar knowledge of Guidance's financial position. See Response at 6.

Van Der Geest is one of two partners at an Albuquerque, New Mexico-based accounting firm called Mackie, Reid & Company, P.A., Certified Public Accountants. See Mackie, Reid & Company, PA Certified Public Accountants, http://www.MackieReid.com/ (last visited October 22, 2009). Thomas Gulley, for the Defendants, represented to the Court that, to the best of his knowledge, Mackie Reid has a number of clients and Guidance takes up only a small part of its workload. See Recording of Hearing at 9:46:00 AM (taken September 2, 2009)(Gulley).

Although the Court indicated in the hearing that it was inclined to deny the motion with regard to documents 68 and 69, upon further examination of the documents, the Court believes Guidance should produce them to Dentsply and Tulsa Dental in non-redacted form. The redacted

portion makes clear that, in sending this electronic-mail transmission, Goodis chose to ask his attorney and his accountant, simultaneously, for advice regarding the proposed settlement with Dentsply and Tulsa Dental. While, ordinarily, asking one's attorney for advice regarding a settlement would be privileged, the attorney-client privilege only maintains if the communication is confidential. See United States v. Lopez, 777 F.2d 543, 552 (10th Cir. 1985) ("An important element of the attorney-client privilege . . . is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence") (citing Wilcoxon v. United States, 231 F.2d 384, 386 (10th Cir. 1956)).[2] One way to destroy confidentiality of a communication -- and thereby waive the privilege -- is to send the message to one who is not necessary to the attorney's rendition of legal services.

### a. Guidance did not seek Van Der Geest's advice to aid in the provision of legal services.

Here, Guidance appears to have sought legal advice from its attorney, Jeff Ginsberg, but decided to share the communication with Van Der Geest, a non-attorney, non-employee, to request the advice of Ginsberg and Van Der Geest in a single breath. Guidance did not ask Van Der Geest

---

[2] "As to state causes of action, a federal court should look to state law in deciding privilege questions." Motley v. Marathon Oil Co., 71 F.3d 1547, 1551 (10th Cir. 1995). The Court believes, however, that these basic rules of attorney-client privilege are the same under federal law, the law of Delaware (which governs the contract-related claims in this case), and the law of New Mexico (which governs some of the parties' tort claims). See Texaco, Inc. v. Phoenix Steel Corp., 264 A.2d 523, 524 (Del. Ch. 1970); Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co., 623 A.2d 1118, 1122 (Del. Super. 1992) ("When the client makes a communication with the intention or expectation that it will be revealed to another person, who is not necessary for the rendition of the legal services or communication, this element of confidentiality is lacking."); State v. Deutsch, 103 N.M. 752, 758, 713 P.2d 1008, 1014 (Ct. App. 1985)(holding that a trial court's ruling "that there was no confidential communication because the communication was intended to be disclosed to third persons . . . was correct.").

to assist the attorney in formulating opinions or strategies; rather, Guidance asked Van Der Geest for his opinion -- presumably his opinion as an accountant -- on the situation as a whole. See Response at 6 ("[T]here was a clear expectation of privilege when seeking advice from Mr. Van Der Geest . . . ."). As Dentsply and Tulsa Dental point out, there is no independent accountant-client privilege that would encompass an electronic-mail transmission asking for accounting advice regarding proposed settlement negotiations. See In re Grand Jury Proceedings, 658 F.2d 782, 784 (10th Cir. 1981)("It is well settled that there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege.").[3]

Many courts have addressed the question of communications involving third parties and under what conditions those communications remain privileged. The consensus appears to be that, when a third party, such as an accountant, is included for the purposes of facilitating the rendition of legal services -- for instance, translating the client's financial data into something that the attorney can comprehend, manage, and use -- his or her presence does not disturb the privilege; on the other hand, where the communication to the accountant is not related to seeking legal advice, the privilege is broken and the communication must be disclosed unless it is protected by some other doctrine. See United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (analogizing the accountant's proper role in attorney-client communications to that of a foreign-language interpreter, translating the

---

[3] The Court has found no authority in New Mexico for an accountant-client privilege, and privileges in New Mexico are limited to those required by the New Mexico Constitution and those found in the New Mexico Rules of Evidence. See Pub. Serv. Co. of N.M. v. Lyons, 129 N.M. 487, 481, 10 P.3d 166, 170 (Ct. App. 2000) ("This approach is reflected in Rule 11-501 NMRA 2000, limiting privileges to those required by the state constitution and the rules promulgated by the [New Mexico] Supreme Court."). Delaware courts expressly disclaim that such a privilege exists. See In re Best Lock Corp. Shareholder Litig., No. Civ. A. 16281, 2000 WL 1876460, at *6 (Del. Ch. Dec. 18, 2000) ("Article V of the Delaware Rules of Evidence does not recognize an accountant-client privilege; nor do the federal courts.").

accounting concepts into something the attorney can understand); Callaway Golf Co. v. Screen Actor's Guild, Civil No. 07-0373-LAB(LSP), 2009 WL 81387, at **1-2 (S.D. Cal. Jan. 12, 2009)(slip op.)("What is vital to the privilege is that the communication be made in confidence for the purpose of seeking legal advice from the lawyer. If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."); Black & Decker Corp. v. United States, 219 F.R.D. 87, 90 (D. Md. 2003) ("Beginning with United States v. Kovel, 296 F.2d 918 (2d Cir.1961), several courts have recognized that the attorney-client privilege may protect exchanges between the client and an accountant when the accountant enables communication with the attorney by 'translating' complex accounting concepts."); United States v. United Techs. Corp., 979 F. Supp. 108, 110-11 (D. Conn. 1997) ("In addition, '[i]nformation provided to an accountant by a client at the behest of his attorney for the purpose of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation.'")(emphasis added).  As the Honorable O. Edward Schlatter, United States Magistrate Judge for the Federal District of Colorado stated in Aull v. Cavalcade Pension Plan, 185 F.R.D. 618 (D. Colo. 1998):

> I conclude that the attorney client . . . privilege[] can extend to communications with an accountant hired by an attorney's client . . . if it is shown that: 1) The accountant was consulted, in confidence, for the purpose of obtaining legal advice from the lawyer, and; 2) The communications between the accountant, client, and the lawyer are reasonably related to the purpose of obtaining confidential legal advice from the lawyer.

Id. at 629 (citing United. States v. Kovel, 296 F.2d at 922).  Moreover, the United States Court of Appeals for the Second Circuit has commented that, "if the lawyer has directed the client . . . to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that

purpose ought fall within the privilege." United States v. Koval, 296 F.2d at 922 (emphasis added). That is not the case here. Guidance does not argue -- nor could it, given the content of the communication[4] -- that Van Der Geest was receiving the communication to foster the provision of legal services by Guidance's attorney, Mr. Ginsberg.

### b. Van Der Geest is not sufficiently integrated into Guidance to justify treating him as an employee.

Instead, Guidance argues only that Van Der Geest should be treated as a Guidance employee because Guidance has no in-house accountant and Van Der Geest "acts as Guidance's *de facto* CFO." The only authority that Guidance cites for this proposition is an opinion from the United States Court of Appeals for the Eighth Circuit and an article, upon which the Eighth Circuit relied, which proposes that some non-employees should be treated as insiders for the purposes of privilege based on their association with the client. See Response at 5 (citing In re Bieter Co., 16 F.3d 929, 936-37 (8th Cir. 1994)). The Eighth Circuit, however, was dealing with a different scenario -- where the third party accountant is truly treated as a representative of the party for the purposes of litigation:

> Klohs [the third-party] was not, as we understand the record, simply present at some meetings between Cornwell and the attorneys; he was instead the sole representative of Bieter at a number of these meetings, and letters were written from the attorneys to Klohs directly. The only way in which the privilege could apply to the latter situations is if Klohs was Bieter's representative for the purpose of applying the attorney-client privilege.

In re Bieter Co., 16 F.3d at 936.

---

[4] Although Renee Zaytsev, attorney for Guidance, stated that she thought that Van Der Geest was being asked for information that would then be used by attorney Ginsberg to give legal advice, see Recording of Hearing at 9:38:00 AM (taken September 2, 2009)(Zaytsev), the Court does not read the e-mail as doing so. Rather, it states: "Jim [Van Der Geest] and Jeff [Ginsberg] I also need your input."

The Court has not been shown any evidence that the situation in this case is like In re Bieter Co., wherein the third-party was treated as a representative of the client for the purposes of communicating with the attorney. Rather, so far as the Court can discern from the document itself -- the only evidence that Guidance has given the Court to review in connection with this issue -- Van Der Geest was consulted only in his role as an accountant. He was not requesting legal advice himself, he was not asked to provide legal advice, and he was not asked to provide opinions to Mr. Ginsberg so that Mr. Ginsberg could provide legal advice. Furthermore, so far as the Court is aware, he does not work solely -- or even primarily -- for Guidance. Van Der Geest is an accountant at a New Mexico accounting firm that has, as one might expect, multiple accounts.[5] Guidance has not provided the Court any binding authority holding that a litigant can treat an outside contractor as employee for privilege purposes merely because he consistently uses that contractor. The Court has likewise found none. It is Guidance's burden to prove that this communication was privileged. See In re Foster, 188 F.3d 1259, 1264 (10th Cir. 1999)("A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed."). In this case, it has failed to do so. Because Guidance sent the message to its attorney, requesting legal advice, and to its accountant, requesting accounting advice, and asked the exact same question, the entirety of the redacted part of the message is non-privileged. The Court will therefore order Guidance to produce documents 68 and 69.

---

[5] Gulley represented to the Court that the best information available to him indicated that Guidance's account constitutes, at most, a modest portion of the business that Van Der Geest does for the Mackie Reid firm, and that Van Der Geest and his firm have many clients. See Recording of Hearing at 9:46:00 AM (taken September 2, 2009)(Gulley). Guidance did not controvert this statement.

4.     **The Defendants' Request for Attorneys' Fees.**

Dentsply and Tulsa Dental requested both immediate production of any documents that the Court should order disclosed -- within three days of the order granting the motion -- and attorneys fees incurred in drafting and arguing the motion. Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that, if successful, the Court must award attorneys fees to the movant on a motion to compel, unless the withholding party's non-disclosure of the document was substantially justified.[6] See Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted . . . the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . the opposing party's nondisclosure . . . was substantially justified . . . ."). The Court gave this issue significant thought and needed to do additional research to determine whether the documents at issue fall within the privilege. As the case law shows, communications with an accountant and with a lawyer at the same time could, in certain situations, be privileged. Moreover, the subject involved settlement of a prior lawsuit, and the result might have been different if the accountant had been an in-house employee. In the relatively fast-paced world of civil litigation, especially in a case, like this one, with tens of thousands of documents, the Court finds that Guidance's belief that these documents might be privileged was reasonable, and that its non-disclosure of these documents was substantially justified. The Court will therefore decline to award the Defendants attorneys' fees.

**IT IS ORDERED** that Dentsply/TDP's Motion to Compel Production of Certain Documents on G/G's Amended Privilege Log is granted in part. Plaintiff and Counter Defendant Guidance

---

[6] Technically, the appropriate rule is 37(a)(5)(C), because the Court grants in part and denies in part the motion. See Fed. R. Civ. P. 37(a)(5)(C). The Court believes, however, that, if it would not award fees under 37(a)(5)(A) because an exception to the otherwise-mandatory award of that subsection applies, it should not grant a portion of the fees under 37(a)(5)(C).

Endodontics, LLC is ordered to produce documents 68 and 69, in non-redacted form, to Defendants and Counter Plaintiffs Dentsply International, Inc. and Tulsa Dental Products, LLC. Such production should be made within three business days of the entry of this order. The motion is otherwise denied.

                                                                                                _____
                                                                                                UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca L. Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

      *Attorneys for the Defendants and Counter-Plaintiffs*