IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

      Plaintiff,

vs.                                                                                                                                                No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

      Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

      Counter Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on: (i) Dentsply/TDP's Motion for Directed Verdict Against Guidance on Court VI (Lanham Act) and Count V (New Mexico Unfair Practices Act), filed October 1, 2009 (Doc. 390); and (ii) Tom Gulley's oral motion for directed verdict on October 1, 2009, on Guidance's claim for breach of the implied covenant of good faith and fair dealing. See Transcript of Trial at 2244:8-12 (taken October 1, 2009)(Gulley)("Oct. 1 Tr.").

Defendants and Counterclaimants Dentsply International, Inc. and Tulsa Dental Products, LLC ("TDP") also filed a memorandum in support of their motion. See Dentsply/TDP's Memorandum in Support of Their Motion for Directed Verdict on Counts VI (Lanham Act) and Count V (New Mexico Unfair Practices Act) of Guidance's Complaint, filed October 1, 2009 (Doc. 391) ("Memo."). The Court heard argument on October 1, 2009. The primary issues are: (i) whether Guidance provided sufficient evidence at trial of its claims under the Lanham Act or the New Mexico Unfair Practices Act ("New Mexico UPA"); and (ii) whether any of the bases that Guidance alleges for its breach-of-implied-covenant claim support the cause of action. While the evidence at trial came out differently than it was presented by Guidance when defending against a motion for summary judgment, the Court will deny the motion as to Guidance's Lanham-Act and New Mexico UPA claims because the evidence that surfaced during the trial is sufficient to allow a reasonable fact-finder to find for Guidance on those claims. The Court will grant in part and deny in part the Defendants' motion for directed verdict on Guidance's breach-of-implied-covenant claim.

## PROCEDURAL BACKGROUND

In Count III, Guidance alleges that the Defendants breached the implied covenant of good faith and fair dealing, which Delaware law imposes on the Supply Agreement, by: (i) refusing to supply Guidance Obturators to Guidance; (ii) making false allegations about the marketing and sales activities of Guidance, and refusing to allow Guidance to remedy the alleged violations; (iii) imposing requirements on Guidance before the Defendants would manufacture new Guidance Products -- specifically, requiring that Guidance provide detailed engineering drawings for the new products; (iv) deliberately taking longer than necessary to supply products to Guidance "with the purpose and intention of undermining Guidance's sales;" and (v) disparaging Guidance's products for anti-competitive reasons. Complaint ¶¶ 181-84, at 32-33. In Count V, Guidance alleges that the

Defendants violated the New Mexico UPA by misrepresenting Guidance's ability to sell its products, disparaging Guidance's goods and services, and engaging in other unfair or deceptive conduct that created a likelihood of confusion or misunderstanding. See Complaint, caption to Fifth Claim for Relief & ¶¶ 200, 201, and 202. Finally, in Count VI, Guidance alleges that the Defendants violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(B), by making several false and misleading statements to Guidance's actual or potential customers regarding Guidance's goods, services, and commercial activities. See Verified Complaint and Demand for Jury Trial, caption to Sixth Claim for Relief & ¶ 209, at 35, filed November 21, 2008 (Doc. 1)("Complaint"). Guidance alleges that the Defendants made false and misleading statements in the course of advertising and promoting their business with the intent to harm Guidance. See Complaint ¶ 210, at 36.

The Defendants moved for summary judgment on these claims -- the Lanham Act and New Mexico UPA claims -- by motions filed on July 7, 2009. See Dentsply/TDP's Motion for Summary Judgment Against Guidance on Count VI (Lanham Act), Count IV (Delaware Unfair Practices Act), and Count V (New Mexico Unfair Practices Act), filed July 7, 2009 (Doc. 182). In response, Guidance produced a number of declarations, most including a number of attached documents, that allegedly supported those claims. See Declaration of Debra S. Ruggles in Opposition to Defendants' Motion for Summary Judgment, filed July 29, 2009 (Doc. 212); Declaration of John P. Ferone in Opposition to Defendants' Motion for Summary Judgment, filed July 29, 2009 (Doc. 213); Declaration of Sharon Bettes-Groves in Opposition to Defendants' Motion for Summary Judgment, filed July 29, 2009 (Doc. 214); Declaration of Kyle C. Bisceglie in Opposition to Defendants' Motion for Summary Judgment, filed July 29, 2009 (Doc. 215); Declarations of David M. Stramback, DDS, Samuel I. Kratchman, DMD, and Theresa Casada, filed July 29, 2009 (Doc. 216). The Court issued a Memorandum Opinion and Order denying summary judgment on the New

Mexico UPA and Lanham Act claims. See Memorandum Opinion and Order at 30, filed September 8, 2009 (Doc. 303).

Trial of this case began September 18, 2009, with jury selection. Guidance put on its case in chief from September 21, 2009 to October 1, 2009. During that time, Guidance did not submit to the jury all of the evidence that it had submitted to the Court in opposition to the motion for summary judgment on these claims, but produced some testimony and evidence that was not part of its response to the summary judgment motion. On October 1, 2009, at approximately 8:30 a.m., Guidance rested its case-in-chief. See Oct. 1 Tr. at 2243:21-23 (Kelly). Earlier that morning, in anticipation of Guidance resting, the Defendants filed this written motion for directed verdict, pursuant to rule 50(a) of the Federal Rules of Civil Procedure, as to Guidance's claims that the Defendant's violated the Lanham Act and the New Mexico UPA. See Dentsply/TDP's Motion for Directed Verdict Against Guidance on Court VI (Lanham Act) and Count V (New Mexico Unfair Practices Act), filed October 1, 2009 (Doc. 390). Tom Gulley, attorney for the Defendants, also made an oral rule 50(a) motion for directed verdict as to Guidance's claim of breach of the implied covenant of good faith and fair dealing. See Oct. 1 Tr. at 2244:5-12 (Gulley). Later, when the Court released the jury for the evening, Mr. Gulley argued the Defendants' motions. See Oct. 1 Tr. at 2457:14-2464:15 (Court, Gulley). In response, Kyle Bisceglie, Guidance's attorney, argued regarding the Lanham Act claim, see Oct. 1 Tr. at 2464:20-2469:2 (Court, Bisceglie), and attorney John Kelly argued regarding the New Mexico UPA claim, see id. at 2469:7-2487:5 (Court, Kelly). To respond to the Defendants' argument regarding breach of the implied covenant of good faith and fair dealing, Guidance submitted a letter brief. See Letter from Ryan Flynn, attorney for Guidance Endodontics, LLC, to the Court (dated October 3, 2009), filed October 3, 2009 (Doc. 401)("Flynn Letter"). After reviewing the arguments and authorities cited, the Court will grant the motion with

respect to four of the five bases for Guidance's claim that the Defendants breached the implied covenant of good faith and fair dealing, and deny the motion with respect to the fifth basis for that claim and with respect to the claims under the Lanham Act and New Mexico UPA.

## ANALYSIS

After carefully reviewing Guidance's evidence introduced during the first eight days of trial, the Court concludes that Guidance has submitted legally sufficient proof for the jury to find in its favor on these three claims. Regarding Count III, the alleged breach of the implied covenant of good faith and fair dealing, the Court finds as a matter of law that four of the five grounds alleged cannot properly be considered a breach of the implied covenant. There is, however, sufficient evidence to support a jury finding on the final ground: that the Defendants used their position as manufacturer of Guidance's new endodontic file to test the file and prepare a disparaging brochure about it. See Flynn Letter at 3-4.

## I. THE COURT WILL DENY THE MOTION AS TO GUIDANCE'S COUNT VI -- LANHAM ACT, SECTION 43(a)(1)(B).

As they did in their motion for summary judgment, the Defendants argue that Guidance's Lanham-Act claim fails on two fronts. First, they argue that Guidance provided insufficient evidence to prove that there was a "false or misleading representation of fact." Memo. at 5. Second, the Defendants argue that Guidance has failed to prove that any representations were made "in commercial advertising or promotion," as the United States Court of Appeals for the Tenth Circuit defines that phrase. Memo. at 9-12. Specifically, the Defendants argue that Guidance cannot prove sufficient dissemination to constitute "advertising" or "promotion." Oct. 1 Tr. at 2462:6-19 (Gulley). In response, Mr. Bisceglie conceded that the evidence produced at trial was "a little different" than that cited in response to the motion for summary judgment, but argued that the

evidence at trial was "substantially greater." Oct. 1 Tr. at 2465:1-10 (Bisceglie). The Court is not certain that Guidance's trial evidence is "greater" than the evidence produced in response to summary judgment, but the Court concludes that it is sufficient to avoid a directed verdict.

For one to be successful on a Section 43(a) Lanham-Act claim, he or she must prove some "false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). For representations to be "commercial advertising or promotion" under the Lanham Act, § 43(a)(1)(B), they must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

Proctor & Gamble v. Haugen, 222 F.3d 1262, 1273-74 (10th Cir. 2000). Furthermore, the term "public," as the Tenth Circuit used that term in Sports Unlimited, Inc. v. Lankford Enterprises, Inc., meant not the general public, but the relevant purchasing public. See Larkin Group, Inc. v. Acquatic Design Consultants, Inc., 323 F. Supp. 2d 1121, 1128 (D. Kan. 2004)(referring to Sports Unlimited, Inc. v. Lankford Enters., Inc., 275 F.3d 996 (10th Cir. 2002)). The Court agrees with this reading.

The Court believes that the combination of several pieces of evidence provide sufficient basis on which a fact-finder could find both that the Defendants' employees used false or misleading statements, and that those statements were made to numerous Guidance customers as part of a defamatory marketing scheme. First, there were two electronic-mail documents that Bobby Morrow, one of the Defendants' marketing-team members, developed for Bill Newell, vice president and general manager of TDP. The first of those documents contained defamatory statements about

Goodis, and both included unsubstantiated statements that painted Guidance files as dangerous. Brian Rooney, a sales representative for the Defendants, stated that he received at least one of the documents that Morrow created. The recipient list on those electronic-mail transmissions indicated that approximately 150 salespersons received the document and thus might have been under the impression that the statements contained therein were true and accurate. Another electronic-mail transmission, this one from TDP sales employee Brandon Miller, stated that Guidance files were "off the market" and was received by many in the Defendants' marketing department. Those electronic-mail transmissions, combined with the testimony that Guidance received numerous telephone calls asking whether Guidance files were off the market, implies that the Defendants' marketing department used the information it learned through the electronic-mail transmissions in its sales pitches to prospective customers. This inference was bolstered by evidence that the Defendants were contemplating a promotion plan targeted at Guidance customers and implemented an incentive plan for salespersons who could take customers from Guidance. From this circumstantial evidence, a jury could infer that a substantial portion of the relevant purchasing public for Guidance products was receiving the same false and/or misleading statements that were contained in the Morrow-Newell electronic-mail transmissions. Further, the jury could reasonably find that the misrepresentations occurred during the course of a targeted marketing campaign. The Court thus denies the Defendants' motion for directed verdict on Guidance's Lanham-Act claim under § 43(a)(1)(B).

## II.    THE COURT DENIES THE DEFENDANTS' MOTION AS TO GUIDANCE'S FIFTH COUNT -- NEW MEXICO UNFAIR PRACTICES ACT.

With respect to Guidance's New Mexico UPA claim, the Defendants first assert that Guidance has presented insufficient evidence that any false or misleading statements were made.

See Memo. at 5. The Court addressed this concern above, as it is identical to one of the grounds upon which the Defendants seek a directed verdict on Guidance's Lanham-Act claim. The same analysis applies to this ground for directed verdict on the New Mexico UPA claim. The Court will not grant the Defendants' motion on this basis.

The Defendants' second argument in favor of a directed verdict on the New Mexico UPA claim is that the claim is simply a "garden variety breach of contract claim," which is not enough to sustain a claim under the New Mexico UPA. See Memo. at 7-8 (citing Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 99-101, 811 P.2d 1308, 1310-12 (1991)). The Defendants also argue Guidance cannot assert its New Mexico UPA claim based on the conduct described in NMSA 1978, § 57-12-2D(15) because Guidance had not mentioned this theory of recovery under the UPA until the sur-reply to the Defendants' motion for summary judgment on that claim. See Memo. at 8. The Defendants' final grounds for directed verdict is that Guidance supplied no evidence of two other elements of a standard UPA claim: (i) that the Defendants "knowingly made" the allegedly false or misleading statements; and (ii) that the statements "deceive or tend to deceive." Memo. at 8-9.

First, the Court is not convinced that what Guidance has pled is a "garden variety breach of contract" claim. In fact, it is only if the Court agrees with the Defendants' last two arguments -- that Guidance has failed to prove that the Defendants or their employees "knowingly made" the false or misleading statements, and that those statements did not deceive or tend to deceive, would the claims resemble garden-variety breach-of-contract claims. It is those elements, that there must be false and/or misleading statements, that the statements must deceive or tend to deceive, and that the statements must be knowingly made, which make a New Mexico UPA claim more than a simple breach of contract. See NMSA 1978, 57-12-2D. Stevenson v. Louis Dreyfus Corp. is not to the contrary; it dealt only with a jury instruction which allowed the jury to find a violation of the New

Mexico UPA if it found merely that the defendant "failed to deliver the quantity of goods contracted for." 112 N.M. at 99, 811 P.2d at 1310. The conduct that the erroneous instruction described, standing alone, is a garden-variety breach of contract. In Stevenson v. Louis Dreyfus Corp. it was the lack of the other elements -- "a false or misleading oral or written statement, . . . knowingly made in connection with the sale . . . of goods or services . . . that may, tends to or does deceive or mislead any person" -- which troubled the Supreme Court of New Mexico. 112 N.M. at 99, 811 P.2d at 1310 ("[F]our elements must be established to invoke the Unfair Practices Act, relying on the definition of an unfair trade practice in NMSA 1978, Section 57-12-2(D)")(citing Ashlock v. Sunwest Bank of Roswell, N.A., 107 N.M. 100, 102, 753 P.2d 346, 348 (1988)). As long as Guidance has provided some evidence of the additional elements, the Court will not grant the motion for directed verdict because Guidance's claim is merely one for breach of contract.

Second, the Court has stated in a prior Memorandum Opinion and Order that the instances of conduct specified under NMSA 1978, § 57-12-2D appear to be examples of the kind of conduct that can constitute a breach of the implied covenant of good faith and fair dealing. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1145 (D.N.M. 2009)(Browning, J.)("As it has been shown no authority to the contrary, the Court finds that those subsections merely describe examples of conduct that would violate the UPA – different theories -- and not independent claims."). The Defendants have cited no authority for the notion that a plaintiff must cite to the specific subsection of § 57-12-2D that it alleges the defendant violated. The allegations in the Complaint and any concessions that Guidance made will restrict the conduct that Guidance can allege breached the UPA. Unless the Defendants point the Court to interrogatory responses or other documents constituting an admission that Guidance's UPA claim will involve only certain conduct, Guidance may proceed on conduct that it alleges in the Complaint for which it also provides

evidence of all of the statutory elements.

Finally, the Court finds that there is at least some evidence that the Defendants' employees were knowingly making false and/or misleading statements which deceive or tend to deceive. While the testimony on this front was not as substantial as that attached to Guidance's response to the Defendants' motion for summary judgment, some evidence came to light. First, the Defendants' sales force received an electronic-mail transmission stating that Guidance files were off the market. The Court has found in a prior Memorandum Opinion and Order that such statements are potentially deceptive, because only the Guidance V-Taper file was becoming unavailable and the statement was not so limited. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1156 (D.N.M. 2009)(Browning, J.)(holding that statements that Guidance lost a lawsuit are potentially misleading because Guidance settled, rather than lost, the lawsuit). A customer who believed that Guidance files were off the market entirely might foreseeably stop placing orders without confirming the information he or she had received. The sudden proliferation of inquiries whether Guidance was going out of business and whether Guidance was going to become unable to supply endodontic files, in conjunction with the evidence that a large portion of the Defendants' marketing and sales force received electronic-mail transmissions with similar information, could lead a reasonable jury to conclude that the Defendants' salespersons were propagating that potentially misleading information.[1] Second, the knowledge element is met when the person making a statement knows, or in the exercise of reasonable diligence, should know that the statement is false. See Pedroza v. Lomas Auto Mall, Inc., 600 F. Supp. 2d 1200, 1206 (D.N.M. 2009)(Browning,

---

[1] That some Guidance customers called Guidance to check the veracity of the calls they received does not undermine the inference that an even more substantial number of Guidance's customers might have taken the representation at face value and stopped placing orders for Guidance products.

J.)(citing Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311); Taylor v. United Management, Inc., 51 F. Supp. 2d 1212, 1216 (D.N.M. 1999)(Conway, C.J.). Undoubtedly, someone at Dentsply or TDP knew that "Guidance files" were not "off the market," and if any of those who received the erroneous electronic-mail transmission propagated that information without first confirming the facts, the statement was made knowingly. A corporation can act only through its officers, employees, and agents, and if management knew that Guidance's product was not off the market, but created an environment where its salespersons were repeating such a statement, the corporations were knowingly making that statement. If, therefore, the jury concludes that those salespersons passed along the overgeneralized message that "Guidance files are off the market," that repetition could satisfy the core elements of a breach of the New Mexico UPA. The Court will therefore deny the motion for directed verdict on Guidance's UPA claim.

### III.   THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION AS TO GUIDANCE'S THIRD COUNT -- BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Mr. Gulley's oral motion asked the Court to grant the Defendants a directed verdict in their favor on Guidance's claim of breach of the implied covenant of good faith and fair dealing. He argued that Guidance's breach-of-implied-covenant claim is the same as its breach-of-contract claim and therefore cannot stand. Interestingly, this argument is the same one that Guidance asserted against the Defendants' breach-of-implied-covenant counterclaim against Guidance, and that the Defendants argued against in their response brief to that motion. See Dentsply/TDP's Response to G/G's Motion for Summary Judgment and Supporting Memorandum at 9, filed August 17, 2009 (Doc. 251). In response, Guidance filed a letter brief dated October 3, 2009. See Flynn Letter at 1. Ryan Flynn, attorney for Guidance, set forth five implied obligations that Guidance asserts can be read into the Supply Agreement by way of the implied covenant of good faith and fair dealing:

(i) an obligation not to provide pretext/bad faith reasons for failing to supply Guidance with obturators; (ii) an obligation not to impose requirements on the manufacture of new Guidance products which are not contained in the Supply Agreement; (iii) an obligation not to purposefully take longer than necessary to supply Guidance with products which it orders; (iv) an obligation not to exploit their position as the manufacturers of Guidance's products to develop a brochure disparaging those products; and (v) an obligation not to attach incomplete or inaccurate drawings to the Supply Agreement. See Flynn Letter at 1-4. Ultimately, the Court finds that one of these theories states a claim for breach of the implied covenant. The others do not.

### A. RELEVANT LAW ON THE COVENANT OF GOOD FAITH AND FAIR DEALING.

The covenant is a way to imply terms in a contract to fill missing contract provisions, whether they be missing through simple oversight or arising from circumstances that neither party predicted. See Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del. 2005). "[P]arties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms." Id. On the other hand, one cannot assert a breach of the implied covenant for conduct that the contract's express provisions governs. See id.; Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 888 (Del. Ch. 2009)("To the extent that Kuroda's implied covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim."). "[A] court should be cautious when implying a contractual obligation and do so only where obligations which can be understood from the text of the written agreement have nevertheless been omitted from the agreement in the literal sense." Fitzgerald v. Cantor, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

**B.     ONLY GUIDANCE'S FOURTH THEORY CAN CONSTITUTE A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

Guidance's first three alleged grounds for sustaining their implied-covenant claim seek relief for conduct that the terms of the Supply Agreement clearly govern.  First, regardless of the reason alleged, the Defendants appear to have had a contractual obligation to supply Guidance with obturators.  The Defendants' proposed reason for their failure to supply Guidance with obturators does not change the fact that they did fail to supply Guidance with obturators. The jury need not consider the motive behind the Defendants' conduct to conclude whether or not a breach of contract occurred, and only if the Defendants' allegations were correct -- Guidance breached the Supply Agreement -- will the alleged ground have an impact on the issue whether the Defendants' breached the Supply Agreement.  Furthermore, there is no evidence that the Defendants' representation, if false, had any impact on Guidance's situation other than to make the Defendants look evil.  There is no evidence that the Defendants' alleged basis for failure to supply obturators "frustrate[d] the 'overarching purpose'" of the Supply Agreement in a way that the breach of contract did not. Dunlap v. State Farm Fire & Cas. Co., 878 A.2d at 442.  The Court will therefore grant the Defendants' motion as to Guidance's first instance of alleged conduct.

Guidance's second ground fairs no better.  The Defendants' alleged bad-faith conduct -- imposing requirements on the manufacture of new Guidance products that did not exist in the Supply Agreement -- again states only that the Defendants breached the Supply Agreement.  The core of the conduct Guidance alleges is that the Defendants stopped supplying products which Guidance contends the Supply Agreement required them to provide.  The Defendants' reason for failing to supply the products is irrelevant unless it is found to be true and a valid basis for non-compliance.  The Defendants either breached the contract or did not, and the Defendants do not

-13-

contest that they stopped supplying obturators. Thus, if the jury concludes that the Defendants did not breach the contract, the jury likely concluded that the alleged-pretext was a valid reason for non-performance. Furthermore, as with Guidance's first alleged category of conduct, there is no evidence that the alleged basis for the Defendants' conduct deprived Guidance of the fruits of its agreement -- if anything did, it was the breach itself. The Court will grant the Defendants' motion for directed verdict as to this alleged conduct.

Guidance's third basis, that the Defendants intentionally took longer than necessary to supply Guidance products, is even more clearly governed by the contract's terms. The contract's provisions included a clause, Paragraph 2.3, which allowed the Defendants ninety days to fill orders, "provided, however, if Guidance indicates in its Purchase Order an earlier delivery time, TDP shall try to accommodate such shorter period, if it is able to do so." Flynn Letter at 3 (quoting Supply Agreement ¶ 2.3, at 3). Again, Guidance tries to create a breach-of-implied-covenant claim by alleging wrongful motive to breach the contract. Guidance is free to allege that the Defendants breached Paragraph 2.3 by failing to deliver products at an earlier time, even though they were able to do so. The Court thus finds that Guidance's third alleged ground for its breach-of-implied-covenant claim fails because the contract's terms govern the conduct alleged. See Dunlap v. State Farm Fire & Cas. Co., 878 A.2d at 442; Kuroda v. SPJS Holdings, L.L.C., 971 A.2d at 888.

Guidance's fourth alleged basis appears to present a breach-of-implied-covenant claim. Guidance entered a Supply Agreement by which the Defendants would produce Guidance products based on specifications that Goodis would provide to them. The parties were in a peculiar position, because Guidance was dependent upon the Defendants to supply the products but was also one of the Defendants' competitors. Evidence was produced at trial that, in addition to manufacturing Guidance products, the Defendants took advantage of their position as the manufacturer to take

-14-

samples of the Guidance products and perform side-by-side tests, and then to develop a brochure underscoring the superiority of the Defendants' products by using those test results and commentary. The evidence also disclosed that the tests were performed, the first draft of the brochure was drafted, and that brochure was disseminated to some of the Defendants' sales force before the Defendants delivered the products to Guidance. That the parties were competitors made it reasonable to conclude that, if the issue had been raised, Guidance would have sought a paragraph requiring the Defendants not take advantage of their unique and powerful position as the manufacturers of Guidance's products to develop comparative marketing materials before supplying the goods to Guidance. The Court finds that a reasonable jury could conclude, on the record before the Court, that a promise that the Defendants would not exploit its position as Guidance's sole product manufacturer is fairly inferable from the Supply Agreement. The Court will deny the Defendants' motion for directed verdict as to Guidance's breach-of-implied-covenant claim.

Guidance's fifth basis for a breach-of-implied-covenant claim fails because it does not deprive Guidance of the fruits of its bargain or frustrate the terms of the contract. Guidance asserts that the implied covenant creates an obligation on the Defendants to avoid attaching inaccurate and incomplete drawings to the Supply Agreement. Guidance argues that the inclusion of these incomplete design drawings, which were purportedly to give TDP "latitude within the final design parameters," Flynn Letter at 4, "effectively insulates [TDP] from any claims Guidance may be able to assert if the EndoTaper files that TDP is manufacturing deviated from the file Guidance expected to receive." id. First, there is no indication how this deprived Guidance of the fruits of the agreement. There was no evidence that any of the EndoTaper files that the Defendants provided were somehow deficient and that is not conduct for which Guidance has ever sought recovery. For those reasons, the Court grants the motion for directed verdict as to this instance of conduct.

**IT IS ORDERED** that Dentsply/TDP's Motion for Directed Verdict Against Guidance on Court VI (Lanham Act) and Count V (New Mexico Unfair Practices Act) is denied. The Defendants' oral motion for directed verdict regarding Guidance's breach of the covenant of good faith and fair dealing claim is granted in part and denied in part. The oral motion is granted with regard to alleged wrongful conduct one, two, three, and five -- as numbered in Ryan Flynn's October 3, 2009 letter to the Court -- but denied as to the fourth alleged wrongful act, as described above.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
　& Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff and Counterdefendants*

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius LLP
Washington, DC

-- and --

R. Ted Cruz
Morgan Lewis & Bockius LLP
Houston, Texas

-- and --

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca LLP
Albuquerque, New Mexico

       *Attorneys for the Defendants and Counterplaintiffs*