## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

      Plaintiff,

vs.                                                                    No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

      Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

      Counter Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Discovery Sanctions,

filed October 22, 2009 (Doc. 449).  The Court held a hearing on March 23, 2010.  The primary

issues are: (i) whether trial counsel for Defendants Dentsply International, Inc. and Tulsa Dental

Products, LLC ("TDP") -- Brian Addison and Lewis & Roca LLP -- deliberately delayed or withheld

the production of discoverable information; misrepresented the existence of such evidence to both

the Plaintiffs and to the Court; and engaged in a course of conduct that threatened the integrity of

the truth-seeking process; (ii) whether the Defendants' delay in providing this information prejudiced Plaintiff and Counterdefendant Guidance Endodontics, LLC and/or Counterdefendant Charles Goodis; (iii) whether the Court should impose a monetary penalty of $11,097,557.00; and (iv) whether the Court should sanction Guidance and Goodis for filing the motion and award the Defendants' attorneys' fees for having to respond to it.  Because the Court has previously and sufficiently addressed all the issues that Guidance and Goodis raise in this motion, the Court will deny the requests for sanctions.

**PROCEDURAL HISTORY**

This case concerns a suit that Guidance, a small endodontic-equipment company, has brought against the Defendants, who are both Guidance's rivals and its suppliers.  More background on the lawsuit is set forth in the Court's earlier opinion.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2008 WL 6013069, at *1-5 (D.N.M. Dec. 15, 2008)(Browning, J.).  This motion asks the Court to impose substantial sanctions against the Defendants for their conduct during discovery in this case.

**1.      First Request for Production.**

On February 9, 2009, Guidance and Goodis served their First Request for Production of Documents ("RFP") asking for several categories of documents relating to its calculations of damages: (i) Request 1:12 asked for "[a]ll documents relating to the impact or effect of Guidance's business or products on Defendants' business, revenues, customers, employees, and/or sales representatives"; (ii) Request 1:17 asked for "[a]ll documents showing endodontic sales data by customer, including product, quantity, dollar amount and date of sale . . . from January 1, 2005 to present; and (iii) Request 1:18 asked for "[a]ll documents and communications relating to the financial performance of Defendants' endodontic divisions, from January 1, 2005 to the present."

The Defendants responded on March 16, 2009, raising objections and refusing to agree that the requests related to Guidance's damages calculations. Guidance represents that it made several attempts to resolve this issue informally, but was unsuccessful, and thus sought a discovery conference, which this Court held April 28, 2009. At that conference, the Defendants' counsel told the Court and opposing counsel that his client would produce the requested documents only if ordered to do so.

On May 4, 2009, Guidance filed the first motion to compel the documents requested in 1:12, 1:17, and 1:18. On June 5, 2009, the Defendants served Guidance with the expert report of J. Brad Stewart, which relied upon documents Guidance produced in discovery that were analogous to those that the Defendants had thus far refused to produce. The Court held a hearing on Guidance's first motion to compel on June 11, 2009 and June 26, 2009. The Court granted Guidance's motion in part. On July 9, 2009, the Defendants responded by producing three Strategic Reports that had all been significantly redacted. On July 21, 2009, the Defendants produced sales data that Guidance requested in RFP 1:17.

On July 21, 2009, Guidance filed its First Omnibus Discovery Motion seeking, among other things, an order compelling production of the Strategic Reports in unredacted form. The Court held a hearing on September 1, 2009. On September 21, 2009, the Court partially granted the relief that Guidance requested, ordering the Defendants to produce the Strategic Reports in substantially less-redacted form. The Defendants complied with the Court's order, though it required additional prodding by the Court on September 23, 2009 to convince the Defendants to do so. In the shuffle, the third of the three Strategic Reports was lost and not produced to Guidance. On September 26, 2009, when Guidance called the missing Strategic Report to the Defendants' attention, the Defendants produced it with some redactions. Guidance believed that the Defendants' redactions

of the third Strategic Report were not in the spirit of the Court's order of September 21, 2009, and

asked the Court to review the redactions of the third Strategic Report.  Again, the Court granted

Guidance part of the relief it sought, requiring the Defendants to un-redact some portions of the third

Strategic Report and to re-produce it to Guidance.  The Defendants complied the same day.

     **2.**     **Second RFP.**

Guidance's Second RFP asked for several additional categories of documents.  Request 2:1

sought communications between the Defendants' sales representatives and customers relating to the

sale of files, obturators, and ovens in the United States.  Request 2:2 asked for

> [a]ll documents and communications relating to Defendants' product pricing and
> product marketing policies and practices, including practices with respect to account
> history, sales volume, product lines, new and competitor accounts, incentives and
> promotions, sales strategies, and product price lists, for the sale of [endodontic
> obturators, files, and/or ovens] to existing and potential customers.

Request 2:3 asked for certain market research relating to the Defendants' brand loyalty and the price

elasticity of demand.  The Defendants objected to these requests, refusing to produce any documents

that Guidance asserts were related to its damages calculation.  Again, Guidance asserts that it sought

to resolve this dispute informally, but was unsuccessful, necessitating the filing of another motion

to compel.

Guidance's May 4, 2009 motion to compel also sought production of the documents

referenced in Requests 2:1, 2:2, and 2:3.  The motion was argued at the hearings on June 11, 2009

and June 26, 2009.  The Court granted part of the relief Guidance sought and denied the remainder.

The Court issued a Memorandum Opinion and Order memorializing its holdings on July 14, 2009.

Guidance asserts that, on July 27, 2009, the Defendants, for the first time, told it that they

have no market research or studies responsive to Request 2:3.  Guidance was skeptical based on the

responses that the Defendants' expert had given them to some deposition questions, and based on

what its own consulting expert had told it. On August 6, 2009, Guidance filed its Second Omnibus Discovery Motion, seeking to compel the production of documents related to several topics, including product pricing, marketing policies and practices, and the market research requested in RFPs 2:2 and 2:3. Guidance explained in the motion that the information related to Guidance's damages theory. In conjunction with the motion, Guidance attached a declaration of their consulting expert, Dr. Lynne Weber, stating that she found it highly unlikely that a company the size of Dentsply or TDP would not have market research in some form. Nevertheless, the Defendants denied having any market research other than the Millennium Report, which they asserted Guidance appeared to have.

      **3.**      **<u>Third, Fourth, Fifth, and Sixth RFPs</u>.**

This sparring continued through Guidance's third, fourth, fifth, and sixth RFPs, which requested, inter alia: (i) "[a]ll customer account information for all customers who have purchased [endodontic obturators, files and/or ovens]"; (ii) "[a]ll communications, both internal and with third-parties, relating to Defendants' policies, practices, strategies, views and/or opinions on its busines practices with respect to Competitors including without limitation . . . efforts to gain market share . . . ."; (iii) "[a]ll communications . . . relating to the impact or effect of Competitors on Defendants' business, revenues, customers, employees, and/or sales representatives"; (iv) "[a]ll documents relating to the impact or effect of Guidance's business or the sale of Guidance Products on Defendants' endodontic instrument business, revenues, customers, employees, or sales representatives from January 1, 2005 to present"; (v) "all documents . . . relating or referring to any Guidance accounts or Guidance customers converted to Dentsply or TDP through the Godfather promotion or any other promotion offered by Defendants from September 1, 2008 to present"; (vi) "all documents . . . containing information regarding the products, units, and prices of files,

obturators, and ovens sold [to any] accounts or customers converted to Dentsply or TDP through the Godfather promotion or any other promotion used by Defendants after September 1, 2008"; and (vii) "United States sales and/or market data" for the .04 and .06 taper endodontic files. Many of these requests were the subject of Guidance's second motion to compel, filed June 3, 2009. After a hearing on July 15, 2009, the Court granted Guidance's motion in part and denied it in part.

Guidance also complains of the deposition of James Mosch, Senior Vice President of Dentsply. During the deposition, Mosch was unwilling to answer certain questions about Dentsply/TDP's market share. This lack of testimony was one subject incorporated in Guidance's First Omnibus Discovery Motion. After the September 1, 2009 hearing on that motion, the Court ordered Mosch to sit again for deposition and answer Guidance's questions on that topic. The Court awarded some fees to Guidance in conjunction with that motion.

       **4.**      **<u>The Memorandum Opinion and Order of September 24, 2009</u>.**

Guidance largely rests its motion on a snippet of one of the Court's Memorandum Opinion and Orders, filed September 24, 2009 (Doc. 358). That MOO ruled on Guidance's motion for leave to supplement its expert report to include a calculation of projected future damages. The new theory that Guidance was attempting to introduce less than a month before trial would have increased Guidance's expert's opinion of Guidance's damages from approximately $1,200,000.00 to approximately $75,000,000.00.

Guidance's position was that the Court should allow the late-filed supplemental report because the Defendants had stone-walled them in discovery regarding documents from which Guidance could projects its future damages. The Court suspected that the late-filed supplement, while perhaps delayed in part by the Defendants' strong oppositions to discovery, might in part be an attempt to lull the Defendants into defending this case as though it was relatively small and then

jack up the price-tag substantially shortly before trial.  Ultimately, the Court found that Guidance could have made a reasonable estimate of future damages with data it had available to it or that it could acquire from other sources, and thus that it could have given the Defendants some indication of the magnitude of damages sought, rather than multiplying the damages by a factor of about sixty on the eve of trial.  With respect to the Defendants' potential discovery misconduct, however, the Court stated that it "emphasizes that it is not condoning the Defendants' withholding information relevant to damages in hopes that Guidance would not timely seek it from other sources. If the Defendants failed to turn over non-privileged documents in response to an appropriate discovery request, there should be repercussions for that conduct." Id. at 18.

## ANALYSIS

The Federal Rules of Civil Procedure are designed so that discovery in civil matters can be relatively self-executing, with the district judge intervening only in the event of an irreconcilable disagreement between counsel for the parties.  The federal courts depend on discovery being largely self-executing so that they can successfully manage their heavy caseload.  Discovery in this case was not self-executing.  This motion is the capstone to a long series of discovery disputes that the Court was required to referee.

For the most part, the motion presents again issues that the Court considered and of which the Court has disposed.  Guidance attempts to collect up the individual issues and place them before the Court as a whole, taking the position that the totality of the Defendants' discovery misconduct warrants sanctions, even if each individual act did not.  The Court cannot say that the Defendants did not commit discovery misconduct.  Then again, neither side facilitated discovery for the other, or for the Court, and, to a great extent, the parties were unable to informally work out discovery disputes.  Guidance made overly broad requests for production, and the Defendants played litigation

hardball by refusing to produce relevant data that fell squarely within the overbroad requests. Ultimately, however, Guidance's decision to wait for full discovery that it had every indication would not be timely forthcoming was its own strategic decision. Without a showing that the Defendants' discovery responses prejudiced Guidance in ways that the Court has not already remedied, the Court will not award further sanctions.

I.      **THE COURT DOES NOT SEE SUBSTANTIAL PREJUDICE TO GUIDANCE AND GOODIS FROM THE DEFENDANTS' DISCOVERY RESPONSES.**

The Defendants contend that the motion is: (i) a transparent attempt to pacify what must be angry clients because of the failure of Guidance and Goodis' counsel to timely file the motion to amend the complaint and the motion to add to Guidance's damages claims; and/or (ii) an attempt by Guidance and Goodis to distract the Court from the Defendants' motion for sanctions for Guidance and Goodis' public filing of documents that Guidance and Goodis should have filed under seal. While the Court need not decide whether Guidance is upset with its counsel, this motion is not an appropriate vehicle for curing any prejudice from the failure to amend the Complaint and to get Dr. M. Brian McDonald's supplemental expert report before the jury, regardless whether the Defendants' discovery violations contributed to that failure. Because the Court has already concluded the discovery problems were not the primary cause of Guidance's delay, the Court will not grant Guidance the substantial sanctions it seeks in this motion.

1.      **Strategic Reports.**

Guidance and Goodis' first complaint is over the Defendants' redaction of certain strategic reports. The facts surrounding those reports indicate, however, that Guidance and Goodis had this information in their hands when they needed the information at trial. While it undoubtedly would have been helpful to have the information earlier in the discovery process, Guidance was able to

-8-

present evidence of its past damages and some evidence of future damages, which the jury apparently credited. Once Guidance had the Strategic Reports, it used them in cross-examination of almost every defense witness.

### 2.      Sales and Marketing Data.

Again, the Court does not find that Guidance was substantially prejudiced by the Defendants' reluctance to disclose its sales and marketing data. Guidance was able to put on a relatively strong case, and present evidence of past and future damages. Guidance did not get an opportunity to present its theory of damages from the inability to capture additional market share, but the Court has already concluded that this inability was at least in part, if not substantially, Guidance's own fault. Rather than attempt to solidify its own case from credible information it already had or to which it had access, Guidance spent its limited time and resources trying to wrangle that information from the Defendants, who, rightfully or not, were clearly not going to give it up easily. Guidance's argument that it did not want to make rough estimates, because the Defendants would then attack those estimates as being unreliable, is unavailing, especially when Guidance alleges that the Defendants' conduct is why their estimates would be imprecise. Guidance was well aware of the deadlines in this case, and although the Defendants may have challenged a rough damages estimate, Guidance would be in the superior position -- its estimate could have been, perhaps, unreasonably high, but defensible on the ground that it was the best estimate available without information that the Defendants refused to disclose. Instead, Guidance put itself in the less-advantageous position of having to seek leave of court to request those damages, after the deadlines had expired and on the eve of trial.

### 3.      Market-Share Data.

Guidance also complains about the Defendants' unreasonable delay in providing them with

information regarding the Defendants' market share.  Much like the marketing and sales data, Guidance could have acquired data regarding the Defendants' market share from numerous sources. Furthermore, Guidance had a rough estimate of the Defendants' market share early in the course of this litigation.  That it was not as precise as Guidance would have liked did not render Guidance helpless, as it suggests.  Again, any rough damages estimate that was attacked on the ground that it was insufficiently precise could be defended on the ground that the Defendants were the only ones in possession of data that could make it more precise.  Guidance could have continued its discovery efforts, but been secure in having some estimate of lost future market share damages, and thus it would not have had to seek leave to file a late supplemental expert report.

## II.      THE COURT WILL NOT IMPOSE SANCTIONS AGAINST THE DEFENDANTS.

Guidance seeks several forms of sanctions against the Defendants.  First, it seeks a monetary sanction of $11,097,557.00.  It also seeks: (i) additional production of documents; (ii) that it be allowed to retain confidential information that the Defendants disclosed to it for use in future litigation, notwithstanding that the Protective Order in this case states that such documents will be destroyed; (iii) that the Court consider the misconduct in determining the reasonableness of the attorneys fees that Guidance will seek as part of its judgment; and (iv) an award of attorneys fees for having to file the five discovery motions that they filed in this case. Ultimately, although the Defendants engaged in some unacceptable discovery conduct during the course of litigation, further substantial sanctions are not warranted.

As the Court commented during the hearing, the discovery in this case was extremely difficult and demanding upon the Court's time.  The problems, however, were not one-sided. Guidance's discovery requests were consistently overbroad, and the Defendants objected to those requests.  The Court sustained many such objections, frequently narrowing Guidance's discovery

requests.  On the other hand, the Defendants did not comply with the letter and spirit of the discovery rules and law.  They over-redacted documents, they made objections based on attorney-client privilege that were not sustainable, and they made discovery difficult by requiring that everything be done by motions and orders.  The Court sorted it out, however, and assigned attorneys fees to one party or the other when appropriate.  The reason there was not more shifting of attorneys fees was that, although Guidance was frequently successful in acquiring more information than it had before it filed the motion, the Court almost invariably had to narrow the relief that Guidance requested and grant its motions only in part.

The Court believes that it has addressed, one motion at a time, each of the issues that Guidance's motion raises anew.  Again, the Court cannot say that the Defendants did not commit discovery misconduct, but it also cannot say that any of the misconduct substantially prejudiced Guidance.  The prejudice about which Guidance complains was in no small part the fault of its strategic decision to try to build its case entirely on documents that it presumed the Defendants would both possess and timely produce, rather than working with what it had or seeking data from other sources.  The Court does not condone the Defendants' conduct, but neither does it find Guidance completely faultless.  The Court will therefore deny Guidance's motion for sanctions. Likewise, the Court will deny the request for sanctions that the Defendants included in its response to Guidance's motion.

**IT IS ORDERED** that Plaintiff's Motion for Discovery Sanctions is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
   & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
   Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, District of Columbia

      *Attorneys for the Defendants and Counterplaintiffs*