## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

      Plaintiff,

vs.                                                                                  No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Defendants.

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

      Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

      Counter Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion to Set Aside the UPA

Verdict and Enter Judgment as a Matter of Law or Order a New Trial, filed February 10, 2010

(Doc. 503).  The Court held a hearing on March 22, 23, and 24, 2010.  The primary issues are:

(i) whether Defendants Dentsply International, Inc. and Tulsa Dental Products, LLC ("TDP")

properly preserved the errors that they allege underlie this motion; (ii) whether Plaintiff Guidance

Endodontics, LLC failed to establish an essential element of its claim under the New Mexico Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 through 57-12-26 ("NMUPA"); (iii) whether Guidance is prohibited from recovering under a particular subsection of the NMUPA because it did not sufficiently alert the Defendants of its intent to pursue a theory under that subsection; and (iv) whether New Mexico law no longer applies to Guidance's NMUPA claim because the Court prohibited Guidance from showing actual damages in relation to that claim. The Court finds that the Defendants adequately preserved this issue for the Court's review. The Court also finds that, notwithstanding that the Court prohibited Guidance from proving actual damages at trial in relation to its NMUPA claim, the harm occurred in New Mexico and that is sufficient to warrant application of New Mexico law under the *lex loci delicti* doctrine. Because the Court finds that Guidance was allowed to pursue its NMUPA claim under alternative theories, because the Defendants were sufficiently put on notice of the alternative theories, and because Guidance produced sufficient evidence supporting one of its UPA theories, the Court will deny this motion and decline to change the judgment it entered or grant a new trial.

## FACTUAL BACKGROUND

This case concerns a suit that Guidance, a small endodontic-equipment company, has brought against the much larger Defendants, who were both Guidance's rivals and its suppliers. More background on the lawsuit is set forth in one of the Court's earlier opinions. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 633 F. Supp. 2d 1257, 1260-67 (D.N.M. 2008) (Browning, J.). The Defendants are manufacturers and suppliers of a variety of dental/endodontic products that compete with Guidance's products, including endodontic obturators, files, and ovens.[1]

---

[1] File, obturators, and ovens are all devices that dentists and endodontists use to perform root canal surgery. Files are small metal drills that cut away the infected part of the tooth. See Verified

Guidance and the Defendants were parties to a Manufacturing and Supply Agreement, which arose as a settlement of a separate intellectual-property dispute. The Supply Agreement required the Defendants to supply Guidance with endodontic files, obturators, and ovens, which Guidance would then sell to end-users. Guidance began selling those endodontic products at extremely low prices compared to the prices that the Defendants charged for the same or similar products. Allegedly as a dirty business tactic to keep Guidance from underselling them in the marketplace, the Defendants stopped supplying endodontic obturators to Guidance. The Defendants told Guidance that they were ceasing to supply obturators because they heard that Guidance was telling its customers and potential customers that the Defendants manufactured the products, which allegedly would be in violation of the Supply Agreement. On September 25, 2008, Bill Newell, vice president and general manager of TDP, sent a letter to Goodis that stated, in relevant part:

> We have reviewed much of your advertising materials and heard many reports from the field regarding recent activities of Guidance. The purpose of this letter is to advise you that, beyond our tremendous disappointment in your conduct, that you are in default of the Manufacturing and Supply Agreement we entered only recently. The conduct of Guidance is also contrary to the representations you made to us

---

Complaint and Demand for Jury Trial ¶ 109, at 22, filed November 21, 2008 (Doc. 1)("Complaint"); Oxford English Dictionary Online, "file, n." (2d ed. 1989, Oxford University Press), available at http://dictionary.oed.com/cgi/entry/50084664 (last accessed June 1, 2010). The obturator is a device used to fill the whole that the file leaves. See Complaint ¶ 109, at 22; Oxford English Dictionary Online, "obturator, n." available at http://dictionary.oed.com/cgi/entry/00329626 (last accessed Mar. 20, 2010)("2.a . . . . A prosthetic device used to close an abnormal opening . . . ."); Motion at 2. As Counter-Defendant Dr. Charles Goodis put it: "An obturator is a device used to fill the root canal with gutta percha after the canal has been drilled, cleaned, and shaped." Declaration of Charles J. Goodis in Support of His and Plaintiff's Motion for Summary Judgment ¶ 5, at 2, filed July 31, 2009 (executed July 31, 2009)(Doc. 227). Gutta percha is one substance with which an obturator may fill a drilled canal. Gutta percha is "[a] rubbery substance derived from the latex of any of several tropical trees of the genera *Palaquium* and *Payena*, used as an electrical insulator, as a waterproofing compound, and in golf balls." The American Heritage Dictionary of the English Language at 808 (3d ed. 1992). Finally, the oven is the device used to warm some obturators, rendering the filling material malleable and able to be used to fill in the hole that the file leaves. See Complaint ¶ 109, at 22.

> repeatedly during our discussions leading up to the execution of the agreement.
>
> * * * *
>
> Please advise us immediately in writing that you will cease and desist from all of this conduct.  Until we receive such confirmation, it is our intention to discontinue the supply of the obturator product.

Letter from Bill Newell to Dr. Charles Goodis (dated September 25, 2008), filed February 24, 2010

(Doc. 508-2, p. 43).  On the same day, Brian Addison, vice president, secretary, and general counsel

of Dentsply, sent a similar letter to Goodis.  That letter stated, in relevant part:

> Several activities of Guidance have recently been brought to our attention, including advertising brochures and activities of Guidance representatives in the field.  These activities have included statements or representations which are false and/or misleading and therefore actionable under the Lanham Act.  These statements include, but are not limited to the following:
>
> - EndoTaper is the best NiTi System in the world
> - EndoTaper is extremely flexible and safe
> - Endo Files can be used like ProTaper or ProFile GT
> - EndoTaper creates the perfect canal shape more effectively and easier than any other file system.
> - Now you can treat every case better, quicker and safer with EndoTaper
> - OneFil is the best thermal filling obturation system in the world
>
> In order to make such statements you need to have substantiation of such claims.
>
> Please confirm in writing that Guidance will immediately cease and desist from making these statements or immediately provide to me the data that substantiates all of these statements.

Letter from Brian Addison to Dr. Charles Goodis (dated September 25, 2008), filed

February 24, 2010 (Doc. 508-2, p. 26).

In addition to ceasing to supply obturators, the Defendants refused to manufacture a new

endodontic file -- the V2 file -- which Guidance was intending to sell.  Furthermore, the Defendants

allegedly waged an organized campaign to drive Guidance out of business, which included running

a marketing campaign that involved falsely representing to actual and potential Guidance customers

that Guidance was no longer able to supply endodontic files.  Based on these three categories of conduct, Guidance filed this suit.

## PROCEDURAL BACKGROUND

On November 21, 2008, Guidance filed a Verified Complaint and Demand for Jury Trial. In the Complaint, Guidance made seven claims for relief: (i) breach of contract based on the Defendants' refusal to supply obturators, see Complaint ¶¶ 158-68, at 30-31; (ii) breach of contract based on the Defendants' refusal to supply endodontic files, see Complaint ¶¶ 169-79, at 31-32; (iii) breach of the implied covenant of good faith and fair dealing, see Complaint ¶¶ 180-87, at 32-33; (iv) violation of the Delaware Deceptive Trade Practices Act, see Complaint ¶¶ 188-97, at 33-34; (v) violation of the NMUPA, see Complaint ¶¶ 198-207, at 34-35; (vi) violation of § 43(a)(1)(B) of the Lanham Act, see Complaint ¶¶ 208-16, at 35-36; and (vii) tortious interference with existing and prospective contractual relations, see Complaint ¶¶ 217-26, at 36-37.  On the way to trial, the Court dismissed several of these claims.

1.    **The Jury's Verdict and the Court's Judgment.**

The Court held a three-week jury trial from September 21, 2009 through October 9, 2009. See Clerk's Minutes Before the Honorable James O Browning at 1, filed September 21, 2009 (Doc. 439).  On Wednesday, October 7, 2009, the Court read the instructions to the jury.  See id. at 40.  Those instructions included Guidance's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the NMUPA, and violation of the Lanham Act. See Court's Final Jury Instructions (Given), Instruction No. 18, at 18, filed October 8, 2009 (Doc. 430).  The Court had dismissed the other claims before trial.

The jury deliberated for approximately two days.  On October 9, 2009, the jury returned a verdict largely in favor of Guidance.  The jury found that the Defendants breached the Supply

-5-

Agreement with regard to its failure to supply obturators and its failure to produce the V2 file, and found that breach caused Guidance damages. <u>See</u> Verdict Form ¶¶ 2-4, at 2, filed October 9, 2009 (Doc. 441). The jury also found that the Defendants breached the implied covenant of good faith and fair dealing and violated the NMUPA, and found that both infractions caused damages to Guidance. <u>See</u> <u>id.</u> ¶¶ 5-12, at 2-3. The jury awarded Guidance $500,000.00 in compensatory damages for past harm caused by the breach of contract related to the V2, and $3,580,000.00 in future damages related to that breach. <u>See</u> Verdict Form ¶¶ 15-16, at 4. The jury also found that Guidance was entitled to nominal damages of $200,000.00 for the Defendants' unlawful conduct. <u>See</u> Verdict Form ¶¶ 17-21, at 4-5.[2] Finally, based on the breach of the implied covenant and violation of the NMUPA, the jury awarded Guidance punitive damages of $40,000,000.00. <u>See</u> Verdict Form ¶¶ 22-23, at 5-6.

The jury did not, however, completely absolve Guidance of fault. It found that Guidance breached the Supply Agreement and willfully engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125. <u>See</u> Verdict Form ¶¶ 24-27, at 6-7. As a result, the jury awarded the Defendants $93,000.00 in compensatory damages. <u>See</u> <u>id.</u> ¶ 35, at 8.

On October 22, 2009, Guidance filed a motion asking the Court to enter a final judgment in conformity with the jury's verdict. <u>See</u> Motion for Entry of Final Judgment, filed October 22, 2009 (Doc. 450). The Court granted the motion in part, <u>see</u> Order, filed March 31, 2009 (Doc. 537), and entered a judgment similar to the judgment that Guidance sought, <u>see</u> Final Judgment, filed March 31, 2010 (Doc. 538).

---

[2] The Court appreciates the apparent internal contradiction of an award of $200,000.00 in nominal damages.

2.    **The Motion and Arguments**.

As part of the Defendants' multi-faceted strategy to avoid the jury's $40,000,000.00 punitive damages verdict, the Defendants assail the validity of the verdict and judgment regarding Guidance's NMUPA claim.[3]  The Defendants put forth three reason why the Court should set aside the jury's verdict on Guidance's NMUPA claim, and either grant the Defendants a new trial or enter judgment in the Defendants' favor on the NMUPA claim.  See Motion at 1.  First, the Defendants assert that the Court should set aside the NMUPA verdict because Guidance failed to establish an essential element of the claim: that the misrepresentations or omissions be of the type that "may, tends to or does deceive or mislead any person."  Motion at 2 (quoting NMSA 1978, § 57-12-2C).  The Defendants focus solely on a pair of letters from representatives of Dentsply and TDP that accused Guidance of violating the Supply Agreement, and argue that those letters could not possibly be of the type that may, tends to, or does deceive or mislead any person.  See Motion at 2-5.  They also argue that Guidance's response to the letters demonstrates that Guidance was not mislead by them, because Guidance disputed the allegations found within them.  See Motion at 5-6.

_____

[3] On October 30, 2009, the Defendants filed Dentsply/TDP's Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict.  See Doc. 454 (asking the Court to set aside the punitive damages award).  Although not directly related to the punitive-damages award, on November 9, 2009, the Defendants filed Dentsply/TDP's Motion to Vacate the Jury's Award of Future Damages for Breach of Contract and to Enter Judgment as a Matter of Law on the Future Damages Award.  See Doc. 459 (arguing for a reduction in compensatory damages, which would affect the reasonableness of the award of punitive damages).  On February 10, 2010, they filed Dentsply/TDP's Motion for New Trial Due to Guidance's Prejudicial Mid-Trial Switch in Position on Whether the V2 is a "New Product" and Error in Jury Instruction 21.  Doc. 502 (asking the Court to vacate the jury verdict and order a new trial based in part on an allegedly erroneous jury instruction).  On April 28, 2010, they filed Dentsply/TDP's Motion for New Trial Based on the Punitive Damages Limiting Instruction.  See Doc. 547 (asking the Court to set aside the punitive damages award and order a new trial based on an allegedly erroneous jury instruction).  Also on April 28, 2010, they filed Dentsply/TDP's Motion for Remittitur, or, in the Alternative, for New Trial Under Rule 59.  See Doc. 549 (seeking remittitur of jury's punitive damages verdict or a new trial).

Second, the Defendants insist that Guidance failed to provide it with sufficient notice of the particular theory of the NMUPA claim which Guidance planned to assert -- that the Defendants failed to deliver the quality or quantity of goods contracted for -- in advance of trial, and that the Court should therefore forbid Guidance from recovering under it.  See Motion at 7-12.  They insist that Guidance failed to present the NMUPA theory it presented to the jury in either its Complaint or in the Pretrial Order.  See Motion at 7-9.  They then argue that Guidance's discovery responses failed to adequately put the Defendants on notice of this theory.  See id. at 9-12.

Third, the Defendants argue that the Court should change its choice-of-law findings because Guidance was barred from proving actual damages in connection with its NMUPA claim.  See Motion at 12.  Because New Mexico applies the doctrine of *lex loci delicti commissi* -- the law of the place where the wrong occurred -- and because any lost sales by Guidance occurred in New Mexico, the Court previously concluded that New Mexico law would apply to Guidance's NMUPA claim.  See Memorandum Opinion and Order at 20-22, filed September 8, 2009 (Doc. 303).  The Defendants argue that, because the Court prohibited Guidance from recovering actual damages in connection with the NMUPA claim, there is no evidence that harm occurred in New Mexico, and thus the basis for applying New Mexico law has been undermined.  See Motion at 12-13.  The Defendants thus conclude that, because there is no basis for allowing the claim to continue under New Mexico law, and the NMUPA does not exist under any other jurisdiction's law, the Court should set aside the verdict as to the NMUPA claim.  See Motion at 13-14.[4]

---

[4] The Defendants recommend that, if the Court finds that Guidance could not have succeeded on an NMUPA claim under NMSA 1978, § 57-12-2D(17), but rejects the Defendants' choice-of-law argument, the Court should order a new trial, because it is impossible to determine whether the jury found the Defendants liable for a violation of § 57-12-2D(8) and § 57-12-2D(17), or only for a violation of § 57-12-2D(17).  See Motion at 14 n.10.

Guidance opposes all of the Defendants arguments and seeks to preserve its $40,000,000.00 verdict. Guidance first argues that the Defendants have failed to preserve their objection to the Court's submission of the NMUPA instructions and questions to the jury. See Guidance's Response to "Dentsply/TDP's Motion to Set Aside the UPA Verdict and Enter Judgment as a Matter of Law or Order New Trial" [Doc. 503] at 2, filed February 24, 2010 (Doc. 508)("Response"). It asserts that the proper procedural vehicle to seek to set aside the verdict is a motion under rule 50(b) of the Federal Rules of Civil Procedure, that a prerequisite to a rule 50(b) motion to set aside the verdict is a rule 50(a) motion for directed verdict at trial, and that the Defendants failed to make a rule 50(a) motion with sufficient specificity to preserve this issue for a rule 50(b) motion. See Response at 2.

Next, Guidance argues that the Defendants are attempting to graft onto New Mexico law a requirement that a NMUPA plaintiff must allege the subsections of § 57-12-2D on which he or she relies. See Response at 3-4. Guidance asserts that this construction of the NMUPA is erroneous because those subsections do not set forth separate claims -- there is only one claim: violation of the NMUPA -- but rather set forth a non-exhaustive list of conduct which might, independently, constitute a violation of the NMUPA. See id. Moreover, Guidance contends the Defendants' arguments at this point are contrary to their own proposed jury instruction, and, if the Court committed any error, it was one the Defendants invited. See id. at 3 & n.1.

With respect to the Defendants' sufficiency-of-the-evidence argument, Guidance insists it had plenty of evidence. It first asserts that Guidance provided evidence that the letters in which the Defendants accused Guidance of breaching the Supply Agreement was a pretext for stopping Guidance's supply of products, and that the Defendants' true motivation was to keep Guidance from grabbing a larger share of the market by selling at reduced prices. See Response at 5-6. It points out that the NMUPA does not require that Guidance be deceived, but only that the communication

be one that may or tends to deceive.  See id. at 7.  It argues that there was plenty of evidence of an

aggressive marketing campaign, including false and misleading statements to Guidance's customers,

which is sufficient to satisfy the NMUPA's requirements.  See id. at 9-10.[5]  Finally, Guidance argues

that the refusal to supply the V2 file on the pretextual basis that Guidance was supposed to provide

design drawings would also support liability under the quality-or-quantity theory of NMUPA

liability.  See Response at 12-13.

Guidance responds to the Defendants' notice theory by arguing that the factual allegations

in the Complaint and the Pretrial Order gave the Defendants adequate notice of Guidance's quality-

or-quantity theory of NMUPA liability.  See Response at 14-15.[6]  Guidance asserts that the

Defendants are ignoring portions of those documents that gave more detail regarding Guidance's

NMUPA claim.  See Response at 15-16.  Guidance also attacks the Defendants' contention that

Guidance failed to notify the Defendants of the quality-or-quantity theory in the response to

discovery requests because the Defendants could not show the Court any discovery request in which

the Defendants asked Guidance about its NMUPA claims.  See Response at 17-20.

---

[5] Guidance does not appear to challenge the Defendants' contention that the connection between the negative marketing campaign and the Defendants' failure to supply Guidance with products is indirect.  The Court notes that, rather than one of these acts causing the other, both were allegedly conduct undertaken to put Guidance out of business.  Guidance argues that the NMUPA allows for such an indirect  relationship and that the statements to Guidance customers were made "in conjunction with" the Defendants' refusal to supply the products.  Response at 11 (quoting Diversey Corp. v. Chem-Source, Inc., 125 N.M. 748, 754, 965 P.3d 332, 338 (Ct. App. 1998)).  It further argues that the negative marketing campaign and false statements to customers "provide a strong basis for imposing liability under 57-12-2(D)(8)."  Response at 11.  The Court agrees with this rationale.

[6] Guidance first attacks the Defendants' request for judgment in their favor based on this issue, asserting that the Defendants cannot receive that remedy because the arguments that the Defendants raise are unsuitable for a rule 50(b) motion and, "[t]herefore, Defendants are not entitled to have 'judgment entered for [themselves]' as they request in their Motion."  Response at 13.

Finally, in regard to the Defendants' argument that New Mexico law no longer applies because Guidance did not recover actual damages, Guidance first argues that the issue is waived because the Defendants first raised the argument in a footnote in one of their post-trial motions.  See Response at 20 (citing Doc. 454, at 9 n.7).  With respect to the merits of the Defendants' contention, Guidance argues that the Court never determined that Guidance did not suffer damages, but only that Guidance had not quantified those damages and thus would not be allowed to recover them.  See Response at 21.  It next asserts that, according to the jury's verdict, the Defendants' NMUPA violation harmed Guidance.  See id.  Next, Guidance argues that the jury's and the Court's award of nominal damages is sufficient to symbolize a finding that Guidance was harmed and thus sufficient to continue to hold that New Mexico is the *lex loci delicti commissi* of the NMUPA claim. See Response at 21.  Finally, Guidance insists that it has suffered attorneys' fees in defense of this suit, all of which it incurred in New Mexico and which are recoverable under the NMUPA; it argues that those attorneys' fees could constitute the cognizable harm that would justify application of New Mexico law in this case.  See Response at 22.

### 3.    Arguments at the Hearing.

At the hearing on this motion, R. Ted Cruz, the Defendants' attorney, first argued that the sole predicates upon which Guidance's NMUPA claim is premised are the letters that Newell and Addison sent to Guidance.  See Transcript of Hearing at 246:12-247:13 (taken March 23, 2010) ("Tr.")(Cruz).  Mr. Cruz argued that letters of this sort, and these letters in particular, could not be of the type that tends to or does deceive.  See Tr. at 247:14-252:1 (Cruz).  He also reminded the Court that the jury found Guidance breached the Supply Agreement and engaged in false advertising, which was the same wrong of which those letters accused Guidance.  See Tr. at 248:20-250:15 (Cruz).  Mr. Cruz reiterated his arguments that Guidance gave insufficient notice of its intent

to proceed on this quality-or-quantity theory, see Tr. at 252:2-256:10 (Cruz),[7] and that Guidance's inability to prove actual harm arising from the NMUPA violation means that New Mexico law does not apply and that the Court should dismiss the NMUPA claim as a matter of law, see Tr. at 256:11-259:7 (Cruz).

Mr. Cruz predicted that Guidance's initial argument in response to this motion would be that the Defendants failed to properly preserve the objection for post-trial review. He thus addressed the point at which he believed the Defendants successfully preserved the objections. See Tr. at 259:8-262:22 (Cruz). He identified two points: (i) in the Defendants' October 1, 2009 motion for directed verdict; and (ii) in an October 4, 2009 letter to the Court seeking reconsideration of an oral ruling. See Tr. at 259:8-262:22 (Cruz).

The Court pressed Mr. Cruz whether a jury might reasonably conclude the Newell and Addison letters were of a type that may or tended to deceive or mislead if the jury concluded that they were a pretext for a predatory move to control the marketplace. Mr. Cruz took the position that it is irrelevant what the Defendants' subjective intent was in sending those letters; because the letters' content was true, there can be no NMUPA liability. See Tr. at 264:15-267:18 (Cruz). The Court then pressed further, asking whether, in Mr. Cruz' view, a reasonable jury could have perhaps concluded that, although the facts in the letters were true, those facts were not the motivation behind the Defendants' decision to stop supplying Guidance with obturators. Mr. Cruz responded alternatively that: (i) the letters already indicated that Dentsply's and TDP's concerns about

---

[7] Mr. Cruz also conceded that the Defendants never propounded interrogatories directed specifically at Guidance's NMUPA claim, but repeated the Defendants' argument that their interrogatories aimed at Guidance's Delaware Deceptive Trade Practices Act claim, which used the same language as its NMUPA claim, should be presumed to scoop up the NMUPA claim and be considered an interrogatory directed at both claims. See Tr. at 253:24-255:4 (Cruz).

Guidance's conduct was its competitive aspects, and thus that they had an intent to maintain their competitive advantage was obvious and not a source of deception; and (ii) the letter did not expressly state the reason for ceasing their supply of obturators, but says only that Guidance is in breach and that Dentsply and TDP thus believed they were entitled to stop supplying obturators. See Tr. at 267:19-271-4 (Court, Cruz).

As the Court's instructed, Donald DeCandia, Guidance's attorney, first addressed Guidance's argument that the NMUPA theory which went to the jury -- the quality-or-quantity theory -- was fairly in the Pretrial Order. He directed the Court to several paragraphs of Exhibit B to the Pretrial Order, which he stated sufficiently expressed the quality-or-quantity NMUPA theory. See Tr. at 272:25-274:3 (Court, DeCandia)(citing Pretrial Order Exhibit B ¶¶ 21-25, at 7, ¶¶ 37-39, at 9-10, ¶ 41, at 10, ¶¶ 50-59, at 12-13, ¶¶ 72-74, at 14-15, ¶¶ 86-90, at 16-17, ¶¶ 179-97, at 28-31, filed October 9, 2009 (Doc. 434-1)). He asserted that Guidance had several bases for imposition of punitive damages, so the quality-or-quantity NMUPA violation is not the sole punitive damages predicate. See Tr. at 274:12-24 (DeCandia). He then argued that the quality-or-quantity NMUPA theory is not a separate claim, but rather is a separate basis for finding NMUPA liability, and that the jury found that Guidance had met its burden with respect to each of the four enumerated elements of a NMUPA claim. See id. at 274:25-276:6 (DeCandia).

Mr. DeCandia then sought to debunk the Defendants' preservation arguments by showing that the portions of the transcript that the Defendants' cited do not discuss the issue that they now seek to raise by post-trial motion. See id. at 276:7-282:6 (Court, DeCandia). He then made several substantive arguments: (i) that the pretextual nature of the Newell and Addison letters tended to deceive, because they appeared to describe the reason for Dentsply's and TDP's decision to cease providing Guidance with obturators, but that reason was disingenuous; (ii) that the communications

-13-

describing the purported reason Dentsply and TDP refused to produce the V2 file was also deceptive and could provide a predicate for NMUPA liability; and (iii) that the NMUPA claim was also predicated on the statements made to Guidance customers. <u>See</u> Tr. at 282:7-284:14 (DeCandia). Mr. DeCandia spent the remainder of argument rebutting arguments that Mr. Cruz made. <u>See</u> <u>id.</u> at 284:15-288:7 (DeCandia).

## <u>RELEVANT LAW REGARDING RULE 50</u>

Rule 50 presents two ways a party may secure a judgment in his or her favor after a trial has begun. Rule 50(a) allows a movant to, in effect, bring a motion for summary judgment on the trial record; such motions raise a legal issue of the sufficiency of the non-moving-party's evidence as to a particular issue. Rule 50(b) allows a movant to attack the sufficiency of the evidence after the trial has ended.

### 1. **<u>Rule 50(a)</u>**.

Judgment as a matter of law is proper where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). This standard for a directed verdict mirrors the standard for summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250 (1986); <u>Wiles v. Michelin N. Am., Inc.</u>, 173 F.3d 1297, 1303 (10th Cir. 1999); <u>Morales v. E.D. Etnyre & Co.</u>, 382 F. Supp. 2d 1278, 1280-81 (D.N.M. 2005)(Browning, J.)("This [rule 50(a)] standard is identical to that the court must employ when ruling on motions for summary judgment under rule 56."). A court may grant judgment as a matter of law, however, even though it has denied summary judgment, because the parties have been able to address all relevant, available evidence. <u>See</u> <u>Lee v. Glassing</u>, 51 Fed. Appx. 31, 32 (2d Cir. 2002).

In determining whether to grant judgment as a matter of law, a court may not weigh the

evidence or make its own credibility determination, see Shaw v. AAA Eng'g. & Drafting, 213 F.3d 519, 529 (10th Cir. 2000), and must draw all reasonable inferences in favor of the nonmoving party, see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  Such a judgment is warranted if the evidence permits only one rational conclusion.  See Crumpacker v. Kan. Dep't of Human Resources, 474 F.3d 747, 751 (10th Cir. 2007).  In other words, "[t]he question is not whether there is literally no evidence supporting the [nonmoving] party . . . but whether there is evidence upon which the jury could properly find [for that party]."  Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp., 315 F.3d 1271, 1278 (10th Cir. 2003)(some alterations in original); Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d at 1280-81 ("If . . . the evidence points but one way and is susceptible to no reasonable inferences that support the opposing party's position, the court should grant judgment as a matter of law.").

Moreover, rule 50(a) "expressly requires a motion for a directed verdict to 'state the specific grounds therefor.'" First Sec. Bank of Beaver v. Taylor, 964 F.2d 1053, 1056 (10th Cir. 1992).  On the other hand, "[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." United States v. Fenix & Scisson, Inc., 360 F.2d 260, 266 (10th Cir. 1966).  See First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1056.  "When a movant fails to state the specific grounds for its [rule 50(a)] motion, our case law requires the moving party to demonstrate the trial court was aware of the moving party's position." First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1056 (holding that an objection to the sufficiency of the evidence failed to inform the trial judge of the party's objection to the uncertainty or enforceability of an oral agreement).

**2.     Rule 50(b).**

"Rule 50(b) . . . sets forth the procedural requirements for renewing a sufficiency of the

evidence challenge after the jury verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400 (2006).  The rule states:

> **Renewing the Motion After Trial; Alternative Motion for a New Trial.**  If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  Much like a rule 50(a) motion, "[a] renewed motion for judgment as a matter of law under Rule 50(b) . . . must state the grounds on which it was made."  9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 604-05 (3d ed. 2008).

The standard for ruling on a rule 50(b) motion is similar to that for ruling on a rule 50(a) motion -- whether there was sufficient evidence upon which a reasonable jury could have arrived at the verdict that the jury returned.  See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009)("A party is entitled to JMOL only if the court concludes that 'all of the evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the controlling law.'")(quoting Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d 1260, 1269 (10th Cir. 2008)).  "In ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it."  Fed. R. Civ. P. 50(b) advisory committee's note.  See Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'").

-16-

The court, however, much like in ruling on a motion for summary judgment, must draw all reasonable inferences in favor of the non-moving party.  See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d at 1244 ("[W]e . . . will reverse the district court's denial of the motion for JMOL 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'")(quoting Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir. 2004)); Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269.  It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  Hysten v. Burlington Northern Santa Fe Ry. Co., 530 F.3d at 1269.

A prerequisite to a rule 50(b) motion, and one implicit in its nature as a renewed motion for judgment as a matter of law, is that the moving party have made a rule 50(a) motion for judgment as a matter of law during trial, and that the party raise in the rule 50(a) motion all issues it seeks to raise in the subsequent rule 50(b) motion.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009)("Kerr-McGee did not assert these arguments in its Rule 50(a) motion at the close of Mark's case-in-chief, and is thus precluded from relying on them as a basis for Rule 50(b) relief."); Marshall v. Columbia Lea Regional Hosp., 474 F.3d 733, 738 (10th Cir. 2007)(noting that raising a particular defense in a "pre-verdict Rule 50(a) motion . . . is a prerequisite to a post-verdict motion under Rule 50(b)."); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir. 2000)("[M]erely moving for directed verdict is not sufficient to preserve any and all issues that could have been, but were not raised in the directed verdict motion."); First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057 ("[A] party is precluded from relying upon grounds in a [rule 50(b)] motion for judgment notwithstanding the verdict that were not previously raised in support of the [rule 50(a)] motion for a directed verdict.")(citing Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 n.2 (10th Cir. 1987)); 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 603-04 (3d

ed. 2008)("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."); id. ("[T]he case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion.").  The advisory committee notes to the 1991 amendment state that "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."  Fed. R. Civ. P. 50 advisory committee's note (citing Kutner Buick, Inc. v. Am. Motors Corp., 848 F.2d 614 (3d Cir. 1989)).[8]

Finally, "Rule 50(b) allows a motion for a new trial under Rule 59 to be joined in the alternative with a renewed motion for judgment as a matter of law; subdivisions (c) and (d) make elaborate provision for when the two motions are made in the alternative."  9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2521, at 222 (3d ed. 2008).  The rule states: "[T]he movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  Even if no rule 50(a) motion was made and therefore the court cannot grant a rule 50(b) motion for judgment as a matter of law, the court is still permitted to entertain a rule 59 motion for new trial on the basis that the verdict was based on a quantum of evidence that is insufficient as a matter of law.  See Fed. R. Civ. P. 59.  As Professors

---

[8] The Advisory Committee reiterated this premise in its notes regarding the 2006 amendments to rule 50(b).  The Committee stated:

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.  The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.  The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Fed. R. Civ. P. 50 advisory committee's note.

Charles Wright and Arthur Miller state:

> [I]f the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial.

9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 604 (3d ed. 2008).

## MOTIONS FOR NEW TRIAL UNDER RULE 59

Rule 59 governs motions for new trial.  That rule states that, after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  Case law has fleshed out the rule.  Seventy years ago, the Supreme Court of the United States determined that

> [t]he motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).  Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights."  Henning v. Union Pacif. R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008)(quoting Sanjuan v. IBP, Inc., 160 F.3d 1291, 1297 (10th Cir. 1998)).

Although motions for a new trial are generally committed to a Court's discretion, they are disfavored and should be granted with caution.  See Richins v. Deere and Co., 231 F.R.D. 623, 625 (D.N.M. 2004)(Browning, J.).  "In considering a motion for a new trial on the grounds of prejudicial error, the alleged trial court errors must be clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties."  Atencio v. City of Albuquerque, 911 F. Supp. 1433,

-19-

1437 (D.N.M. 1995)(Vazquez, J.)(quoting Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148-49 (10th Cir. 1978), cert. denied, 439 U.S. 862 (1978)).  The party asserting the error bears the burden of showing clear error and prejudice to substantial rights.  See Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998); United States v. Mitchell, 113 F.3d 1528, 1532 (10th Cir. 1997); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 (10th Cir. 1985); Atencio v. City of Albuquerque, 911 F. Supp. at 1437.  Furthermore, similar to the rule 50(b) motion, a party must lay the necessary predicate make an to a motion for new trial during the trial.  "[A] new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result."  11 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2805, 57-58 (2d ed. 1995).  See Cottman v. Aurora Pub. Schs., 85 Fed. Appx. 83, 88 (10th Cir. 2003)(affirming a district court's rejection of a motion for new trial where the movant "had not objected at trial . . . nor 'shown that the fundamental fairness of the trial was affected by the proceedings.'"); Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619 (5th Cir. 1988)(reversing the district court's conditional grant of a new trial where movant waived argument by failing to object at trial).

## CHOICE-OF-LAW

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005).  The first step in a New Mexico choice-of-law analysis is to characterize the claim by "area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue."  Terrazas v. Garland & Loman, Inc., 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006).  There are only

a few categories within which claims might fall -- "[t]ort cases, i.e. all 'civil wrongs,' are one class;

contracts, i.e., every kind of enforceable promise, is another single class."   James Audley

McLaughlin, Conflict of Laws: the Choice of Law Lex Loci Doctrine, the Beguiling Appeal of a

Dead Tradition, Part One, 93 W. Va. L. Rev. 957, 989 (1991)(describing the categories as "tort,

contract, or some other").

The Court concluded in its September 8, 2009 Memorandum Opinion and Order that

Guidance's NMUPA claim was a statutory tort and thus applied New Mexico's choice-of-law rule

for tort claims.   See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138,

1150-51 (D.N.M. 2009)(Browning, J.).   The Court also concluded that New Mexico applies the rule

of lex loci delicti commissi -- the law of the place where the wrong occurred -- to tort claims.   See

id. at 1151 (citing Torres v. State, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995), and Terrazas v.

Garland & Loman, Inc., 140 N.M. at 296, 142 P.3d at 377).   The lex loci delicti rule defines the state

where the wrong occurred as "the state where the last event necessary to make an actor liable for

an alleged tort takes place."   Zamora v. Smalley, 68 N.M. 45, 47, 358 P.2d 362, 363 (1961);

Restatement (First) Conflicts of Law § 377 (1934).   This rule generally means the court applies the

law of the place where the legal consequences -- the legal injury -- occurred.   See First Nat'l Bank

in Albuquerque v. Benson, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (Ct. App. 1976)(referring to the

rule as requiring application of "the law of the State of injury"); Restatement (First) Conflicts of

Law § 377, cmt. a (1934).

## RELEVANT LAW OF THE NMUPA

The NMUPA makes unlawful any "[u]nfair or deceptive trade practices [or] unconscionable

trade practices in the conduct of any trade or commerce."   NMSA 1978, § 57-12-3.   The NMUPA

defines the term "unfair or deceptive trade practice" as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person[.]

NMSA 1978, § 57-12-2D.[9]  The statute also provides examples of conduct that could potentially violate the NMUPA.  See NMSA 1978, §§ 57-12-2D(1)-(18) (stating that "'unfair or deceptive trade practice' means . . . and includes:")(emphasis added).  See also Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991)("After defining an unfair trade practice, the statute then . . . list[s] examples of conduct which may constitute an unfair trade practice.").  Relevant to this opinion are the following:

> (8) disparaging the goods, services or business of another by false or misleading representations;
>
> * * * *
>
> (15) stating that a transaction involves rights, remedies or obligations that it does not involve; [and]
>
> * * * *
>
> (17) failure to deliver the quality or quantity of goods or services contracted for[.]

NMSA 1978, § 57-12-2D.[10]

New Mexico law has now established that a claim under the NMUPA has four elements.

First, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or

---

[9] A 2009 amendment replaced the phrase "course of his trade or commerce, which may" with the phrase "course of the person's trade or commerce, that may."  Although the amendment appears to be superficial, the Court quotes the statute as it existed when the challenged conduct occurred.

[10] The 2009 amendment to § 57-12-2D changed the word "failure" in subsection (17) to "failing."  Again, this change appears to be superficial, but the Court quotes the statute as it existed when the challenged conduct occurred.

-22-

misleading. *Second*, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts." *Third*, the conduct complained of must have occurred in the regular course of the represecter's trade or commerce. *Fourth*, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311 (italics added).  See Lohman v. Daimler-Chrysler Corp., 142 N.M. 437, 439, 166 P.3d 1091, 1093 (Ct. App. 2007), cert. denied 141 N.M. 762, 161 P.3d 259 (2007).   "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100-01, 811 P.2d at 1311-12.  Notably, a plaintiff need not prove detrimental reliance upon the defendant's representations.  See Lohman v. Daimler-Chrysler Corp., 142 N.M. at 444, 166 P.3d at 1098; Smoot v. Physicians Life Ins. Co., 135 N.M. 265, 270-71, 87 P.3d 545, 550-51 (Ct. App. 2003).

## ANALYSIS

In this motion for judgment as a matter or law, or, alternatively, motion for new trial, the Defendants advance three arguments why the existing verdict and judgment are improper.  First, they assert Guidance failed to establish that certain representations by the Defendants -- the Newell and Addison letters -- were of a type that "may, tends to, or does deceive or mislead any person." Second, the Defendants contend that Guidance failed to sufficiently inform the Court or the Defendants about its only surviving theory of NMUPA liability -- the Defendants' failure to provide the quality or quantity of goods for which Guidance contracted.  Finally, the Defendants assert that the Court should reconsider finding that New Mexico law applies to Guidance's NMUPA claim because Guidance did not provide evidence of actual damages incurred in New Mexico.  Guidance

resists all three arguments, but first asserts that the Defendants have failed to preserve these arguments for post-judgment review by failing to make a sufficiently specific objection or pre-verdict rule 50(a) motion.  While the Court concludes that the Defendants' objections and 50(a) motion were specific enough to warrant entertaining this motion, the motion fails on its merits.

## I.      THE DEFENDANTS SUCCESSFULLY PRESERVED THEIR NMUPA ISSUES FOR REVIEW.

A sufficiently specific pre-verdict rule 50(a) motion is a prerequisite to any rule 50(b) motion for judgment as a matter of law post-verdict, and the moving party may raise in a rule 50(b) motion only the issues that were raised in the rule 50(a) motion.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762; Marshall v. Columbia Lea Regional Hosp., 474 F.3d at 738; United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d at 1229; First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057; Karns v. Emerson Elec. Co., 817 F.2d at 1455 n.2; 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 602-06 (3d ed. 2008).  The same rule applies to a motion for new trial under rule 59.  See Cottman v. Aurora Pub. Schs., 85 Fed. Appx. at 88; Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d at 619; 11 C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 2805, at 57-58 (2d ed. 1995).  Before the Court proceeds to the merits, therefore, it must determine whether the Defendants properly preserved the issues in their motion for post-verdict review.  Although the Defendants could have been substantially more specific than they were, the Court finds that Guidance and the Court were both put adequately on notice by the arguments that the Defendants made.

As Guidance has repeatedly reminded the Court and opposing counsel, there is only one NMUPA claim.  See Response at 11 (noting the Defendants' "erroneous" assumption that the subsections of 57-12-2D are separate claims); Tr. at 274:25-276:6 (DeCandia)("Another issue that

I should clean up right away is the fact that . . . (D)(17) is not itself a separate claim."). That claim, as became more apparent as the trial progressed, was predicated on several theories and on several categories of predicate conduct. The Newell and Addison letters, as the Defendants assert, arguably provide the predicate acts underlying one theory. The alleged false-or-misleading statements to Guidance customers, and the communications demanding that Guidance provide engineering drawings before the Defendants would produce the V2 file, are predicate acts that arguably underlie two other theories. Because Guidance has been so insistent that there is only one NMUPA claim and that multiple theories support that claim, the Court finds that the Defendants' rule 50(a) motion, predicated in part on the argument that Guidance provided insufficient evidence "regarding false or misleading representations" adequately preserves the Defendants' current arguments for review on this rule 50(b)/rule 59 motion. See Dentsply/TDP's Memornadum in Support of Their Motion for Directed Verdict on Counts VI (Lanham Act) and Count V (New Mexico Unfair Practices Act) of Guidance's Complaint at 5, filed October 1, 2009 (Doc. 391)("The evidence submitted by Guidance at trial regarding false or misleading representations is insufficient to support the [NMUPA and Lanham Act] claims.").

Guidance argues to the contrary, insisting that, every time the Defendants argued that Guidance had no evidence of false and/or misleading statements, the Defendants were arguing against a different NMUPA theory. In other words, Guidance argues that the Defendants were asserting that there was insufficient evidence of a false or misleading statement to Guidance's customers, but that the Defendants never specifically argued that there was no evidence of a false or misleading statement from the Defendants to Guidance regarding the Newell and Addison letters. See Response at 2. Guidance has not provided -- and the Court has not found -- any case law requiring such specificity. As the Court found, and as Guidance repeatedly reiterated, there exists

one NMUPA claim, and the Defendants asserted that Guidance had supplied insufficient evidence of a false or misleading representation.  Although Thomas Gulley, the Defendants' attorney, argued only toward the sufficiency of the evidence regarding false or misleading representations made to Guidance customers -- rather than representations made to Guidance -- he was arguing to a specific element of a specific claim of Guidance's Complaint, and the Court finds that to be sufficient to raise an insufficient-evidence argument on that same element of that same claim in this rule 50(b) motion.[11]  See, e.g., Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 72 (1st Cir. 2009)("We begin with the basic principle that the purpose of a Rule 50 motion is to dispose of claims or issues, not legal theories.").

The Court's conclusion is the same with respect to the Defendants' argument that Guidance is not entitled to recover because it proceeded to trial on a theory that was not adequately disclosed. Mr. Gulley addressed the issue during the argument on the Defendants' rule 50(a) motion, and Guidance did not object at that time.   See Transcript of Trial at 247:12-250:23 (taken October 1, 2009)("Oct. 1 Tr.")(Gulley).  Although Mr. Gulley's argument did not explicitly ask the Court to bar Guidance from proceeding on NMUPA theories other than the alleged false and disparaging statements to Guidance customers, the intent was apparent.  The Court also effectively ruled on this objection in its opinion granting in part and denying in part the Defendants' 50(a) motion.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2010 WL 1631498, at *5 (D.N.M. Mar. 26, 2010)(Browning, J.).[12]  Guidance nevertheless argues that this

---

[11] Guidance underscored the correctness of this conclusion when it responded to the merits of the motion by reciting the evidence of all three of the Defendants' predicate acts.  See Response at 9-13.

[12] In reviewing its March 26, 2010 opinion to write this opinion, the Court notes that it made an error in drafting that the parties were kind enough not to bring to its attention.  Where the Court

second issue is unrelated to the sufficiency of the evidence and thus inappropriate for disposition in a rule 50 motion for judgment as a matter of law.  See Response at 13.  Guidance is correct on this point.  See Ruyle v. Continental Oil Co., 44 F.3d 837, 841 (10th Cir. 1994)(noting that rule 50 motions "challenge the sufficiency of the evidence rather than the correctness of questions of law."); Fed. R. Civ. P. 50(a) & (b) (allowing judgment as a matter of law when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue.").  Nevertheless, although Guidance did not object to the Defendants raising this argument during the rule 50(a) motion hearing, the Court will treat this issue as raised in a rule 59(a) motion for new trial rather than as a rule 50(b) renewed motion for judgment as a matter of law.[13]

The Defendants' final argument is also legal in nature, although it has at its roots an

_____

stated "the instances of conduct specified under NMSA 1978, § 57-12-2D appear to be examples of the kind of conduct that can constitute a breach of the implied covenant of good faith and fair dealing," Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2010 WL 1631498, at *5, the Court intended to state: "[T]he instances of conduct specified under NMSA 1978, § 57-12-2D appear to be examples of the kind of conduct that can constitute a violation of the New Mexico UPA."

[13] If the Defendants wanted judgment rendered in their favor on this legal issue, a more appropriate procedural device would have been a motion to reconsider the Court's ruling on the Defendants' objection to allowing Guidance to proceed on a quality-or-quantity theory.  Arguably, a rule 60(b) motion for relief from judgment might also have accomplished the task.  See In re Int'l Fibercom, Inc., 503 F.3d 933, 940-41 (9th Cir. 2007)("[E]rrors of law are cognizable under Rule 60(b).")(quoting Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir. 1982)).  But see Harwood v. Summerville, 92 Fed. Appx. 336, 339 (7th Cir. 2004)("Rule 60(b) cannot be used to correct 'mere legal blunders' that should have been addressed through a timely appeal.").  The Defendants' alternative rule 59 motion for a new trial is also an appropriate device to assert a prejudicial legal error during the course of the trial, see 11 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2805, at 55 (2d ed. 1995)("Any error of law, if prejudicial, is a good ground for a new trial."); Anthony v. Baker, 808 F. Supp. 1523, 1525 (D.Colo. 1992)("A new trial motion may raise errors of law arising out of the giving or refusal of jury instructions."), but such a motion entitles the Defendants only to a new trial and not to judgment in their favor, see Fed. R. Civ. P. 59(a)(1) ("The court may, on motion, grant a new trial on all or some of the issues -- and to any party -- as follows . . . .")(emphasis added).  If these devices did not provide the Defendants the relief they sought, their final recourse would be, and is, through an appeal to the Tenth Circuit.

insufficiency of evidence.  The Defendants propose that, because Guidance provided insufficient evidence of actual damages supporting its NMUPA claim, there is no longer a basis for applying New Mexico law to Guidance's NMUPA claim, and that therefore the Court should dismiss that claim.  While there is an underlying predicate of a lack of evidence, the Court finds that the bulk of the argument regards the legal result of that lack of evidence, and thus the issue is not properly considered part of the Defendants' rule 50(b) motion.  Rather, again, the Court will consider it a question of law that could be raised only as part of the Defendants' motion for new trial.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762 n.4 (construing a party's motion for judgment as a matter of law as a motion for new trial where the district court failed to specify what it considered the motion to be and a rule 50(b) motion would have been inappropriate).

The Defendants failed, however, to properly preserve this issue.  The issue of choice-of-law for Guidance's NMUPA claim has not been raised since the parties' pre-trial motions, and, at that time, the argument presented was that application of the NMUPA when there was no evidence that any of the Defendants' conduct occurred in New Mexico would give the state's law impermissible extraterritorial effect.  See Dentsply/TDP's Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' (Dentsply/TDP's) Motion for Summary Judgment on Counrts IV, V and VI of Plaintiff's Complaint [Doc. 211] at 1-2, filed August 4, 2009 (Doc. 230).  The current motion contains no arguments regarding preservation.  The reply contains only a weak argument in footnote 14.  See Dentsply/TDP's Reply in Support of Their Motion to Set Aside the UPA Verdict and Enter Judgment as a Matter of Law or Order a New Trial at 13 n.14, filed March 3, 2010 (Doc. 518)("Reply").  Similarly, at the hearing, Mr. Cruz concluded his opening argument by addressing how the Defendants preserved the first two of these issues, but did not argue preservation of the third.  See Tr. at 259:19-262:22 (Cruz); id. at 290:16-293:18 (Cruz)(briefly discussing

preservation in his rebuttal argument).

The argument made in the footnote in the Defendants' reply does not show preservation of the choice-of-law argument that the Defendants make in this motion. The two documents that the Defendants call to the Court's attention are a letter from Mr. Gulley to the Court (dated October 7, 2009)(Doc. 416), and the trial transcript for that day. See Reply at 13 n.14. As the footnote indicates, these documents reference only the general argument that Guidance has provided no evidence of an NMUPA violation; it does not resemble the complex choice-of-law argument, based on an insufficiency-of-the-evidence argument, that the Defendants now graft on that simple objection. See Letter from Thomas Gulley to the Court (dated Oct. 7, 2009), filed October 7, 2009 (Doc. 416)(insisting instructions 27 and 28 should be removed "because there has [sic] no evidence to support Guidance's New Mexico Unfair Practices Act claim."); Transcript of Trial at 168:22-169:2 (taken October 7, 2009)(Avitia)("[W]e also object to any of the Lanham Act, UPA and breach of implied covenant of good faith and fair dealing instructions because we don't believe they have any evidence to support this."). These general objections to the sufficiency of the evidence for the entirety of the NMUPA claim, unspecific as to any particular element of that claim, are insufficient to preserve the complex choice-of-law argument the Defendants now put forth. For the Court and Guidance to have meaningfully addressed pre-trial or at trial this new argument, the Defendants would have had to elaborate; this novel and new argument appears to be the creative product of the Defendants' new counsel.[14] The Court will thus consider the Defendants' first two arguments, but

_____

[14] Even if the Defendants had preserved this argument, it would fail on its merits. The Defendants insist that, to justify application of New Mexico law, Guidance must prove actual damages arising from its NMUPA claim. Much like the two parties, the Court has found no New Mexico opinion -- or opinion from any other jurisdiction -- discussing whether nominal damages are sufficient to satisfy the *lex loci delicti commissi* rule and justify application of New Mexico law in this instance. That nominal damages are sufficient, however, is the logical conclusion. As the

Court has stated, the *lex loci delicti* rule requires that New Mexico courts apply the law of the place where the wrong occurred, and law considers the wrong to occur in "the place where . . . the legal consequences occur." Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d at 1151. The Court has also stated the *lex loci delicti* rule demands application of the law of the state where the harm occurred, see 663 F. Supp. 2d at 1152, and the Defendants have referred to the place as the state where "the force impinged upon [the plaintiff's] body," Motion at 12 (alteration in original)(quoting Terrazas v. Garland & Loman, Inc., 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006)). Nominal damages are defined as "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." Black's Law Dictionary at 447 (9th ed. 2009). An award of nominal damages, therefore, indicates that some legal injury has occurred. See Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1228 (10th Cir. 2001)(rejecting the argument that an award of damages showed that the plaintiff suffered no harm, because "nominal damages do not signify a total absence of harm"); Sanchez v. Matta, No. CIV 03-0297 JB/LFG, 2005 WL 2313621, at *3 (D.N.M. July 29, 2005)(Browning, J.)("In numerous cases, the United States Court of Appeals for the Tenth Circuit has affirmed that the court may determine a plaintiff who recovers a nominal damages award to be a prevailing party entitled to an award of attorneys' fees."). Under Guidance's theories, the legal injury occurred in New Mexico, regardless whether it was able to establish the quantity of its financial losses. The Court has recently discussed the distinction between damages and injury/harm under New Mexico law. See Carroll v. Los Alamos Nat'l Sec., LLC, No. CIV 08-0959 JB/ACT, 2010 WL 1381011, at **18-20 (D.N.M. Mar. 20, 2010) (Browning, J.)(holding that New Mexico law does not require a plaintiff to suffer calculable damages to suffer a legal injury). Although Carroll v. Los Alamos National Security, LLC dealt with the distinction between injury and damages in the context of accrual of a cause of action, rather than application of a particular state's law under the *lex loci delicti* rule, the Court believes the Supreme Court of New Mexico would hold likewise in this context. In short, there was evidence of a legal injury occurring in New Mexico, even absent an admissible calculation of damages. See Response Exhibit A, p 9 (electronic-mail message reflecting the Defendants' failure to timely provide Goodis, in New Mexico, with EndoTaper files); id. at p. 44 (letter from Bill Newell to Dr. Charles Goodis representing that the Defendants will cease supplying obturators); Transcript of Trial at 422:2-423:14 (taken September 22, 2009)(Bisceglie, Goodis) (Goodis, a New Mexico resident, testifying about the "devastating" nature of the "financial loss" caused by the Defendants' failure to supply products). From that evidence, the jury found the Defendants violated the NMUPA and that the violation caused Guidance some harm. The jury then awarded Guidance nominal damages for that violation. Even without a quantification of damages, the Court continues to believe application of New Mexico law to Guidance's NMUPA claim is appropriate under the facts of this case. Mr. Cruz' argument that allowing nominal damages to sustain an NMUPA claim would allow plaintiffs to bring consumer protection claims in every state fails. See Tr. at 298:18-299:23 (Cruz). The reason New Mexico choice-of-law rules would apply New Mexico law to this claim is that the legal injury alleged, and of which there was evidence, occurred in New Mexico. If a plaintiff could allege and prove legal injury in every state, he or she could conceivably bring a consumer-protection-act claim under the law of each state. Such a course would probably be unwise and unprofitable, however, as the claims would likely have similar or identical standards and the total damages would still be capped by the one-satisfaction rule, which states that -- aside from punitive

will not consider the third as a viable basis for relief.

## II.    GUIDANCE PROVIDED SUFFICIENT EVIDENCE OF COMMUNICATIONS WHICH "MAY [HAVE], TEND[ED] TO, OR D[ID] DECEIVE OR MISLEAD."

The Defendants' first argument in its rule 50(b) motion is that Guidance provided insufficient evidence of a communication by the Defendants that "may, tends to, or does deceive or mislead any person."  Motion at 2-7.  They insist that Guidance's NMUPA claim must be based upon two letters, sent by Newell and Addison, which informed Guidance that the Defendants believed that Guidance was in violation of the Supply Agreement and federal law, and that the Defendants would cease supplying Guidance with obturators.  The Defendants further argue that those letters, as a matter of law, cannot be communications that "may, tend[] to, or do[] deceive or mislead any person," and therefore the Court should enter judgment for the Defendants as to that claim.  Guidance contends that other misleading and deceptive conduct underlies its NMUPA claim, and that those letters, even if factually true, were misleading and deceptive because they did not state

_____

damages -- a plaintiff cannot recover more in damages than the plaintiff sustained from his or her injury, no matter how many claims or theories of recover the plaintiff brings.  See Chavarria v. Fleetwood Retail Corp., 137 N.M. 783, 789, 115 P.3d 799, 805 (Ct. App. 2005)("Plaintiffs must choose between alternative remedies and are entitled to but one satisfaction for their injuries"), rev'd in part on other grounds, 140 N.M. 478, 143 P.3d 717 (2006);  Kirby v. N.M. State Highway Dept., 97 N.M. 692, 696, 643 P.2d 256, 260 (Ct. App. 1982)("[T]he principle is that there can be but one satisfaction for the same injury[.]")(quoting approvingly Layne v. United States, 460 F.2d 409, 411 (9th Cir. 1972)).  Moreover, to hold that the plaintiff must prove actual damages to be permitted to apply New Mexico law to his or her claim, and thus to bring an NMUPA claim, would be to make actual damages an element of an NMUPA claim, which, at least in the context of recovering statutory damages, it is not.  See Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311; Lohman v. Daimler-Chrysler Corp., 142 N.M. at 446, 166 P.3d at 1100 ("[T]he UPA does not require proof of actual monetary or property loss.")(citing Page & Wirtz Constr. Co. v. Solomon, 110 N.M. 206, 211-12, 794 P.2d 349, 354-55 (1990), and Jones v. Gen. Motors Corp., 124 N.M. 606, 611, 953 P.2d 1104, 1109 (Ct. App. 1998)).  See also Pedroza v. Lomas Auto Mall, Inc., 663 F. Supp. 2d 1123, 1130-35 (D.N.M. 2009)(Browning, J.)("Under the Erie doctrine, the Court must follow the Supreme Court of New Mexico's decision on this topic, and so the Court finds that the Plaintiffs need not prove actual loss, or causation, to recover statutory damages").

the Defendants' true motivation for cutting off Guidance's supply of obturators.  The Court agrees with Guidance on this issue.

### A.   THE JURY COULD REASONABLY HAVE CONCLUDED THAT THE NEWELL AND ADDISON LETTERS WERE PRETEXT.

One element of the NMUPA, and the element that the Defendants are attacking in this rule 50(b) motion, is that the defendant make a "representation . . . of the type that 'may, tends to or does, deceive or mislead any person."  Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311.  The Defendants' argument that the Newell and Addison letters could not be of the type that "may, tend[] to, or do[] deceive or mislead any person," because the allegations therein were true, has some force.  As the Defendants point out, the jury found that Guidance breached the Supply Agreement and violated the Lanham Act with their conduct.  See Verdict Form ¶¶ 24-27, at 6-7. The Defendants argue that, because the statements -- that Guidance violated the NMUPA and the Lanham Act -- were true, they could not possibly deceive or mislead any person as the NMUPA defines those terms.  The Court disagrees.

First, the Court notes that the parties appear to agree that whether a certain act is deceptive or misleading for the purposes of a consumer-protection statute is question of fact that the fact-finder must decide.  Although the Court has found no New Mexico case discussing this issue, the weight of authority from other jurisdictions leans in this direction as well.  See Naples v. Keystone Bldg. & Dev. Corp., 295 Conn. 214, 229, 990 A.2d 326, 338 (2010)("It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier."); Hacker v. Nat'l Coll. of Bus. & Tech., No. 23489, 2010 WL 404844, at *6 (Ct. App. Ohio, Feb. 5, 2010)("Whether any given act or practice may be unfair or deceptive is an issue of fact to be decided from all the relevant facts and circumstances in the particular case.")(citation omitted);

-32-

Fayne v. Vincent, 301 S.W.3d 162, 170 (Tenn. 2009)("Whether a particular act is unfair or deceptive is a question of fact."); Witt v. La Gorce Country Club, Inc., Nos. 3D08-1812, 3D08-1825, 2009 WL 1606437, at *5 (Fla. App. June 10, 2009)("Whether conduct constitutes an unfair or deceptive trade practice is also a question for the fact finder."). But see Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C., 168 Wash. 2d 421, 228 P.3d 1260, 1270 (2010)("Whether an action constitutes an unfair or deceptive practice is a question of law."); Carcano v. JBSS, LLC, 684 S.E.2d 41, 50 (N.C. App. 2009)("Whether an act or practice is unfair or deceptive under this section is a question of law for the court."); Zabin v. Picciotto, 73 Mass. App. Ct. 141, 170, 896 N.E.2d 937, 963-64 (2008)("Whether conduct is unfair or deceptive under G.L. c. 93A is a mixed question of law and fact.  However, unlike some such questions, the fact can be separated from the law, and each subjected to a different standard of review.").  While the Court believes that, in the right circumstances, it could grant judgment as a matter of law on whether a statement is deceptive or misleading, generally the question is a matter of fact, and the Court should not grant judgment as a matter of law unless a reasonable jury could reach only one verdict. Because the Court concludes that this element presents a question of fact, it is concerned only with whether a reasonable jury could have concluded that the Newell and Addison letters "may [have], tend[ed] to or d[id] deceive or mislead any person."

The jury could reasonably have found that the letters were misleading because they appeared to state the reason for withholding obturators from Guidance, and the jury could reasonably have concluded that the reason represented was not the actual reason.  The Defendants' primary defense against the challenged letters being of the type that "may, tends to, or does deceive or mislead any person" is that the letters were not false, and thus could not have misled or deceived.  As the Court suggested at the hearing, however, there was substantial evidence from which the jury could

reasonably conclude that the purported reason that the Defendants cut off the supply of obturators to Guidance was not the actual reason. The Newell letter indicates that the Defendants cut off the supply of obturators because he had heard reports that Guidance had breached the Supply Agreement.[15]  On the other hand, the jury was shown evidence that the Defendants cut off Guidance's product supply because Guidance was undercutting their prices and thereby increasing its market share. See Response at 5-13; Response Exhibit A at p. 7 (electronic-mail chain)("She went on to explain that Dentsply is making all of their files and obturators and will be available at 'half the price'!"); id. (electronic-mail transmission)("Would Chuck [Goodis] be crazy enough to go to market with a low ball NiTi [file] price?"); id. at p. 10 (electronic-mail chain)("How can they sell it at half the price then?  With Densfil, we charge the distributors such a high price for it that they can't sell it cheaper than Thermafil.  How is Guidance able to do it?"), id. at p. 13 (electronic-mail chain)("If price alone is what clinicians want it would be very important for us . . . to know that. . . .  Enclosed is the new Guidance brochure.  Resembles ProTaper's, but claims to be ½ the price....").  One of the Defendants' electronic-mail messages stated:

---

[15] At the hearing, Mr. Cruz argued further that the letters could not be false or misleading because they did not purport to set forth the reason why the Defendants stopped supplying Guidance with obturators. See Tr. at 270:6-271:4 (Cruz). Mr. Cruz is correct that neither Newell nor Addison use the word "because," thereby making an explicit causal connection between the alleged breach of the Supply Agreement and the decision to cut off the supply of obturators.  A reasonable jury could nevertheless conclude that the causal connection would be apparent to a rational reader. Likewise, a reasonable jury could conclude that the writers intended the reader to draw such a connection.  See Letter from Bill Newell to Dr. Charles Goodis (dated September 25, 2008), filed February 24, 2010 (Doc. 508-2, p. 43)(marked Plaintiff's Exhibit 729)("Please advise us immediately in writing that you will cease and desist from all of this conduct.  Until we receive such confirmation, it is our intention to discontinue the supply of the obturator product."); Letter from Brian Addison to Dr. Charles Goodis (dated September 25, 2008), filed February 24, 2010 (Doc. 508-2, p. 26).  The Court is confident that a reasonable jury could read these letters -- particularly the Newell letter, wherein Newell declares his intent to stop supplying obturators -- and conclude that the letter was intended to convey a causal link between Guidance's alleged breaches of the Supply Agreement and the Defendants' decision to cut off the supply of obturators.

-34-

> I also just received a call . . . saying that this is becoming an issue for his reps.  He said that the price gap is so wide -- about $100.00 cheaper per pack -- that they are being challenged on their credibility for having sold obturators to customers at our higher price for so many years.

Response Exhibit A pp. 15 (electronic-mail chain).  See id. at p. 33 (electronic-mail transmission) ("Making [sales] quota is tough this year already, and now our customers can buy cheaper through the Dentsply back door."); id. at pp. 39-42 (North American NiTi Strategic Assessment).  If the jury concluded that the Defendants stopped supplying obturators because Guidance was becoming a threat to its market share, rather than because Guidance breached the Supply Agreement, it would not be unreasonable for the jury to consider the Newell letter to be a representation that "may [have], tend[ed] to or d[id] deceive or mislead" Guidance.[16]

Moreover, Guidance provided evidence that the Newell and Addison letters misled Goodis.  The Defendants argue that the evidence shows that the letters did not deceive or mislead Goodis, see Motion at 5-7, but the Court believes the evidence shows the contrary.  For example, Goodis' response to the Newell letter stated that Goodis had "investigated the allegations in [the Newell] letter [and] reaffirmed that Guidance's sales representatives are not [breaching the Supply Agreement]."  Letter from Dr. Charles Goodis to Bill Newell (dated October 1, 2008), filed February 24, 2010 (Doc. 508-2, pp. 29).  Although Goodis stated that he "dispute[s] [Newell's]

---

[16] Guidance also asserts that there is one statement in the Newell letter that is false -- that Newell had "heard many reports from the field regarding recent activities of Guidance."  Newell Letter (Doc. 508-2, pp. 43).  Guidance asserts that the obvious inference is that Newell had heard reports "from the field" that Guidance had been breaching the Supply Agreement in the ways described in the letter, and yet the Defendants provided no evidence that Newell heard any such reports.  See Response at 6 (citing Exhibit A, pp. 34-38).  So far as the Court has noted, the Defendants do not contest this assertion, although Mr. Cruz argued that Guidance had not pointed to any particular statement in the letters that was false.  See Tr. at 298:3-14 (Cruz).  This fact would provide another reason to conclude that the Newell letter could constitute a communication that "may, tends to or does deceive or mislead any person."

allegation that [Guidance is in] default of the Agreement," that Goodis investigated Newell's allegations indicates that he believed that the Defendants ceased the supply of products to Guidance for the reasons stated in the letters.  See id. ("In an abundance of caution, Guidance will also be revising its current advertising materials.").   Another letter dated October 7, 2008, sent by an attorney on Guidance's behalf, further cements this conclusion.   This evidence -- that Guidance hired an attorney to investigate the allegation's in the Newell and Addison letters -- supports a reasonable conclusion that Guidance believed that the Defendants' decision to cease supplying obturators was because the Defendants thought Guidance was in breach of the Supply Agreement. See Letter from attorney Jeffrey Ginsberg to Brian Addison (dated October 7, 2008), filed February 24, 2010 (Doc. 508-2, pp. 31).  A reasonable jury who believed the Defendants ceased supplying obturators solely or primarily because Guidance was a threat to the Defendants' market share could also logically and reasonably find from this evidence that Goodis believed these letters, which represented that the Defendants' motivation was to dissuade Guidance from conduct that violated the Supply Agreement.

Moreover, to require the communication to be false to justify imposition of liability under the NMUPA would force the Court to read words in the statute as surplusage, which New Mexico law disfavors.  See Benny v. Moberg Welding, 142 N.M. 501, 504, 167 P.3d 949, 952 (Ct. App. 2007)(rejecting an interpretation that would render a statute's "provisions surplusage" because such a construction would be "contrary to ordinary rules of statutory construction"); Souter v. Ancae Heating & Air Conditioning, 132 N.M. 608, 612, 52 P.3d 980, 984 (Ct. App. 2002)("We will reject an interpretation of a statute that makes part of it surplusage[.]"); State v. Johnson, 124 N.M. 647, 653, 954 P.2d 79, 85 (Ct. App. 1997)("We have always rejected an interpretation of a statute that would make parts of it mere surplusage or meaningless.").  A communication that constitutes a

violation of the NMUPA must be one that "may, tends to or does deceive or mislead any person." NMSA 57-12-2D.  The New Mexico legislature included two categories of wrongful conduct -- deception and misleading.  The two terms have different meanings.  If the New Mexico legislature had intended to include within the NMUPA's scope only statements that were false, it could have used the phrase "may, tends to or does deceive any person."  The American Heritage Dictionary of the English Language at 482 (3d ed. 1992) ("**de•ceive** . . . To cause to believe what is not true . . . .").  Instead, it included also the broader term "mislead."  The American Heritage Dictionary of the English Language at 1155 ("**mis•lead** . . . **1.** To lead in the wrong direction. **2.** To lead into error of thought or action . . . .").[17]  The term mislead leaves room for predicating a NMUPA claim on the selective disclosure of truth in an effort to "lead [the plaintiff] in the wrong direction," such as the Newell and Addison letters which the jury might reasonably have concluded set forth a mere pretext for cutting Guidance's supply of obturators.[18]  The Court concludes that it is not inherently

---

[17] It is possible to consider "deceive" and "mislead" to be essentially synonymous.  Compare The American Heritage Dictionary of the English Language at 482 with id. at 1155.  To do so, however, would be to read one or the other to be a nullity, which, as the Court explains, is disfavored under New Mexico rules of statutory interpretation.  See Benny v. Moberg Welding, 142 N.M. at 504, 167 P.3d at 952; Souter v. Ancae Heating & Air Conditioning, 132 N.M. at 611, 52 P.3d at 983; State v. Johnson, 124 N.M. at 653, 954 P.2d at 85.

[18] At the hearing, Mr. Cruz argued that the term "pretext" was only appropriate where the stated reason is false.  He was adamant that, regardless how much stronger the unspoken motivation may be, if the stated motivation is true, it is not a pretext.  See Tr. at 296:25-298:14 (Cruz).  The Court remains unconvinced that the term is so narrow.  See Black's Law Dictionary at 1307 (9th ed. 2009)("**pretext** . . . A false or weak reason or motive advanced to hide the actual or strong reason or motive.").  There is also substantial case law supporting this definition of pretext in the context of Title VII claims.  See Johnson v. Weld County, Colo., 594 F.3d 1202, 1211 (10th Cir. 2010)("[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief.")(internal alterations omitted); Lee v. Univ. of Colo., 313 Fed. Appx. 171, 177 (10th Cir. 2009)("Pretext may be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence

unreasonable for a jury to conclude that the Defendants were misleading Guidance with Addison and Newell's letters, which indicated that the Defendants were withholding the supply of obturators because Guidance was in violation of the Supply Agreement.

B.  **THE JURY COULD HAVE BASED ITS CONCLUSION ON THE DEFENDANTS' ALLEGED DECEPTIVE MARKETING CAMPAIGN AND/OR THE DEFENDANTS' DEMAND FOR ENGINEERING DRAWINGS.**

Moreover, the jury could reasonably have based its NMUPA verdict on the two other categories of conduct that Guidance sought to prove at trial: (i) that the Defendants insisted on Goodis providing detailed engineering drawings before they would produce the V2 file when this requirement was a pretext for keeping the V2 file off the market; and (ii) that the Defendants' sales force was spreading false or misleading statements to Guidance's customers to compel them to buy the Defendants' products instead of Guidance's.  There was evidence supporting both of these allegations, and it is not clear from the briefing why the Defendants asserted that the NMUPA claim could be premised only upon the Newell and Addison letters.  Guidance argues that these other forms of conduct can constitute the communications that "may, tends to or does deceive or mislead any person."  Response at 4-13.  Guidance asserts that there is plenty of evidence from which a reasonable jury could conclude that the Defendants made the requisite "false or misleading oral or written statement . . . or other representation of any kind" that "may [have], tend[ed] to or d[id] deceive or mislead any person."

The Court discussed the latter basis -- the false and/or misleading statements to Guidance

_____

infer that the employer did not act for the asserted non-discriminatory reasons.")(internal quotations omitted); Esitty v. Utah Transit Auth., 502 F.3d 1215, 1225 (10th Cir. 2007)("A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.")(quoting Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003)).

customers -- in its opinion granting in part and denying in part the Defendants' rule 50(a) motion. The Court need not reiterate the basis upon which it concluded that the jurors could reasonably have found that the Defendants' sales force was making misleading and disparaging statements to Guidance's customers about Guidance going out of business or becoming unable to supply those customers with products. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2010 WL 1631498, at **3-6. See also Response at 9-10 (tracing the evidence that could support this inference in more detail). It also would not have been unreasonable for the jury to conclude that the false or misleading statements were "made in connection with the sale" of endodontic products to Guidance. Guidance put on substantial evidence showing that all of the Defendants' wrongful conduct -- cutting off the supply of obturators, organizing an aggressive marketing campaign that included misrepresenting that Guidance was going out of business or could no longer supply endodontic files, and suddenly demanding detailed engineering drawings before it would produce the V2 file -- were all part of an organized scheme to drive Guidance out of business and keep it from taking a larger market share. See Lohman v. Daimler-Chrysler Corp., 142 N.M. at 442, 166 P.3d at 1096 ("The conjunctive phrase 'in connection with' seems designed to encompass a broad array of commercial relationships."); Diversey Corp. v. Chem-Source, Inc., 125 N.M. at 754, 965 P.3d at 338 (stating that a misrepresentation made "in conjunction with" a failure to deliver the goods promised can support an NMUPA claim).[19] This overarching plot would seem to bridge the gap between the statements

_____

[19] The Defendants cleverly attempt to indelibly link Guidance's NMUPA theory regarding misleading statements to customers to a subsection D(8) theory. See Motion at 12, n.7; NMSA 1978, § 57-12-2D(8)(stating that "disparaging the goods, services or business of another by false or misleading representations" is an action that can violate the NMUPA). They appear to believe that by doing so they can circumvent the Court's ruling on their rule 50(a) motion, i.e., that they can argue that the Court denied the rule 50(a) motion as to the NMUPA claim based upon the disparagement theory only. They seem to believe that the jury's instructions were ambiguous in such a way that it is impossible to determine whether the jury found the Defendants violated the

to Guidance customers and the Defendants' decision to withhold products -- to "fail[] to deliver the quality or quantity of goods or services contracted for."  NMSA 1978, § 57-12-2D(17).

The same conclusion is true of the Defendants' insistence that Guidance provide detailed engineering drawings before they would produce the V2 file.  The demand for engineering-drawings was a part of the overarching plot of which Guidance provided evidence, and that the jury apparently believed, which made the representation occur "in connection with" the sale of the goods.  Guidance provided evidence that the engineering drawings were not necessary to produce the V2 file, and that therefore any communication to Guidance insisting that it provide those drawings before the Defendants produced the V2 would be of a type that "may, tends to or does deceive or mislead."  Response at 12-13 (citing Exhibit A at pp. 5, 20-22, 45); Transcript of Trial at 112:5-115:8 (taken September 29, 2009)(Kelly, Higgins)(Eric Higgins testifying that the engineers rarely look at the engineering drawings because the data sheets, which the Defendants had in their possession, contain all of the information one would normally need to produce a file).  There was also testimony and argument that the requirement for engineering drawings was not mentioned until later in the relationship between the Defendants and Guidance, and that it surfaced at or near the time the Defendants learned that Guidance was selling its products at prices significantly below the

_____

NMUPA on a disparagement theory and a quality-or-quantity theory, or only on a quality-or-quantity theory.  Thus, because the Court cannot determine whether the jury actually found for Guidance on the disparagement theory, it must disregard the verdict as to the NMUPA claim if the jury could not possibly have found for Guidance on the quality-or-quantity theory.  First, the Defendants have made no arguments nor cited any authority that Guidance could not use the disparaging statements to Guidance customers to satisfy the "representations that may, tend to, or do deceive or mislead" element, even under a quality-or-quantity theory.  Moreover, they have not supplied the Court with authority stating that an inability to determine upon which theory the jury based its verdict is the Court's problem -- that it must disregard the verdict rather than assume the jury found for Guidance on both the disparagement and quality-or-quantity theories.  Because the Court ultimately rejects the Defendants' insufficiency-of-the-evidence arguments and denies this motion, the Court need not resolve these legal issues.

Defendants' prices.  It would not be unreasonable for the jury to believe that the Defendants' sudden insistence that Guidance provide engineering drawings was a misleading pretext for further depriving Guidance of products it would otherwise sell to its customers.  Such a pretext, as the Court has discussed, would constitute a representation that "may, tends to or does deceive of mislead."  In short, the Court rejects the Defendants' argument that Guidance provided insufficient evidence for a jury verdict on the fourth element of their NMUPA claim -- evidence that the Defendants made representations of a type that "may, tends to or does deceive or mislead any person."

III.   **THE FACTS UNDERLYING THE CHALLENGED NMUPA THEORY WERE CENTRAL TO THE TRIAL, AND THE DEFENDANTS WERE ADEQUATELY PUT ON NOTICE THAT THOSE FACTS WERE RELEVANT TO THE NMUPA CLAIM.**

The Defendants have not presented any new arguments or evidence regarding the final issue.  The Defendants insist that the Court should not have permitted a NMUPA claim to go to the jury based on the Newell and Addison letters because Guidance did not properly bring that theory to the Defendants' attention in the Complaint, the Pretrial Order, or in response to discovery requests.  Guidance responds that: (i) it need not plead its theories of NMUPA liability explicitly; (ii) the Complaint and the Pretrial Order both include the factual allegations upon which it bases its NMUPA claim, and those are incorporated by reference into the discussion of that claim; and (iii) the Defendants did not send Guidance any interrogatories seeking an exhaustive list of the factual and/or theoretical bases for its NMUPA claim.

First and foremost, the Court has concluded that Guidance provided sufficient evidence from which the jury could have found an NMUPA violation on either a quality-or-quantity theory or a disparaging-statements theory based on the misleading and/or disparaging statements to Guidance's customers.  Based upon that finding, the Court could fairly disregard this argument.  That theory, which Guidance clearly pled in the Complaint and indicated in the Pretrial Order, would be

sufficient, without more, to sustain the jury's NMUPA verdict.

Moreover, with respect to the other two theories, the Court has addressed this issue in its

prior opinion:

> [T]he Court has stated in a prior Memorandum Opinion and Order that the instances of conduct specified under NMSA 1978, § 57-12-2D appear to be examples of the kind of conduct that can constitute a [violation of the NMUPA]. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1145 (D.N.M. 2009) (Browning, J.)("As it has been shown no authority to the contrary, the Court finds that those subsections merely describe examples of conduct that would violate the UPA -- different theories -- and not independent claims."). The Defendants have cited no authority for the notion that a plaintiff must cite to the specific subsection of § 57-12-2D that it alleges the defendant violated. The allegations in the Complaint and any concessions that Guidance made will restrict the conduct that Guidance can allege breached the UPA. Unless the Defendants point the Court to interrogatory responses or other documents constituting an admission that Guidance's UPA claim will involve only certain conduct, Guidance may proceed on conduct that it alleges in the Complaint for which it also provides evidence of all of the statutory elements.

Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2010 WL 1631498, at *5. The Defendants have

provided no sound reason to alter this analysis.

With respect to the Complaint and Pretrial Order, the Court finds that the facts underlying

these theories were sufficiently, if not fully, pled. Although Guidance did not reiterate all three

bases for its NMUPA claim in the paragraphs beneath the heading "FIFTH CLAIM FOR RELIEF

(Violation of the New Mexico Unfair Practices Act, § 57-12-1, et seq.)," it alleged the facts

underlying these two theories in the factual recitation of the Complaint and incorporated those by

reference into Count V. See Complaint ¶¶ 26-29, at 6-7, ¶¶ 47-48, at 10-11, ¶¶ 60-71, at 13-15,

¶¶ 79-88, at 17-19, ¶¶ 92-105, at 19-22; id. ¶ 198, at 34 (incorporating the factual paragraphs). The

Pretrial Order discussed the V2-engineering-drawings and Newell-letter bases for Guidance's

NMUPA claim in its factual statement, as well as through numerous disputed facts that were

incorporated by reference into the Pretrial Order. See Pretrial Order at 4-7 ("As a result of

-42-

Defendant's behavior, Guidance seeks recovery under the following causes of action: . . . (5) violation of the New Mexico Unfair Practices Act."); id. Exhibit B ¶¶ 21-25, at 7, ¶¶ 37-39, at 9-10, ¶ 41, at 10, ¶¶ 50-59, at 12-13, ¶¶ 72-74, at 14-15, ¶¶ 86-90, at 16-17, ¶¶ 179-97, at 28-31.  These facts were also central to the trial and made up the bulk of Guidance's evidence.  The Defendants could not have been caught wholly unaware of them, and, in fact, put up a vigorous defense at trial.  Although Guidance's pleadings were not the model of clarity, the factual allegations are present, and the Defendants were free to seek clarification of Guidance's theories through discovery.

With respect to the Defendants' claim that Guidance failed to disclose its plethora of NMUPA theories in response to discovery requests, the Defendants run into a rather substantial problem: they made no discovery requests aimed at discovering the factual basis of Guidance's NMUPA claim.  Mr. Cruz conceded this omission during oral argument.  See Tr. at 253:24-254:19 (Cruz)("Dentsply made an inadvertent error in propounding interrogatories directed to paragraphs 190 and 191, which are the paragraphs of the Complaint addressed to the Delaware UPA but it did not propound interrogatories directed to paragraphs 200 and 201 which is the New Mexico UPA[.]").  The Defendants' position is that, because paragraphs 190 and 191 of the Complaint, referring to the Delaware Deceptive Trade Practices Act, were identical to paragraphs 200 and 201 of the Complaint, referring to the NMUPA the same underlying conduct must form the basis of both the NMUPA claim and the Delaware DTPA claim.  Therefore, the Defendants insist, the theories that Guidance can pursue under the NMUPA are limited to the conduct that it disclosed to the Defendants in response to the interrogatory regarding the Delaware DTPA.  See Motion at 10-12 & n.6; Reply at 11-13.

The Court finds this logical chain insufficient for two reasons.  First, the Delaware DTPA and the New Mexico UPA are different statutes and have the potential to encompass different

conduct.[20]  The Defendants attempted to pin Guidance down as to the conduct underlying the Delaware DTPA claim, but did not do the same for the NMUPA claim.  Moreover, and more importantly, interrogatories 190 and 191 ask the wrong question.  Those interrogatories ask Guidance to further explain the conduct described specifically in paragraphs 190 and 191.  If the Court were to find that those questions could apply equally to paragraphs 200 and 201 -- which it does not find -- the inquiry is still, essentially, "what do paragraphs 200 and 201 mean?"  The Court has concluded that Guidance can rely on conduct described in the paragraphs incorporated into the NMUPA claim by paragraph 198.  This conclusion means that Guidance was not limited to the conduct described in paragraphs 200 and 201 in formulating its NMUPA theory, so clarifying those paragraphs would not fully resolve the uncertainty about which the Defendants now complain.  A more helpful interrogatory would have asked Guidance to describe in detail the acts or omissions upon which it bases its NMUPA claim.

**IT IS ORDERED** that Dentsply/TDP's Motion to Set Aside the UPA Verdict and Enter Judgment as a Matter of Law or Order a New Trial is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[20] While it is unlikely that Guidance would use the exact same language in paragraphs 190 and 191 as it used in paragraphs 200 and 201, and yet refer to different underlying conduct, it is not impossible that such could be the case.  The apparent problem that the Defendants were having, and which prompted the interrogatories, was that those paragraphs were too vague to properly pin down to what conduct Guidance referred in paragraphs 190 and 191.

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, D.C.

*Attorneys for the Defendants and Counterplaintiffs*