## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

        Plaintiff,

vs.                                                                    No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

        Defendants,

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

        Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

        Counter Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion to Vacate the Jury's Award of Future Damages for Breach of Contract and to Enter Judgment as a Matter of Law on the Future Damages Award, filed November 9, 2009 (Doc. 459). The Court held a hearing on March 22, 2010. The primary issues are: (i) whether the Court should entertain this motion, and, if so, under what procedural device; (ii) whether judicial estoppel bars Plaintiff and Counter-defendant Guidance Endodontics, LLC from seeking future damages; (iii) whether the doctrine of

election of remedies bars Guidance from seeking future damages; and (iv) whether the Court's prior rulings bar Guidance from seeking future damages.  Because the Court finds that Defendants and Counter-plaintiffs Dentsply International, Inc.'s and Tulsa Dental Products, LLC ("TDP")'s arguments in favor of vacating the future-damages verdict do not have a sound basis in the law or in the facts of this case, the Court will deny the motion.

## FACTUAL BACKGROUND

This suit arises from a contract dispute that Guidance, a small endodontic-equipment company, has brought against the Defendants, who were both Guidance's rivals and its suppliers. More background on the lawsuit is set forth in one of the Court's earlier opinions.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 633 F. Supp. 2d 1257, 1260-67 (D.N.M. 2008) (Browning, J.).  The Defendants are manufacturers and suppliers of a variety of endodontic products that compete with Guidance's products, including endodontic obturators, files, and ovens.[1] Guidance and the Defendants were parties to a Manufacturing and Supply Agreement, which came

---

[1] File, obturators, and ovens are all devices that dentists and endodontists use to perform root canal surgery.  Files are small metal drills that cut away the infected part of the tooth.  See Verified Complaint and Demand for Jury Trial ¶ 109, at 22, filed November 21, 2008 (Doc. 1)("Complaint"); Oxford English Dictionary Online, "file, n." (2d ed. 1989, Oxford University Press), available at http://dictionary.oed.com/cgi/entry/50084664 (last accessed Aug. 9, 2010).  The obturator is a device used to fill the whole that the file leaves.  See Complaint ¶ 109, at 22; Oxford English Dictionary Online, "obturator, n." available at http://dictionary.oed.com/cgi/entry/00329626 (last accessed Aug. 9, 2010)("**2.a** . . . . A prosthetic device used to close an abnormal opening . . . ."); Motion at 2. As Counter-Defendant Dr. Charles Goodis put it: "An obturator is a device used to fill the root canal with gutta percha after the canal has been drilled, cleaned, and shaped."  Declaration of Charles J. Goodis in Support of His and Plaintiff's Motion for Summary Judgment ¶ 5, at 2, filed July 31, 2009 (executed July 31, 2009)(Doc. 227).  Gutta percha is one substance with which an obturator may fill a drilled canal.  Gutta percha is "[a] rubbery substance derived from the latex of any of several tropical trees of the genera *Palaquium* and *Payena*, used as an electrical insulator, as a waterproofing compound, and in golf balls."  The American Heritage Dictionary of the English Language at 808 (3d ed. 1992).  Finally, the oven is the device used to warm some obturators, rendering the filling material malleable and usable to fill in the hole that the file leaves.  See Complaint ¶ 109, at 22.

into being as the result of a settlement of a separate intellectual-property dispute. The Supply Agreement required the Defendants to supply Guidance with endodontic files, obturators, and ovens, which Guidance would then sell to end-users.

Guidance began selling those endodontic products at extremely low prices compared to the prices that the Defendants charged for the same or similar products. Allegedly as a dirty business tactic to keep Guidance from underselling them in the marketplace, the Defendants stopped supplying endodontic obturators to Guidance. The Defendants told Guidance that they were ceasing to supply obturators because they heard that Guidance was telling its current and potential customers that the Defendants manufactured the products, which, they alleged, was in violation of the Supply Agreement. In addition to ceasing the supply of obturators, the Defendants refused to manufacture a new endodontic file -- the V2 file -- which Guidance intended to sell.[2] The Defendants contended that the Supply Agreement required Guidance to supply them with detailed engineering drawings before they were obligated to supply the V2 file. Guidance disputed that the Supply Agreement required them to provide engineering drawings as a prerequisite to the Defendants producing the V2. Finally, the Defendants initiated an organized marketing campaign to drive Guidance out of business, which included the Defendants' sales staff falsely representing to actual and potential Guidance customers that Guidance was no longer able to supply endodontic files. Based on these three categories of conduct, Guidance filed this suit.

## PROCEDURAL BACKGROUND

On November 21, 2008, Guidance filed a Verified Complaint and Demand for Jury Trial. See Verified Complaint and Demand for Jury Trial, filed November 21, 2008 (Doc. 1)

---

[2] The Court uses the term "new" in a colloquial sense and is not invoking the language of Article 4.5 of the supply agreement, which governs "new products."

("Complaint").  In the Complaint, Guidance made seven claims for relief: (i) breach of contract based on the Defendants' refusal to supply obturators, see id. ¶¶ 158-68, at 30-31; (ii) breach of contract based on the Defendants' refusal to supply endodontic files, see id. ¶¶ 169-79, at 31-32; (iii) breach of the implied covenant of good faith and fair dealing, see id. ¶¶ 180-87, at 32-33; (iv) violation of the Delaware Deceptive Trade Practices Act, see id. ¶¶ 188-97, at 33-34; (v) violation of the NMUPA, see id. ¶¶ 198-207, at 34-35; (vi) violation of § 43(a)(1)(B) of the Lanham Act, see Complaint ¶¶ 208-16, at 35-36; and (vii) tortious interference with existing and prospective contractual relations, see Complaint ¶¶ 217-26, at 36-37.  On the way to trial, the Court dismissed several of these claims.

### 1. Guidance's Complaint Suggested Past Compensatory Damages, But Was Ambiguous as to Future Damages.

Guidance, in its Complaint, sought several remedies in the prayer for relief:

A.      Granting judgment in favor of Plaintiff and against Defendants on each and every count contained in Plaintiff's Complaint;

B.      Issue a mandatory injunction directing Defendants to promptly fill purchase orders, and enjoining Defendants from otherwise failing to perform their obligations under the Supply Agreement,

C.      Enjoin Defendants from disparaging Guidance or the Guidance Products, or otherwise making false, misleading or inaccurate statements,

D.      Awarding Plaintiff damages, both compensatory and punitive, plus interest, costs and disbursements, and attorneys' fees, in an amount to be determined at trial,

E.      Treble damages; and

F.      Granting such other and further relief as the Court deems just and proper.

Complaint at 37-38.  Paragraph D of the prayer for relief seeks compensatory damages, but it does not specify whether Guidance seeks future damages or only compensatory damages for past harms.

Other portions of the Complaint hint that Guidance is seeking damages for past harm only. Each breach-of-contract claim contains a paragraph that states: "As a result of Defendants' aforesaid breaches of the Supply Agreement, Guidance <u>has suffered</u> damages for which it is entitled to compensatory damages from defendant in an amount to be determined at trial." Complaint ¶¶ 168, 179, at 31, 32 (emphasis added). That these paragraphs are phrased in the past tense, the Defendants suggest, indicates that the damages to which Guidance refers occurred in the past.[3]

### 2. <u>Guidance Initially Sought a Temporary Restraining Order and Preliminary Injunction, and Were Partially Successful.</u>

Immediately after filing its Complaint, Guidance sought a Temporary Restraining Order ("TRO") enjoining the Defendants to: (i) continue supplying it with endodontic obturators; and (ii) continue developing, and eventually produce, a new endodontic file called the V2. <u>See</u> Application for Temporary Restraining Order, filed November 21, 2008 (Doc. 2)("TRO App."). In the TRO application, Guidance expressed its concern that, if the Defendants did not provide Guidance with products, "Guidance will likely lose its customers, its reputation, its goodwill, and the unique opportunity it currently has to significantly grow its business." TRO App ¶ 8, at 2. In the brief supporting the TRO application, Guidance asserted that "[a] temporary restraining order is imperative because it is doubtful that Guidance's customers would ever return to Guidance after months or years of litigation concerning the parties' contractual rights and responsibilities under the Supply Agreement." Plaintiff's Memorandum in Support of Application for Temporary Restraining Order at 6, filed November 21, 2008 (Doc. 4). The Court denied Guidance's request for a TRO with respect to the V2 file because the Court found that Guidance had failed to show a substantial likelihood of success on the merits of its breach-of-contract claim regarding the V2. <u>See</u>

---

[3] The Defendants' argument relies in part on this language in the Complaint.

Memorandum Opinion and Order at 39-42, filed December 15, 2010 (Doc. 30).  The Court stated, however, that it believed that Guidance could suffer irreparable injury if the Court denied the TRO as to either product.  <u>See</u> Memorandum Opinion and Order at 30-34 (Doc. 30)("[T]he evidence that Guidance offers is credible and sufficient to support a finding of irreparable harm.").  The Court essentially reasoned that deprivation of either product could result in irreparable harm.  <u>Compare</u> <u>id.</u> at 31 (discussing potential irreparable harm to Guidance, because "[i]f Guidance is unable to bring the V2 to market, it will lose out on the opportunity to distribute this unique product"), <u>with</u> <u>id.</u> at 32-33 ("While the Defendants are apparently still supplying EndoTapers, they are not providing obturators.  Given the importance Guidance has placed on being unable to supply the basic package of endodontic tools, it is doubtful that EndoTapers will keep the company afloat during litigation.").

In Guidance's November 21, 2008 TRO motion, Guidance foretold its intent to file a motion for a preliminary injunction.  <u>See</u> TRO App. ¶ 12, at 3.  Pursuant to that request, the Court held an evidentiary hearing on December 17 and 18, 2008.  <u>See</u> Memorandum Opinion and Order at 1, filed December 22, 2008 (Doc. 39).[4]  The Court's ruling, however, was the same as it was on Guidance's request for a TRO: granted with respect to the obturator product and denied with respect to the V2 file.  <u>See</u> Memorandum Opinion and Order at 4-5 (Doc. 39)("The Court will not order the Defendants to produce V2s.").  The Court's opinion ruling on Guidance's request for a preliminary injunction did not express an opinion whether Guidance would suffer irreparable harm if the Defendants did not produce the V2 file.  As the Court noted in its TRO opinion, the V2 file was not

---

[4] Guidance never filed a written motion requesting a preliminary injunction.  It nonetheless requested the injunction, the Court held a hearing on the request, and the Court granted the request in part and denied it in part.  <u>See</u> Memorandum Opinion and Order at 4-5 (Doc. 39).

in production, and Guidance had not met its burden, under the stringent law for a preliminary injunction which changes the status quo and requires the Court to oversee its enforcement, that it had a right to such relief.  See Memorandum Opinion and Order at 23-26, 39-42 (Doc. 30)(finding that, because "[a] TRO that applied to the V2 Order would . . . be disfavored on two separate grounds," "the Court cannot say Guidance had shown a substantial likelihood that it would prevail on a breach of contract claim [or] on its claim for breach of the covenant of good faith and fair dealing.").  See also Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1254-55 (10th Cir. 2006)("A preliminary injunction is appropriate when '(1) the movant will suffer irreparable harm . . . ; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.'")(quoting Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1171 (10th Cir.1998)); O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004)("[T]his court identified . . . three types of specifically disfavored preliminary injunctions and concluded that a movant must 'satisfy an even heavier burden of showing that the four [preliminary injunction] factors . . . weigh heavily and compellingly in movant's favor before such an injunction may be issued.'").

**3.      It Soon Became Apparent that Guidance Sought Future Damages.**

In addition to the very broad request for damages in subparagraph D of the Complaint's prayer for relief, there were several indicators that Guidance would be seeking future damages.  The earliest was the language in the June 4, 2009 expert report of Guidance's damages expert, Dr. M. Brian McDonald.  See Expert Report of M. Brian McDonald (dated June 4, 2009), filed July 31, 2009 (Doc. 219-3)("McDonald Report").  The relevant portions of that report state:

Conceptually, there are several different components to the economic damages

suffered by Guidance due to this alleged breach of contract.  In this report the quantification of economic damages has been limited to one component only -- the inability of Guidance to sell the Guidance-designed, fixed taper (0.04) rotary endodontic file to *existing* customers of its variance taper file (V Taper file) in the five-quarter time period from October 1, 2008 to December 31, 2009.  Other components of economic damages are acknowledged at the conclusion of this report.  Any quantification of these other components of damages will require additional information and analysis, not presently available.  If this additional information does become available, I may supplement this report to include quantification of other components of economic damages.

It is my opinion that Guidance Endodontics has suffered economic damages which total $1,198,931.  These economic damages represent the lost profit on the estimates lost sales of the Guidance-designed, fixed taper (0.04) rotary endodontic file to existing customers in the five-quarter time period from the fourth quarter of 2008 to the fourth quarter of 2009.

* * * *

There are other components to the economic damages suffered by Guidance as a result of the alleged breach of contract by Dentsply. . . . Guidance expected to capture an increasing market share of the endodontic market with this business model, resulting in future sales and profits well beyond what was expected from their existing V file customer base.

Quantification of this component of economic damages will require additional information[.]

Even if Guidance prevails at the trial, the company may have economic damages which extend beyond December 2009[.]

* * * *

While there is no specific opinion or quantification of economic damages for the continuing loss of V2 file sales beyond the fourth quarter of 2009, as a guideline the trier of fact may consider the estimated lost profits above for the five-quarter time period of the fourth quarter of 2008 through the fourth quarter of 2009.  The total lost profit of $1,198,931 represents average quarterly lost profits of $239,786.  If the trier of fact determines based upon the evidence that Guidance's lost profits will continue beyond the fourth quarter of 2009 for one or more quarters, then it could use the quarterly lost profit of $239,786 as a reasonable guideline of Guidance's lost profit per quarter.

McDonald Report at 1-10.

On August 31, 2009, Guidance moved the Court for leave to supplement McDonald's expert report.  See Plaintiff's Motion for Leave to Supplement Expert Report of Brian McDonald, filed August 31, 2009 (Doc. 287).  McDonald's supplemental report opined how Guidance's business model would have increased Guidance's market share, and thus how, if not for the Defendants' alleged wrongdoing, Guidance's profit each year would have increased.  See Dentsply/TDP'S Response as to Timeliness of Plaintiff's Motion to Supplement Expert Report of Brian McDonald (Doc. 287) Exhibit A, at 1-2, filed September 9, 2009 (Doc. 308-1)("McDonald Supplement").  If McDonald were allowed to testify to the opinions that he gave in his supplemental report, estimated compensatory damages would have risen from approximately $6,714,008.00 over the life of the Supply Agreement -- about $239,786.00 per quarter, see McDonald Report at 9-10 -- to almost $75,000,000.00, see McDonald Supplement Exhibit 1.  This motion clarified, if there was any doubt, that Guidance was interested in pursuing future damages, and was endeavoring to expand its expert's opinion to include lost sales to future Guidance customers.  See McDonald Supplement at 1 (explaining the prior report was limited "to the calculation of lost profits on lost sales of the V2 file to *existing* Guidance customers," and that the supplement calculates "economic damages which arise from the loss of sales and profits from *new* customers of Guidance")(emphasis in original).  The Court denied Guidance's motion on September 24, 2009, so Guidance was forced to rely solely on McDonald's original expert report.  See Memorandum Opinion and Order at 26, filed September 24, 2009 (Doc. 358)("Sept. 24 MOO").

The Pretrial Order, to which the parties agreed, explicitly states that Guidance is going to trial seeking both past and future damages.  See Pretrial Order, filed October 9, 2009 (Doc. 434) ("The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved by the parties[.]").  Although the parties signed the final version of the Pretrial Order on October 9, 2009,

the parties expressly agreed that it would be retroactive to August 31, 2009. See Pretrial Order at 46 (dated "this 9th day of October, 2009, nunc pro tunc to August 31, 2009"). To the Court's knowledge, the Defendants raised no objections to the Pretrial Order, or to the fact that it states: "Plaintiff seeks: (a) an award of past and future damages suffered as a result of Defendants' wrongful conduct[.]" Pretrial Order at 3 (emphasis added). See Transcript of Hearing at 151:2-12 (taken Mar. 22, 2010), filed May 4, 2010 (Doc. 558)("Tr.")(Bisceglie)(stating that, to his knowledge, the Defendants did not object to Guidance seeking future damages in the pretrial order).[5]

On September 15, 2009, Guidance filed the Plaintiff's Proposed Jury Instructions (Doc. 328). Instruction No. 15 of those Proposed Jury Instructions would have informed the jurors that, "[i]f [they] find that Defendants committed a breach of contract . . . , Guidance is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed during the life of the contract." Plaintiff's Proposed Jury Instructions, Instruction No. 15, at 19. The Instruction also would have told the jury that, if the evidence of such damages is "circumstantial and inexact," Guidance "may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation." Id.

The Court's First Proposed Jury Instructions were an incomplete set and gave no instructions regarding the damages that the jury might award. See Court's First Proposed Jury Instructions, filed September 23, 2009 (Doc. 363). The second set, however, incorporated Guidance's Proposed Instruction No. 15 as the Court's Proposed Instruction No. 27. See Court's Second Proposed Jury Instructions, Instruction No. 27, at 28 (Doc. 374). That instruction, which allowed the jury to award

---

[5] The Defendants' counsel did not contradict Mr. Bisceglie's statement, and the Court can recall no time at which the Defendants objected to any part of the Pretrial Order.

breach-of-contract damages for the life of the contract, persisted through the Court's third set of proposed instructions, see Court's Third Proposed Jury Instructions, Instruction No. 27, at 27, filed October 1, 2009 (Doc. 397), the Court's fourth set of proposed instructions, see Court's Fourth Proposed Jury Instructions, Instruction No. 30, at 30, filed October 2, 2009 (Doc. 400), and the Court's fifth set of proposed instructions, see Court's Fifth Proposed Jury Instructions, Instruction No. 28, at 31, filed October 5, 2009 (Doc. 421).

On October 4, 2009, the Defendants submitted a set of proposed jury instructions. One of those proposed instructions would have instructed the jury that, "[i]f [it] find[s] that Guidance is entitled to lost profits from the sale of the V2 file, [it] may award only lost profits up to the present date." Dentsply/TDP's Proposed Jury Instructions, Instruction No. 50, at 5, filed October 4, 2009 (Doc. 403).[6] Believing that Guidance might be unable to present any evidence of future damages, the Court incorporated that instruction into its sixth set of proposed instructions. The new instruction would have told the jury that "Guidance is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed during the life of the contract up to the date of the trial." Court's Sixth Proposed Jury Instructions, Instruction No. 25, at 29, filed October 6, 2009 (Doc. 423)(emphasis added). By the Court's seventh and final proposed set of instructions, however, the Court had returned to its earlier language, convinced that Guidance had presented some testimony regarding future damages. See Court's Seventh Proposed Jury Instructions, Instruction No. 29, at 34, filed October 7, 2009 (Doc. 427). The jury was ultimately instructed:

---

[6] The Defendants thus had actual knowledge that Guidance sought future damages no later than October 4, 2009, as they sought to "correct" the instruction through which Guidance was seeking its future damages to limit Guidance to past damages only.

If you find that Dentsply and/or Tulsa Dental committed a breach of contract related to the V2, Guidance is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed during the life of the contract.  The measure of damages is the loss from the breach of contract and/or breach of the implied covenant of good faith and fair dealing.

However, the amount of damages need not be proven with mathematical certainty.  Moreover, if you conclude that Dentsply's and/or Tulsa Dental's wrongful conduct in breaching the contract made it difficult to assess Guidance's damages, then evidence of the amount of damages may be circumstantial and inexact.  In such a case, where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, Guidance may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation.

Court's Final Jury Instructions (Given), Instruction No. 29, at 29, filed October 8, 2009 (Doc. 430).

### 4.       **The Jury's Verdict and the Court's Judgment.**

The Court held a three-week jury trial from September 21, 2009 through October 9, 2009.  See Clerk's Minutes Before the Honorable James O Browning at 1, filed September 21, 2009 (Doc. 439).  On Wednesday, October 7, 2009, the Court read the instructions to the jury.  See id. at 40.  Those instructions included Guidance's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the NMUPA, and violation of the Lanham Act.  See Court's Final Jury Instructions (Given), Instruction No. 18, at 18, filed October 8, 2009 (Doc. 430).  The Court had dismissed the other claims before trial.

The jury deliberated for about two days.  On October 9, 2009, the jury returned a verdict largely in favor of Guidance.  The jury found that the Defendants breached the Supply Agreement with regard to its failure to supply obturators and its failure to produce the V2 file, and found that breach caused Guidance damages.  See Verdict Form ¶¶ 2-4, at 2, filed October 9, 2009 (Doc. 441).  The jury also found that the Defendants breached the implied covenant of good faith and fair dealing and violated the NMUPA, and found that both infractions caused damages to Guidance.  See id.

-12-

¶¶ 5-12, at 2-3.  The jury awarded Guidance $500,000.00 in compensatory damages for past harm caused by the breach of contract related to the V2, and $3,580,000.00 in future damages related to that breach.  See Verdict Form ¶¶ 15-16, at 4.[7]  The jury also found that Guidance was entitled to nominal damages of $200,000.00[8] for the Defendants' unlawful conduct.  See Verdict Form ¶¶ 17-21, at 4-5.  Finally, based on the breach of the implied covenant and violation of the NMUPA, the jury awarded Guidance punitive damages of $40,000,000.00.  See Verdict Form ¶¶ 22-23, at 5-6.

The jury did not, however, completely absolve Guidance of fault.  It found that Guidance breached the Supply Agreement and willfully engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125.  See Verdict Form ¶¶ 24-27, at 6-7.  As a result, the jury awarded the Defendants $93,000.00 in compensatory damages.  See id. ¶ 35, at 8.

On October 22, 2009, Guidance filed a motion asking the Court to enter a final judgment in conformity with the jury's verdict.  See Motion for Entry of Final Judgment, filed October 22, 2009 (Doc. 450).  The Court granted the motion in part, see Order, filed March 31, 2009 (Doc. 537), and entered a judgment similar to the judgment that Guidance sought, see Final Judgment, filed March 31, 2010 (Doc. 538).

**5.     The Motion and Arguments.**

By this motion, the Defendants asks the Court to vacate the jury's award of  $3,580,000.00 in future damages that it awarded to Guidance for the Defendants' breach of contract related to the

---

[7] Throughout this opinion, when the Court refers to the future-damages award, it is referring to this sum of $3,580,000.00, which the jury awarded in response to the question: "In a lump sum, state the amount of compensatory damages you are awarding to Guidance for Dentsply and/or Tulsa Dental's breach of the Manufacturing and Supply Agreement related to the V2 for the period from the trial to the end of the Manufacturing and Supply Agreement."  Verdict Form ¶ 16, at 4.

[8] The Court notes the possible inconsistency of a $200,000.00 award of nominal damages.

V2 file.  See Motion at 1.  The Defendants state that, with respect to its breach-of-contract claim, Guidance had consistently sought only: (i) compensatory damages for past injuries; and (ii) injunctive relief for future injuries.  They contend that, at the last minute, Guidance changed course and sought compensatory damages for alleged future injuries as well.  See id. at 1.  The Defendants assert that this last-minute change of relief sought warrants the Court vacating the jury's future-damages award.  As a basis for this assertion, the Defendants make three arguments.

First, the Defendants assert that judicial estoppel should have barred Guidance from seeking future damages.  See id. at 2-3.  They argue that Guidance's last-minute switch in position -- from seeking injunctive relief to seeking future damages -- implicates all of the factors that would tend to weigh in favor of the application of the judicial-estoppel doctrine.  See id. at 3.  They insist that Guidance has "consistently argued that it would suffer irreparable harm" based on the Defendants' breach of contract, that the Court adopted that position in ruling on Guidance's motions for a TRO and for a preliminary injunction, and that therefore Guidance is barred from taking a position contrary to that prior argument.  See id. at 3-4, 5-7.  The Defendants argue that Guidance's decision to seek future damages was inconsistent with alleging that it might suffer irreparable harm.  See id. at 4-5.  They also assert that allowing Guidance to change the remedy it sought so near the end of the case gave Guidance an unfair advantage.  See id. at 7-8.

The Defendants' second argument is that Guidance's conduct during the trial constituted an election of remedies.  See id. at 8-16.  They argue that injunctive relief and future damages for breach are inconsistent remedies, see id. at 8-9, and that Guidance took three acts that demonstrate its election of injunctive relief, to the exclusion of future damages, see id. at 16.  Those acts, according to the Defendants, are: (i) failing to seek future damages in its Complaint; (ii) prosecuting its request for injunctive relief to judgment; and (iii) affirming the contract by seeking injunctive

-14-

relief rather than terminating the Supply Agreement.  See Motion at 10-16.

The Defendants' third argument is that Guidance's "surprise" future damages theory deprived them of a fair trial.  Id. at 16-26.  They point to the Court's prior opinions, alleging that those opinions limited Guidance's possible compensatory damages related to the V2 file to $1,200,000.00, which represented the estimated compensatory damages for the period from October 1, 2008 through December 21, 2009.  See Motion at 16-18.  They then assert that, even if the Court's opinions did not limit Guidance's recovery, rule 37 of the Federal Rules of Civil Procedure did, because Guidance failed to adequately disclose its estimated future damages during discovery.  See Motion at 18-25.  Finally, the Defendants take a different tact and argue that the evidence at trial was insufficient to support a future-damages award of $3.58 million.  See id. at 25.

On November 30, 2009, Guidance filed its response brief.  See Plaintiff's Opposition to "Dentsply/TDP's Motion to Vacate the Jury's Award of Future Damages for Breach of Contract and to Enter Judgment as a Matter of Law on the Future Damages Award," filed November 30, 2009 (Doc. 477)("Response").  Guidance's first argument is that, although the Defendants do not specify the rule under which they filed their motion, the motion appears to be one for judgment as a matter of law under rule 50(b).  See Response at 1-2, 8-13.  It thus asserts that, because rule 50(b) concerns sufficiency of the evidence only, and many of the Defendants' arguments have nothing to do with sufficiency of the evidence, the Court should deny the motion as to all non-sufficiency grounds.  See Response at 1, 8-10.  Guidance further argues that the Court should deny the motion because none of these arguments were raised in a rule 50(a) motion for judgment as a matter of law during trial. See Response at 2, 10-13.

On the merits, Guidance first argues that the Defendants are raising an issue that the Court has already addressed and decided in Guidance's favor.  See id. at 13.  It argues against application

of judicial estoppel, asserting that seeking a TRO and preliminary injunction is not inconsistent with a request for future damages.  See id. at 15-16.  It opposes the Defendants' election-of-remedies argument by asserting that it never affirmatively elected the remedy of an injunction to the exclusion of a claim for future damages, attacking each of the bases upon which the Defendants assert it elected an injunction.  See id. at 17-21.  Finally, Guidance attempts to refute the Defendants' assertion that they were unfairly prejudiced by Guidance seeking future damages.  See id. at 21-24. It argues that McDonald's original expert report put the Defendants on notice that Guidance would be seeking future damages and that several of the proposed sets of jury instructions should have alerted the Defendants that Guidance sought future damages.  See Response at 23.

**6.    Arguments at the Hearing.**

At the hearing, R. Ted Cruz, one of the Defendants' post-trial counsel,[9] accused Guidance of attempting to "have their cake and eat it, too," by seeking a mandatory injunction to enforce the contract and, at the same time, seeking future damages for breach of contract.  See Tr. at 139:11-24 (Cruz).  He argued that Guidance's Complaint is worded such that it was clearly aimed at getting future orders filled, and not at damages.  See id. at 141:6-20 (Cruz).  He spent much of his time arguing that McDonald's original expert report made statements indicating that McDonald did not perform any expert analysis with respect to future damages, appearing to assert both that these statements lulled the Defendants into believing that future damages were not at issue in this case and that this lack of detailed analysis made McDonald's opinions on future damages incompetent evidence.  See Tr. at 142:4-144:4 (Cruz); id. at 170:1-172:9 (Court, Cruz); id. at 187:15-21 (Cruz);

_____

[9] After the verdict, the Defendants retained additional counsel from Morgan, Lewis & Bockius, LLP's Houston, Texas and Washington, D.C. offices.  Those attorneys, who were not present during the trial of this case, have been largely handling the post-trial motions.

id. at 189:1-5 (Cruz).  Mr. Cruz argued that Guidance "affirmed" the Supply Agreement by continuing to order products pursuant to it, by seeking the TRO and preliminary injunction, and by requesting a permanent injunction as one form of relief.  See, e.g., Tr. at 159:1-160:10 (Court, Cruz); id. at 173:7-174:12 (Court, Cruz); id. at 181:10-183:15 (Court, Cruz).  He asserted that Guidance was required to elect whether it would seek an injunction or future damages, and by seeking injunctive relief, it had effectively made its election, precluding recourse to a damages remedy.  See id. at 162:25-163:7 (Court, Cruz).

After Mr. Cruz' initial argument, the Court inquired whether Guidance was prepared at that time to make its election of remedies.  Kyle Bisceglie, Guidance's attorney, stated that Guidance is prepared to forego its requested injunctive relief and elect to receive the future-damages award that the jury assessed.  See id. at 146:15-147:19 (Court, Bisceglie).[10]  Mr. Bisceglie asserted that the purpose of the TRO and preliminary injunction was to keep Guidance afloat during the course of the litigation, and to protect Guidance from having to settle for an inadequate sum because they could no longer finance their suit against the Defendants.  See id. at 148:17-23 (Bisceglie).  Mr. Bisceglie argued that, although a plaintiff must elect whether to seek injunctive relief or future

---

[10] Mr. Bisceglie represented that, since the trial, they had not placed any further orders with Dentsply or TDP.  See Tr. at 147:20-148:16 (Court, Bisceglie).  Mr. Cruz attempted to correct that representation by stating that one of Guidance's attorneys had contacted one of the Defendants' attorneys, asking whether Guidance could place orders with the Defendants without such orders being held against Guidance or brought up before the Court.  See id. at 160:11-162:24 (Cruz).  According to Mr. Cruz, the last product that Guidance ordered was sent out on December 29, 2009 -- over two months after the trial.  See id. at 160:17-161:1 (Cruz).  Mr. Cruz did not purport to state when Guidance placed that final order, so the Court cannot say whether it was placed before or after the jury returned its verdict.  The Court can, on the other hand, say it was placed before the Court entered judgment on March 31, 2010.  Moreover, the Court is not prepared to equate a telephone call by one attorney to another, inquiring whether Guidance could make further purchases without affirming the Supply Agreement or otherwise compromising its rights arising from this lawsuit, with an order to purchase products.

damages, that election can be made after the jury has returned a verdict.  See id. at 149:3-151:1 (Bisceglie).  Mr. Bisceglie also argued that the issue which the Defendants raised in this motion is one on which the Court ruled during a bench conference on September 29, 2009.  See id. at 157:5-11 (Bisceglie).

The Court also discussed with Mr. Cruz whether he had any suspicions of how the jury arrived at their verdict of $500,000.00 in past compensatory damages and $3,580,000.00 in future compensatory damages.  Mr. Cruz suggested that the jury's likely thought-process was that it decided to award approximately half of the estimated amount of past and future compensatory damages.  See id. at 192:11-194:4 (Court, Cruz).  Mr. Cruz conceded that taking McDonald's estimate of damages and cutting it in half gets "quite close" to the amount that the jury awarded. Id. at 193:9 (Cruz).

## RELEVANT LAW REGARDING RULE 50

Rule 50 presents two ways a party may secure a judgment in its favor after a trial has begun. Rule 50(a) allows a movant to, in effect, bring a motion for summary judgment on the trial record; such motions raise a legal issue of the sufficiency of the non-moving-party's evidence on an issue. Rule 50(b) allows a movant to attack the sufficiency of the evidence after the trial has ended.

### 1.    Rule 50(a).

Judgment as a matter of law is proper where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  This standard for a directed verdict mirrors the standard for summary judgment.  See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986); Wiles v. Michelin N. Am., Inc., 173 F.3d 1297, 1303 (10th Cir. 1999); Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1278, 1280-81 (D.N.M. 2005)(Browning, J.)("This [rule 50(a)]

standard is identical to that the court must employ when ruling on motions for summary judgment under rule 56.").  A court may grant judgment as a matter of law, however, even though it has denied summary judgment, because the parties have been able to address all relevant, available evidence.  See Lee v. Glassing, 51 Fed. Appx. 31, 32 (2d Cir. 2002).

In determining whether to grant judgment as a matter of law, a court may not weigh the evidence or make its own credibility determination, see Shaw v. AAA Eng'g. & Drafting, 213 F.3d 519, 529 (10th Cir. 2000), and must draw all reasonable inferences in favor of the nonmoving party, see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  Such a judgment is warranted if the evidence permits only one rational conclusion.  See Crumpacker v. Kan. Dep't of Human Resources, 474 F.3d 747, 751 (10th Cir. 2007).  In other words, "[t]he question is not whether there is literally no evidence supporting the [nonmoving] party . . . but whether there is evidence upon which the jury could properly find [for that party]."  Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp., 315 F.3d 1271, 1278 (10th Cir. 2003)(some alterations in original).  See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d at 1280-81 ("If . . . the evidence points but one way and is susceptible to no reasonable inferences that support the opposing party's position, the court should grant judgment as a matter of law.").

Moreover, rule 50(a) "expressly requires a motion for a directed verdict to 'state the specific grounds therefor.'"  First Sec. Bank of Beaver v. Taylor, 964 F.2d 1053, 1056 (10th Cir. 1992).  On the other hand, "[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position."  United States v. Fenix & Scisson, Inc., 360 F.2d 260, 266 (10th Cir. 1966).  See First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1056.  "When a movant fails to state the specific grounds for its [rule 50(a)] motion, our case law requires the moving party to demonstrate the trial court was aware of the moving party's position."  First Sec.

Bank of Beaver v. Taylor, 964 F.2d at 1056 (holding that an objection to the sufficiency of the evidence failed to inform the trial judge of the party's objection to the uncertainty or enforceability of an oral agreement).

> **2.** **Rule 50(b).**

"Rule 50(b) . . . sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400 (2006). The rule states:

> **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). Much like a rule 50(a) motion, "[a] renewed motion for judgment as a matter of law under Rule 50(b) . . . must state the grounds on which it was made." 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 604-05 (3d ed. 2008).

The standard for ruling on a rule 50(b) motion is similar to that for ruling on a rule 50(a) motion -- whether there was sufficient evidence upon which a reasonable jury could have arrived at the verdict that the jury returned. See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009)("A party is entitled to JMOL only if the court concludes that 'all of the evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the controlling law.'")(quoting Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d 1260, 1269

(10th Cir. 2008)).  "In ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it."  Fed. R. Civ. P. 50(b) advisory committee's note.  See Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'").  The court, however, much like in ruling on a motion for summary judgment, must draw all reasonable inferences in favor of the non-moving party.  See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d at 1244 ("[W]e . . . will reverse the district court's denial of the motion for JMOL 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'")(quoting Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir. 2004)); Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269.  It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d at 1269.

A prerequisite to a rule 50(b) motion, and one implicit in its nature as a renewed motion for judgment as a matter of law, is that the moving party have made a rule 50(a) motion for judgment as a matter of law during trial and that the party raise in the rule 50(a) motion all issues it seeks to raise in the subsequent rule 50(b) motion.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009)("Kerr-McGee did not assert these arguments in its Rule 50(a) motion at the close of Mark's case-in-chief, and is thus precluded from relying on them as a basis for Rule 50(b) relief."); Marshall v. Columbia Lea Regional Hosp., 474 F.3d 733, 738 (10th Cir. 2007)(noting that raising a particular defense in a "pre-verdict Rule 50(a) motion . . . is a prerequisite to a post-verdict motion under Rule 50(b)."); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir. 2000)("[M]erely moving for directed verdict is not sufficient to preserve any and

all issues that could have been, but were not raised in the directed verdict motion."); First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057 ("[A] party is precluded from relying upon grounds in a [rule 50(b)] motion for judgment notwithstanding the verdict that were not previously raised in support of the [rule 50(a)] motion for a directed verdict.")(citing Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 n.2 (10th Cir. 1987)); 9B C. Wright & A. Miller, supra § 2537, at 603-04 ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."); id. ("[T]he case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion.").  The advisory committee notes to the 1991 amendment state that "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."  Fed. R. Civ. P. 50 advisory committee's note (citing Kutner Buick, Inc. v. Am. Motors Corp., 848 F.2d 614 (3d Cir. 1989)).[11]

Finally, "Rule 50(b) allows a motion for a new trial under Rule 59 to be joined in the alternative with a renewed motion for judgment as a matter of law; subdivisions (c) and (d) make elaborate provision for when the two motions are made in the alternative."  9B C. Wright & A. Miller, supra § 2521, at 222.  The rule states: "[T]he movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under

---

[11] The Advisory Committee reiterated this premise in its notes regarding the 2006 amendments to rule 50(b).  The Committee stated:

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.  The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.  The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Fed. R. Civ. P. 50 advisory committee's note.

Rule 59." Fed. R. Civ. P. 50(b).  Even if no rule 50(a) motion was made and therefore the court cannot grant a rule 50(b) motion for judgment as a matter of law, the court is still permitted to entertain a rule 59 motion for new trial on the basis that the verdict was based on a quantum of evidence that is insufficient as a matter of law.  See Fed. R. Civ. P. 59.  As Professors Charles Wright and Arthur Miller state:

> [I]f the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial.

9B C. Wright & A. Miller, supra § 2537, at 604.

## MOTIONS FOR NEW TRIAL UNDER RULE 59

Rule 59 governs motions for new trial.  That rule states that, after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  Case law has fleshed out the rule.  Seventy years ago, the Supreme Court of the United States determined that

> [t]he motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).  Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights."  Henning v. Union Pac. R. Co., 530 F.3d 1206, 1217 (10th Cir. 2008)(quoting Sanjuan v. IBP, Inc., 160 F.3d 1291, 1297 (10th Cir. 1998)).

Although motions for a new trial are generally committed to a court's discretion, they are

disfavored and should be granted with caution.  See Richins v. Deere and Co., 231 F.R.D. 623, 625

(D.N.M. 2004)(Browning, J.).  "In considering a motion for a new trial on the grounds of prejudicial

error, the alleged trial court errors must be clearly erroneous, as well as prejudicial and must have

affected the substantial rights of the parties."  Atencio v. City of Albuquerque, 911 F. Supp. 1433,

1437 (D.N.M. 1995)(Vazquez, J.)(quoting Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,

571 F.2d 1144, 1148-49 (10th Cir. 1978), cert. denied, 439 U.S. 862 (1978)).  The party asserting

the error bears the burden of showing clear error and prejudice to substantial rights.  See Blanke v.

Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998); United States v. Mitchell, 113 F.3d 1528, 1532

(10th Cir. 1997); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 (10th Cir. 1985);

Atencio v. City of Albuquerque, 911 F. Supp. at 1437.  Furthermore, similar to the rule 50(b)

motion, a party must lay the necessary predicate to a motion for new trial during the trial.  "[A] new

trial will not be granted on grounds not called to the court's attention during the trial unless the error

was so fundamental that gross injustice would result."  11 C. Wright, A. Miller & M. Kane, Fed.

Prac. & Proc. Civ. § 2805, at 57-58 (2d ed. 1995).  See Cottman v. Aurora Pub. Schs., 85 Fed. Appx.

83, 88 (10th Cir. 2003)(affirming a district court's rejection of a motion for new trial where the

movant "had not objected at trial . . . nor 'shown that the fundamental fairness of the trial was

affected by the proceedings.'"); Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619

(5th Cir. 1988)(reversing the district court's conditional grant of a new trial where movant waived

argument by failing to object at trial).

## RELEVANT LAW REGARDING PRELIMINARY RELIEF

The requirements for the issuance of a TRO and those for the issuance of a preliminary

injunction are similar.  See 13 J. Moore, Moore's Federal Practice ¶ 65.36(1), at 65-83 (3d ed. 2004).

The primary difference between a TRO and a preliminary injunction is that a TRO may issue

-24-

without notice to the opposing party and that a TRO is of limited duration:

> **(1) Issuing Without Notice.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>
>> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
> **(2) Contents; Expiration.** Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry -- not to exceed 10 days -- that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

Fed. R. Civ. P. 65(b)(bolded in original).

Injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Leviton Mfg. Co., Inc. v. Nicor, Inc., Nos. CIV 04-0424 JB/RHS, CIV 04-1295 JB/ACT, 2007 WL 505796, at *3 (D.N.M. Jan. 8, 2007) (Browning, J.)(citing Greater Yellowstone Coalition v. Flowers, 321 F .3d 1250, 1256 (10th Cir. 2003)). The Supreme Court and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir. 2003)("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)).

## RELEVANT LAW REGARDING JUDICIAL ESTOPPEL

In a diversity action, the state substantive law that controls the cause of action also controls the doctrine of judicial estoppel.  See Okland Oil Co. v. Conoco, Inc., 144 F.3d 1308, 1325 (10th Cir. 1998)(discussing a district court's failure to apply judicial estoppel and stating that, "[i]n a diversity case, we look to state law to determine whether and how to apply these doctrines"); In re Osborn, 24 F.3d 1199, 1207 n.11 (10th Cir. 1994)("In a federal question case, we rejected the doctrine of judicial estoppel.  However, where state law substantively controls, as here, we have applied the law of the state in question.")(internal citations omitted); Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 874 F.2d at 1363 ("Inasmuch as the application of judicial estoppel in this diversity action goes to the adequacy of [a plaintiff's] legal remedy, we look to the appropriate state law to determine whether judicial estoppel is recognized."); Ellis v. Ark. La. Gas Co., 609 F.2d 436, 440-41 (10th Cir. 1979)(holding, in response to an assertion of judicial estoppel, that, "[a]pplying the governing principles of Oklahoma law, we hold Arkla's claim is not barred"); Bayview Loan Serv. v. Boland, No. 08-CV-566, 2009 WL 3234270, at *7 (D. Colo. Sept. 30, 2009).[12]  The claim at issue in this opinion is Guidance's claim for breach of contract, which the parties and Court have agreed that Delaware law governs.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2010 WL 1608949, at **8-9 (D.N.M. Mar. 23, 2010)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV

_____

[12] It is possible that federal law of judicial estoppel would control if the issue with respect to which estoppel is sought is one that is peculiarly within the federal law, such as issues governing the presence or absence of federal jurisdiction.  See Sain v. EOG Res., Inc., 204 Fed. Appx. 739, 741 n.2 (10th Cir. 2006)(assuming without deciding that federal law governed application of judicial estoppel to a jurisdictional issue, because neither party raised the choice-of-law issue and because "the parties' and the district court's assumption that federal law governed the judicial estoppel issue was reasonable.").  Because no such specifically federal issue is at question in this motion, the Court need not resolve this apparently undecided aspect of Tenth Circuit law.

-26-

08-1101 JB/RLP, 2009 WL 3672452, at **5-6 (D.N.M. Oct. 2, 2009)(Browning, J.). The Court thus discusses the law of judicial estoppel as it exists under Delaware law.[13]

Under Delaware law, judicial estoppel is an equitable doctrine that is primarily concerned with protecting the integrity of the judicial process. See Banther v. State, 977 A.2d 870, 884-85 (Del. 2009)("The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process."); Motorola Inc. v. Amkor Tech., Inc., 958 A.2d 852, 859 (Del. 2008)("The doctrine is meant to protect the integrity of the judicial proceedings."). The doctrine "prevents a litigant from advancing an argument that contradicts a position previously taken that the court was persuaded to accept as the basis for its ruling." Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859; Lynch v. Thompson, No. C.M. 2488-K, 2009 WL 1900464, at *4 (Del. Ch. June 29, 2009) ("Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.")(quoting Julian v. E. States Constr. Serv., Inc., No. CIV 1892-VCP, 2009 WL 1211642, at *6 (Del. Ch. May 5, 2009)). The latter requirement is important -- "parties raise many issues throughout a lengthy litigation such as this, and only those arguments that persuade the court can form the basis for judicial estoppel." Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859.[14]

---

[13] The Court notes that, although its decision to apply Delaware law is based on Tenth Circuit precedent, the parties have also agreed that Delaware law governs the judicial-estoppel and election-of-remedies issues raised in this motion. See Motion at 2; Response at 14.

[14] At least in the situation where a criminal defendant seeks to judicially estop the government from taking a particular position, the Supreme Court of Delaware has required "a preliminary showing of manipulation, fraud or bad faith" to invoke the doctrine of judicial estoppel. See Banther v. State, 977 A.2d at 884. It is not clear whether this bad-faith requirement applies in the civil context, where one litigant attempts to estop another. Because the Court will find that the Defendants' judicial estoppel argument fails on other elements, however, the Court need not decide this issue of Delaware law. Nevertheless, as a factual matter, the Court finds that the Defendants have not shown manipulation, fraud, or bad faith.

Probably because of "the well-entrenched principle that modern procedure welcomes inconsistent positions in the course of a single litigation," 18B C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 4477, at 550 (2d ed. 2002), judicial estoppel is inappropriate unless the court accepts a party's position "as the basis for its ruling," Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859.

Notwithstanding the established requirements, however, it is always in the court's discretion whether to apply the judicial-estoppel doctrine in a given case.  See id. ("Judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'")(quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)).  Some of the factors that Delaware courts use to inform their decision whether to apply the doctrine of judicial estoppel in a particular case are: (i) whether the party's later position is "clearly inconsistent" with its earlier position; (ii) whether the party succeeded in persuading the court to accept the party's earlier position, so that accepting the inconsistent position in a later proceeding would make it appear that the court had been misled; (iii) whether the party seeking to assert the inconsistent position would derive an unfair advantage from the new position; and (iv) whether the party asserting judicial estoppel would suffer an unfair detriment if the opposing party is not estopped.  Julian v. E. States Constr. Serv., Inc., 2009 WL 1211642, at *6.

**DELAWARE LAW OF ELECTION-OF-REMEDIES**

Much like the law of judicial estoppel, the Tenth Circuit has concluded that the doctrine of election-of-remedies is a substantive-law issue.  In diversity cases, therefore, the Court will apply the election-of-remedies rule of the state whose substantive law governs the underlying cause of action.  See Cross Country Land Servs., Inc. v. PB Telecomms., Inc., 276 Fed. Appx. 825, 830 (10th Cir. 2008)("This is a diversity case and the parties agree that Colorado law applies.  The primary dispute concerns the application of the election of remedies doctrine in Colorado law."); Whatley v. Crawford & Co., 15 Fed. Appx. 625, 628 (10th Cir. 2001)(applying Colorado's election-

of-remedies law in a diversity case applying Colorado law); McKinney v. Gannett Co., Inc., 817 F.2d 659, 671 (10th Cir. 1987)("In a diversity case, the doctrine of election of remedies is an element of state substantive law which we are bound to apply."). "This is a diversity case and the parties agree that [Delaware] law applies. [One of t]he primary dispute[s] concerns the application of the election of remedies doctrine in [Delaware] law." Cross Country Land Servs., Inc. v. PB Telecomms., Inc., 276 Fed. Appx. at 830.

Under Delaware law, the election-of-remedies doctrine "is based on 'any decisive act of a party, with knowledge of his rights and of the facts, indicating an intent to pursue one remedy rather than another.'" Stoltz Realty Co. v. Raphael, 458 A.2d 21, 23 (Del. 1983)(quoting 28 C.J.S. Election of Remedies § 11, at 1077 (1941)). If a party pursues one remedy to final judgment, he or she is barred from then pursuing an inconsistent remedy. See Stoltz Realty Co. v. Raphael, 458 A.2d at 23 ("[T]he prosecution of one remedial right to judgment or decree, whether for or against the plaintiff, is a 'decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights.'")(quoting 28 C.J.S. Election of Remedies § 14, at 1087). The majority rule appears to be that election of remedies must be made only before entry of judgment. See In re Leonardi's Int'l, Inc., 123 B.R. 668, 669 (Bankr. S.D. Fla 1991)("An election between legally inconsistent remedies can be made at any time prior to the entry of judgment."); Tankersley v. Barker, 286 Ga. App. 788, 790, 651 S.E.2d 435, 438 (Ct. App. 2007)("One can pursue any number of inconsistent remedies prior to formulation and entry of judgment.")(quoting Long v. Marion, 182 Ga. App. 361, 366, 355 S.E.2d 711 (1987)); JHC Ventures, L.P. v. Fast Trucking, Inc., 94 S.W.3d 762, 774 (Tex. App.–San Antonio 2002, no pet.)("A party who seeks redress under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment."); Genetti v. Caterpillar, Inc., 261 Neb.

98, 122-23, 621 N.W.2d 529, 547 (2001)("Once a plaintiff receives verdicts under both theories of

recovery, he or she must elect between them."); Widgeon v. E. Shore Hosp. Ctr., 300 Md. 520, 535,

479 A.2d 921, 928 (1984)("It is a well-settled rule . . . that where a particular set of facts gives rise

to alternative causes of action, they may be brought together in one declaration, and where several

remedies are requested, an election is not required prior to final judgment.").

        The doctrine "requires that at the time of the supposed election there were available to the

plaintiff two or more inconsistent remedies and that the plaintiff had a choice at that time as to

which he desired to pursue." Stockman v. McKee, 71 A.2d 875, 879 (Del. Super. 1950).  "A legally

significant inconsistency is found only when one claim of facts is repugnant and contrary to facts

necessary to the other claim therein involved." Farmers Bank of Del. v. Dickey, 209 A.2d 752, 754

(Del. Super. 1965).  If the remedies sought are not inconsistent, a plaintiff may proceed to trial on

alternate theories.  See Cede & Co. v. Technicolor, Inc., 542 A.2d 1182, 1190-91 (Del. 1988).

## ANALYSIS

        This is one of numerous post-judgment motions that the Defendants have filed to try to get

out from beneath a very large verdict and judgment.[15]  In this motion, the Defendants assert that, for

_____

        [15] Most of the Defendants' motions are aimed directly at the $40,000,000.00 punitive-
damages award that the jury assessed.  On October 30, 2009, the Defendants filed Dentsply/TDP's
Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and
for Judgment Notwithstanding the Verdict. See Doc. 454 (asking the Court to set aside the punitive
damages award).  On November 9, 2009, the Defendants filed this motion which, although not
directly aimed at punitive damages, would decrease the amount of compensatory damages and thus
potentially decrease the amount of punitive damages that the Court would find reasonable.  On
February 10, 2010, the Defendants filed Dentsply/TDP's Motion for a New Trial Due to Guidance's
Prejudicial Mid-Trial Switch in Position on Whether the V2 is a "New Product" and Error in Jury
Instruction 21.  Doc. 502.  The Court denied that motion in a Memorandum Opinion and Order, filed
August 3, 2010 (Doc. 613).  Also on February 10, 2010, the Defendants filed Dentsply/TDP's
Motion to Set Aside the UPA Verdict and Enter Judgment as a Matter of Law or Order a New Trial.
See Doc. 503 (asking the Court to set aside the verdict of liability under the NMUPA because it is
one of the bases for awarding punitive damages in this breach-of-contract action).  The Court denied

-30-

various reasons, Guidance should not have been allowed to go to the jury seeking future damages for breach of the Supply Agreement with respect to the V2 file. Guidance argues to the contrary, asserting that it has never asserted inconsistent positions with respect to the remedies it seeks and that there was competent evidence to support the future damages award. The Court finds that none of the grounds upon which the Defendants seek to strike down the future-damages verdict warrant granting that relief.

I.     **THE DEFENDANTS FAILED TO PRESERVE THE ISSUES IN THIS MOTION BY A RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW, SO THEY MAY NOT SEEK JUDGMENT AS A MATTER OF LAW POST-TRIAL UNDER <u>RULE 50(b); THEY MAY, HOWEVER, SEEK A NEW TRIAL</u>.**

The first question that Guidance raises in its response brief is, in essence, what is the nature of this motion? The motion is styled as one "to Vacate the Jury's Award of Future Damages" and "to Enter Judgment as a Matter of Law," indicating that the Defendants seek relief under rule 50(b) -- the rule governing motions for judgment as a matter of law. The Defendants' arguments, however, are issues of law and not of the sufficiency of the evidence, suggesting that the motion is one for new trial under rule 59(e). As Guidance points out, the Defendants do not specify under what Federal Rule of Civil Procedure they bring this motion. <u>See</u> Response at 8. Guidance argues, and the Defendants appear to concede, that the motion is either a rule 50(b) motion for judgment as a matter of law or a rule 59(e) motion for new trial. <u>See</u> Response at 8; Motion at 1-2. Guidance then asserts that the Court should deny the motion under either rule. <u>See</u> Response at 8-13. The

_____

that motion in a Memorandum Opinion and Order, filed July 1, 2010 (Doc. 605). On April 28, 2010, the Defendants filed Dentsply/TDP's Motion for New Trial Based on the Punitive Damages Limiting Instruction. <u>See</u> Doc. 547 (asking the Court to set aside the punitive damages award and order a new trial based on an allegedly erroneous jury instruction). Also on April 28, 2010, they filed Dentsply/TDP's Motion for Remittitur, or, in the Alternative, for New Trial Under Rule 59. <u>See</u> Doc. 549 (seeking remittitur of jury's punitive damages verdict or a new trial).

Court will analyze the issues under rule 59(e), because the Defendants failed to preserve any of these arguments by a timely motion under rule 50(a).  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762 (holding that, where it is unclear whether a motion is made under rule 50(b) or rule 59, and the party seeking relief failed to properly preserve arguments by a mid-trial motion for judgment as a matter of law under rule 50(a), "[t]hat leaves only the possibility of Rule 50 relief[.]").

A prerequisite to a rule 50(b) motion is that the moving party have made a rule 50(a) motion for judgment as a matter of law during trial and that the party raised in the rule 50(a) motion all issues it seeks to raise in the subsequent rule 50(b) motion.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762; Marshall v. Columbia Lea Regional Hosp., 474 F.3d at 738; United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d at 1229; First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057; 9B C. Wright & A. Miller, supra § 2537, at 603-04.  The advisory committee notes to the 1991 amendment state that "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."  Fed. R. Civ. P. 50 advisory committee's note.  The issue of damages is one separate and apart from the merits of a claim and thus must be separately asserted in a rule 50(a) motion if it is to later be the subject of a rule 50(b) motion.  See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d at 1228-29.[16] The Defendants made two motions for judgment as a matter of law mid-trial, one in writing and one oral, but both were directed at the merits of Guidance's claims and not at the sufficiency of the evidence of damages.  See Reply at 4

---

[16] United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd. suggests that, where the issue of sufficiency of the evidence is not preserved, the Court is to review the issue only to determine if there is any evidence to support the damage award.  See 210 F.3d at 1229 ("Since Wharf did not submit this issue to the district court until its post-trial motion for judgment as a matter of law, we may review its argument only to determine if there is any evidence to support the damage award.").  As the Court will explain, there was testimony of McDonald, a qualified damages expert, to support the award of future damages.

("Guidance correctly observes that Dentsply/TDP's written and oral motions for judgment as a matter of law did not expressly include future damages[.]").  Because the Defendants did not assert any issue related to damages, past or future, in their motions for judgment as a matter of law under rule 50(a), the Defendants cannot now seek rule 50(b) judgment as a matter of law on that issue. The Court will thus deny the motion insofar as it seeks judgment as a matter of law.

Rule 59(e) has a more lenient preservation standard.  "[A] new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result."  11 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2805, 57-58 (2d ed. 1995).  See Cottman v. Aurora Pub. Schs., 85 Fed. Appx. at 88; Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d at 619.  In this case, the Defendants preserved the issues it now asserts by timely objection.[17]

The Defendants objected several times to the notion of Guidance seeking future damages, although none of the objections were very specific.  On September 21, 2009, Mr. Gulley stated to the Court: "I want the record to be clear, we're not waiving our position on damages, that they're limited to the $1.2 million philosophy of sales."  Transcript of Trial at 270:20-24 (taken September 21, 2009), filed November 25, 2009 (Doc. 474)(Gulley).  On September 23, 2009, Mr. Gulley reiterated the Defendants' objection, framing it in terms of limiting Guidance's damages to what was in the McDonald report, but specifying that they meant "the $1.2 million."  Transcript of Trial at 659:22-24 (taken September 23, 2009), filed December 14, 2009 (Doc. 485)(Gulley).  On October 4, 2009, the Defendants submitted jury instructions asking that the jury be limited to only

---

[17] As the Court will note, however, one of the Defendants' arguments -- that McDonald's testimony was inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) -- was not properly made at or before trial, and thus will not be the basis of an order granting a new trial.

awarding Guidance damages for past harm.  On October 7, 2009, Mr. Gulley framed the issue in

terms of election of remedies and/or judicial estoppel.  See Transcript of Hearing at 34:19-35:2

(taken October 7, 2009), filed November 9, 2009 (Doc. 460)(Gulley).  In short, the Defendants have

adequately preserved the issues in this motion for review as a rule 59(e) motion for new trial.

## II.     THE JUDICIAL-ESTOPPEL DOCTRINE DOES NOT BAR GUIDANCE FROM SEEKING FUTURE DAMAGES.

First, the Defendants argue that, under the judicial-estoppel doctrine, the Court should not

allow Guidance to seek future damages after arguing for and convincing the Court in its request for

a TRO and preliminary injunction that it would suffer irreparable harm which money damages could

not adequately remedy.  Guidance responds that judicial estoppel should not apply because the Court

denied its requests for injunctive relief as to the V2, and because seeking a TRO and preliminary

injunction is not inconsistent with seeking future damages.  The Court will deny the Defendants'

motion insofar as it relies on judicial estoppel.

Under Delaware law, judicial estoppel is intended to "prevent[] a litigant from advancing

an argument that contradicts a position previously taken that the court was persuaded to accept as

the basis for its ruling."  Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859.  See Lynch v.

Thompson, 2009 WL 1900464, at *4 ("Judicial estoppel is an equitable doctrine designed to protect

the integrity of the judicial process by prohibiting parties from deliberately changing positions

according to the exigencies of the moment.")(quoting Julian v. E. States Constr. Serv., Inc., 2009

WL 1211642, at *6).  "[P]arties raise many issues throughout a lengthy litigation such as this, and

only those arguments that persuade the court can form the basis for judicial estoppel."  Motorola Inc.

v. Amkor Tech., Inc., 958 A.2d at 859.  Probably because of "the well-entrenched principle that

modern procedure welcomes inconsistent positions in the course of a single litigation," 18B

C. Wright, A. Miller, & E. Cooper, <u>Fed. Prac. & Proc. Juris.</u> § 4477, at 550 (2d ed. 2002), judicial

estoppel is only proper where the court accepts a party's position "as the basis for its ruling,"

<u>Motorola Inc. v. Amkor Tech., Inc.</u>, 958 A.2d at 859.  Moreover, notwithstanding the doctrine's

legal requirements, it is always in the court's discretion whether to apply the judicial-estoppel

doctrine in a given case.  <u>See id.</u> ("Judicial estoppel 'is an equitable doctrine invoked by a court at

its discretion.'")(quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001)).

### A.   THE COURT DID NOT RELY ON GUIDANCE'S ASSERTION OF IRREPARABLE INJURY AS THE BASIS FOR ITS RULINGS.

In this case, the question of judicial estoppel is relatively straightforward.  The Supreme

Court of Delaware has stated that "only those arguments that persuade the court can form the basis

for judicial estoppel" and that estoppel is appropriate only where the court accepted the party's

position "as the basis for its ruling."  <u>Motorola Inc. v. Amkor Tech., Inc.</u>, 958 A.2d at 859.

Although the Court's December 15, 2008 Memorandum Opinion and Order did not draw this

distinction as clearly as perhaps it should have, there is a difference between the issue whether the

Defendants' refusal to supply the obturator product would cause irreparable harm to Guidance and

whether the Defendants' refusal to produce the V2 file would cause irreparable harm to Guidance.

<u>See</u> Memorandum Opinion and Order at 30-34 (Doc. 30).  The Court concluded, with respect to both

issues, that Guidance had met the burden of showing irreparable injury.  <u>See id.</u> at 34 ("The evidence

that Guidance has presented, indicating that it risks losing significant and hard-to-calculate future

business and also risks going bankrupt, is sufficient to demonstrate irreparable harm.").  The Court

ultimately concluded, however, that Guidance had not established a likelihood of success on the

merits as to the breach-of-contract claim related to the V2 file.  <u>See id.</u> at 39-42 ("With the language

of the Supply Agreement, and the evidence before the Court, the Court cannot say that Guidance had

shown a substantial likelihood that it would prevail on a breach of contract claim."). The Court thus granted Guidance's request for a TRO and its request for a preliminary injunction as to the obturator, but not as to the V2. See id. at 51.

The issue the Defendants raise is whether judicial estoppel applies to Guidance's assertion that it would suffer irreparable injury if the Court did not grant its requested TRO and preliminary injunction with respect to the V2. The underlying question, therefore, is whether Guidance's assertion that it would suffer irreparable injury if it was not provided with the V2 file is one that the Court accepted "as the basis for its ruling." Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859. It was not. The Court agreed that deprivation of either the obturators or the V2 product could cause Guidance irreparable injury, but the Court granted Guidance's request only as to the obturators and not as to the V2. The irreparable-injury finding as to the V2, therefore, did not form the basis of the Court's ruling, because the ruling -- granting with respect to obturators and denying with respect to the V2 -- would have been the same even if the Court had come to a different conclusion with respect to irreparable injury as to the V2 file.

## B.    REQUESTS FOR A TRO AND A PRELIMINARY INJUNCTION ARE NOT INCONSISTENT WITH SEEKING FUTURE DAMAGES.

Moreover, the Court is unconvinced that seeking a TRO or a preliminary injunction is inconsistent with seeking future damages. "[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can beheld." Univ. of Tex. v. Camenisch, 451 U.S. at 395. See Keirnan v. Utah Transit Auth.,339 F.3d at 1220. The purpose of future damages, on the other hand, is to compensate for damages that the plaintiff will suffer, but which it has not yet incurred. See Black's Law Dictionary at 446 (9th ed. 2009)("***future damages***. . . . Money awarded to an injured party for an injury's residual or projected effects[.]").

-36-

These forms of relief are not inconsistent, nor would it be inconsistent for a small business, like Guidance, to want to stay in business during a litigation in which they would ultimately prefer to receive damages for the opposing party's breach. There is no inconsistency between Guidance's decision to seek a TRO or preliminary injunction, and its decision to pursue future damages.

The Court also does not see an inconsistency in Guidance asserting that it would suffer irreparable injury if not granted a TRO or preliminary injunction, and its pursuit of future damages. Guidance's position was that it risked not only suffering financial harm, but also "losing customers, goodwill, and unique business opportunities." It was concerned that Guidance's current customers, if Guidance could not fill their orders, would begin buying products from other customers. This scenario would result in harm other than financial harm and financial harm that was difficult to quantify. The key fact, however, is that Guidance's assertion of irreparable injury included an aspect of financial loss, and the Court recognized that fact. See Memorandum Opinion and Order at 30 (Doc. 30)("Economic damage to a business can be a basis for preliminary relief."); id. at 32 ("Most economic harms can be remedied with money. What makes these harms irreparable is that they are difficult to calculate with much certainty."). Guidance was asserting that the compensatory damages it expected to win at the end of the case would not correct all of the harms it expected to suffer; it was not asserting that it did not want, or would not seek, future damages. Guidance was concerned with business-related harms, including the loss of sales to its customers. In other words, Guidance's assertion of irreparable harm included asserting that it would suffer future financial harm that would be difficult to quantify. This assertion is not inconsistent with the lesser assertion that Guidance would suffer future damages.[18]

_____

[18] The only case that the Defendants cite to support this alleged inconsistency is unhelpful. In that case, E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d 436, 445 (Del. 1995), the

**C.   EVEN IF JUDICIAL ESTOPPEL WOULD OTHERWISE APPLY, THE COURT EXERCISES ITS DISCRETION NOT TO ESTOP GUIDANCE.**

Finally, even if the judicial-estoppel doctrine would otherwise apply, the Court would exercise its discretion not to apply the doctrine in this case.  See Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859 (stating that the issue whether to apply judicial estoppel is within the court's discretion).  The Court does not believe that seeking future damages after securing a TRO or preliminary injunction implicates the fairness or integrity of the judicial proceeding.  See Banther v. State, 977 A.2d at 884-85 ("The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process."); Motorola Inc. v. Amkor Tech., Inc., 958 A.2d at 859 ("The doctrine is meant to protect the integrity of the judicial proceedings.").  Moreover, none of the factors that Delaware courts consider in exercising their discretion to enforce judicial estoppel weigh in favor of the Defendants.  First, Guidance's earlier position is not "clearly inconsistent" with its later position.  Julian v. E. States Constr. Serv., Inc., 2009 WL 1211642, at *6.  Second, the Court is cognizant of the positions it and Guidance have taken on these issues, and the Court does not believe that it has been misled.  See id.

Finally, Guidance derived no unfair advantage, and the Defendants suffered no unfair

_____

Supreme Court of Delaware stated that, "where compensation in damages is an adequate substitute for the injured party," it has not granted specific performance.  This quotation is a statement of the standard for irreparable injury -- that an award of damages would be insufficient to place the plaintiff in the position it would be in absent the breach.  The case itself had nothing to do with seeking an injunction or TRO.  The passage that the Defendants quote is a block quotation from the Restatement (Second) of Contracts.  See E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d at 445 (quoting the Restatement in a section titled "Punitive Damages for Breach of Contract").  Moreover, the quoted passage deals only with when the Supreme Court of Delaware has not approved of granting requests for specific performance -- specifically, when damages would be adequate substitute.  It does not say that damages should be denied where specific performance would be an appropriate remedy.  It also does not say that damages should be denied where the plaintiff argues that specific performance would be an appropriate remedy.  In short, the case the Defendants cite does not stand for the proposition they put forth.

detriment, from Guidance seeking both preliminary injunctive relief and future damages.  See id.
The Defendants disagree with this conclusion.  See Motion at 7-8.  They assert that they were
"effectively prohibit[ed]" from doing discovery on future damages, attempting to discredit
Guidance's future damages model, or attempting to prove mitigation of damages, because they were
surprised when Guidance sought future damages mid-way through trial.  The Court finds this alleged
surprise lacks a sound basis in the facts of the case.  There were numerous indicators that Guidance
would be seeking future damages.  The very first indication was the Complaint's broad wording as
to relief sought, although the Court acknowledges that the Complaint was somewhat ambiguous.[19]
The first unambiguous indication was on or about June 4, 2009, when Guidance disclosed
McDonald's first expert report.  That report indicated that Guidance wanted future damages and
included a sentence explaining how the jury might seek to calculate those damages.  See McDonald
Report at 9-10.  Guidance moved for leave to supplement its expert report on August 31, 2009, and
sought to increase its future damages estimate to the sum of approximately $75,000,000.00.  See
McDonald Supplement at 1 & Exhibit 1.  The Pretrial Order, to which the Defendants agreed to give
effect retroactively to August 31, 2009, expressly stated that Guidance was seeking "past and future
damages."  Pretrial Order at 3.  Guidance's Proposed Jury Instructions, filed on September 15, 2009,
included a proposed instruction that would have let the jury award Guidance damages for losses
caused "during the life of the contract," which would have included future damages.  Plaintiff's

---

[19] In response to this broadly worded Complaint, the Defendants served interrogatories
asking Guidance to further elaborate on the nature of the damages it seeks.  As the Court pointed
out in a prior opinion, Guidance's responses were not entirely helpful.  See Memorandum Opinion
and Order at 3-4, filed September 29, 2009 (Doc. 378).  Guidance responded that it "seeks damages
to the full extent permitted by law[.]"  Dentsply/TDP's Motion in Limine to Exclude Certain
Evidence Related to Guidance's Damages Claims Exhibit A, filed July 31, 2009 (Doc. 219-1).  This
response should have further indicated to the Defendants that Guidance was seeking future damages.

Proposed Jury Instructions, Instruction No. 15, at 19.  Throughout the trial, several sets of the Court's Proposed Jury Instructions included Guidance's proposed instruction in some form.  See Court's Second Proposed Jury Instructions, Instruction No. 27, at 28; Court's Third Proposed Jury Instructions, Instruction No. 27, at 27; Court's Fourth Proposed Jury Instructions, Instruction No. 30, at 30; Court's Fifth Proposed Jury Instructions, Instruction No. 28, at 31; Court's Seventh Proposed Jury Instructions, Instruction No. 29, at 34; Court's Final Jury Instructions (Given), Instruction No. 29, at 29.

Skilled and knowledgeable counsel represented the parties in this case.  Those counsel raised issues to the Court that indicated a keen eye and attention to detail; nothing was too small or insignificant to garner an objection, if objecting would potentially prove advantageous.  The Court does not believe that defense counsel was caught unawares by the prospect of future damages.  The Defendants received significant notice that Guidance might seek future damages, at least enough to present some evidence of mitigation of damages and to present some testimony to contradict McDonald's future-damages testimony.  They also could have objected to McDonald's future-damages theory on Daubert grounds, but they did not.  In sum, because the Court's adoption of Guidance's argument that it would suffer irreparable injury if not provided with the V2 file was not the basis of the Court's December 15, 2009 Memorandum Opinion and Order, because neither a TRO nor a preliminary injunction is inconsistent with seeking future damages, because Guidance's position that it would suffer such irreparable injury was not inconsistent with its decision to seek future damages, and because the Court believes, in its discretion, that application of the judicial-estoppel doctrine is inappropriate in this case, the Court denies Guidance's motion to the extent that it relies on judicial estoppel.

-40-

III.   **THE ELECTION-OF-REMEDIES DOCTRINE DOES NOT BAR GUIDANCE FROM SEEKING FUTURE DAMAGES FOR THE LIFE OF CONTRACT.**

The Defendants next contend that, under the election-of-remedies doctrine, Guidance is precluded from seeking future damages.  They assert that seeking injunctive relief and seeking future damages are inconsistent remedies.  They also argue that Guidance took at least three decisive acts to pursue injunctive relief, to the exclusion of future damages.  Guidance disagrees that it took any action which constituted an election of remedies and thus precluded it from seeking damages.  The Court agrees with Guidance.

Under Delaware law, the election-of-remedies doctrine "is based on any decisive act of a party, with knowledge of his rights and of the facts, indicating an intent to pursue one remedy rather than another." Stoltz Realty Co. v. Raphael, 458 A.2d at 23 (internal quotations omitted).  If a party pursues one remedy to final judgment, for example, he or she is barred from then pursuing an inconsistent remedy.  Stoltz Realty Co. v. Raphael, 458 A.2d at 23.  In most jurisdictions, however, a party elects between inconsistent remedies after the verdict is entered, but before entry of judgment.  See In re Leonardi's Int'l, Inc., 123 B.R. at 669; Tankersley v. Barker, 286 Ga. App. at 790, 651 S.E.2d at 438; JHC Ventures, L.P. v. Fast Trucking, Inc., 94 S.W.3d at 774; Genetti v. Caterpillar, Inc., 261 Neb. at 122-23, 621 N.W.2d at 547; Widgeon v. E. Shore Hosp. Ctr., 300 Md. at 535, 479 A.2d at 928.

The doctrine "requires that at the time of the supposed election there were available to the plaintiff two or more inconsistent remedies and that the plaintiff had a choice at that time as to which he desired to pursue." Stockman v. McKee, 71 A.2d at 879.  "A legally significant inconsistency," however, "is found only when one claim of facts is repugnant and contrary to facts necessary to the other claim therein involved." Farmers Bank of Del. v. Dickey, 209 A.2d at 754.

-41-

If the remedies sought are not inconsistent, a plaintiff may proceed to trial on alternate theories.  See Cede & Co. v. Technicolor, Inc., 542 A.2d at 1190-91.

A.       GUIDANCE DID NOT SEEK INCONSISTENT REMEDIES.

The Court finds that Guidance never elected to pursue injunctive relief "to the exclusion of future compensatory damages," as the Defendants contend.  Motion at 10.  First, as Guidance points out, "[a] legally significant inconsistency is found only when one claim of facts is repugnant and contrary to facts necessary to the other claim therein involved."  Farmers Bank of Del. v. Dickey, 209 A.2d at 754.  Here, the exact same facts underlie Guidance's request for an injunction and its request for future damages.  The facts that Guidance would have to establish in order to prove entitlement to future damages overlap with those that it would have had to establish to be entitled to an injunction; there is no internal inconsistency.  As the Court has already explained, a plaintiff alleging that future harm is irreparable because damages would be difficult to calculate with certainty or because damages would not fully remedy the harm is not inconsistent with the plaintiff alleging that some of the future harm the defendant's acts will inflict is monetary.

The Complaint seeks damages in the broadest terms, and alleges both harm occurring in the past and harm expected to occur in the future.  The prayer for relief seeks a judgment "[a]warding Plaintiff damages, both compensatory and punitive, plus interest, costs and disbursements, and attorneys' fees, in an amount to be determined at trial."  Complaint at 38.  It does not state "future damages," but neither does it state "past damages."  The Complaint sought damages.  This prayer does not reflect an election of any sort.

The two paragraphs of the Complaint that seem to most support the Defendants' position are paragraph 168 and paragraph 179, both of which state: "As a result of Defendants' aforesaid breaches of the Supply Agreement, Guidance has suffered damages for which it is entitled to

-42-

compensatory damages from defendant in an amount to be determined at trial." Complaint ¶¶ 168, 179, at 31, 32.  As the Defendants point out, the language of these two paragraphs is phrased in the past tense, suggesting that Guidance is alleging that it has suffered past harm, and thus might suggest that Guidance is seeking damages only for past harms.  That interpretation is not, however, a necessary one.  The allegations are ambiguous.  The Defendants could have served interrogatories and/or requests for admission in discovery to further inquire whether Guidance sought future damages.  The Defendants could have asked Goodis at his deposition, at the TRO hearing, and at the preliminary-injunction hearing.  So far as the Court is aware, they did not do so.[20]  And, as the Court has noted, the Defendants should have been on notice of Guidance's intent to seek future damages since McDonald's June 4, 2009 expert report, almost four months before trial.  One way or another, the language of the Complaint is not the kind of "decisive act of a party, with knowledge of his rights and of the facts," which would  "indicat[e] an intent to pursue one remedy rather than another."  Stoltz Realty Co. v. Raphael, 458 A.2d at 23.

As the Defendants admit, "[u]nder Delaware law, it is permissible in some instances to seek recovery on inconsistent theories without running afoul of the election of remedies doctrine by pleading the theories in the alternative."  Motion at 10 n.3 (citing Shuttleworth v. Abramo, No. Civ. A. 11897, 1993 WL 330054, at *5 (Del. Ch. Aug. 12, 1993)).  The Court declines to accept the Defendants' assertion that Guidance "failed to plead in the alternative . . . and . . . did not seek future damages until the last minute."  Motion at 10 n.3.  As the Court pointed out, Guidance's Complaint

---

[20] To the Court's knowledge, the Defendants served one interrogatory on Guidance regarding damages, to which Guidance responded that it would "seek[] damages to the full extent permitted by law[.]"  Dentsply/TDP's Motion in Limine to Exclude Certain Evidence Related to Guidance's Damages Claims Exhibit A (Doc. 219-1).  This response, if anything, should have indicated to the Defendants that Guidance was seeking future damages.

was ambiguous, and it became clear months before trial that Guidance intended to pursue future damages at trial.  The Defendants could have used more thorough discovery to further pin Guidance down as to the damages it sought.  In any case, given the liberal pleading standards generally applicable in federal court, see Minter v. Prime Equipment Co., 451 F.3d 1196, 1200 (10th Cir. 2006)(referring to "the liberal pleading standards of Federal Rule of Civil Procedure 8[.]"); 18B C. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 4477, at 559-60 (2d ed. 2002), and the ambiguity in the Complaint, the Court finds that Guidance pled injunctive relief and future damages as alternative remedies.  As such, the Court cannot conclude that Guidance elected one to the exclusion of the other.

The Court is unpersuaded by the Defendants' reliance on Scott v. City of Harrington, 1986 WL 4494 (Del. Ch. 1986)(unpublished).  The plaintiff in Scott v. City of Harrington brought an action for inverse condemnation, asserting that the City of Harrington's conduct constituted a de facto taking of his property and seeking damages.  The plaintiff later sought to amend his complaint to assert an additional claim of continuing trespass.  The Delaware Chancery Court found these two remedies irreconcilably inconsistent and barred the amendment under the election-of-remedies doctrine.  It did not entertain the idea that the plaintiff might be seeking the two remedies in the alternative, because the plaintiff asserted only inverse condemnation until the City filed its motion for summary judgment.  Moreover, it found the positions inconsistent, because a claim for continuing trespass assumes the property has not been taken, whereas a claim for inverse condemnation assumes the property has been taken.  See Scott v. City of Harrington, 1986 WL 4494, at *2.

In this case, the Court has concluded that Guidance was seeking its remedies in the alternative; until it was forced to elect a remedy, it would continue to pursue damages and injunctive

-44-

relief.  Moreover, there is nothing inherently inconsistent about the remedies Guidance seeks.

> For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."

Sw. Stainless, LP v. Sappington, 582 F.3d 1176, 1191 (10th Cir. 2009)(quoting Prairie Band

Potawatomi Nation v. Wagnon, 476 F.3d 818, 822 (10th Cir. 2007)).  To recover future damages,

Guidance was required to prove success on the merits of its claims and a likelihood of future harm.

If Guidance were successful in proving its entitlement to a preliminary injunction, there is nothing

about that ruling that would disprove its entitlement to future damages.  Similarly, if Guidance

proved it is entitled to future damages, there is nothing inherent in such a finding that would

disprove its entitlement to injunctive relief.  In other words, under the same set of facts, a jury could

conclude that Guidance was entitled to both future damages and injunctive relief.  The one-

satisfaction rule would prohibit Guidance from receiving both forms of relief -- an injunction

stopping future harm and damages for future harm would be a double-recovery -- but there is

nothing about either remedy that would inherently negate Guidance's eligibility for the other.  It is

not like Scott v. City of Harrington, where pursuing one remedy necessarily implies that a fact

necessary to establish eligibility for the other remedy is not true.  Guidance could pursue both

remedies up to the entry of judgment.

### B.   THE DEFENDANTS AGREED TO GUIDANCE SEEKING FUTURE DAMAGES AT TRIAL.

Even if the election-of-remedies doctrine would otherwise bar Guidance from seeking future

damages in this case, the Pretrial Order, to which the Defendants agreed, expressly states that

Guidance will seek future damages for breach of contract.  The Tenth Circuit has stated that,

"[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed

-45-

pleadings," because "the pretrial order is the controlling document for trial." Expertise Inc. v. Aetna

Fin. Co., 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e).  The Tenth Circuit has held that

"claims, issues, defenses, or theories of damages not included in the pretrial order are waived even

if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is

deemed to amend any previous pleadings which did not include that claim." Wilson v. Muckala,

303 F.3d 1207, 1215 (10th Cir. 2002). The pretrial order the parties filed in this case, therefore,

supercedes all prior pleadings, including the Complaint.  See Wilson v. Muckala, 303 F.3d at 1215

(citing C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 1522 (2d ed. 1990)).  The Pretrial

Order states explicitly that Guidance would seek future damages in this case, which implicitly

amends Guidance's Complaint to likewise seek future damages.  See Pretrial Order at 3 ("Plaintiff

seeks: (a) an award of past and future damages suffered as a result of Defendants' wrongful

conduct[.]")(emphasis added); Tr. at 151:2-12 (Bisceglie)(stating that, to his knowledge, the

Defendants did not object to Guidance seeking future damages in the pretrial order).

### C.   GUIDANCE DID NOT PROSECUTE ITS FUTURE INJUNCTIVE RELIEF REMEDY TO JUDGMENT.

The Defendants next argue that Guidance elected injunctive relief by "prosecut[ing] its

injunctive remedy to judgment."  Motion at 13.  They rely largely on Scott v. City of Harrington,

which states: "One decisive act that constitutes such an election [of remedies] is the prosecution of

a claim to a final judgment or decree." Scott v. City of Harrington, 1986 WL 4494, at *2.  This

argument is flawed.  First, although the heading states that "Guidance Prosecuted Its Future

Injunctive Relief Remedy To Judgment," Motion at 13 (emphasis added), the Defendants must mean

Guidance's preliminary injunctive relief remedy, because Guidance has elected not to pursue its

future injunctive relief remedy.  Moreover, the Defendants seem to conflate an order granting or

denying preliminary injunctive relief with a "final judgment or decree." A final judgment is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs . . . and enforcement of the judgment." <u>Black's Law Dictionary</u> at 919 (9th ed. 2009). <u>See</u> <u>United States v. Romero</u>, 511 F.3d 1281, 1283 (10th Cir. 2008)(stating that, for the purposes of 28 U.S.C. § 1291, "[a] final judgment is one that ends the litigation on the merits, leaving nothing to decide.")(citing <u>Van Cauwenberghe v. Biard</u>, 486 U.S. 517, 521 (1988))(internal quotations omitted). A decree is "a judicial decision in a court of equity . . . similar to a judgment of a court of law," or "[a] court's final judgment." <u>Black's Law Dictionary</u> at 471. An order granting preliminary injunctive relief pending trial is neither of these things. The Court thus declines to find election of remedies based on the pursuit of preliminary injunctive relief.

### D.   GUIDANCE DID NOT AFFIRM THE SUPPLY AGREEMENT BY INSISTING THAT THE DEFENDANTS CONTINUE TO PERFORM UNDER IT PENDING TRIAL.

The Defendants' final argument asking the court to find an election of remedies is that Guidance "affirm[ed] . . . its contract with Dentsply/TDP, even though the contract was otherwise terminable." Its only support for this proposition is a citation to <u>Sannini v. Casscells</u>, 401 A.2d 927 (Del. 1979). The Court finds the Defendants' argument unpersuasive.

To begin with, the Defendants acknowledge that <u>Sannini v. Casscells</u> is not precisely on point. Rather, they assert that "the Supreme Court of Delaware has noted in an analogous situation . . . ." Motion at 15. Moreover, two important distinctions take this case out of the realm of those that <u>Sannini v. Casscells</u> and <u>Scott v. City of Harrington</u> control. First, <u>Sannini v. Casscells</u>, like <u>Scott v. City of Harrington</u>, was a case in which the two remedies sought were inconsistent. <u>Sannini v. Casscells</u> is a property case wherein the plaintiff had the option of suing in equity for a constructive trust or suing at law for money damages; the plaintiff sought a constructive trust and

made no mention of damages in the complaint.[21]   The remedies were inconsistent because, as the

Supreme Court of Delaware explained,

> when this cause of action arose, Sannini and DiMichele had the choice of proceeding
> in equity to impress a constructive trust on the property or at law for damages.  The
> equitable remedy proceeds on the theory that title to the property lies in the plaintiffs
> and that the defendants simply hold the property as constructive trustees for the
> plaintiffs; the legal remedy for damages proceeds on the assumption that title to the
> property is in the defendants.   Because the two remedies are irreconcilably
> inconsistent, the choice of Sannini and DiMichele to proceed in equity to impress a
> constructive trust constituted an election of remedies, and the pursuit of that choice
> to final judgment now precludes them from seeking damages.

Sannini v. Casscells, 401 A.2d at 931 (footnote omitted).  Thus, as in Scott v. City of Harrington,

assuming to be true the facts that would support one remedy, at least one fact necessary to support

the other remedy must be false.  In this case, on the other hand, there is no fact necessary to support

Guidance's future damages award which must be false if Guidance were entitled to future injunctive

relief, or vice versa.  The remedies Guidance seeks in this case are not irreconcilably inconsistent.

The second distinguishing factor, and the one that convinces the Court that Guidance did not

"affirm" the contract in a manner that would implicate the election-of-remedies doctrine, is that the

Supreme Court of Delaware repeatedly emphasized that election of remedies was implicated by the

plaintiffs' decision to proceed "to final judgment" on its equitable remedy.  Sannini v. Casscells, 401

A.2d 931 ("[T]he choice of Sannini and DiMichele to proceed in equity to impress a constructive

trust constituted an election of remedies, and the pursuit of that choice to final judgment now

precludes them from seeking damages.")(emphasis added); id. ("Having pursued their equitable

remedy to final judgment, . . . does not permit Sannini and DiMichele to turn this typical equity case

---

[21] The plaintiff's complete omission of damages from the complaint in Sannini v. Casscells
is yet a third reason to distinguish that Delaware case from this case.  In this case, the Complaint,
as constructively amended by the Pretrial Order, seeks injunctive relief, as well as past and future
compensatory damages.

into a law suit for damages.")(emphasis added); id. at 932 ("Because of this inconsistency, the plaintiffs were obliged to choose between remedies when they began their suit, and the pursuit of one remedy to final judgment precludes recourse to the other remedy.")(emphasis added). In this case, Guidance did not pursue its injunctive relief remedy to final judgment; rather, it pursued both future damages and injunctive relief, in the alternative, until the jury had returned a verdict. Before the judgment was entered, Guidance elected to pursue money damages to the exclusion of injunctive relief. In sum, the Court concludes that the election-of-remedies doctrine does not bar Guidance from seeking future damages in this suit.

IV.   **THE COURT DID NOT LIMIT GUIDANCE TO SEEKING $1,200,000.00, BUT RATHER LIMITED GUIDANCE TO SEEKING ONLY THOSE DAMAGES CONTAINED IN McDONALD'S ORIGINAL REPORT.**

The Defendants argue that the Court, in two separate rulings, limited Guidance to seeking $1,200,000.00 in compensatory damages, and that allowing Guidance to obtain future damages for the life of the contract at trial violated both of those rulings and the Federal Rules of Civil Procedure. Guidance disagrees that anything it did was inconsistent with the Court's prior opinions or violated the Federal Rules. The Court agrees with Guidance.

First, the Defendants assert that the Court limited the Defendants' damages to $1.2 million in the Court's Sept. 24 MOO. The Sept. 24 MOO, however, addressed a wholly different issue than that which the Defendants have raised in this motion. The issue the Court was addressing was whether it should allow Guidance, after the deadline for disclosing or supplementing expert reports, to supplement McDonald's expert report to allege damages of approximately $75,000,000.00 based on a never-before-disclosed theory of lost future market share. The Court found that Guidance's attempted amendment was untimely, that Guidance failed to adequately disclose this lost-future-market-share theory of damages, and that Guidance's decision to wait until trial was right around

-49-

the corner to dramatically hike up its expert's opinion on damages raised concerns of trial-by-ambush.  <u>See</u> Sept. 24 MOO at 12-19; <u>id.</u> at 19-22; <u>id.</u> at 24-26.  The Court believed that such a dramatic increase in damages on the eve of trial, based on a theory that had never been disclosed to the Defendants, would prejudice them.  <u>See</u> Sept. 24 MOO at 19-22 ("[T]he prejudice or surprise to the Defendants . . . is significant.").

The Court, in its Sept. 24 MOO, referred several times to the damages to which McDonald opined in his  original opinion as "$1.2 million," because that was the sum specified on the first page of his original expert report, and because it provided a convenient shorthand for referring to the damages specific in the first report, as distinguished from the damages specified in the supplemental report.  <u>See</u> Sept. 24 MOO at 1 (framing the issue as whether the Court should allow Guidance to supplement its expert's report "increasing [the expert's] opinion on damages from $1.2 million to $75.2 million"); Sept. 24 MOO at 9 (stating that "McDonald asserts that Guidance's damages might be as high as $75.2 million -- a significant increase from the $1.2 million in his first report."); <u>id.</u> at 21 (finding that the Defendants "were clearly surprised by a supplement that multiplied the prior value of the case by 62 -- from $1.2 million to $75.2 million."); Sept. 24 MOO at 24 (stating that the Defendants were likely "proceeding on the notion that this was an approximately one-million dollar case.").  That shorthand reference did not, however, limit Guidance to seeking only $1.2 million in damages or only seeking damages for past harm.

The Court did not, as the Defendants contend, hold that "evidence concerning future damages was unfairly prejudicial to Dentsply/TDP."  Motion at 17.  The Court was referring specifically to the lost-future-market-share theory of damages to which McDonald would opine if Guidance was allowed to supplement his expert report.  The Court was not asked, at that time, to determine whether McDonald should be allowed to testify to the future-damages estimate in his

original report, nor whether Guidance should be able to seek any future damages at all. The Court was concerned about McDonald's supplement because of the raw magnitude of the increase to Guidance's damages estimate and that McDonald's supplemental report was "substantive, adding new calculations that had never before been disclosed in any meaningful way to the Defendants." Sept. 24 MOO at 25. While the compensatory damages that the jury awarded to Guidance was more than $1.2 million, the award was still in the millions of dollars, rather than the tens of millions. Moreover, the Defendants were on notice of these damages because McDonald opined to them, and explained their method of calculation, in his original expert report. See McDonald Report at 9-10. In short, the concerns underlying the Court's denial of Guidance's motion to supplement McDonald's expert report are not present in the jury's award of future damages. The Court will not prohibit Guidance from seeking future damages based on its Sept. 24 MOO.

The Defendants next contend that the Court's Memorandum Opinion and Order filed September 29, 2009 (Doc. 378)("Sept. 29 MOO") limited Guidance's damages to $1.2 million. See Motion at 17-18. The Defendants are again mistaken. Although the Court referenced the $1.2 million figure in its initial statement of the issues, see Sept. 29 MOO at 1-2 (stating one of the issues as "whether Guidance may seek any damages other than the $1.2 million described in Dr. M. Brian McDonald's original expert report"), the Court ultimately decided that it "w[ould] not allow Guidance to seek damages, or to introduce evidence of such damages, outside of McDonald's report," unless it could prove that it had properly put the Defendants on notice of them. Sept. 29 MOO at 5 (emphasis added). The Court stated: "McDonald may, however, testify to the damages in that report." Sept. 29 MOO at 6. The Court was careful to always state that whatever was properly found within McDonald's original report was fair game. See Sept. 29 MOO at 14 ("The Court will grant the motion and exclude all evidence of Guidance's damages that were not disclosed

in McDonald's expert report."); Sept. 29 MOO at 25 (granting the motion "to the extent that it seeks exclusion of evidence related to [Guidance's] damages which are not included in Dr. M. Brian McDonald's original expert report," unless Guidance could show the Court where it properly sought them during pretrial proceedings). McDonald's original expert report contained a rough estimate of future damages, and the Court therefore permitted McDonald to give limited testimony as to his opinion on Guidance's future damages. The Court will not vacate the future-damages award based on the Sept. 29 MOO.

The Defendants' next argue that Guidance failed to properly disclose its calculation of future damages as required by rule 26(a) of the Federal Rules of Civil Procedure, or to supplement those disclosures under rule 26(e), and that therefore Guidance should not be allowed to use McDonald's testimony as to Guidance's future damages. See Motion at 18-19 (citing Fed. R. Civ. P. 37(c)(1)). The Court is likewise unpersuaded by this argument. Rule 26(e) demands supplementation only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or "as ordered by the court." Fed. R. Civ. P. 26(e). See Hirpa v. IHC Hosps., Inc., 50 Fed. Appx. 928, 933-34 (10th Cir. 2002). Guidance disclosed McDonald's rough calculation of future damages by a timely disclosed expert report, thus that information was "otherwise . . . made known to the other parties during the discovery process," and the Court did not order additional supplementation. Indeed, the Defendants did not ask the Court to order supplementation. That disclosure gave the Defendants sufficient notice of Guidance's intent to seek future damages, especially in conjunction with Guidance's broad responses to discovery, its motion to supplement McDonald's report, its Proposed Jury Instructions, and the Pretrial Order. The Court will not now bar Guidance from recovering future damages based on a failure to

supplement discovery, especially when the rules would not clearly demand supplementation.[22]

## V.   GUIDANCE PRESENTED SOME COMPETENT EVIDENCE QUANTIFYING FUTURE DAMAGES BEYOND THE $1,200,000.00 AMOUNT.

The Defendants final argument is that "the evidence introduced at trial cannot support the jury's award of $3.58 million."[23]  They thus assert that the Court should enter judgment in their favor on Guidance's future-damages claims.  The Court must again disagree.

McDonald testified at the trial of this case.  The Court found him qualified as an expert in the field of economic quantification and calculation of economic damages.  See Transcript of Trial at 1835:1-9 (taken September 29, 2009), filed January 31, 2010 (Doc. 501)("Sept. 29 Tr.")(Court, Kelly, Gulley).   McDonald gave his expert opinion that Guidance's damages would be approximately $239,000.00 per quarter for the life of the Supply Agreement.  See Sept. 29 Tr. at 1844:11-1861:9 (Kelly, McDonald)(McDonald testifying to approximately $239,786.00 per quarter prior to trial); id. at 1861:10-1863:24 (Kelly, McDonald)(McDonald testifying that $239,786.00 per quarter would be a reasonable estimate for future quarters, totaling $6,700,000.00 in lost profits associated with the V2).  This testimony provides sufficient evidence for the jury to find that

---

[22] This holding is not inconsistent with the Sept. 24 MOO.  In that opinion, the Court rejected Guidance's attempt to amend its expert's report to include a calculation of lost-future-market-share damages, i.e., future damages reflecting Guidance's inability to expand its market share to include new customers.  The Court was not dealing with future damages generally, but specifically with the lost-future-market-share theory.  The Court concluded that, although McDonald's original report mentioned the lost-future-market-share theory of damages, it gave no indication how one might go about quantifying it.  On the other hand, McDonald opined in his original report about how the jury might calculate future damages for lost sales of the V2 file.

[23] Mr. Cruz conceded that McDonald's opinion as to future damages was competent evidence of future damages, although he appears to argue that it would not withstand scrutiny under Daubert v. Merrell Dow.  See Tr. at 174:13-17 (Cruz)("And the only competent evidence of future damages is the one little sentence that Dr. McDonald sticks in his report where he says, you know, if the jury wanted to pick a number, they could take my past damages number and just extrapolate it forward infinitely.").  The Defendants raised no Daubert objection to this testimony.

Guidance suffered up to $1,198,931.00 in damages for past losses and up to $5,515,000.00 in damages for future losses.  The Court thus rejects Guidance's sufficiency-of-the-evidence challenge to the jury's future damages verdict and the Court's future-damages judgment.

The bulk of the Defendants' arguments were aimed, not at the sufficiency of the evidence, but the competency of the evidence.  They asserted that McDonald's expert report did not include the same detailed quantification analysis for future damages as it did for past damages related to the V2.  See Tr. at 142:4-144:4 (Cruz); id. at 170:1-172:9 (Court, Cruz); id. at 187:15-21 (Cruz); id. at 189:1-5 (Cruz).  They point to the statements in McDonald's original report, that he had not done a detailed analysis of lost future damages related to the V2, to argue now -- post-trial -- that McDonald should be barred from testifying to Guidance's future damages.  As the Court explained during the hearing, this is a new argument.

The Court has reviewed the transcripts of the bench conference at which Mr. Gulley objected to McDonald's testimony regarding future damages.  Mr. Gulley's objection was not that McDonald was not qualified to testify to future damages, that his methodology was improper or improperly disclosed, that the calculation of future damages in his expert report was an improper application of methodology to the facts, or that his expert report was insufficiently detailed.  Instead, Mr. Gulley objected that McDonald had not opined to future damages in his expert report.  See Sept. 29 Tr. at 1835:20-1837:2, 1838:3-12 (Court, Gulley).  Mr. Kelly responded that McDonald gave an opinion how the jurors could calculate future damages if they saw fit to award future damages.  See Sept. 29 Tr. at 1838:16-25, 1840:14:23 (Kelly, Court).  Once the Court noted that McDonald's original report contained the calculation of future damages to existing Guidance customers and overruled Mr. Gulley's objection, Mr. Gulley did not assert any additional objection.  See Sept. 29 Tr. at 1840:20-1841:20 (Court, Gulley, Kelly).  In other words, this motion is the first time the Defendants

-54-

have challenged McDonald's future-damages testimony about the V2 on what appears to be <u>Daubert</u>

grounds.[24]   The proper time to challenge expert testimony on <u>Daubert</u> grounds is before or during

trial, not afterwards.   <u>See</u> <u>Alfred v. Caterpillar, Inc.</u>, 262 F.3d 1083, 1087 (10th Cir. 2001)("The

truth-seeking function of litigation is best served by an orderly progression, and because <u>Daubert</u>

generally contemplates a 'gatekeeping' function, not a 'gotcha' junction, <u>Macsenti [v. Becker</u>, 237

F.3d 1223 (10th Cir. 2001),] permits a district court to reject as untimely <u>Daubert</u> motions raised late

in the trial process[.]").   The Defendants have thus not preserved this basis to challenge McDonald's

expert testimony, and the Court will reject the Defendants' post-trial attempt to undermine that

testimony.[25]   The Court thus denies the Defendant's motion on all grounds.

   **IT IS ORDERED** that Dentsply/TDPs Motion to Vacate the Jury's Award of Future

Damages for Breach of Contract and to Enter Judgment as a Matter of Law on the Future Damages

Award is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[24] At the hearing on this motion, the Court asked whether there was any discussion of statements regarding future damages during the Defendants' deposition of McDonald.   The Defendants reviewed the deposition transcripts and conceded that they had asked McDonald about his future damage estimate during that deposition.   Apparently, McDonald conceded at the deposition that he had not done any significant damages analysis beyond the December 2009 time frame, <u>i.e.</u>, beyond the estimated date of the trial.   <u>See</u> Transcript of Hearing at 300:4-301:11 (taken March 23, 2010)(Cruz).   The Defendants never filed a motion in limine under <u>Daubert</u> to limit McDonald's testimony to past damages, notwithstanding the presence of a statement in his report that could be construed -- and was construed -- as an expert opinion on future damages.

[25] The Court raised this concern during the hearing.   Mr. Cruz declined to answer when the Court asked whether he agreed that these <u>Daubert</u>-type issues must be raised at trial by objection or before trial via a motion in limine.   <u>See</u> Tr. at 188:4-22 (Court, Cruz).

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
   & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff and Counter Defendants*

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, D.C.

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --

Brian M. Addison
   Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

*Attorneys for the Defendants and Counter Plaintiffs*