# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

       Plaintiff,

vs.                                                      No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants,

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

       Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

       Counter Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict, filed October 30, 2009 (Doc. 454). The Court held a hearing on this motion on March 22, 2010. The primary issues are: (i) whether the Court should vacate a punitive-damages verdict of $40,000,000.00 in a breach-of-contract suit under Delaware law because the independent tort, which permitted punitive damages in a breach-of-contract action, was limited to

$300.00 in punitive damages; (ii) whether the Court should vacate that punitive damages award because there was no tort claim upon which to base a punitive damages award, i.e., because neither Plaintiff Guidance Endodontics, LLC's claim under the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 through 57-12-26 ("NMUPA"), nor its claim for breach of the implied covenant of good faith and fair dealing, was a tort claim; (iii) whether the Court should vacate the jury's verdict on Guidance's breach-of-implied-covenant claim because Guidance failed to establish all the elements of that claim; and (iv) whether the Court committed harmful error by giving Instruction No. 37 to the jury. Many of the issues that the Defendants Dentsply International, Inc., and Tulsa Dental Products, LLC, raise have been forfeited or waived, and those that have been preserved lack a sound basis in the law or in the facts of this case. Those issues that have not been forfeited do not rise to the level of plain error. The Court will thus deny the Defendants' motion.

## FACTUAL BACKGROUND

This suit arises from a contract dispute that Guidance, a small endodontic-equipment company, has brought against the Defendants, who were both Guidance's rivals and its suppliers. More background on the lawsuit is set forth in one of the Court's earlier opinions. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 633 F. Supp. 2d 1257, 1260-67 (D.N.M. 2008) (Browning, J.). The Defendants are manufacturers and suppliers of a variety of endodontic products that compete with Guidance's products, including endodontic obturators, files, and ovens.[1]

---

[1] Files, obturators, and ovens are all devices that dentists and endodontists use to perform root canal surgery. Files are small metal drills that cut away the infected part of the tooth. See Verified Complaint and Demand for Jury Trial ¶ 109, at 22, filed November 21, 2008 (Doc. 1)("Complaint"); Oxford English Dictionary Online, "file, n." (2d ed. 1989, Oxford University Press), available at http://dictionary.oed.com/cgi/entry/50084664 (last visited Aug. 9, 2010). The obturator is a device used to fill the whole that the file leaves. See Complaint ¶ 109, at 22; Oxford English Dictionary Online, "obturator, n." available at http://dictionary.oed.com/cgi/entry/00329626 (last visited Aug. 9, 2010)("2.a . . . . A prosthetic device used to close an abnormal opening . . . .");

Guidance and the Defendants were parties to a Manufacturing and Supply Agreement, which arose as a settlement of a separate intellectual-property dispute. The Supply Agreement required the Defendants to supply Guidance with endodontic files, obturators, and ovens, which Guidance would then sell to end-users.

Guidance began selling those endodontic products at extremely low prices compared to the prices that the Defendants charged for the same or similar products. Allegedly as a dirty business tactic to keep Guidance from underselling them in the marketplace, the Defendants stopped supplying endodontic obturators to Guidance. The Defendants told Guidance that they were ceasing to supply obturators because they heard that Guidance was telling its current and potential customers that the Defendants manufactured the products, which, they alleged, was in violation of the Supply Agreement. In addition to ceasing the supply of obturators, the Defendants refused to manufacture a new endodontic file -- the V2 file -- which Guidance intended to sell.[2] The Defendants asserted that the Supply Agreement required Guidance to supply them with detailed engineering drawings before they were obligated to supply the V2 file. Guidance disputed that the Supply Agreement required it to provide engineering drawings as a prerequisite to the Defendants producing the V2.

─────────────────

Motion at 2. As Counter-Defendant Dr. Charles Goodis put it: "An obturator is a device used to fill the root canal with gutta percha after the canal has been drilled, cleaned, and shaped." Declaration of Charles J. Goodis in Support of His and Plaintiff's Motion for Summary Judgment ¶ 5, at 2, filed July 31, 2009 (executed July 31, 2009)(Doc. 227). Gutta percha is one substance with which an obturator may fill a drilled canal. Gutta percha is "[a] rubbery substance derived from the latex of any of several tropical trees of the genera *Palaquium* and *Payena*, used as an electrical insulator, as a waterproofing compound, and in golf balls." The American Heritage Dictionary of the English Language at 808 (3d ed. 1992). Finally, an oven is the device used to warm some obturators, rendering the filling material malleable and usable to fill in the hole that the file leaves. See Complaint ¶ 109, at 22.

[2] The Court uses the term "new" in a colloquial sense and is not invoking the language of Article 4.5 of the supply agreement, which governs "new products."

Finally, the Defendants initiated an organized marketing campaign to drive Guidance out of business, which included the Defendants' sales staff falsely representing to actual and potential Guidance customers that Guidance was no longer able to supply endodontic files. Based on these three categories of conduct, Guidance filed this suit.

**PROCEDURAL BACKGROUND**

On November 21, 2008, Guidance filed a Verified Complaint and Demand for Jury Trial. In the Complaint, Guidance made seven claims for relief: (i) breach of contract based on the Defendants' refusal to supply obturators, see Complaint ¶¶ 158-68, at 30-31; (ii) breach of contract based on the Defendants' refusal to supply endodontic files, see Complaint ¶¶ 169-79, at 31-32; (iii) breach of the implied covenant of good faith and fair dealing, see Complaint ¶¶ 180-87, at 32-33; (iv) violation of the Delaware Deceptive Trade Practices Act, see Complaint ¶¶ 188-97, at 33-34; (v) violation of the NMUPA, see Complaint ¶¶ 198-207, at 34-35; (vi) violation of § 43(a)(1)(B) of the Lanham Act, see Complaint ¶¶ 208-16, at 35-36; and (vii) tortious interference with existing and prospective contractual relations, see Complaint ¶¶ 217-26, at 36-37. On the way to trial, the Court dismissed several of these claims.

1.      **Proposed Instructions and Verdict Form, and the Court's Adoption Thereof.**

On September 15, 2009, the Defendants filed a set of proposed jury instructions. One of those was an instruction on the Defendants' claim against Guidance for a breach of the implied covenant of good faith and fair dealing. That instruction read:

> Every contract, including the one in this case, contains an implied covenant of good faith and fair dealing. This covenant requires the parties to the contract to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. A party is liable for breaching the implied covenant of good faith and fair dealing if you find that its conduct frustrates the overarching purpose of the contract and that such action

-4-

actually or nominally damaged the other party.

In this case, Guidance is liable for breach of the implied covenant of good faith and fair dealing if you find that it acted arbitrarily or unreasonably, its conduct prevented Dentsply and/or Tulsa Dental from receiving the fruits of the contract, and Guidance's actions actually or nominally damaged Dentsply and/or Tulsa Dental.

Dentsply/TDP's Proposed Jury Instructions, Instruction No. 8, at 9, filed September 15, 2009 (Doc. 330). The Defendants' proposed jury instruction on punitive damages did not mention their implied-covenant claim. <u>See</u> Dentsply/TDP's Proposed Jury Instructions, Instruction No. 45, at 51.

Shortly thereafter, on September 28, 2009, the Defendants submitted a proposed verdict form. <u>See</u> Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP, filed September 28, 2009 (Doc. 370). The proposed verdict form contains the following questions regarding punitive damages and breach of the implied covenant of good faith and fair dealing:

*Breach of Implied Covenant of Good Faith and Fair Dealing*

(6)   Do you find that Guidance breached the implied covenant of good faith and fair dealing?

_____ YES              _____ NO

If your answer to Question No. 6 is "YES," go on to Question No. 7. If your answer to Question No. 6 is "No," go to Question No. 11.

(7)   Do you find that Dentsply and/or Tulsa Dental have suffered actual or nominal damages as a result of Guidance's conduct?

_____ YES              _____ NO

If your answer to Question No. 7 is "YES," go on to Question No. 8. If your answer to Question No. 7 is "No," go to Question No. 11.

(8)   In a lump sum, state the amount of actual or nominal damages you award Dentsply and Tulsa Dental

$ _____

Go on to Question No. 9.

(9)     Do you find that Guidance's breach of the implied covenant of good faith and fair dealing was in bad faith?

_____ YES          _____ NO

If your answer to Question No. 9 is "YES," go on to Question No. 10.  If your answer to Question No. 9 is "No," go to question No. 11.

(10)    In a lump sum, state the amount of punitive damages you award Dentsply and Tulsa Dental.

$ _____

Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP at 3.  This set of jury questions would allow the jury to award punitive damages to the Defendants based solely on a bad-faith breach of the implied covenant of good faith and fair dealing.

The Court adopted the Defendants' proposed jury questions into its First and Second Proposed Verdict Forms.  See Court's First Proposed Verdict Form at 7, filed October 1, 2009 (Doc. 393); Court's Second Proposed Verdict Form at 3, 6, filed October 6, 2009 (Doc. 424).  The Court's Second Proposed Verdict Form adopted the Defendants' questions as a predicate for punitive damages with respect to both Guidance's implied-covenant claim against the Defendants, and the Defendants' implied-covenant counterclaim against Guidance:

**Predicate for Punitive Damages for Breach of Implied Covenant of Good Faith and Fair Dealing**

12.     Do you find Dentsply and/or Tulsa Dental's breach of the implied covenant of good faith and fair dealing was in bad faith?

* * * *

**Predicate Question for Punitive Damages for Breach of Implied Covenant of Good Faith and Fair Dealing.**

-6-

30.     Do you find that Guidance's breach of the implied covenant of good faith and fair dealing was in bad faith?

Court's Second Proposed Verdict Form at 3, 6.

## 2.     The Court's Instructions on Punitive Damages and Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Court included in the Final Jury Instructions an instruction setting forth the elements of

a claim for breach of the implied covenant of good faith and fair dealing.  That instruction stated:

For Guidance to prove that Dentsply and/or Tulsa Dental breached the implied covenant of good faith and fair dealing, Guidance must prove each of the following elements by a preponderance of the evidence:

*First*, Dentsply and/or Tulsa Dental acted arbitrarily or unreasonably by using its status as Guidance's exclusive manufacturer of products to develop a brochure that disparages those products;

*Second*, that conduct prevented Guidance from receiving the fruits of the contract; and

*Third*, Dentsply and/or Tulsa Dental's actions injured Guidance.

Court's Final Jury Instructions (Given), Instruction No. 27, at 28, filed October 8, 2009 (Doc. 430).

The Court explained that instruction in a following instruction, which stated:

A party is liable for breaching the implied covenant of good faith and fair dealing if you find that its conduct frustrates the overarching purpose of the contract and that such actions actually or nominally damaged the other party.  The implied covenant is breached when it is clear from the writing that the parties would have agreed to prohibit the act complained of had they thought to negotiate with respect to that matter or when one party frustrates the purpose of the agreement by taking advantage of its position to control implementation of the agreement's terms.

Court's Final Jury Instructions (Given), Instruction No. 28, at 29.  The Court also included an

instruction setting forth the elements of a NMUPA claim; it stated:

For Guidance to prove that Dentsply and/or Tulsa Dental violated the New

-7-

Mexico Unfair Practices Act, Guidance must prove each of the following elements by a preponderance of the evidence:

> *First*, Dentsply and/or Tulsa Dental made an oral or written statement that was false or misleading;

> *Second*, the false or misleading statement was knowingly false;

> *Third*, the false or misleading statement was made in connection with the sale of goods or services in the regular course of Dentsply's and/or Tulsa Dental's trade or commerce; and

> *Fourth*, the false or misleading statement may, tends to, or does deceive or mislead any person.

Court's Final Jury Instructions (Given), Instruction No. 31, at 32.

Finally, the Court instructed the jury on punitive damages, borrowing from the parties' proposed instructions and reacting to various objections.  Relevant to this motion, that instruction stated:

> In this case, Guidance seeks to recover punitive damages from Dentsply and/or Tulsa Dental.  You may consider punitive damages only if you find that Guidance should recover compensatory damages for the breach of contract and nominal damages for violation of the New Mexico Unfair Practices Act.

> If you decide to award compensatory damages to Guidance on its breach of contract claims against Dentsply and/or Tulsa Dental, or on its claim that Dentsply and/or Tulsa Dental breached the implied covenant of good faith and fair dealing, you must determine whether Dentsply and/or Tulsa Dental are liable to Guidance for punitive damages.

> Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's breach of contract if you find one of the following: (a) that Dentsply's and/or Tulsa Dental's breach of the contract was accompanied by fraudulent conduct; (b) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of the New Mexico Unfair Practices Act because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement.

> Guidance may only recover punitive damages for Dentsply's and/or Tulsa Dental's breach of implied covenant of good faith and fair dealing if you find that

-8-

Dentsply's and/or Tulsa Dental's breach of the implied covenant was in bad faith.

> You may award punitive damages to punish Dentsply and/or Tulsa Dental for their outrageous conduct and to deter them, and others like them, from engaging in similar conduct in the future if you find by a preponderance of the evidence that Dentsply and/or Tulsa Dental acted intentionally or recklessly.

Court's Final Jury Instruction (Given), Instruction No. 37, at 39-40.

### 3.   Before the Jury Began Deliberations, the Court Dismissed the Defendants' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Defendants filed several counterclaims against Guidance. One of those claims was for a breach of the implied covenant of good faith and fair dealing. The Court granted Guidance's motion for summary judgment as to the Defendants' implied-covenant claim, however, because the claim overlapped with the Defendants' breach-of-contract claim. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2010 WL 1608949, **18-21 (D.N.M. Mar. 23, 2010)(Browning, J.). The Court thus removed from the verdict form questions asking the jury to find whether Guidance breached the implied covenant, including the questions which would allow the Defendants to receive punitive damages if the jury found a bad-faith breach of the implied covenant.

### 4.   The Jury's Verdict and the Court's Judgment.

The Court held a three-week jury trial from September 21, 2009 through October 9, 2009. See Clerk's Minutes Before the Honorable James O. Browning at 1, filed September 21, 2009 (Doc. 439). On Wednesday, October 7, 2009, the Court read the instructions to the jury. See id. at 40. Those instructions included Guidance's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the NMUPA, and violation of the Lanham Act. See Court's Final Jury Instructions (Given), Instruction No. 18, at 18, filed October 8, 2009

(Doc. 430).  The Court had dismissed the other claims before trial.

The jury deliberated for about two days.  On October 9, 2009, the jury returned a verdict largely in favor of Guidance.  The jury found that the Defendants breached the Supply Agreement with regard to its failure to supply obturators and its failure to produce the V2 file, and found that breach caused Guidance damages.  See Verdict Form ¶¶ 2-4, at 2, filed October 9, 2009 (Doc. 441).  The jury also found that the Defendants breached the implied covenant of good faith and fair dealing, and violated the NMUPA, and found that both infractions caused damages to Guidance.  See id. ¶¶ 5-12, at 2-3.  The jury awarded Guidance $500,000.00 in compensatory damages for past harm that the breach of contract related to the V2 caused, and $3,580,000.00 in future damages related to that breach.  See Verdict Form ¶¶ 15-16, at 4.[3]  The jury also found that Guidance was entitled to nominal damages of $200,000.00 for the Defendants' unlawful conduct.  See Verdict Form ¶¶ 17-21, at 4-5.[4]  Finally, based on the breach of the implied covenant and violation of the NMUPA, the jury awarded Guidance punitive damages of $40,000,000.00.  See Verdict Form ¶¶ 22-23, at 5-6.

The jury did not, however, completely absolve Guidance of fault.  It found that Guidance breached the Supply Agreement and willfully engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125.  See Verdict Form ¶¶ 24-27, at 6-7.  As a result, the jury awarded the Defendants $93,000.00 in compensatory damages.  See id. ¶ 35, at 8.

---

[3] Throughout this opinion, when the Court refers to the future-damages award, it is referring to this sum of $3,580,000.00, which the jury awarded in response to the question: "In a lump sum, state the amount of compensatory damages you are awarding to Guidance for Dentsply and/or Tulsa Dental's breach of the Manufacturing and Supply Agreement related to the V2 for the period from the trial to the end of the Manufacturing and Supply Agreement."  Verdict Form ¶ 16, at 4.

[4] The Court appreciates the inconsistency of an award of $200,000.00 in nominal damages.

On October 22, 2009, Guidance filed a motion asking the Court to enter a final judgment in conformity with the jury's verdict. <u>See</u> Motion for Entry of Final Judgment, filed October 22, 2009 (Doc. 450). The Court granted the motion in part, <u>see</u> Order, filed March 31, 2009 (Doc. 537), and entered a judgment similar to the judgment that Guidance sought, <u>see</u> Final Judgment, filed March 31, 2010 (Doc. 538).

### 5.    **The Motion and Arguments.**

The Defendants filed this motion on October 30, 2009, asking the Court "to set aside the jury's punitive damages award and the breach of the implied covenant verdict pursuant to Rule 59 of the Federal Rules of Civil Procedure." Motion at 1. They present four separate bases, each of which they assert entitles them to such relief. <u>See id.</u> First, the Defendants argue that, under Delaware law, a plaintiff may recover punitive damages on a breach of contract claim only when the breaching conduct constitutes an independent tort which would, itself, justify the award of punitive damages. <u>See</u> Motion at 2-6. They assert that Guidance's punitive damages for the Defendants' breach of contract are limited to $300.00, because $300.00 is the maximum amount of punitive damages to which Guidance would be entitled if it had brought its sole tort claim -- a claim for violation of the NMUPA -- by itself. <u>See</u> Motion at 2-4.[5] They then argue that New Mexico law

---

[5] In the motion, the Defendants suggest that they may contest whether the treble damages available to a plaintiff upon a showing of willful breach of the NMUPA are a form of punitive damages. <u>See</u> Motion at 4 n.3 ("It is by no means clear that statutory trebling constitutes punitive damages for the purpose of Delaware breach of contract law."). Guidance argues that statutory treble damages is a form of punitive damages under both Delaware and New Mexico law. <u>See</u> Plaintiff Guidance's Response in Opposition to Defendants' Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict [Doc. 454] at 13 n.2, filed December 7, 2009 (Doc. 482)(citing <u>Roberts v. Am. Home Warranty Corp.</u>, 514 A.2d 1132, 1135 (Del. Super. 1986)(stating that "provision for treble damages is a form of punitive damages" under the Delaware Deceptive Trade Practices Act)). <u>See also</u> <u>Hale v. Basin Motor Co.</u>, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990)("Multiplication of damages pursuant to statutory authority is a form of punitive damages.")(citing <u>Roberts</u>, 514 A.2d at 1135).

does not permit a plaintiff to recover punitive damages beyond the $300.00 treble-damages award under the NMUPA unless it can prove a separate and independent tort, and, because Guidance only established one tort claim, New Mexico law limits it to $300.00 in treble damages.  See Motion at 4-6.

Second, the Defendants argue that Guidance cannot recover punitive damages under Delaware law because Guidance did not prove that the breach of contract rose to the level of an independent tort.  Rather, the Defendants now insist that the NMUPA claim on which Guidance bases its entitlement to punitive damages is in the nature of a contract claim and not a tort claim.  See Motion at 6-10.  Thus, without the required tort predicate, Guidance cannot recover punitive damages for the Defendants' breach of contract.  See id. at 10.

The Defendants' third and most in-depth argument is that the Court erred by potentially allowing Guidance to recover punitive damages based on a bad-faith breach of the implied covenant of good faith and fair dealing.  See Motion at 10-22.  They make two separate arguments on this issue: (i) that Delaware law does not allow a plaintiff to recover punitive damages for a bad-faith breach of the implied covenant, see id. at 10-14; and (ii) that Guidance failed as a matter of law to establish two of the elements of its implied-covenant claim, see id. at 14-22.  The two elements for which the Defendants insist Guidance failed to produce sufficient evidence were the breach of a specific implied contractual obligation, see id. at 14-20, and actual damages, see id. 20-22.

As their fourth and final point, the Defendants argue that Jury Instruction No. 37 -- the

_____

At the hearing, R. Ted Cruz, the Defendants' post-trial counsel, conceded that treble damages are a form of punitive damages for the purposes of the E.I. DuPont de Nemours & Co. v. Pressman analysis.  See Transcript of Hearing at 46:25-47:4 (taken Mar. 22, 2010), filed May 4, 2010 (Doc. 558)(Cruz).  Based on this concession and the authorities cited, the Court finds that treble damages are a form of punitive damages under New Mexico and Delaware law.

punite-damages instruction -- was flawed in several respects.  See Motion at 22-27.  First, they argue that the fourth paragraph of Instruction 37 was flawed because it permitted the jury to award Guidance punitive damages if the Defendants' breach of contract was "accompanied by fraudulent conduct," even though Guidance did not bring a common-law fraud claim.  Motion at 23-24. Second, they argue the fourth paragraph was flawed because it allowed the jury to find a violation of the NMUPA solely based on the Defendants' "failure to deliver the quality or quantity of goods." Motion at 24.  Third, the Defendants assert that the fifth paragraph of Instruction No. 37 was flawed because it allowed the jury to award punitive damages for a mere bad-faith breach of the implied covenant of good faith and fair dealing.  See Motion at 25.  Fourth, the Defendants assert that the third paragraph was flawed because it instructed the jury to determine whether the Defendants were liable for punitive damages if it awarded Guidance compensatory damages on the implied-covenant claim, where the jury was not allowed to award compensatory damages on the implied-covenant claim.  See Motion at 25.  Finally, the Defendants generically argue that, taken as a whole, Instruction No. 37 "could not have served as an adequate guide for jury deliberation."  Motion at 26.

In response, Guidance begins by chiding the Defendants for failing to address post-trial-motion standards or error preservation.  See Plaintiff Guidance's Response in Opposition to Defendants' Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict [Doc. 454] at 1, filed December 7, 2009 (Doc. 482)("Response").  Guidance asserts that, although the Defendants' motion cites rule 59 in its opening paragraph, the Defendants appear to seek judgment as a matter of law under rule 50(b), see Response at 1-2, and to assert error in a jury instruction under rule 51, see Response at 2-3.

-13-

Finally, it asserts that the Defendants either failed to preserve the errors they now assert, or affirmatively invited them, resulting in a heightened burden on post-trial review or a complete waiver of post-trial review.  See id. at 3-4.

Guidance argues that the Court was correct in allowing it to recover punitive damages.  After first arguing that the Defendants waived and/or failed to preserve their various arguments, Guidance asserts that it met a higher standard than Delaware law required for receiving punitive damages.  See Response at 4-11.  It contends that, contrary to the Defendants' arguments, its punitive damages for the Defendants' breach of contract is not limited to the punitive damages recoverable under its NMUPA claim.  See Response at 11-13.  Guidance also argues that the NMUPA -- including the theory relating to the Defendants' breach of contract -- is a tort claim and thus a proper predicate for breach-of-contract punitive damages under Delaware law.  See Response at 14-16.

Next Guidance argues that the Court did not err in instructing the jury that it could award punitive damages for a bad-faith breach of the implied covenant of good faith and fair dealing.  See Response at 16-28.  First, it argues that the Defendants waived any error by inviting it when they submitted a jury instruction on their own implied-covenant claim.  Guidance contends that the Defendants' proposed instruction allowed them to recover punitive damages upon showing a bad-faith breach of the implied covenant, and that the Defendants never objected to the instruction or verdict form on the grounds now asserted.  See Response at 16-20.  Guidance then argues that it established more than mere bad faith and that Delaware law allows recovery of punitive damages on the showing of "culpably tortious state of mind" that Guidance made.  Response at 20-21.  Guidance asserts that the Defendants waived the sufficiency-of-the-evidence arguments made in this motion, because they failed to make a rule 50(a) motion for judgment as a matter of law on these

elements of the implied-covenant claim; Guidance further argues that there was sufficient evidence to sustain the jury's verdict. See Response at 21-27. Finally, Guidance argues that, even if the Court found that there was insufficient evidence to sustain the jury's verdict on Guidance's implied-covenant claim, the punitive damages award should still stand. See id. at 27-28.

In response to the Defendants' attacks on Jury Instruction No. 37, Guidance asserts that each of the arguments were either waived or forfeited. See Response at 28-29. Guidance then walks through each of the Defendants' arguments and asserts that each is meritless, as well as being waived and/or forfeited. See id. at 30-34.

In their reply brief, the Defendants first argue that all of the issues they raise in the motion were preserved at trial, and are not waived or forfeited. See Dentsply/TDP's Reply in Support of Their Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict at 2-9, filed January 14, 2010 (Doc. 497) ("Reply"). They also assert that, regardless what standard of review applies to their various arguments, they should prevail. See id. at 9-12. The Defendants then reiterate the arguments in their motion. See Reply at 12-22.

### 6.    Arguments at the Hearing.

R. Ted Cruz, the Defendants' post-trial counsel, conceded during the hearing that, in his view, E.I. DuPont de Nemours & Co. v. Pressman is the controlling precedent on this issue. See Transcript of Hearing at 7:23-8:3 (taken Mar. 22, 2010), filed May 4, 2010 (Doc. 558) ("Tr.") (Cruz). They conceded that they have found no case applying Delaware law which specifically limits breach-of-contract punitive damages with the standard that applies to the underlying tort that opened the door to breach-of-contract punitive damages. See Tr. at 31:1-32:7 (Court, Cruz). They also

conceded that they have found no commentator that has construed Delaware law the way that they propose.  See Tr. at 31:1-32:7 (Court, Cruz).

Mr. Cruz presented substantial argument that, if the Court allows Guidance to recover substantial punitive damages based only on a breach of contract plus a willful violation of the NMUPA -- an arguable tort that would allow Guidance to recover, at most, $300.00 in damages -- it would run afoul of the principle of efficient breach.  See, e.g., Tr. at 9:16-21 (Cruz).  Mr. Cruz also explained the concept of efficient breach, to which the Supreme Court of Delaware has ascribed over the past several decades.  See id. at 9:16-14:12 (Cruz); id. at 20:19-23:4 (Cruz).  He asserted that there is only one sensible way to read E.I. DuPont de Nemours & Co. v. Pressman, and that is to require a separately pleaded and proven tort, which would support the punitive damages award standing alone, to open the door to punitive damages for breach of contract.  See Tr. at 11:17-12:12 (Cruz).  Mr. Cruz then addressed whether the NMUPA claim that appears to have opened the door to punitive damages was a tort or a contract action; he contended that, while most grounds for asserting an NMUPA claim would constitute a tort claim, the one upon which Guidance bases its entitlement to punitive damages was a contract action.  See Tr. at 42:12-47:20 (Court, Cruz).

Mr. Cruz then addressed Guidance's implied-covenant claim.  He argued that breach of the implied covenant plus bad faith, without more, cannot support an award of punitive damages.  See id. at 47:23-49:25 (Court, Cruz).  He conceded that a breach-of-implied-covenant claim, which is a form of contract claim under Delaware law, has the same rules for deciding when punitive damages are available as do contract claims.  See Tr. at 49:8:16 (Court, Cruz); id. at 62:4-15 (Cruz).  Because of this principle, he asserted, the Court's Jury Instruction No. 37 was flawed.  See Tr. at 50:11-22 (Cruz).  Otherwise, the Defendants' arguments did not materially differ from the

arguments put forth in their briefs.

Donald DeCandia argued for Guidance.  He began by giving a brief recital of the facts of the case, see Tr. at 67:10-69:11 (DeCandia), and otherwise relied upon arguments very similar to those made in Guidance's response brief.  He argued that the Defendants failed to preserve all of the issues they now raise, that they cannot meet the onerous burden necessary to prove plain error, see id. at 69:12-70:18 (DeCandia), and that the Defendants even affirmatively waived many of the issues, see id. at 70:19-72:18 (DeCandia); id. at 108:9:110:16 (Court, DeCandia).  See also id. at 72:19-77:24 (DeCandia).  Mr. DeCandia then addressed the merits of most of Mr. Cruz' arguments, see id. at 77:24-83:1 (DeCandia), and asserted that a pre-Pressman case from the Supreme Court of Delaware and its progeny suggest that breach of contract plus an appropriate mental state is enough for punitive damages, with or without it arising to the level of an independent tort, see id. at 83:2-24 (DeCandia).  Like Mr. Cruz, Mr. DeCandia conceded that the rules for receiving punitive damages for a breach of contract are the same as those for receiving punitive damages for a breach of the implied covenant.  See id. at 93:9-97:8 (Court, DeCandia).

Mr. DeCandia also conceded that, if the jury must find common-law fraud to award punitive damages for a breach of contract accompanied by fraudulent conduct, the instructions given were insufficient to show a finding of common-law fraud.  See Tr. at 113:2-18 (Court, DeCandia). Rather, he asserted that the only requirement is "fraudulent conduct" -- not "fraud" -- and that the Defendants' willful violation of the NMUPA fulfilled that requirement.  See Tr. at 112:20-114:13 (DeCandia).

After Mr. DeCandia's argument, the Court asked Mr. Cruz to clarify the procedural basis for the Defendants' motion.  Mr. Cruz clarified that, in all of their post-trial motions, they seek

-17-

judgment as a matter of law initially and, in the alternative, a new trial.  See Tr. at 117:13-24 (Court,

Cruz).  He then conceded that the Defendants initially asked, erroneously, for punitive damages for

a breach of the implied covenant of good faith and fair dealing on the basis of bad faith alone.  See

id. at 118:22-119:8 (Court, Cruz).[6]  Mr. Cruz also conceded that, at the time of trial, both parties

agreed on the elements of an implied-covenant claim.  See id. at 128:3-130:11 (Cruz).

## RELEVANT LAW REGARDING RULE 50

Rule 50 presents two ways a party may secure a judgment in its favor after a trial has begun.

Rule 50(a) allows a movant to, in effect, bring a motion for summary judgment on the trial record.

Such motions raise a legal issue of the sufficiency of the non-moving party's evidence on an issue.

Rule 50(b) allows a movant to attack the sufficiency of the evidence after the trial has ended.

### 1.      Rule 50(a).

Judgment as a matter of law is proper where "a party has been fully heard on an issue during

a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary

basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  This standard for a directed

verdict mirrors the standard for summary judgment.  See Anderson v. Liberty Lobby, 477 U.S. 242,

250 (1986); Wiles v. Michelin N. Am., Inc., 173 F.3d 1297, 1303 (10th Cir. 1999); Morales v. E.D.

Etnyre & Co., 382 F. Supp. 2d 1278, 1280-81 (D.N.M. 2005)(Browning, J.)("This [rule 50(a)]

standard is identical to that the court must employ when ruling on motions for summary judgment

under rule 56.").  A court may grant judgment as a matter of law, however, even though it has denied

---

[6] Mr. Cruz referred to this error as "ask[ing] for punitives under standards that were overly broad," but the prior argument and context show that Mr. Cruz was referring to Guidance's argument that the Defendants invited any error which might exist in the punitive-damages award based on instructing the jury that it could award punitive damages based on a bad-faith breach of the implied covenant.  See Tr. at  118:22-119:8 (Court, Cruz).

summary judgment, because the parties have been able to address all relevant, available evidence. See Lee v. Glassing, 51 Fed. Appx. 31, 32 (2d Cir. 2002).

In determining whether to grant judgment as a matter of law, a court may not weigh the evidence or make its own credibility determination, see Shaw v. AAA Eng'g. & Drafting, 213 F.3d 519, 529 (10th Cir. 2000), and must draw all reasonable inferences in favor of the nonmoving party, see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994). Such a judgment is warranted if the evidence permits only one rational conclusion. See Crumpacker v. Kan. Dep't of Human Resources, 474 F.3d 747, 751 (10th Cir. 2007). In other words, "[t]he question is not whether there is literally no evidence supporting the [nonmoving] party . . . but whether there is evidence upon which the jury could properly find [for that party]." Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp., 315 F.3d 1271, 1278 (10th Cir. 2003)(some alterations in original). See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d at 1280-81 ("If . . . the evidence points but one way and is susceptible to no reasonable inferences that support the opposing party's position, the court should grant judgment as a matter of law.").

Moreover, rule 50(a) "expressly requires a motion for a directed verdict to 'state the specific grounds therefor.'" First Sec. Bank of Beaver v. Taylor, 964 F.2d 1053, 1056 (10th Cir. 1992). On the other hand, "[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." United States v. Fenix & Scisson, Inc., 360 F.2d 260, 266 (10th Cir. 1966). See First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1056. "When a movant fails to state the specific grounds for its [rule 50(a)] motion, our case law requires the moving party to demonstrate the trial court was aware of the moving party's position." First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1056 (holding that an objection to the sufficiency of the

evidence failed to inform the trial judge of the party's objection to the uncertainty or enforceability

of an oral agreement).

      **2.**     **Rule 50(b).**

"Rule 50(b) . . . sets forth the procedural requirements for renewing a sufficiency of the

evidence challenge after the jury verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-

Eckrich, Inc., 546 U.S. 394, 400 (2006).  The rule states:

> **Renewing the Motion After Trial; Alternative Motion for a New Trial.**  If the
> court does not grant a motion for judgment as a matter of law made under Rule 50(a),
> the court is considered to have submitted the action to the jury subject to the court's
> later deciding the legal questions raised by the motion.  No later than 28 days after
> the entry of judgment . . . the movant may file a renewed motion for judgment as a
> matter of law and may include an alternative or joint request for a new trial under
> Rule 59.  In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
>
> > (2) order a new trial; or
>
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  Much like a rule 50(a) motion, "[a] renewed motion for judgment as a matter

of law under Rule 50(b) . . . must state the grounds on which it was made."  9B C. Wright & A.

Miller, Fed. Prac. & Proc. Civ. § 2537, at 604-05 (3d ed. 2008).

The standard for ruling on a rule 50(b) motion is similar to that for ruling on a rule 50(a)

motion -- whether there was sufficient evidence upon which a reasonable jury could have arrived

at the verdict that the jury returned.  See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237,

1244 (10th Cir. 2009)("A party is entitled to JMOL only if the court concludes that 'all of the

evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the

controlling law.'")(quoting Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d 1260, 1269 (10th

Cir. 2008)).  "In ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it."  Fed. R. Civ. P. 50(b) advisory committee's note.  See Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'").  The court, however, much like in ruling on a motion for summary judgment, must draw all reasonable inferences in favor of the non-moving party.  See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d at 1244 ("[W]e . . . will reverse the district court's denial of the motion for JMOL 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'")(quoting Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir. 2004)); Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269.  It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  Hysten v. Burlington Northern Santa Fe Ry. Co., 530 F.3d at 1269.

A prerequisite to a rule 50(b) motion, and one implicit in its nature as a renewed motion for judgment as a matter of law, is that the moving party have made a rule 50(a) motion for judgment as a matter of law during trial and that the party raise in the rule 50(a) motion all issues it seeks to raise in the subsequent rule 50(b) motion.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009)("Kerr-McGee did not assert these arguments in its Rule 50(a) motion at the close of Mark's case-in-chief, and is thus precluded from relying on them as a basis for Rule 50(b) relief."); Marshall v. Columbia Lea Regional Hosp., 474 F.3d 733, 738 (10th Cir. 2007)(noting that raising a particular defense in a "pre-verdict Rule 50(a) motion . . . is a prerequisite to a post-verdict motion under Rule 50(b)."); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207,

1229 (10th Cir. 2000)("[M]erely moving for directed verdict is not sufficient to preserve any and all issues that could have been, but were not raised in the directed verdict motion."); First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057 ("[A] party is precluded from relying upon grounds in a [rule 50(b)] motion for judgment notwithstanding the verdict that were not previously raised in support of the [rule 50(a)] motion for a directed verdict.")(citing Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 n.2 (10th Cir. 1987)); 9B C. Wright & A. Miller, supra, § 2537, at 603-04("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."); 9B C. Wright & A. Miller, supra, § 2537, at 603-04 ("[T]he case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion.").  The advisory committee notes to the 1991 amendment state that "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."  Fed. R. Civ. P. 50 advisory committee's note (citing Kutner Buick, Inc. v. Am. Motors Corp., 848 F.2d 614 (3d Cir. 1989)).[7]

Finally, "Rule 50(b) allows a motion for a new trial under Rule 59 to be joined in the alternative with a renewed motion for judgment as a matter of law; subdivisions (c) and (d) make elaborate provision for when the two motions are made in the alternative."  9B C. Wright & A.

_____

[7] The Advisory Committee reiterated this premise in its notes regarding the 2006 amendments to rule 50(b).  The Committee stated:

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.  The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.  The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Fed. R. Civ. P. 50 advisory committee's note.

Miller, supra, § 2521, at 222.  The rule states: "[T]he movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  Even if no rule 50(a) motion was made and therefore the court cannot grant a rule 50(b) motion for judgment as a matter of law, the court is still permitted to entertain a rule 59 motion for new trial on the basis that the verdict was based on a quantum of evidence that is insufficient as a matter of law.  See Fed. R. Civ. P. 59.  As Professors Charles Wright and Arthur Miller state:

> [I]f the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial.

9B C. Wright & A. Miller, supra, § 2537, at 604.

## RELEVANT LAW REGARDING RULE 51

Rule 51 governs the procedures that a party must follow when requesting particular jury instructions, objecting to certain jury instructions, and preserving any alleged error in the jury instructions for post-trial review.[8]  Under rule 51(d)(1)(A), "a party may assign as error in an

---

[8] The United States Courts of Appeals that have addressed the issue agree that, even where the district court's jurisdiction is based on diversity, the need to make objections to and requests for jury instructions is a procedural matter that federal law must govern.  See Haberman v. The Hartford Ins. Group, 443 F.3d 1257, 1273 (10th Cir. 2006)("In a diversity case, the substance of a jury instruction is a matter of state law, but the grant or denial of a tendered instruction is governed by federal law.")(quoting Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1525 (10th Cir. 1997)); Starr v. J. Hacker Co., Inc., 688 F.2d 78, 80 (8th Cir. 1982)("In point of fact, whether a party need object to an instruction to preserve the matter for appeal is a question of procedure governed by federal, and not state, practice.")(citing Fed. R. Civ. P. 51); Platis v. Stockwell, 630 F.2d 1202, 1206 (7th Cir. 1980)("We . . . hold that the requirements of Rule 51 must be adhered to in diversity actions in federal court."); Pollock v. Koehring Co., 540 F.2d 425, 426 (9th Cir. 1976)("Although we look to state law for the correct substance of jury instructions, the question whether an incorrect instruction is prejudicially erroneous is a procedural one requiring application of federal law.")(citing Fed. R. Evid. 51); Batesole v. Stratford, 505 F.2d 804, 807 (6th Cir. 1974)("In reviewing a federal district court's charge to the jury in a diversity action, it is well settled that the

instruction actually given, if that party properly objected."  Rule 51 also explains how one makes a proper objection.  "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. P. 51(c)(1).  In post-trial motions and on appeal, therefore, claims of error are forfeited if there was not a proper objection made at trial.  See Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1179 (10th Cir. 2005)("To preserve the objection, a party must proffer the same grounds raised on appeal, with sufficient clarity to render the grounds 'obvious, plain, or unmistakable.'")(quoting Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 660 (10th Cir. 1991)) (internal citation omitted); Medlock v. Ortho Biotech, 164 F.3d 545, 553 (10th Cir. 1999)("Because the purpose of the objection is to give the court an opportunity to correct any mistake before the jury enters deliberations, an excessively vague or general objection to the propriety of a given instruction is insufficient to preserve the issue for appeal.")(citation omitted).  In determining whether a party made a proper objection, of course, it is important that the court not rewrite the case's history.

There are, however, some errors that may be raised post-trial, even though there was no timely, specific objection made about them at trial.  See Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1094 (10th Cir. 2007)("[W]hen a party does not object to an instruction before the district court . . . , we can review the district court's decision to administer the instruction only for plain error.").  Rule 51 refers to these as "plain" errors.  The rule states: "A court may consider a plain

---

substance of the instructions is controlled by the applicable state law while the method of objecting thereto is controlled by federal law."); Hopkins v. Metcalf, 435 F.2d 123, 124 (10th Cir. 1970)("Although in a diversity action state law determines the substance of instructions, the grant or denial of instructions is controlled by federal law and the Federal Rules of Civil Procedure."); McNamara v. Dionne, 298 F.2d 352, 355 (2d Cir. 1962)("[I]t seems clear that whether an appellant [in a federal lawsuit] may claim error for failure to give an instruction not requested and as to which no objection was taken for failure to give it involves a matter of procedure [to which federal law applies, even in diversity cases].").

error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(c). The language of the rule, however, is not very helpful in determining what constitutes a plain error.

"To mount a successful plain error challenge, a party must demonstrate (1) an error, (2) that is plain or obvious under existing law, and (3) that affects substantial rights." Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1181 (10th Cir. 2005). The court should review the instructions as a whole to determine whether the jury might have been misled and should uphold the verdict unless there is "substantial doubt that the jury was fairly guided." Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d at 1181 (quoting Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1168 (10th Cir. 2003)). The Rules Advisory Committee commented, in response to the 2003 amendments to rule 51, on the factors that should influence a court's plain-error analysis. The committee stated:

> The court's duty to give correct jury instructions in a civil action is shaped by at least four factors.
>
> The factor most directly implied by a "plain" error rule is the obviousness of the mistake. The importance of the error is a second major factor. The costs of correcting an error reflect a third factor that is affected by a variety of circumstances. In a case that seems close to the fundamental error line, account also may be taken of the impact a verdict may have on nonparties.

Fed. R. Civ. P. 51 advisory committee's note (2003).

The Tenth Circuit has said that a court need not consider a jury-instruction error to be "plain error" unless the error was "patently, plainly erroneous and prejudicial." Williams v. W.D. Sports, N.M., Inc., 497 F.3d at 1094 (quoting Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1141 (10th Cir. 2006)). The Tenth Circuit will not reverse a district court for failure to address an unpreserved error in the jury instructions under the plain-error rule except "in an exceptional circumstance, where the error was patently erroneous and prejudicial and where fundamental

injustice would otherwise occur." <u>Abuan v. Level 3 Commc'ns, Inc.</u>, 353 F.3d 1158, 1173 (10th Cir. 2003).  Plain-error review of jury instructions "presents an extraordinary, nearly insurmountable burden" on the party challenging the jury's verdict.  <u>Royal Maccabees Life Ins. Co. v. Choren</u>, 393 F.3d 1175, 1182 (10th Cir. 2005).

## <u>MOTIONS FOR NEW TRIAL UNDER RULE 59</u>

Rule 59 governs motions for new trial.  That rule states that, after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  Case law has fleshed out the rule.  Seventy years ago, the Supreme Court of the United States determined that

> [t]he motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

<u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940).  Such a motion can be granted based on any error so long as "the district court concludes the 'claimed error substantially and adversely' affected the party's rights."  <u>Henning v. Union Pac. R. Co.</u>, 530 F.3d 1206, 1217 (10th Cir. 2008)(quoting <u>Sanjuan v. IBP, Inc.</u>, 160 F.3d 1291, 1297 (10th Cir. 1998)).

Although motions for a new trial are generally committed to a Court's discretion, they are disfavored and should be granted with "great caution."  <u>Richins v. Deere and Co.</u>, 231 F.R.D. 623, 625 (D.N.M. 2004)(Browning, J.).  "In considering a motion for a new trial on the grounds of prejudicial error, the alleged trial court errors must be clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties."  <u>Atencio v. City of Albuquerque</u>, 911 F.

Supp. 1433, 1437 (D.N.M. 1995)(Vazquez, J.)(quoting Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1148-49 (10th Cir. 1978), cert. denied, 439 U.S. 862 (1978)).  The party asserting the error bears the burden of showing clear error and prejudice to substantial rights. See Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998); United States v. Mitchell, 113 F.3d 1528, 1532 (10th Cir. 1997); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1156 (10th Cir. 1985); Atencio v. City of Albuquerque, 911 F. Supp. at 1437.  The moving party also must prove that the "jury would likely have reached a contrary result" absent the error.  Richins v. Deere and Co., 231 F.R.D. at 625.

Furthermore, similar to the rule 50(b) motion, a party must lay the necessary predicate to a motion for new trial during the trial.  "[A] new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." 11 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2805, 57-58 (2d ed. 1995). See Cottman v. Aurora Pub. Schs., 85 Fed. Appx. 83, 88 (10th Cir. 2003)(affirming a district court's rejection of a motion for new trial where the movant "had not objected at trial . . . nor 'shown that the fundamental fairness of the trial was affected by the proceedings.'"); Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619 (5th Cir. 1988)(reversing the district court's conditional grant of a new trial where movant waived argument by failing to object at trial).  Rule 59 may not be used to "seek a second trial on the basis of a theory not urged at the first trial." 11 C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 2805, at 58-59 (2d ed. 1995).

## THE INVITED-ERROR DOCTRINE

"The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error." United States v. Edward J., 224

F.3d 1216, 1222 (10th Cir. 2000)(quoting United States v. Johnson, 183 F.3d 1175, 1178 n.2 (10th Cir. 1999)). See Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1072 (10th Cir. 2008)(finding that the defendant invited error where the district court entered a judgment that was the same as that proposed by the defendant). For example, "[a] party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction." Aves By and Through Aves v. Shah, 997 F.2d 762, 766 (10th Cir. 1993)(quoting Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir. 1986))(declining to apply the plain-error standard where a defendant raised an error in a jury instruction that the defendant proposed and did not object to before it was given to the jury). The rationale of this rule is clear: a party should not be able to secure a post-trial reversal by persuading the court to take an erroneous action before or during the trial. Inviting an error results in waiver of the right to raise that error post-trial. See United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009); United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008)("We typically find waiver in cases where a party has invited the error that it now seeks to challenge[.]").

## NEW MEXICO CHOICE-OF-LAW RULES

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). The first step in a New Mexico choice-of-law analysis is to characterize the claim by "area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue." Terrazas

v. Garland & Loman, Inc., 140 N.M. 293, 296, 142 P.3d 374, 377 (Ct. App. 2006).  There are only a few categories within which claims might fall -- "[t]ort cases, i.e. all 'civil wrongs,' are one class; contracts, i.e., every kind of enforceable promise, is another single class." J. McLaughlin, Conflict of Laws: the Choice of Law Lex Loci Doctrine, the Beguiling Appeal of a Dead Tradition, Part One, 93 W. Va. L. Rev. 957, 989 (1991)(describing the categories as "tort, contract, or some other").  The court is then to apply the New Mexico choice-of-law rule applicable to that category of claim to determine what state's substantive law to apply.

When a claim sounds in contract, New Mexico will generally apply the choice-of-law rule of *lex loci contractus* -- the law of the place of contracting.  See Ferrell v. Allstate Ins. Co., 144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008).  Like most states, however, "New Mexico respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." Fiser v. Dell Computer Corp., 144 N.M. 464, 467, 188 P.3d 1215, 1218 (2008)(citing NMSA 1978, § 55-1-301(A)).  See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108 N.M. 467, 470, 775 P.2d 233, 236 (1989).  "[W]hen application of the law chosen by the parties offends New Mexico public policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and apply New Mexico law instead." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218.  "New Mexico courts will not give effect to another state's laws where those laws would violate some fundamental principle of justice." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218 (internal quotations omitted).  Where the plaintiff has invoked the federal district court's diversity jurisdiction, the court will accept New Mexico's law regarding whether to honor a contractual choice-of-law provision.  See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc., 436 F.3d

1257, 1260 (10th Cir. 2006) ("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.").

On the other hand, if the underlying claim is categorized as a tort, "New Mexico courts follow the doctrine of *lex loci delicti commissi* -- that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." Terrazas v. Garland & Loman, Inc., 140 N.M. at 296, 142 P.3d at 377. The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place." Zamora v. Smalley, 68 N.M. 45, 47, 358 P.2d 362, 363 (1961); see Restatement (First) Conflicts of Law § 377 & cmt. a (1934). Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred. See First Nat'l Bank in Albuquerque v. Benson, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (Ct. App. 1976)(referring to the rule as requiring application of "the law of the State of injury"); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1150-51 (D.N.M. 2009)(Browning, J.).

## RELEVANT LAW OF THE NMUPA

The NMUPA makes unlawful any "[u]nfair or deceptive trade practices [or] unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978, § 57-12-3. The NMUPA defines the term "unfair or deceptive trade practice" as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person[ .]

NMSA 1978, § 57-12-2(D).[9]  The statute also provides examples of conduct that could potentially violate the NMUPA.  <u>See</u> NMSA 1978, §§ 57-12-2(D)(1)-(18)(stating that "'unfair or deceptive trade practice' means . . . and includes: . . . .")(emphasis added).  <u>See</u> <u>also</u> <u>Stevenson v. Louis Dreyfus Corp.</u>, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991)("After defining an unfair trade practice, the statute then . . . list[s] examples of conduct which may constitute an unfair trade practice.").  Relevant to this opinion are the following:

> (8) disparaging the goods, services or business of another by false or misleading representations;
>
> * * * *
>
> (15) stating that a transaction involves rights, remedies or obligations that it does not involve; [and]
>
> * * * *
>
> (17) failure to deliver the quality or quantity of goods or services contracted for[.]

NMSA 1978, § 57-12-2(D).[10]

> New Mexico law has now established that a claim under the NMUPA has four elements.
>
> First, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or misleading.   Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts."  Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.  Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

---

[9] A 2009 amendment replaced the phrase "course of his trade or commerce, which may" with the phrase "course of the person's trade or commerce, that may."  Although the amendment appears to be superficial, the Court quotes the statute as it existed when the challenged conduct occurred.

[10] The 2009 amendment to § 57-12-2(D) changed the word "failure" in subsection (17) to "failing."  Again, this change appears to be superficial, but the Court quotes the statute as it existed when the challenged conduct occurred.

Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311.  See Lohman v. Daimler-Chrysler Corp., 142 N.M. 437, 439, 166 P.3d 1091, 1093 (Ct. App. 2007), cert. denied 141 N.M. 762, 161 P.3d 259 (2007).  "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading."  Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100-01, 811 P.2d at 1311-12.  Notably, a plaintiff need not prove detrimental reliance upon the defendant's representations.  See Lohman v. Daimler-Chrysler Corp., 142 N.M. at 444, 166 P.3d at 1098; Smoot v. Physicians Life Ins. Co., 135 N.M. 265, 270-71, 87 P.3d 545, 550-51 (Ct. App. 2003).

The NMUPA provides for compensatory damages for any violation that causes harm and for treble damages for any violation willfully committed.  Specifically, the statute states:

> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.  Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

NMSA 1978, § 57-12-10(B).  The Supreme Court of New Mexico has concluded that this treble-damages award constitutes a form of punitive damages.  See Hale v. Basin Motor Co., 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990)("Multiplication of damages pursuant to statutory authority is a form of punitive damages.").

## ANALYSIS

The Defendants ask the Court to set aside the jury's punitive-damages verdict and set aside the jury's finding on breach of the implied covenant of good faith and fair dealing.  They take

several approaches to reach this end.  They argue that the punitive damages should be limited to $300.00, because that is the maximum amount of punitive damages that the jury could award to Guidance for the predicate tort claim which entitled Guidance to breach-of-contract punitive damages.  They argue that the predicate tort claim was not a tort at all, but a contract claim, and therefore Delaware law would not permit Guidance to recover punitive damages.  They argue that the Court erred in instructing the jury that it could award punitive damages for bad-faith breach of the implied covenant of good faith and fair dealing, and that the jury lacked sufficient evidence to reasonably find a bad-faith breach of the implied covenant.  Finally, they argue that the Court erred in several ways in constructing Jury Instruction No. 37.  Guidance responds that the Defendants have waived or failed to preserve all of their arguments and that, to the extent that they are properly preserved, the arguments lack merit.  The Court agrees that the Defendants failed to preserve their most vigorous arguments, and that the ones that have been preserved lack  a sound basis in the law or in the facts of this case.  The Court will deny the Defendants' motion.

First, the Court notes that -- as they have in all of their post-trial motions -- the Defendants repeatedly emphasize the size of the punitive-damages verdict, referring to it as "unlimited punitive damages."  Motion at 6 ("Guidance's claim for unlimited punitive damages . . . fails for a second, independent reason."); Reply at 9 (complaining about "unlimited punitive damages"); Tr. at 14:2-4 (Cruz)(". . . liable for potentially unlimited punitive damages, $40 million in punitive damages . . . ."); Tr. at 24:3-6 (Cruz)("If you get to an award that would support a penny of punitive damages, it's, Katie bar the door, unlimited punitive damages are possible."); Tr. at 32:3-4 (Cruz)("[T]hat opens the door to unlimited punitive damages[.]"); Tr. at 66:8-11 (Cruz)("[T]he plaintiffs have cited this Court to not a single case in Delaware, at any time, that has allowed a tort

that would support only a limited amount of damages to open the door to unlimited damages."); Tr. at 133:1 (Cruz)("[I]t opens the door to unlimited punitive damages."); Tr. at 133:13-19 (Cruz)("If Guidance's theory is correct, . . . once you get any tort at all that allows even a penny of punitive damages, unlimited punitive damages are perfectly fine[.]"); Tr. at 134:18-21 (Cruz)("[N]o decision of Delaware law that we are aware of has ever allowed unlimited punitive damages predicated on a tort that was limited to a very small level of punitive damages.").[11]  The Court need not consider such characterization of the law, because the legal issues that the Defendants raise in this motion go primarily to the propriety of any punitive damages award and not the reasonableness of its size.  One exception is that the Defendants assert that, because the only tort Guidance was able to win a verdict on was a violation of the NMUPA, because Guidance was only entitled to obtain nominal damages in connection with its NMUPA claim, and because, therefore, the NMUPA claim only supported $300.00 in treble damages, Guidance is entitled to, at most, $300.00 in punitive damages.  The Defendants have conceded that they will file a motion attacking the size of the award; until that time, the Court will not heavily weigh the size of the punitive-damages award in determining its propriety.

I.    **THE COURT WILL APPLY DELAWARE LAW TO THE PUNITIVE-DAMAGES ISSUES RAISED IN THIS MOTION.**

The Supply Agreement included a choice-of-law provision.  See Application for Temporary Restraining Order Exhibit A § 12.11, at 16, filed November 21, 2008 (Doc. 2-1)("Supply Agreement").  That provision states: "This Agreement shall be deemed to have been made and entered into pursuant to the laws of the State of Delaware.  In the event of any dispute thereunder,

_____

[11] The Court notes that, although the Defendants repeatedly criticized Guidance for their inability to find a Delaware case that allowed "unlimited" punitive damages for a breach of contract where the underlying tort was limited to a small amount of punitive damages, they also did not suggest to the Court what kind of torts -- other than statutory torts like wilful violations of consumer-protection statutes -- would be limited to a small amount of punitive damages.

this Agreement shall be governed by and construed according to the laws of the State of Delaware."
Id.  Pursuant to the contractual choice-of-law provision in the Supply Agreement, the Court has
applied Delaware substantive law to the parties' contract-related claims throughout this lawsuit.
See, e.g., Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2010 WL
1608949, at **8-9 (D.N.M. Mar. 23, 2010)(Browning, J.); Guidance Endodontics, LLC v. Dentsply
Int'l, Inc., No. CIV 08-1101 JB/RLP, 2010 WL 3672452, at **5-6 (D.N.M. Oct. 2, 2009)
(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 633 F. Supp. 2d 1257, 1272
(D.N.M. 2008)(Browning, J.).

Neither party objects to the Court applying Delaware contract law in this case, and both
parties rely on Delaware case law in arguing this motion.  See Motion at 2 n.1 ("There is no dispute
that Delaware law applies to Guidance's claims for breach of contract and breach of the implied
covenant of good faith and fair dealing."). The Pretrial Order that the parties proposed to the Court
states:

> Because § 12.11 of the Supply Agreement provides that in the event of any dispute
> under the Supply Agreement, "the Agreement shall be governed by and construed
> according to the laws of Delaware," the parties at least agree that Delaware law
> applies to Plaintiffs' claims for breach of contract (Counts I and II), reformation
> (Count III), and breach of the covenant of good faith and fair dealing (Count IV).

Pretrial Order at 15.  Likewise, the Court continues to believe its prior analyses accurately reflect
the necessary choice-of-law principles.  The Court will continue to apply Delaware substantive law
to the contract and punitive-damages issues this motion raises.

## II.    THE DEFENDANTS FAILED TO PRESERVE THE ISSUE WHETHER PUNITIVE DAMAGES SHOULD BE LIMITED TO $300.00, AND THE ARGUMENT LACKS A SOUND BASIS IN DELAWARE LAW.

Defendants' first argument is based on an interpretation of the Supreme Court of Delaware's

decision in E.I. DuPont de Nemours & Co. v. Pressman.  The Defendants assert that the default rule is that a plaintiff cannot recover punitive damages on a breach-of-contract claim and that E.I. DuPont de Nemours & Co. v. Pressman set forth the only limited exceptions to that default rule. They then assert that the only exception applicable to this suit is that the breach of contract amounted to an independent tort, which would itself support the award of punitive damages.  They concede that their breach amounted to an independent claim under the NMUPA -- a tort.[12]  They argue, however, that the amount of punitive damages that Guidance can recover under this principle should be limited to the amount that Guidance could recover separately for the NMUPA violation. And, because the law limited Guidance to recovering $300.00 in damages for the Defendants' NMUPA violation, Guidance should be similarly limited to $300.00 in punitive damages for the Defendants' breach of contract.  Guidance attacks this argument on both error-preservation and merits grounds, and the Court generally agrees with Guidance's analyses.

### A.     THE DEFENDANTS DID NOT PRESERVE THIS ISSUE FOR REVIEW.

The Court first notes that the core of this argument -- that Guidance is limited to $300.00 in punitive damages -- is new.  The Defendants have never before made this argument to the Court. They have argued that Guidance did not prove its entitlement to any punitive damages, but they nowhere suggested that a limitation on the punitive damages for the underlying tort claim would likewise limit Guidance's entitlement to punitive damages for breach of contract.

The Defendants address the preservation issue in their reply brief, and the Court addressed

---

[12] The Defendants also challenge whether the NMUPA claim should be categorized as a tort and thus present a second argument that the breach-of-contract did not amount to an independent tort.  For the purposes of this argument, however, they assume that the NMUPA claim is a separate and independent tort.  The Court will address the Defendants' second Pressman-related argument -- that the NMUPA claim is not a tort claim -- below.

it with them during the hearing.  See Tr. at 36:22-39:22 (Court, Cruz).[13]  None of the portions of the

record that the Defendants cite, however, convince the Court that they presented this issue to the

Court in a way that would reasonably inform the Court of the legal position they now assert.  First,

the Defendants contend they preserved this issue by an objection on October 5, 2009.  For this

argument, the Defendants cite a snippet of a statement by the Court, in which it said:

> Now, also on the punitive damage that the plaintiffs claim, the way I understand the
> DuPont case is that . . . for a breach of implied covenant of good faith or for breach
> of contract there has to be an independent tort that could support the punitive-
> damage claim.  Well, you can't get punitive damages for a UPA claim or for a
> Lanham Act claim, and so I don't see that claim, so I have taken out the punitive-
> damage claim for the plaintiffs, because I don't see an independent tort that exists.
> You can get it for breach of contract in Delaware if there is an independent tort that
> would support a punitive damages, but there not being one, I don't see the punitive-
> damage claim going to the jury on the plaintiffs' claims.

Transcript of Trial at 3060:23-3061:10 (taken Oct. 5, 2009), filed May 17, 2010 (Doc. 568)("Oct.

5 Tr.")(Court)(emphasis added).[14]  In response to this oral ruling, Guidance filed a letter in which

it argued that its NMUPA claim was a statutory tort and that the treble damages to which it is

---

[13] During argument, the Court asked Mr. Cruz to show it where, in the record, he believed
the Defendants had preserved their argument that Guidance's breach-of-contract punitive damages
are limited to the amount it could recover for the NMUPA claim.  Mr. Cruz pointed the Court to the
same places in the record that the Defendants cite in their reply brief.

[14] The Defendants argue that the Court's use of the phrase "the punitive damages award" in
its statement shows that the Court understood and appreciated the Defendants' argument.  In other
words, the Defendants argue that, because the Court said "for a breach of implied covenant of good
faith or for breach of contract there has to be an independent tort that could support the punitive-
damage claim," the Court must have recognized that the Defendants were asserting that the punitive
damages were limited by the punitive damages available for the underlying tort.  First, the Court said
that the breach must amount to an independent tort "that could support the punitive-damages claim,"
not the punitive damages award or the punitive damages amount.  In other words, the Court was
attempting only to clarify that the tort had to support some quantity of punitive damages and not the
precise amount the jury awarded.  Perhaps it was a poor choice of words, but, because the
Defendants had not presented the argument they now make, the Court had no reason to expect that
its choice of the definite article -- "the" punitive-damages claim -- rather than the indefinite article --
"a" punitive-damages claim -- would later be asserted as legally significant.

-37-

entitled if it can prove that the NMUPA violation was wilful are a form of punitive damages. Finding that argument persuasive, the Court allowed Guidance to continue to seek punitive damages. Neither the Defendants' general objection to the propriety of a punitive-damages instruction, nor the Court's statement, however, alerted the Court to the issue that the Defendants now assert.

Second, the Defendants assert that they preserved this issue by two letters filed on the docket on October 6, 2009. The first letter stated, in relevant part:

> This [punitive-damages] instruction should be deleted. . . . Under Delaware law, Guidance cannot seek punitive damages unless it also proves a fraud or tort. E.g. E.I. DuPont v. Pressman, 679 A.2d 436 (Del. 1996)("Unless the bad faith rises to the level of an independent tort, which itself would support an award of punitive damages, mere bad faith on the part of a party to a contract will not give rise to punitive damages.")(quotation omitted). Guidance has no remaining tort claims, has never pleaded a fraud claim, and cannot recover punitive damages under its two remaining statutory claims. This instruction should, therefore, be deleted . . . .

Letter from Thomas Gulley to the Court at 4 (dated Oct. 4, 2009), filed October 6, 2009 (Doc. 412).

The second letter stated, in relevant part:

> This letter is in response to counsel for Guidance's letter dated October 5, 2009 (Doc. 409). Dentsply and Tulsa Dental's objection to a punitive damages instruction for Guidance is quite simple. . . . Pressman, 679 A.2d 436, 445 (Del. 1996), states that punitive damages are not available for a breach of contract claim unless the bad faith involved in the breach rises to the level of an independent tort which would support punitive damages.

Letter from Thomas Gulley to the Court at 1 (dated Oct. 6, 2009), filed October 6, 2009 (Doc. 410). While these two letters suggest that the Defendants take issue with Guidance's entitlement to punitive damages based on a breach of contract and a NMUPA violation, nothing in them notified the Court that the Defendants thought Guidance should be limited to a particular quantity of punitive damages, be it $300.00 or some other amount. It did not alert the Court that the Defendants believed Delaware law limited recovery of breach-of-contract punitive damages to the amount recoverable

-38-

for the underlying tort.[15]

Third, the Defendants point to a snippet of a transcript from a bench conference held October 7, 2009. At that time, Rebecca Avitia, one of the Defendants' trial counsel, objected to Instruction No. 37 in the Court's Seventh Proposed Jury Instructions. Specifically, she said:

> On instruction 37, we object . . . [o]n the fourth paragraph . . . [o]f 37. -- it states under B that Dentsply's and/or Tulsa Dental's breach of contract was willful, malicious, wanton or with the intent to harm Guidance. I think we've already been over this, that it has to have been an independent tort or fraud, and so that, again, the suggestion that it need only be willful we dispute.

Transcript of Trial at 143:20-144:5 (taken Oct. 7, 2009), filed November 9, 2009 (Doc. 460)("Oct. 7 Tr.")(Avitia). She continued to press that "Delaware law [does not] allow[] [punitive damages] simply because it's a willful breach." Oct. 7 Tr. at 144:9-13 (Avitia). She was objecting to the fourth paragraph of the punitive-damages instruction, which then read:

> Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's breach of contract if you find one of the following: (a) that Dentsply's and/or Tulsa Dental's breach of the contract was accompanied by fraudulent conduct; (b) that Dentsply's and/or Tulsa Dental's breach of contract was willful, malicious, wanton, or if Dentsply and/or Tulsa Dental breached the contract with the intent to harm Guidance; or (c) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of the Lanham Act; or (d) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of the New Mexico Unfair Practices Act because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement.

Court's Seventh Proposed Jury Instructions, Instruction No. 37, at 47, filed October 7, 2010 (Doc. 427). The Court ultimately sustained Ms. Avitia's objection, and removed subsections (b) and

---

[15] Moreover, Mr. Gulley's second letter does not frame the issue upon which the Court ultimately must rule: whether the Supreme Court of Delaware in E.I. DuPont de Nemours & Co v. Pressman meant to say "the award of punitive damages" when it said "an award of punitive damages." Mr. Gulley's letter uses neither word, stating only that the independent tort must "support punitive damages." The Court finds that no judge or litigant would be reasonably able to identify the argument that the Defendants now make from Mr. Gulley's letter.

(c) from Instruction No. 37.  Paragraph 4 of Instruction No. 37 stated:

> Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's breach of contract if you find one of the following: (a) that Dentsply's and/or Tulsa Dental's breach of the contract was accompanied by fraudulent conduct; (b) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of the New Mexico Unfair Practices Act because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement.

Court's Final Jury Instructions (Given), Instruction No. 37, at 37 (Doc. 430).  To the Court's knowledge, the Defendants raised no further objection once the Court sustained this objection and granted the Defendants the relief they requested.  This objection did not preserve any errors and did not alert the Court that the Defendants believed Guidance's punitive damages award would be limited by the amount of punitive damages available for its NMUPA claim.

In sum, the Court rejects all of the Defendants' arguments that they properly preserved the issue whether Delaware law limits Guidance to punitive damages of $300.00 based on the limited punitive damages Guidance could recover for its NMUPA claim.  Because the Defendants failed to preserve this issue, the Court will review it only for plain error.  The Court, however, concludes that there was no error -- plain or otherwise -- in allowing Guidance to collect punitive damages in excess of the $300.00 to which it would be limited if it had brought its NMUPA claim alone.  The Court thus rejects this <u>Pressman</u>-based argument for setting aside the punitive damages verdict.


### B.   THE COURT FINDS THAT IT DID NOT ERR, PLAINLY OR OTHERWISE, IN ALLOWING GUIDANCE TO RECOVER MORE THAN $300.00 IN PUNITIVE DAMAGES.

The Court also rejects on the merits the Defendants' argument that Guidance's punitive damages award should be limited to $300.00.  The Court agrees with many of the Defendants' underlying premises.  The Defendants' conclusion, however, is based on a flawed reading of the

Supreme Court of Delaware's decision in <u>E.I. DuPont de Nemours & Co. v. Pressman</u>.  The Court, therefore, rejects it.

> **1.     E.I. DuPont de Nemours & Co. v. Pressman <u>Shows that Delaware Law Permits Punitive Damages for Breach of Contract</u>.**

<u>E.I. DuPont de Nemours & Co v. Pressman</u> addressed two narrow issues: (i) whether, under Delaware law, an at-will employee can sue his or her employer for wrongful termination under the implied covenant of good faith and fair dealing where the employer fabricates the basis for termination; and (ii) whether such an employee could recover punitive damages for that breach of the implied covenant.  The district court entered judgment on a jury's verdict for Pressman.  <u>See</u> 679 A.2d at 438.   The verdict -- and the associated judgment -- allowed Pressman to recover compensatory damages for lost wages, compensatory damages for emotional distress, and punitive damages, all based on DuPont's breach of the implied covenant of good faith and fair dealing.  <u>See</u> 679 A.2d at 438<u>.</u>  The Supreme Court of Delaware identified several exceptions to the at-will employment doctrine, most of which did not apply to Pressman's case.  <u>See</u> <u>id.</u> at 440-42.  The Supreme Court of Delaware then found that, where an employee is at-will, terminating the employee is not cognizable under the implied covenant of good faith and fair dealing, but intentionally fabricating a false basis for terminating the employee is.  <u>See</u> <u>id.</u> at 442-44 ("If the jury believed that Pensak did these acts, and did them intentionally, they amounted to a breach of the Covenant.").[16]

---

[16] The Supreme Court of Delaware nevertheless found that the trial court's jury instruction was deficient because it was worded in the disjunctive, allowing the jury to find a breach of the implied covenant "if they found that DuPont discharged Pressman 'maliciously, that is as a result of hatred, ill will, or intent to injure, <u>or</u> effect[ed] the discharge in bad faith, that is through acts of fraud, deceit, or intentional misrepresentation.'" <u>E.I. DuPont de Nemours & Co. v. Pressman</u>, 679 A.2d at 444 (emphasis in <u>Pressman</u>).  Because that instruction "would have permitted the jury, for example, to render a verdict for Pressman if they found he was terminated because Pensak 'hated' him or harbored 'ill will' toward him," the Supreme Court of Delaware found that it was too broad, and reversed.  679 A.2d at 444<u>.</u>

In addressing the issue of punitive damages for a breach of the implied covenant of good faith and fair dealing, the Supreme Court of Delaware began by giving an overview of the availability, under Delaware law, of punitive damages in breach-of-contract cases.  See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 445 ("The nature of the conduct which gives rise to a breach of the Covenant in the context of at-will employment requires consideration of the broader question of punitive damages as a remedy for breach of contract.").[17]  Relevant to this motion, the Supreme Court of Delaware said the following:

> Historically, damages for breach of contract have been limited to the non-breaching parties' expectation interest.  Also, punitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort.  As the introductory note to the remedies portion of the Restatement (Second) of Contracts states:
>
>> The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform but compensation of the promisee for the loss resulting from the breach.  "Willful" breaches have not been distinguished from other breaches, punitive damages have not been awarded for breach of contract, and specific performance has not been granted where compensation in damages is an adequate substitute for the injured party.
>
> The Uniform Commercial Code also adheres to the traditional view that expectation damages are the standard remedy for breach of contract.  Although the UCC imposes a duty of good faith and fair dealing, punitive damages generally are not awarded for a breach of the Covenant.
>
> Unless the bad faith rises to the level of an independent tort, which itself would support an award of punitive damages, mere bad faith on the part of a party to a contract will not give rise to punitive damages.
>
> Traditional contract doctrine is also supported by the more recent theory of efficient

---

[17] Mr. Cruz conceded during the hearing that the Defendants believe this exposition of contract-law principles is generally applicable and not limited to the at-will employment context. See Tr. at 16:7-14 (Cruz).

breach.  The theory holds that properly calculated expectation damages increase economic efficiency by giving the other party an incentive to break the contract if, but only if, he gains enough from the breach that he can compensate the injured party for his losses and still retain some of the benefits from the breach.  The notion of efficient breach accords remarkably with the traditional assumptions of the law of contract remedies.  Punitive damages would increase the amount of damages in excess of the promisee's expectation interest and lead to inefficient results.

The traditional rule has been subject to a number of limited but well recognized exceptions.  Judge Friendly, writing for the Second Circuit, listed the following: breach of a contract to marry; failure of a public monopoly to discharge its obligations to the public; breach of a fiduciary duty; breach accompanied by fraudulent conduct; and bad faith refusal by an insurer to settle a claim.

E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 445-46 (citations, internal quotation marks, and footnotes omitted).  Upon this language, the Defendants place their argument that "under Delaware law, . . . a party can obtain punitive damages for conduct that constitutes a breach of contract *only* upon proof of an independent tort that itself supports the award of punitive damages." Motion at 2 (emphasis in original).  They then argue that, because the only independent tort that went to the jury was the NMUPA claim, which was limited by the Court to a maximum of $300.00 in damages, Guidance can recover no more than $300.00 in punitive damages on its breach of contract claim.  See Motion at 3-6.  The Court disagrees with this assessment.

## 2.   The Court Declines to Adopt the Defendants' Limited Interpretation of E.I. DuPont de Nemours & Co. v. Pressman.

The flaw in the Defendants' argument becomes clear when one compares the snippets of E.I. DuPont de Nemours & Co. v. Pressman that they cite to the way that they paraphrase the rule that the case sets down.  On page 2 of their motion, they assert that, "under Delaware law, . . . a party can obtain punitive damages for conduct that constitutes a breach of contract *only* upon proof of an independent tort that itself supports the award of punitive damages."  Motion at 2 (italics in original, underline added).  The portion of E.I. DuPont de Nemours & Co. v. Pressman upon which they rely,

however, states: "Unless the bad faith rises to the level of an independent tort, which itself would support <u>an</u> award of punitive damages, mere bad faith on the part of a party to a contract will not give rise to punitive damages."  679 A.2d at 445 (emphasis added).  <u>See</u> Motion at 4 ("Delaware law, in turn, makes clear that for punitive damages to lie for breach of contract the conduct must 'ris[e] to the level of an independent tort, *which itself would support <u>an</u> award of punitive damages*.")(underline added, italics in original).[18]  The Defendants do not deal with the Supreme Court of Delaware's use of the indefinite article, "an," and paraphrase the Supreme Court's exposition of Delaware law by replacing the indefinite article with the definite article, "the."  Motion at 2; Reply at 2 ("To the contrary, Dentsply/TDP consistently and repeatedly argued . . . an independent tort must support <u>the</u> punitive damages award.")(emphasis added); Reply at 14 ("Because Guidance failed to meet <u>Pressman</u>'s explicit requirement that it prove an 'independent tort which would alone would [sic] support [<u>the</u> punitive damages] award,' . . . the $40 million punitive damages award should be set aside.")(emphasis added)(quoting <u>Fox v. Rodel, Inc.</u>, 1999 WL 803885, at *10, not <u>E.I. DuPont de Nemours & Co. v. Pressman</u>); Tr. at 13:18-20 (Cruz)("Given

_____

[18] The Defendants also rely on the language of <u>Fox v. Rodel, Inc.</u>, No. 98-531, 1999 WL 803885, at *10 (D. Del. Sept. 13, 1999), a District of Delaware case.  In <u>Fox v. Rodel, Inc.</u>, the Honorable Sue L. Robinson, United States District Judge, quoted the following passage from a Delaware Superior Court case: "Punitive damages are generally not available for breach of contract absent a showing of bad faith that amounts to an independent tort which alone would support such an award." 1999 WL 803885, at *10 (quoting <u>Colonial Ins. Co. of Calif. v. Sudler</u>, C.A. No. 97A-02-016-CHT, 1997 WL 1048174, at *4 (Del. Super. Sept. 25, 1997)).  Judge Robinson does not engage in any in-depth analysis of this aspect of Delaware law, because she found that the "plaintiff [wa]s barred by reason of [a] Release from presenting evidence of any tortious conduct on the part of defendants."  1997 WL 1048174, at *4.  The parenthetical quotation that Judge Robinson put in her opinion supports the Defendants' argument more than the quotations to <u>E.I. DuPont de Nemours & Co. v. Pressman</u>, but only because it is more ambiguous.  It is not clear whether "such an award" refers to an award of punitive damages, or the specific award of punitive damages available for the underlying tort.  It does not commit to the definite or indefinite article, and is thus of not much help in trying to discern the Supreme Court of Delaware's intent when it decided <u>E.I. DuPont de Nemours & Co. v. Pressman</u>.

the Delaware Supreme Court, that you need an independent tort that alone would support <u>the</u> punitive-damages award . . . .")(emphasis added); <u>id.</u> at 18:20-21 (Cruz)("It has to be an independent tort, and that tort itself has to support <u>the</u> punitive-damages award.")(emphasis added).  They then conclude that, "[a]t most, the punitive damages are limited to those that the tort would itself support: $300."  Motion at 4.

The Defendants cannot, on good grounds, ignore the words that the Supreme Court of Delaware used in its opinion, especially when the alteration they propose would change the meaning of the Supreme Court's opinion.  In grammar parlance, the definite article is "a determiner (*the* in English) that introduces a noun phrase and implies that the thing mentioned has already been mentioned, or is common knowledge, or is about to be defined."  <u>New Oxford American Dictionary</u> at 455 (3d ed. 2010).  The indefinite article is "a determiner (*a* and *an* in English) that introduces a noun phrase and implies that the thing referred to is nonspecific (as in *she bought me a book*; *government is an art*; *he went to a public school*)."  <u>Id.</u> at 882.  The Supreme Court of Delaware demanded that the breach of contract amount to an independent tort which would, itself, support <u>an</u> award of punitive damages.  It used the indefinite article, "an," which "implies that the thing referred to is nonspecific."  <u>Id.</u>  This language thus suggests that the independent tort to which the conduct amounts need only be sufficient to support a "nonspecific" award of punitive damages.[19]  The tort need only support <u>an</u> award -- any award -- of punitive damages to open the door to breach-of-contract punitive damages.

The Defendants do not deal with this plain reading by invoking the definite article, "the," which would "impl[y] that the thing mentioned . . . is about to be defined."  They argue that <u>E.I.</u>

---

[19] The Defendants concede that this is a "plausible" and "conceivable" interpretation of <u>E.I. DuPont de Nemours & Co. v. Pressman</u>, Tr. at 23:24-24:9 (Cruz), but they advocate against it.

DuPont de Nemours & Co. v. Pressman intended to hold that a plaintiff asserting a breach of contract can receive punitive damages for that breach only when the breaching conduct amounts to an independent tort and that tort would, itself, support the punitive damages amount that the jury will award.  In other words, they invoke the definite article, "the," to tie the punitive-damages award for the breach-of-contract claim to the punitive damages award that the independent tort would support, asserting that the plaintiff is limited to what it could receive for the tort claim, standing alone.  While the Defendants make some plausible arguments why it might have been wiser for the Supreme Court of Delaware to phrase E.I. DuPont de Nemours & Co. v. Pressman in the way that they propose,[20] the Court will not assume that the Supreme Court of Delaware said something that they did not mean nor is it at liberty to re-write Delaware contract law.[21]  The Court concludes that Delaware law does not limit breach-of-contract punitive damages to the amount of punitive damages to which the plaintiff would be entitled if it brought its tort claim alone and thus holds that it did not err in allowing Guidance to recover more than $300.00 in punitive damages.

### 3. The Defendants' Reliance on New Mexico Law is Unavailing.

The Defendants next argue that the Court should limit Guidance's punitive damages to $300.00 because "New Mexico law [does not] allow unlimited punitives to be added to the $300 statutory damages absent yet another independent tort."  Motion at 4.  The Court does not necessarily disagree that, under New Mexico law, a plaintiff seeking treble damages under the

---

[20] The Court will discuss some of those arguments below.

[21] In light of this analysis, the Court notes some irony in the Defendants' assertion that it is Guidance that is asking the Court to "rewrite Delaware law and reject a Delaware Supreme Court case directly on point."  Reply at 13-14.  Rather, it is the Defendants who are asking the Court to read E.I. DuPont de Nemours & Co. v. Pressman to mean something other than what its plain language suggests.

NMUPA cannot also receive punitive damages unless he or she also prevails on an independent common-law action.  See Motion at 5-6 (citing Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1218 (10th Cir. 2003); Hale v. Basin Motor Co., 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990); McLelland v. United Wis. Life Ins. Co., 127 N.M. 303, 307, 980 P.2d 86, 90 (Ct. App. 1999)).  The Court, however, is not applying New Mexico law.  The Court is concerned only with when, under Delaware law, a plaintiff can recover punitive damages for a breach of contract.  The Court rejects the Defendants' arguments based on New Mexico state-law authority.[22]

The Court rejects the Defendants' argument that it erred by allowing the jury to assess the amount of punitive damages.  The Defendants suggest that allowing the jury to assess punitive damages was error because, "[u]nder the NMUPA, the court assesses the statutory treble award, not the jury."  Motion at 6 n.4 (citing NMSA 1978, § 57-12-10(B) and McLelland v. United Wis. Life Ins. Co., 127 N.M. at 307, 980 P.2d at 90).  This argument, however, is another means of using the nature of the tort claim that opened the door to punitive damages to try to impose limitations on the punitive damages award.  The Court did not allow the jury to assess treble damages for the NMUPA claim and thus did not run afoul of New Mexico law.  Rather, pursuant to Delaware law, the Court allowed the jury to award punitive damages for a breach of contract where that breach amounted to an independent tort.  The Defendants have cited no authority, and the Court is aware of none, that demands the court determine the amount of punitive damages for a breach of contract where the court would assess treble damages for the underlying tort claim.

---

[22] To the extent that the Defendants were arguing that the limit on damages for Guidance's NMUPA claim is $300.00, Guidance does not appear to disagree with this proposition, and neither does the Court.  If Guidance is entitled to punitive damages, those damages will be for a breach of contract which rose to the level of an independent tort under Delaware substantive law.

### 4.   Although Punitive Damages for Breach of Contract Is at Odds With Delaware's Efficient-Breach Doctrine, Delaware Law Allows Them.

Although it did not appear in the Defendants' briefing, Mr. Cruz relied heavily during the hearing on Delaware's policy in favor of efficient breach.  He argues that the Supreme Court of Delaware has embraced the concept of efficient breach and that allowing large punitive damages awards for "small" torts that arise out of the breach runs counter to the efficient-breach theory.  The Court does not disagree with Mr. Cruz' general proposition, but will not re-write Delaware law because its recognized exceptions give rise to a particular result that is contrary to the efficient-breach concept.

The Supreme Court of Delaware described the efficient-breach concept well in E.I. DuPont de Nemours & Co. v. Pressman:

> The theory [of efficient breach] holds that properly calculated expectation damages increase economic efficiency by giving the other party an incentive to break the contract if, but only if, he gains enough from the breach that he can compensate the injured party for his losses and still retain some of the benefits from the breach.

679 A.2d at 445.  Under this principle, a contracting party is invited to breach a contract and pay the other contracting party expectation damages if performance under the contract would be more financially detrimental to the party than paying such damages.  Mr. Cruz explained the principle effectively during the hearing:

> Now, Your Honor, the efficient-breach theory says, if there are two parties to a contract, party A and party B, and they enter into a contract that is very, very clear, very, very explicit and makes sense in year one, and three years later it becomes economically irrational for one of the two parties to continue that contract, the efficient-breach theory says they should terminate the contract and pay the damages, and, as a matter of law, there's nothing wrong with that.
>
> Now, the efficient breach is not adopted by every state.  There is some controversy over whether it is a good policy or bad policy.  There is old case law in some states that says someone who breaches a contract is . . . a bad actor.

> What the efficient-breach theory says is not only is someone breaching a contract not a bad actor, but . . . . if it is more efficient, if it is more profitable to breach the contract and pay the damages, paying the damages which would render the non-breaching party whole as if the contract had not been breached, then the law wants parties to do that. . . .  [I]n the efficient-breach scenario . . . the breach is knowingly, willingly, with full intent, eagerly and loudly breaching and as a matter of Delaware law is subject to expectation damages, but not punitives, because the law wants to encourage efficient breach to encourage efficient allocation of resources.

Tr. at 9:22-11:4 (Cruz).

> The theory of efficient breach asks the question, 'When is it more efficient for a party to breach a contract than to perform as promised?' It also attempts to identify contract remedies and other legal rules that will give promisors an incentive to breach in exactly those cases where breach would be efficient.

R. Craswell, Contract Remedies, Renegotiation, and the Theory of Efficient Breach, 61 S. Cal. L. Rev. 629, 630 (March 1988).  Delaware law appears generally to endorse this principle.  See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 445-46; Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 892 n.73 (Del. Ch. 2009); Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1025 (Del. Ch. 2006); Morabito v. Harris, No. CIV.A. 1463-K, 2002 WL 550117, at *3 (Del. Ch. Mar. 26, 2002); Ostrow v. Bonney Forge Corp., No. Civ. A. 13270, 1994 WL 114807, at *13 (Del. Ch. Apr. 6, 1994)("There are no doubt cases in which shifting markets have made it economic for a seller simply to refuse to perform and to pay instead the promisee's expectancy damages.").

First, as Mr. Cruz explained during the hearing, "in the efficient-breach hypothesis, the breach is knowingly, willingly, with full intent, eagerly and loudly breaching."  Tr. at 10:23-11:4 (Cruz).  That scenario is not, however, what is presented in this case.  Rather than "eagerly and loudly breaching," id., the Defendants stopped supplying Guidance with obturators and blamed Guidance, asserting that it was Guidance's conduct that justified the breach.  It also, as the jury concluded, made up a false pretense for failing to supply Guidance with the V2 file.  Finally, the jury

-49-

heard competent evidence from which it could reasonably conclude that the Defendants' sales staff was spreading rumors -- that Guidance was going out of business or that Guidance could not supply products -- to try to convert Guidance customers into Dentsply/TDP customers.  The subterfuge and underhanded tactics which surrounded the Defendants' breach of contract appear to take it out of the traditional efficient-breach paradigm.

Moreover, the Supreme Court of Delaware noted its approval of the efficient-breach principle in E.I. DuPont de Nemours & Co. v. Pressman, see 679 A.2d at 445-46 & n.19, yet the Supreme Court found that there are exceptions to the general rule that breach-of-contract damages are limited to the plaintiff's expectation interest, see id. at 445-46.  The Supreme Court of Delaware did not, upon discussing the principle of efficient breach, reject the rules of law that it had just explained, which allow plaintiffs to recover punitive damages for breach of contract under some circumstances.  The Supreme Court of Delaware acknowledged that allowing punitive damages for a breach of contract disturbs the efficient-breach calculus; it nevertheless held that such damages are available under certain conditions.  In other words, in the situations the Supreme Court of Delaware set forth, the policy in favor of punishing bad conduct prevails over the policy in favor of efficient breach.  See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 446 ("Punitive damages would increase the amount of damages in excess of the promisee's expectation interest and lead to inefficient results[, but] [t]he traditional rule [prohibiting punitive damages in breach-of-contract cases] has been subject to a number of limited but well recognized exceptions.").

The Defendants ask the Court to consider the principle of efficient breach and find that, by allowing substantial punitive damages when a breach of contract is accompanied by a tort, which would alone support only a limited amount of punitive damages, the Court is making the breach in

this case inefficient. They want the Court to hold, when a plaintiff is entitled to breach-of-contract punitive damages based on an underlying tort that would support only a limited amount of punitive damages, to similarly limit the breach-of-contract punitive damages, because to do otherwise would undermine the efficient-breach principle. See, e.g., Tr. at 23:16-25:16 (Court, Cruz). The Defendants, however, are asking the Court to re-balance policy considerations for the Supreme Court of Delaware. The Supreme Court recognized that there was inconsistency and tension between the efficient-breach theory and allowing a plaintiff to recover punitive damages for certain contract breaches, yet made clear that, in certain cases, punitive damages for breach of contract are available. Because the Supreme Court of Delaware noted this inconsistency and did not choose to remedy it, the Court will not attempt to re-write Delaware contract law.

> ### 5. Accepting the Defendants' Argument Would Run Contrary to E.I. DuPont de Nemours & Co v. Pressman, Because Punitive Damages Would Be Available Only for Properly Pleaded and Proven Tort Claims.

Another concern the Court has in adopting the Defendants' position is that it would effectively change the rule regarding punitive damages for contract claims under Delaware law. The sum total of the Defendants' arguments appears to be that a plaintiff can recover punitive damages for a breach of contract claim under Delaware law only where: (i) the plaintiff pleads both a breach-of-contract claim and a separate tort claim; (ii) the plaintiff successfully proves both the breach-of-contract and the tort; (iii) the jury awards punitive damages; and (iv) the punitive damages are no more than the plaintiff could have recovered if he had pleaded and proved the tort claim by itself. The general rule under Delaware law is that a plaintiff cannot recover punitive damages for a breach of contract, but there are exceptions. See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 446. The Defendants' argument asks the Court to remove the exceptions from the general rule. If

a plaintiff must plead a prove a tort, and demonstrate his entitlement to the jury's punitive damages

award for that tort, independent of the breach-of-contract claim, the plaintiff is reduced to recovering

punitive damages only for the tort claim.  If a plaintiff can recover punitive damages only for the tort

claim, then the plaintiff is not recovering punitive damages for the breach-of-contract claim.  The

Supreme Court of Delaware, however, sitting en banc, spent several pages explaining the

circumstances under which a plaintiff could recover punitive damages for a breach of contract.  The

Supreme Court of Delaware likely would not have done so if the plaintiff were entitled only to the

punitive damages he could recover on the pleaded and proven tort claim.  The Court will thus not

construe E.I. DuPont de Nemours & Co v. Pressman to illogically espouse an unhelpful principle

of law.

When the Court presented this apparent inconsistency to Mr. Cruz at the hearing, he

responded as follows:

> Now, your question, what sense does it make to say, you don't get punitive damages
> unless you have an independent tort which could support the very same punitive-
> damages award?  And I agree on one level, on a quick level that strikes one as
> redundant.  I would suggest the explanation for that is, if they didn't have that
> doctrine, there is a real possibility that Delaware lower courts when facing conduct
> that would amount to an independent tort, which would support a significant award
> of punitive damages, that there's a real possibility lower Delaware courts, given the
> [efficient]-breach theory, given the contract law, would say, "Look, these two
> parties, their relationship is governed by a contract, so there's not a tort here, we're
> applying the contract," would decline to get to tort matters if a contract applied, and
> the Delaware law said there are no punitive damages under any circumstances when
> a contract applies.

Tr. at 22:3-18 (Cruz).  As the Court understands this argument, it is that the Supreme Court of

Delaware made a rule that does not mean what it says -- i.e., you can get punitive damages for a

breach-of-contract claim, but only if you are *really* getting punitive damages for a separately pleaded

and proven tort that would, alone, support the punitive damages award -- out of a fear that lower

courts would misapply the law if the Supreme Court said what it really meant. The Court is hesitant to hold that the Supreme Court of Delaware intentionally set down a nonsensical rule out of a fear that, if it said what it meant, the lower Delaware courts would misunderstand or misapply the law. Trial courts in Delaware are rather sophisticated, having to deal with complex commercial cases on a regular basis, as Mr. Cruz admitted during the hearing. See Tr. at 15:4-14 (Cruz). Those courts undoubtedly would have understood if the Supreme Court of Delaware had said a plaintiff cannot recover punitive damages for a breach of contract; however, if a plaintiff proves a tort claim that would support a punitive-damages award -- regardless of the existence of any contractual relationship -- he can recover punitive damages for that separate tort. In short, the Court rejects the Defendants' purported rationale for the rule for which they advocate.

### 6.    **Because There Was No Error, There Was No Plain Error.**

The Court has concluded that there was no error in allowing the jury to assess punitive damages beyond the $300.00 to which Guidance would be entitled for its claim of willful violation of the NMUPA. The Court has also concluded that the Defendants failed to preserve this issue in any event. If the Defendants' motion is one for judgment as a matter of law under rule 50(b), the Court would reject it regardless of any error because it was not raised in a pre-verdict rule 50(a) motion. See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d at 762; Marshall v. Columbia Lea Regional Hosp., 474 F.3d at 738; United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d at 1229; First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057; 9B C. Wright & A. Miller, supra § 2537, at 603-04. If the Court were to construe the motion as a rule 59 motion for new trial, the Defendants would be entitled to reversal only if they established that the Court erred and that the error substantially affected the fairness of the proceeding. See Cottman v. Aurora Pub. Schs., 85

-53-

Fed. Appx. at 88; <u>Nissho-Iwai Co. v. Occidental Crude Sales, Inc.</u>, 848 F.2d at 619; 11 C. Wright, A. Miller, & M. Kane, <u>supra</u> § 2805, at 57-58; <u>id.</u> § 2805, 58-59.  And, if the Court were to construe the motion as a rule 51 motion asserting error in the jury instructions -- a stretch considering the Defendants make no mention of jury instructions in the part of their Motion arguing this point -- the Defendants could prevail only on a showing of plain error.  "To mount a successful plain error challenge, a party must demonstrate (1) an error, (2) that is plain or obvious under existing law, and (3) that affects substantial rights." <u>Royal Maccabees Life Ins. Co. v. Choren</u>, 393 F.3d at 1181.  <u>See</u> <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d at 1094; <u>Royal Maccabees Life Ins. Co. v. Choren</u>, 393 F.3d at 1182 (referring to plain-error review as "an extraordinary, nearly insurmountable burden"); <u>Abuan v. Level 3 Commc'ns, Inc.</u>, 353 F.3d at 1173; <u>Beaudry v. Corr. Corp. of Am.</u>, 331 F.3d at 1168.  Because the Defendants have failed at step one of each of these analyses -- there is no error -- the Court need not continue the analyses.

### III.    THE DEFENDANTS PRESERVED THE ISSUE WHETHER GUIDANCE'S NMUPA CLAIM IS A CONTRACT CLAIM, RATHER THAN A TORT CLAIM; HOWEVER, THE COURT FINDS GUIDANCE'S NMUPA CLAIM WAS A TORT CLAIM.

The Defendants' second argument for vacating the jury's punitive-damages verdict is that Guidance's NMUPA claim is a contract claim, not a tort claim, and so <u>E.I. DuPont de Nemours & Co v. Pressman</u> does not authorize punitive damages in this context.  Guidance argues that the Defendants did not preserve this argument and that it nevertheless lacks merit.  The Court agrees in part.  The Defendants made one objection that the Court can construe as addressing this issue. Nevertheless, based on the analysis the Court has used in the past, the Court continues to believe that Guidance's NMUPA claim is a tort claim and not a contract claim.

## A.   THE DEFENDANTS HAVE ARGUABLY ASSERTED THAT THE NMUPA CLAIM IS NOT A TORT.

The Defendants' arguments that they properly preserved this issue are largely the same as their arguments that they properly preserved their other Pressman-related issues.  See Reply at 6-9.  Again, those objections clearly took issue with Guidance's pursuit of punitive damages and did so citing E.I. DuPont de Nemours & Co. v. Pressman.  See Letter from Thomas Gulley to the Court at 4 (dated Oct. 4, 2009); Letter from Thomas Gulley to the Court at 1 (dated Oct. 6, 2009); Tr. at 36:22-39:22 (Court, Cruz); Oct. 5 Tr. at 3060:23-3061:10 (Court); Oct. 7 Tr. at 143:20-144:13 (Avitia).  Most, however, were too general to preserve the issue they now present.

In Mr. Gulley's October 4, 2009 letter, however, the Defendants arguably argued that a NMUPA claim is not a tort claim which can support breach-of-contract punitive damages.  That letter stated, in relevant part:

> [The punitive-damages] instruction should be deleted. . . .  Under Delaware law, Guidance cannot seek punitive damages unless it also proves a fraud or tort. . . . Guidance has no remaining tort claims, has never pleaded a fraud claim, and cannot recover punitive damages under its two remaining statutory claims.  This instruction should, therefore, be deleted . . . .

Letter from Thomas Gulley to the Court at 4 (dated Oct. 4, 2009)(emphasis added).  Although this objection lacks the specificity that the Court would have liked or needed, and the Court cannot state definitively that it did not understand that the Defendants were arguing that Guidance's "statutory claim[]" should be construed as a contract claim, the core of the Defendants' current argument is found within this paragraph.  The Court thus concludes that the Defendants preserved this argument insofar as it purports to raise an error in the jury instructions under rule 51.

**B.    GUIDANCE'S NMUPA CLAIM BASED ON THE DEFENDANTS' FAILURE TO SUPPLY THE QUALITY AND QUANTITY OF GOODS OR SERVICES CONTRACTED REMAINS A TORT CLAIM.**

The Defendants assert that the NMUPA claim that Guidance used to support punitive damages in this case was more in the nature of a contract claim than a tort claim and thus did not satisfy the requirement of E.I DuPont de Nemours & Co. v. Pressman that the breaching conduct amount to an independent tort.  Guidance disagrees with this assessment, referring the Court to the essential elements of a NMUPA claim, and to the Defendants' statements that "[t]he 'gravamen' of an [NM]UPA claim [is] 'a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services."  Motion at 24 (quoting Diversey Corp. v. Chem-Source Corp., 125 N.M. 748, 754, 965 P.2d 332, 338 (Ct. App. 1998)).  The Court agrees with Guidance's argument on this point.

**1.    Applying the Test to Which the Parties Agreed, Guidance's NMUPA Claim is a Tort Claim.**

In a Memorandum Opinion and Order, filed September 8, 2009 (Doc. 303), the Court stated:

The Court will categorize these [NMUPA] claims as torts.  Other courts that have had to classify a violation of a consumer-protection statute in its choice-of-law analysis usually do so by asking to what common-law cause of action the wrongful conduct is most similar.  Guidance complains of harm from lost sales based on misrepresentations made to its potential customers, which resembles damages under a claim for tortious interference with prospective contractual relations -- a tort.  Further, these claims are grounded in breach of a duty created by law -- the consumer-protection statutes -- not by any agreement between the parties.  Finally, both parties agree that the consumer-protection claims should be treated as tort claims for choice-of-law purposes. . . .  The Court, therefore, will apply tort choice-of-law principles.

Memorandum Opinion and Order at 19-20.  Both parties continue to agree that this is the appropriate analysis for determining whether Guidance's NMUPA claim is a tort or contract action, see Motion at 6-10; Response at 14-16, and the Court has found no authority that would draw its prior analysis

-56-

into question.  The Defendants' argument, however, is that, in September of 2009, Guidance was proceeding on a NMUPA theory based on misrepresentations to Guidance customers; but, the theory of NMUPA liability upon which Guidance bases its entitlement to punitive damages was that the Defendants willfully "fail[ed] to provide the quantity and quality of products under the Manufacturing and Supply Agreement."  Motion at 6-10; Verdict Form at 3.  The Defendants assert that, while the misrepresentations-based claim made the NMUPA claim a tort claim, the quality-and-quantity theory is more analogous to a contract claim than a tort claim.  See Motion at 6-10.

The Court believes Guidance's NMUPA claim, even that which is based primarily on the failure to provide the quality or quantity of goods for which the parties contracted, is a tort claim.  In coming to this conclusion, the Court looks primarily to the core elements of a NMUPA claim.  As the Court's Jury Instructions expressed:

> For Guidance to prove that Dentsply and/or Tulsa Dental violated the New Mexico Unfair Practices Act, Guidance must prove each of the following elements by a preponderance of the evidence:
>
> *First*, Dentsply and/or Tulsa Dental made an oral or written statement that was false or misleading;
>
> *Second*, the false or misleading statement was knowingly false;
>
> *Third*, the false or misleading statement was made in connection with the sale of goods or services in the regular course of Dentsply's and/or Tulsa Dental's trade or commerce; and
>
> *Fourth*, the false or misleading statement may, tends to, or does deceive or mislead any person.

Court's Final Jury Instructions (Given), Instruction No. 31, at 32.  Guidance was thus required to prove that the Defendants knowingly made false statements that "may, tend[] to, or do[] deceive or mislead any person."  NMSA 1978, § 57-12-2(D).  Guidance then relied specifically upon a willful

violation of the NMUPA, requiring it to prove that the Defendants' willfully made false statements that "may, tend[] to, or do[] deceive or mislead any person."  NMSA 1978, § 57-12-2(D).  In addition to these elements, Guidance established that, in conjunction with the false statements, the Defendants failed to provide the quality and quantity of goods or services for which the parties contracted.    These elements are very similar to those necessary to prove a fraudulent misrepresentation.  See Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 (Del. 1992)(setting forth the elements of fraud or deceit under Delaware law); NMRA UJI 13-1633, at 219-20 (2010)(describing the elements of fraud under New Mexico law). As the Restatement (Second) of Torts § 525 (1977)

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

As Guidance points out, one of the Defendants' arguments further support the Court's conclusion.  As the Defendants' pointed out in their brief, New Mexico courts have emphasized that "[t]he gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." Diversey Corp. v. Chem-Source Corp., 125 N.M. 748, 754, 965 P.2d 332, 338 (Ct. App. 1998).  See Thompson v. Youart, 109 N.M. 572, 575-76, 787 P.2d 1255, 1258-59 (Ct. App. 1990)(finding a NMUPA claim indistinguishable from a claim under the tort of unfair competition).  The Supreme Court of New Mexico recognized that the false-statements requirement was the core of a NMUPA claim when it stated: "The conjunctive wording of the statute itself requires an interpretation that the four elements set forth in Section (D) must be present in the examples delineated in subsections (1) through (17)." Stevenson v. Louis Dreyfus Corp., 112 N.M. at 101, 811 P.2d at 1312.  Accordingly, the false and misleading statement is the core of an NMUPA claim, and the failure to provide the quality or quantity of goods or

services for which the parties contracted is merely a predicate act necessary to impose liability for the false or misleading statements.  See Carl Kelley Const. LLC v. Danco Techs.,  656 F. Supp. 2d 1323, 1339 (D.N.M. 2009)(Browning, J.)("[W]hile the UPA claim may involve conduct that is also relevant to a contractual claim, a UPA claim would not be a suit on the contract but a suit under a cause of action that New Mexico's legislature has enacted for allegedly unfair trade practices."); Pedroza v. Lomas Auto Mall, Inc., 625 F.Supp.2d 1156, 1161-62 (D.N.M.2009)(Browning, J.)("A UPA cause of action resembles more of a tort action than a breach-of-contract claim.").  As such, the NMUPA claim is more akin to a tort claim of fraudulent misrepresentation than to a breach of contract.

### 2.    The Defendants' Authority Does Not Persuade the Court.

The Defendants rely almost entirely on two opinions -- one from the United States District Court for the District of Massachusetts and one from the United States Court of Appeals for the First Circuit -- in support of finding that Guidance's NMUPA claim should be construed as a contract claim.  See Motion at 7-10 (relying upon Northeast Data Systems, Inc. v. McDonnell Douglas Comp. Systems Co., 986 F.2d 607 (1st Cir. 1993), and Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp. 87 (D. Mass. 1996)); Reply at 14-15 (same).  Both cases deal with the application of Massachusetts' consumer-protection statute, Chapter 93A.  For multiple reasons, these cases do not persuade the Court.  First, the Court is not bound by the law as the District of Massachusetts or the First Circuit interpret it; rather, the Court is bound only by the authority of the Tenth Circuit and the Supreme Court, and the state's highest court when resolving issues of state law.

Second, the NMUPA and Massachusetts' Chapter 93A are differently worded and have materially different elements.  From the Court's review of cases applying Chapter 93A, its elements

include: (i) engaging in an unfair or deceptive act or practice, see Colantonio, Inc. v. Fitchburg Hous. Auth., No. MICV075030, 2008 WL 3311892, at *2 (Mass. Super. July 23, 2008); Rhodes v. AIG Domestic Claims, Inc., No. 05-1360-BLS1, 2008 WL 2357015, at *20 n.11 (Mass. Super. June 3, 2008); Rathore v. Kelly, No. 99-04320, 2002 WL 31082045, at *4 (Mass. Super. Sept. 10, 2002); (ii) in the conduct of trade or commerce, see Colantonio, Inc. v. Fitchburg Hous. Auth., 2008 WL 3311892, at *2; Marney v. Aquilio, No. 00386, 2006 WL 696581, at *4 (Mass. Super. Feb. 7, 2006); Rathore v. Kelly, 2002 WL 31082045, at *4; and (iii) a loss caused thereby, see Rhodes v. AIG Domestic Claims, Inc., 2008 WL 2357015, at *20 n.11; Rathore v. Kelly, 2002 WL 31082045, at *4. These elements are more vague than the NMUPA's elements. See Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311; Lohman v. Daimler-Chrysler Corp., 142 N.M. at 439, 166 P.3d at 1093. As the First Circuit noted in Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co., "the Massachusetts Supreme Judicial Court has recognized that, under some circumstances, a Chapter 93A claim 'is essentially duplicative of a traditional contract claim.'" 986 F.2d at 610 (quoting Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 548 N.E.2d 182, 187 (1990)). Although a NMUPA claim can be premised on a "traditional contract claim," the additional elements of a willful false statement made in conjunction with the breach appears to remove NMUPA claims from the category of claims that "may essentially reduce to a contract claim." Ne. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co., 986 F.2d at 610.

Third, the facts of Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co. and Mead Corp. v. Stevens Cabinets, Inc., as recited by the courts deciding those cases, are materially different from the facts of this case. In Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co., the First Circuit described the plaintiff's Chapter 93A allegations --

-60-

and their relation to breach-of-contract allegations.  The First Circuit stated that the plaintiff either "simply says that Microdata 'knowingly' or 'willfully' broke the contract," or "threatened to take actions that the contract forbids, with a bad motive."  Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d at 609.  As the First Circuit recognized, however, these allegations reduce to breach of contract with a bad motive.  See id. ("The contract violations are essential elements of the 93A claims.  The 'state of mind' and 'bad motive' allegations add little.").  The Court agrees with the First Circuit's assessment, and, if that were all that Guidance could muster to support its NMUPA claim, the Court might be inclined to find for the Defendants on this issue.[23] Guidance proved substantially more.

Similarly, in Mead Corp. v. Stevens Cabinets, Inc., the Honorable Michael Ponsor, United States District Judge for the District of Massachusetts, cited Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co. for the proposition that "a choice-of-law clause selecting some state's law (other than Massachusetts') to govern 'contract related' claims precludes a Chapter 93A claim when that claim essentially reduces to a contract claim."  Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp at 90.  Judge Ponsor found that Stevens' Chapter 93A claim "reduce[d] to a contract claim," but only because "the factual averments pleaded in the counterclaim are *exactly the same* for the Chapter 93A count as for the breach of contract count," and that "Stevens' breach of warranty and Chapter 93A claims are interchangeable, relying on precisely the same facts and the same legal theory, both anchored in contract law."  Mead Corp. v. Stevens

---

[23] Of course, if a breach of contract and bad motive were all Guidance was able to muster in support of its NMUPA claim, that claim would have failed on the merits.  See Stevenson v. Louis Dreyfus Corp., 112 N.M. at 100, 811 P.2d at 1311; Lohman v. Daimler-Chrysler Corp., 142 N.M. at 439, 166 P.3d at 1093.

Cabinets, Inc., 938 F. Supp at 90 (emphasis in original).  While there is some factual overlap among

Guidance's claims, the Court cannot say that the factual averments supporting its breach-of-contract

claims were identical to those supporting its NMUPA claims.  The Court rejects the Defendants'

assertion that Guidance's NMUPA claim was a contract claim and thus cannot support breach-of-

contract punitive damages under Delaware law.

**IV.    THE DEFENDANTS INVITED THE COURT TO INSTRUCT THE JURY THAT IT
        COULD AWARD PUNITIVE DAMAGES FOR BAD-FAITH BREACH OF THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND THEY
        HAVE THUS WAIVED ANY ERROR BASED ON THAT INSTRUCTION.**

The Defendants' next basis for overturning the jury's punitive-damages verdict is to assert

that the Court erred in allowing the jury to award punitive damages based on a bad-faith breach of

the implied covenant.  Guidance's strongest opposition argument is that the Defendants' waived this

argument by proposing jury instructions that would have allowed the jury to award the Defendants'

punitive damages if it found that Guidance breached the implied covenant in bad faith.  With less

fervor, Guidance also argues that bad-faith breach of the implied covenant is sufficient, under

Delaware law, to support a punitive-damages claim.  Instructing the jury that it could award punitive

damages for a breach of the implied covenant plus bad faith, without more, might have been an

incomplete statement of the law.  The Defendants, however, invited this error, and therefore they

cannot now raise the Court's instruction to the jury as error.

"The invited error doctrine prevents a party from inducing action by a court and later seeking

reversal on the ground that the requested action was error."  United States v. Edward J., 224 F.3d

at 1222.  See Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d at 1072.

For example, "[a] party who requests an instruction invites any error contained therein and, absent

an objection before the instruction is given, waives appellate review of the correctness of the

instruction." <u>Aves By and Through Aves v. Shah</u>, 997 F.2d at 766.  The rationale of this rule is that

a party should not be able to secure a post-trial reversal by persuading the court to take an erroneous

action before or during the trial.  Inviting an error results in waiver of the right to raise that error

post-trial.  <u>See</u> <u>United States v. Cruz-Rodriguez</u>, 570 F.3d at 1183; <u>United States v. Zubia-Torres</u>,

550 F.3d at 1205 ("We typically find waiver in cases where a party has invited the error that it now

seeks to challenge[.]").

In this case, the Defendants asked the Court to let the jury award punitive damages if it found

a breach of the implied covenant of good faith and fair dealing and bad faith.  What the Defendants

apparently did not expect was that the jury would find that the Defendants did those things.  Again,

the Defendants sought the following questions in the jury's verdict form:

*Breach of Implied Covenant of Good Faith and Fair Dealing*

(6)    Do you find that Guidance breached the implied covenant of good faith and
       fair dealing?

                _____ YES           _____ NO

If your answer to Question No. 6 is "YES," go on to Question No. 7.  If your answer
to Question No. 6 is "No," go to Question No. 11.

(7)    Do you find that Dentsply and/or Tulsa Dental have suffered actual or
       nominal damages as a result of Guidance's conduct?

                _____ YES           _____ NO

If your answer to Question No. 7 is "YES," go on to Question No. 8.  If your answer
to Question No. 7 is "No," go on to Question No. 11.

(8)    In a lump sum, state the amount of actual or nominal damages you award
       Dentsply and Tulsa Dental

                $ _____

Go on to Question No. 9.

(9)     Do you find that Guidance's breach of the implied covenant of good faith and
        fair dealing was in bad faith?

                    _____ YES              _____ NO

If your answer to Question No. 9 is "YES," go on to Question No. 10.  If your
answer to Question No. 9 is "No," go to question No. 11.

(10)    In a lump sum, state the amount of punitive damages you award Dentsply and
        Tulsa Dental.

                    $ _____

Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP at 3.  Based on this

series of questions, a jury could award the Defendants punitive damages if it found that Guidance

breached the implied covenant of good faith and fair dealing, the breach caused nominal damages,

and the breach was done in bad faith.  By their proposed verdict form, therefore, the Defendants told

the Court that bad-faith breach of the implied covenant was a proper predicate for punitive damages

under Delaware law.[24]  That predicate, however, is the one that they now contend was erroneous.

      The Court was persuaded to adopt this predicate for punitive damages.  The Court's First and

Second Proposed Verdict Form embody the last principle.  See Court's First Proposed Verdict Form

at 7; Court's Second Proposed Verdict Form at 3, 6.  By the Court's Second Proposed Verdict Form,

the Court noted that -- given that both parties alleged that the other party breached the implied

covenant in bad faith -- it was only fair to instruct the jury about this punitive-damages predicate

with respect to both parties' implied-covenant claims.[25]  Those jury interrogatories persisted, at least

_____

      [24] Mr. Cruz admitted during the hearing that this requested verdict form sought punitive
damages on a basis that was more broad than Delaware law would allow.  See Tr. at 118:22-119:8
(Court, Cruz).

      [25] The Court's proposed verdict forms, which adopted the Defendants' instructions on
punitive damages for bad-faith breach of the implied covenant, were incomplete.  They would not

as to Guidance's implied-covenant claim against the Defendants, into the final verdict form.  By the Defendants' request for these instructions, to which the Court acquiesced, the Defendants "invite[d] any error contained therein and, absent an objection before the instruction is given, waive[d] appellate review of the correctness of the instruction."  <u>Aves By and Through Aves v. Shah</u>, 997 F.2d at 766.[26]

The question is, therefore, did the Defendants properly object before the instruction was given?  They did not.  In their reply brief, the Defendants first argue that their proposed jury instructions undermine Guidance's invited-error argument, because the Defendants' proposed jury instruction regarding punitive damages stated: "Dentsply and Tulsa Dental may <u>only</u> recover punitive damages for Guidance's breach of contract if you find that Guidance's <u>breach of contract also constituted a separate tort</u>[.]"  Dentsply/TDP's Proposed Jury Instructions, Instruction No. 45, at 51 (emphasis added).  This argument fails.  First, the Defendants' proposed instruction omitted the standard for receiving punitive damages for a breach of the implied covenant of good faith and fair dealing; it explicitly stated the standard for breach-of-contract punitive damages only.  <u>See</u> <u>id.</u>

---

have properly instructed the jury which questions to answer or to omit based on their answer to the question: "Do you find that Guidance's breach of the implied covenant of good faith and fair dealing was in bad faith?"  Nevertheless, it is clear from the Court's inclusion of that question that the Court had been persuaded to adopt the Defendants' proposed questions and that it adopted those questions. The Court included a heading which stated: "Predicate Question for Punitive Damages for Breach of Implied Covenant of Good Faith and Fair Dealing."  Court's First Proposed Verdict Form at 7 (Doc. 393).  There would be no reason to ask whether Guidance's breach of the implied covenant was in bad faith if such a bad-faith breach was only relevant in the bad-faith-breach-of-insurance-agreement context.

[26] At the verdict-form conference on October 8, 2009, Ms. Avitia again agreed -- without objection -- that the jury could award punitive damages for a bad-faith breach of the implied covenant.  <u>See</u> Response at 19; Transcript of Trial at 11:4-15 (taken Oct. 8, 2009), filed November 16, 2009 (Doc. 467).

("Dentsply and Tulsa Dental may only recover punitive damages <u>for Guidance's breach of contract</u> if . . . .")(emphasis added).  The Defendants now agree that the standard is the same for punitive damages for a breach-of-contract and for an implied-covenant claim.  They might thus suggest that, because the standards are the same, the instruction made it clear that the Defendants believed punitive damages could only be awarded for a breach of the implied covenant if such breach constituted a separate tort.  The Defendants, however, never made that argument.  The Defendants rejected a similar argument when Guidance made it at the hearing.

> [Plaintiff argued that it could] cure the problem in paragraph five by sort of reading it in conjunction with paragraph four, that the implied covenant is a species of breach of contract and so the references to the tort in paragraph four are enough to help the obvious incorrectness of paragraph five.  The problem with that is that's not how the jury was instructed. . . .  These are separate bases for awarding punitive damages.

Tr. at 126:4-127:4 (Court, Cruz).  More importantly, the Defendants' proposed verdict form, upon which the Court finds invited error, was filed <u>after</u> the Defendants' proposed jury instruction on punitive damages.  <u>Compare</u> Dentsply/TDP's Proposed Jury Instructions, filed September 15, 2009 (Doc. 330), <u>with</u> Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP, filed September 28, 2009 (Doc. 370).  If the Defendants realized in September of 2009 that the breach-of-contract and implied-covenant standards for punitive damages were the same, the proposed verdict form suggests that they believed a breach of contract or a breach of the implied covenant could give rise to punitive damages based only upon a showing of bad faith.  The Court thus rejects the Defendants' first argument.

The Defendants next rely on essentially the same portions of the record as they cited for preservation of their <u>Pressman</u>-related arguments, and a few additional points in the record.  <u>See</u> Tr. at 60:15-65:8 (Court, Cruz).  These bases also fail.  First, the Defendants rely on Mr. Gulley's

October 4, 2009 and October 6, 2009 letters.  As Mr. Cruz conceded at the hearing, however, these letters addressed only the standard for recovery of punitive damages for a breach of contract, and not for recovering such damages for a breach of the implied covenant of good faith and fair dealing.  See Tr. at 62:4-6 ("MR. CRUZ: Well, it does not explicitly refer to the implied covenant, . . . .").[27]  Again, the Defendants try to rely upon the fact that the implied-covenant claim is a variant of breach-of-contract claim to suggest that the Court must have known that their arguments extended to the implied-covenant predicate for punitive damages, but at no time did they make that fact known to the Court.[28]  The Court cannot recall -- and the Defendants do not point to -- any other time during the course of this case where the Defendants made an argument that could reasonably be construed as asserting that a bad-faith breach of the implied covenant of good faith and fair dealing is insufficient, under Delaware law, to support an award of punitive damages.  The Court

---

[27] Indeed, one might read Mr. Gulley's October 4, 2009 letter as suggesting that bad-faith breach of the implied covenant was a proper basis for punitive damages.  After asking that the punitive-damages instruction be removed its entirety, he states: "If it is not deleted in whole, it should be modified to indicate that Guidance cannot recover punitive damages merely for acts that are 'malicious, willful, reckless, wanton, fraudulent or in bad faith.'"  Letter from Thomas Gulley to the Court at 4 (dated Oct. 4, 2009).  If the Court had granted this alternative relief, the punitive-damages instruction would still have allowed the jury to assess punitive damages based on a bad-faith breach of the implied covenant.  This alternative request suggested to the Court that the Defendants were requesting more relief than that to which they believed they were entitled and caused the Court to focus more pointedly on the portion of the instruction to which the Defendants objected.

[28] The Defendants also may be trying to rely on Mr. Gulley's argument in support of his oral motion for judgment as a matter of law on Guidance's implied-covenant claim.  In that argument, according to the Defendants, Mr. Gulley argued that the implied-covenant claim was merely a breach-of-contract claim.  The Court recalls the argument, but the point Mr. Gulley was trying to convey is that the implied-covenant claim failed on the merits, because it was essentially a breach-of-contract claim.  Mr. Gulley did not argue that the implied-covenant claim under Delaware law shared the same punitive-damages rules as a breach-of-contract claim.  This argument, likewise, did not remedy the Defendants' waiver.

thus rejects the Defendants' argument that they somehow remedied their invitation to the Court to instruct the jury that punitive damages could be awarded for bad-faith breach of the implied covenant. The Defendants invited this error and thus waived their right to claim it as error post-trial.

The Defendants rely on United States v. Villasenor, 121 Fed. Appx. 301 (10th Cir. 2005), to argue that the invited-error doctrine cannot apply in a case, such as this, where the Defendants did not ultimately reach the jury on their erroneous instruction. United States v. Villasenor does not stand for this proposition. In United States v. Villasenor, the defendant sought to preclude the United States from arguing that a dismissal of his indictment was against public policy using the invited-error doctrine. See 121 Fed. Appx. at 303 n.1. His argument was that, because the United States had moved to dismiss the indictment at one point during the proceeding, they should be precluded from opposing such dismissal now. See 121 Fed. Appx. at 303 n.1. The Tenth Circuit stated "The [invited-error] doctrine is inapplicable where, as here, the party against whom the doctrine is invoked failed to secure action in the first instance." Id. Unlike in this case, however, all the United States had asked for in United States v. Villasenor was for the district court to dismiss Villasenor's indictment, and the district court had rejected that request. "[H]ad the government argued *successfully* for dismissal," however, the Tenth Circuit noted, "it would then be precluded from arguing that the dismissal was in error." United States v. Villasenor, 121 Fed. Appx. at 303 n.1.

By contrast, in this case, the Defendants "secure[d] action in the first instance." United States v. Villasenor, 121 Fed. Appx. at 303 n.1. They got what they initially asked for -- the Court incorporated questions into the verdict form -- and later into the jury instructions -- allowing the jury to assess punitive damages based on bad-faith breach of the implied covenant. They did not reach

-68-

the jury on their implied-covenant claim, but they had already persuaded the Court to accept their view of the governing law, and they never contradicted that position before the Court. The Court also disagrees with the Defendants' proposed interpretation of United States Villasenor, and declines to find that an order or other affirmative ruling is necessary before the invited-error rule applies. The Tenth Circuit has not announced such a requirement and has found invited error where defendants did not prevail on a ruling. See Aves By and Through Aves v. Shah, 997 F.2d at 766 (finding a party who lost under his proposed instruction invited error); Glasscock v. Wilson Constructors, Inc., 627 F.2d 1065, 1067 (10th Cir. 1980)(finding a defendant invited error by "fail[ing] to object to the judge's decision not to submit the issue of promissory estoppel to the jury" after arguing "that promissory estoppel is 'entirely a matter of law,'" where the trial court ruled against the defendant's motion for summary judgment on that basis). The Tenth Circuit has not required such findings, nor is the requirement of such an order or ruling a necessary inference from their ruling in United States v. Villasenor. A party must only "induce[] action"; the party need not prevail on the action. United States v. Edward J., 224 F.3d at 1222.

Because the Defendants invited the Court to instruct the jury that bad-faith breach of the implied covenant was a sufficient predicate for punitive damages, they have waived that issue. The Court thus denies the Defendants' motion on that ground.

## V.   THE DEFENDANTS WAIVED MOST OF THEIR ARGUMENTS ABOUT GUIDANCE'S IMPLIED-COVENANT CLAIM, AND THE ISSUE THEY PRESERVED LACKS A SOUND BASIS IN THE LAW OR FACTS OF THIS CASE.

Next, the Defendants argue that Guidance failed to prove its implied-covenant claim as a matter of law. They assert that Guidance failed as a matter of law to prove that there existed "a specific implied contractual obligation" and "resulting damages to the plaintiff," both of which are

-69-

necessary for an implied-covenant claim.  Motion at 14-21.[29]  Guidance responds first that the Defendants waived these arguments and second that their evidence was sufficient.  The Court believes that most of the Defendants' issues were waived or forfeited, but that one issue was properly preserved.  The Court will address that issue, but will find -- as it found when the issue was raised mid-trial -- that Guidance had a viable implied-covenant claim.

A.   DELAWARE LAW OF THE IMPLIED COVENANT OF GOOD FAITH AND
     FAIR DEALING SUPPORTS GUIDANCE'S CLAIM.

"Stated in its most general terms, the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del. 2005).  "[P]arties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms."  Id.  The covenant is a way to imply terms in a contract to fill missing contract provisions, whether they be missing through simple oversight or arising from circumstances that neither party predicted.  See id.  On the other hand, one cannot assert a breach of the implied covenant for conduct that is governed by the contract's express provisions. See id.; Kuroda v. SPJS Holdings, L.L.C., 971 A.2d at 888 ("To the extent that Kuroda's implied

---

[29] It is unclear whether the Defendants' arguments are based on sufficiency of the evidence or only on Delaware legal principles.  They use the "failed to establish" language, suggesting that their argument goes to the sufficiency of the evidence.  They also cite portions of the record in support of their preservation argument in which trial counsel appears to be arguing about sufficiency of the evidence.  It was also clear that Mr. Cruz, at the hearing, believed the Defendants' position with respect to these issues was that Guidance had provided insufficient evidence to establish them. See Tr. at 128:6-7 (Cruz).  The arguments themselves, however, are largely based on principles of Delaware law and not on the sufficiency of Guidance's evidence.  The Court will thus determine whether they were preserved, and then, if issues were preserved, address them in the manner in which they were preserved.

covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

More specifically, to prove a breach of the implied covenant, a party must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damages. See Kuroda v. SPJS Holdings, L.L.C., 971 A.2d at 888.  Alleging bad faith alone is insufficient to establish a breach of the implied covenant; rather, the claimant must "allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." Id.  "[A] court should be cautious when implying a contractual obligation and do so only where obligations which can be understood from the text of the written agreement have nevertheless been omitted from the agreement in the literal sense." Fitzgerald v. Cantor, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)(emphasis added).  Because of how narrow the cause of action is -- and probably as a result of how comprehensive most modern commercial contracts are -- asserting this cause of action is rarely successful.  See Kuroda v. SPJS Holdings, L.L.C., 971 A.2d at 888.

## B.   THE DEFENDANTS PRESERVED ONE OF THEIR ISSUES, BUT WAIVED OR FORFEITED THE OTHERS.

The Court believes the Defendants waived or forfeited the majority of their arguments in support of vacating the jury's verdict on Guidance's implied-covenant claim.  First, the Court notes that the parties agreed to the elements of the implied-covenant claim.  They submitted a Joint Proposed Statement of Elements on September 14, 2009, in which they proposed the following instruction for an implied-covenant claim:

> Guidance has alleged a claim for breach of the implied covenant of good faith and fair dealing against Dentsply and Tulsa Dental.  Dentsply and Tulsa Dental have also alleged a claim of breach of the implied covenant of good faith and fair dealing

against Guidance.

Elements:

- The offending party acted arbitrarily or unreasonably

- That conduct prevented the other party from receiving the fruits of the contract; and

- The offending party's actions injured the other party.

Joint Proposed Statement of Elements at 3, filed September 14, 2009 (Doc. 322)(citing <u>ACE & Co. v. Balfour Beatty PLC</u>, 148 F. Supp. 2d 418, 426 (D. Del. 2001); and <u>Kuroda v. SPJS Holdings, LLC</u>, 971 A.2d 872 (Del. Ch. 2009)).  By submitting this list, the Defendants asked the Court to require Guidance -- and, at that time, themselves -- to provide evidence of these three elements.  The Court incorporated these elements into Instruction No. 28 of the Court's Third Jury Instructions (with additional handwritten changes by Judge), filed October 2, 2009 (Doc. 406).  The Defendants reviewed these instructions and stated that they had no objection. <u>See</u>  Letter from Thomas Gulley to the Court at 1 (dated Oct. 2, 2009), filed October 2, 2009 (Doc. 448)("We have no objection to instruction[] . . . 28, . . . .").  The Court adopted those elements into the Court's Final Jury Instruction No. 27, but incorporated its ruling on the Defendants' motion for judgment as a matter of law to render them even more narrow.  That instruction stated:

> For Guidance to prove that Dentsply and/or Tulsa Dental breached the implied covenant of good faith and fair dealing, Guidance must prove each of the following elements by a preponderance of the evidence:
>
> *First*, Dentsply and/or Tulsa Dental acted arbitrarily or unreasonably by using its status as Guidance's exclusive manufacturer of products to develop a brochure that disparaged those products;
>
> *Second*, that conduct prevented Guidance from receiving the fruits of the contract; and

*Third*, Dentsply's and/or Tulsa Dental's actions injured Guidance.

Court's Final Jury Instructions (Given), Instruction No. 27, at 28.[30]  Mr. Cruz conceded that the Defendants agreed to these elements.  See Tr. at 128:3-7 (Cruz).  The Defendants have cited no place in the record in which they argued that these were not the appropriate elements for the Court to submit to the jury, and so the Defendants have waived their sufficiency-of-the-evidence arguments with respect to elements other than those submitted.  See United States v. Cruz-Rodriguez, 570 F.3d at 1183; United States v. Zubia-Torres, 550 F.3d at 1205; Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d at 1072; United States v. Edward J., 224 F.3d at 1222; Aves By and Through Aves v. Shah, 997 F.2d at 766.

The Defendants also waived the right to challenge whether Guidance was entitled to recover on an implied-covenant claim on a showing of only nominal damages.  As the Court noted earlier, the Defendants presented the Court with a Proposed Verdict Form that would have allowed it to succeed on its implied-covenant claim against Guidance based solely on nominal damages, and to receive punitive damages, if the jury found three things: (i) breach of the implied covenant; (ii) actual or nominal damages; and (iii) bad faith.  See Dentsply/TDP's Proposed Verdict Form for Claims Asserted by Dentsply/TDP at 3.  Moreover, when the Court suggested that it would instruct the jury that the Defendants could recover on their implied-covenant claim if they could show that "Guidance's actions injured Dentsply and/or Tulsa Dental," Court's Third Proposed Jury Instructions, Instruction No. 45, at at 49, filed October 1, 2009 (Doc. 397-1), the Defendants objected that "the Court may need to explain in this instruction that the injury to Dentsply/TDP may

---

[30] The Court omitted the statement informing the jury that the Defendants had brought an implied-covenant claim against Guidance because the Court dismissed that claim before the case went to the jury.

be nominal," Letter from Thomas Gulley to the Court at 2 (dated Oct. 2, 2009).  The Court accepted

that the Defendant's legal position was appropriate, and was prepared to allow both parties to

recover on their implied-covenant claims using similar jury instructions and a similar verdict form,

requiring only the elements to which the parties agreed.  See Court's First Proposed Verdict Form

No. __, at 4; Court's Second Proposed Verdict Form No. 19, at 4.[31]  The only reason these questions

were not given to the jury regarding the Defendants' implied-covenant claim is that the Court

dismissed the Defendants' implied-covenant claim before the case reached the jury.[32]  The

Defendants have failed to cite the Court to any place in the record in which they objected to

Guidance going forward on its implied-covenant claim because it could not prove actual damages.

---

[31] The Court's proposed verdict forms were works in progress and somewhat inconsistent at times.  The Court adopted, however, the Defendants' verdict form questions with respect to the Defendant's claims.  Compare Court's Second Proposed Verdict Form No. 19, at 4 ("Do you find that Dentsply and/or Tulsa Dental have suffered actual or nominal damages as a result of Guidance's conduct?"), with id. No. 4, at 2 ("Was Dentsply and/or Tusla Dental's breach of the implied covenant of good faith and fair dealing a cause of damages incurred by Guidance?").

[32] Based on the Court's prior explanation, it rejects the Defendants' argument that it "could not have adopted Dentsply/TDP's 'nominal damages' proposed language in the final jury instruction," and therefore that the invited-error doctrine does not apply.  Reply at 6.  The Court's proposed verdict forms demonstrate that the Defendants "secure[d] action in the first instance" because the Court adopted the Defendants' position regarding the requirements for recovery on an implied-covenant claim.  United States v. Villasenor, 121 Fed App'x 301, 303 n.1.  The purpose of the invited-error doctrine is to protect a district court from a party who advocates a certain position, persuades the court to adopt that position, and then argues later that position was error.  The doctrine requires that a party "induce[] action," United States v. Edward J., 224 F.3d at 1222; it does not otherwise require that the party be successful in its lawsuit.  See Aves By and Through Aves v. Shah, 997 F.2d at 766 (finding a defendant who lost under his proposed instruction invited error); Glasscock v. Wilson Constructors, Inc., 627 F.2d 1065, 1067 (10th Cir. 1980)(finding a defendant invited error when the court ruled against the defendant's motion for summary judgment, and "not to submit[ting] the issue of promissory estoppel to the jury" after the defendant argued "that promissory estoppel is 'entirely a matter of law'").  Indeed, if it required some measure of success by way of judgment or other ruling, it would be almost indistinguishable from the doctrine of judicial estoppel.  Moreover, if it required the party to be successful in the lawsuit, the successful party would be unlikely to raise error.

The Defendants have thus invited this alleged error, and the Court will not review it.  See United

States v. Cruz-Rodriguez, 570 F.3d at 1183; United States v. Zubia-Torres, 550 F.3d at 1205;

Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d at 1072; United States

v. Edward J., 224 F.3d at 1222; Aves By and Through Aves v. Shah, 997 F.2d at 766.

 The Court also finds that the Defendants cannot raise a rule 50(b) motion challenging the

sufficiency of the evidence on these two elements because they did not raise a rule 50(a) motion

challenging the sufficiency of the evidence as to these elements during trial.  See M.D. Mark, Inc.

v. Kerr-McGee Corp., 565 F.3d at 762; Marshall v. Columbia Lea Regional Hosp., 474 F.3d at 738;

United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d at 1229; First Sec. Bank of Beaver

v. Taylor, 964 F.2d at 1057.  Mr. Gulley orally moved for judgment as a matter of law on

Guidance's implied-covenant claim, but he did not assail the sufficiency of the evidence as to the

two elements that the Defendants challenge in this motion.  Rather, Mr. Gulley argued only that, as

a matter of law, Guidance's implied-covenant claim was duplicative of its breach-of-contract claim

and that the Court should dismiss the claim on that basis.  See Transcript of Trial at 2463:8-2464:16

(taken Oct. 1, 2009), filed March 9, 2010 (Doc. 514)("Oct. 1 Tr.")(Court, Gulley).  He made no

reference to the sufficiency of the evidence of any element or of the propriety of the implied-

covenant claim in any other respect.

 The only other citation to the record upon which the Defendants rely for preservation of these

issues is a statement by Ms. Avitia on October 7, 2009.  At that time, Ms. Avitia said:

> We also renew our objections in our October 7, 2009, letter to the extent that they
> were overruled, and we also object to any of the Lanham Act, UPA and breach of
> implied covenant of good faith and fair dealing instructions because we don't believe
> they have any evidence to support this.

Oct. 7 Tr. at 168:22-169:2 (Avitia).  Objections are intended to draw a court's attention to a specific

legal issue.  Ms. Avitia's vague and general objection did not bring to the Court's attention that the Defendants had a concern about the sufficiency of the evidence of any particular element of Guidance's implied-covenant claim.  See Century Martial Art Supply, Inc. v. Nat'l Ass'n of Prof'l Martial Artists, 129 Fed. Appx. 421, 426 (10th Cir. 2005)("By incanting a generic argument that there was insufficient evidence to support any of the claims, the defendants failed to provide guidance to the district court or the opposing counsel regarding how Century's evidence fell short as a matter of law."); Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999)("Because the purpose of the objection is to give the court an opportunity to correct any mistake before the jury enters deliberations, . . . an excessively vague or general objection to the propriety of a given instruction is insufficient to preserve the issue for appeal."); Soliz v. Chater, 82 F.3d 373, 375-76 (10th Cir. 1996)("Plaintiff's general objection that '[t]he Findings of the Secretary of Health and Human Services are not based on substantial evidence,' . . . is not sufficient to preserve the more specific issues plaintiff attempts to raise on appeal.").  The Court would have had no reason to know that Ms. Avitia believed Guidance was required to prove more than nominal damages to support its implied-covenant claim.  As such, the Defendants forfeited the right to challenge the sufficiency of Guidance's evidence or the propriety of allowing Guidance to recover on its implied-covenant claim based on a finding of nominal damages.

To the extent that this motion is a motion for new trial under rule 59, however, the Court believes that the Defendants have preserved some portion of the arguments they now make for review post-trial.  Specifically, the Court believes Mr. Gulley's arguments in favor of his motion for judgment as a matter of law preserved an objection to the legal issue of whether Guidance presented a "specific implied contractual obligation" that would support an implied-covenant claim.  See

-76-

Oct. 1 Tr. at 2463:25-2464:2 (Gulley)("The implied covenant cannot be anything other than duplicate of that [breach-of-contract] claim, because the implied covenant has to be a specific implied contractual obligation[.]").  The Court will thus review that one legal issue, but will not analyze the issues that the Defendants have waived and/or forfeited.

### C.   THE COURT CONTINUES TO BELIEVE GUIDANCE PRESENTED A SPECIFIC IMPLIED CONTRACTUAL OBLIGATION THAT SUPPORTED ITS IMPLIED-COVENANT CLAIM.

The Defendants' first argue that Guidance cannot establish a breach of the implied covenant because the theory upon which Guidance proceeded was unrelated to the "fruits of the agreement." Motion at 15-16.  They insist that the "fruits" of their agreement was receiving a timely supply of certain products that the Defendants produced.  Motion at 15.  They cite various explicit provisions of the contract to come to that conclusion.  See Motion at 15.  In response, Guidance accuses the Defendants of construing the phrase "fruits of the agreement" and "overarching purpose" too narrowly, and that the cases the Defendants cite do not support such a constrained reading.  While this issue is not the precise one the Defendants preserved, the issue presented now is sufficiently related to the specific-implied-contractual-obligation issue the Defendants successfully preserved, so the Court will address the issue that the motion raises.  The Court rejects the argument.

The Court considered this issue when ruling on the Defendants' motion for judgment as a matter of law as to Guidance's implied-covenant claim, and concluded that, while the contract itself was one for the production and provision of products from a manufacturer to a retailer, the agreement as a whole embodied a handful of other purposes, some of which are apparent from the language of the Supply Agreement.  Most importantly for the purposes of this motion is that the Supply Agreement was intended to obtain some measure of peace between Guidance and Dentsply.

The Defendants argue that this intention is not inferable from any provision in the Supply Agreement, but that position is undermined by the first page of that Agreement, which states:

> Dentsply and Guidance wish to settle the litigation captioned Dentsply International Inc. v. Guidance Endodontics, LLC, Civil Action No. 1:08-cv-155, which was filed in the U.S. District Court for the Middle District of Pennsylvania by Dentsply against Guidance asserting infringement of U.S. Patents 5,628,674 and 5,655,950, and (ii) all other claims that exist presently or that may arise between Dentsply and Guidance concerning application of the Dentsply Patents (as defined below) to the Guidance Products and any Products purchased hereunder by way of a Settlement Agreement, a copy of which is attached hereto as Exhibit A.

Supply Agreement ¶ D, at 1 (entitled "RECITALS").  See id. ¶ 1.1, at 1 (incorporating the recitals by reference into the Supply Agreement's provisions).  This passage suggests that it was an overarching purpose of the Supply Agreement to end litigation between Guidance and Dentsply. There was also evidence at trial to that effect, where Plaintiff's attorney from the prior litigation testified that the litigation "resulted in a Manufacturing and Supply Agreement."  Transcript of Trial. at 106:5-14 (taken Sept. 21, 2009), filed November 25, 2009 (Doc. 474)("Sept. 21 Tr.")(Ginsberg). If the Defendants' wrongful conduct satisfied the remaining elements of an implied-covenant claim, it likewise compromised this overarching purpose and forced Guidance back into costly litigation.[33] Another reasonably inferable "overarching purpose" or "fruit" of the Supply Agreement was that Guidance would be allowed to grow as a business.  The Defendants' willingness to supply products to Guidance at a price that would allow them to profit by resale to end-users suggests the existence of that overarching purpose.  The Defendants' attempt to use its insider position to prepare an advertising campaign describing the flaws in a product that Guidance had not yet put on the market

---

[33] Mr. Kelly also argued this "peace-making" purpose of the Supply Agreement to the jury in opening statements at trial.  See Transcript of Trial. at 106:5-14 (taken Sept. 21, 2009), filed November 25, 2009 (Doc. 474)("Sept. 21 Tr.")(Kelly).

-- and the Defendants' dissemination of that brochure to its sales force -- had the potential to frustrate the purpose of expanding Guidance's customer base.  The jury was provided evidence from which it could reasonably conclude that either of these two results was a "fruit" or "overarching purpose" of the Supply Agreement.

The Court notes that the Defendants assail Guidance for being unable to find case law in which the implied covenant's fruits-of-the-agreement requirement was construed as broadly as it was in this case, and Guidance accuses the Defendants of being unable to find a case in which it was construed to narrowly as the Defendants propose.  The Court agrees with both parties, finding that this area of Delaware law is not particularly clear.  The Court agrees that, as a general proposition, the implied-covenant is to be construed narrowly.  The Supreme Court of Delaware reiterated the principle earlier this year.  See Nemec v. Shrader, 991 A.2d 1120, 1125-26 (Del. 2010); see also Airborne Health, Inc. v. Squid Soap, LP, 984 A.2d 126, 145-46 (Del. Ch. 2009).  The Court believes, however, that it is more broad than the Defendants suggest.  If the "fruits" or "overarching purpose" of a contract is only what the contract expressly provides, a plaintiff could never bring an implied-covenant claim.  After all, a plaintiff generally cannot bring an implied-covenant claim based on conduct that the contract directly controls.  See Nemec v. Shrader, 991 A.2d at 1125-26 ("One generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement."); Dunlap v. State Farm Fire & Cas. Co., 878 A.2d at 442 ("Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain[.]"); Kuroda v. SPJS Holdings, L.L.C., 971 A.2d at 888 ("To the extent that Kuroda's implied covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").  The implied covenant,

-79-

therefore, is intended to cover conduct that the contract does not cover, but which frustrates the purpose of the contract.  See Dunlap v. State Farm Fire & Cas. Co., 878 A.2d at 442 ("This Court has recognized 'the occasional necessity' of implying contract terms to ensure the parties' 'reasonable expectations' are fulfilled.").  If the purpose of the contract is construed only as what the express terms of the contract control, there is no room left for the implied covenant, which applies only to conduct the express terms do not control.  The Court thus believes that, under Delaware law, the "overarching purpose" or "fruit of the agreement" need not be synonymous with what the contract expressly provides.[34]

Moreover, the parties expressly asked the Court to submit certain issues -- including whether the Defendants' "conduct prevented [Guidance] from receiving the fruits of the contract" -- to the jury for resolution.  The Court did so, and the jury had some evidence that could lead it to the conclusion to which it came.  The jury returned a verdict in favor of Guidance, apparently finding that the Defendants' use of its insider position to disparage Guidance's upcoming product kept Guidance from receiving the fruits of the contract.  The Court has found no reason to upset that conclusion.

The Defendants next assert that Guidance "failed to demonstrate a specific implied obligation arising from the express terms of the Agreement."  Motion at 17-20.  From the case of Anderson v. Wachovia Mortg. Corp., 497 F. Supp. 2d 572, 581 (D. Del. 2007), the Defendants distill

---

[34] The Court also notes that the Supreme Court of Delaware recently clarified that, when conducting the "fruits of the agreement" analysis, the correct question is whether the conduct of which the claimant complains "frustrat[ed] the fruits of the bargain that the asserting party [Guidance] reasonably expected."  Nemec v. Shrader, 991 A.2d at 1126.  The Court continues to believe that Guidance was reasonable in expecting that the Defendants would not take advantage of their position in the way which Guidance complains, and the jury found that they did.

the principle that it must be "clear <u>from a specific written term</u> in the contract that the parties would have agreed to prohibit such actions before entering into the agreement." Motion at 17. <u>Anderson v. Wachovia Mortg. Corp.</u>, however, does not stand for such a proposition. As with all of the cases discussing the implied covenant under Delaware law that the Court has reviewed, <u>Anderson v. Wachovia Mortg. Corp.</u> requires only that the implied obligation be clear from the writing as a whole. <u>See</u> 497 F. Supp. 2d at 581 ("Only when it is clear <u>from the writing</u> that the contracting parties would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter may a party invoke the covenant's protections.")(quoting <u>Wal-Mart Stores, Inc. v. AIG Life Ins. Co.</u>, 901 A.2d 106, 116 (Del. 2006)). The Defendants stretch this non-binding interpretation of Delaware law too far by asserting that it required Guidance to "tie the alleged non-disparagement obligation to an[] express term in the agreement." The Court concluded, from a review of the Supply Agreement as a whole, that "a reasonable jury could conclude, on the record before the Court, that a promise that the Defendants would not exploit its position as Guidance's sole product manufacturer is fairly inferable from the Supply Agreement." <u>Guidance Endodontics, LLC v. Dentsply Int'l, Inc.</u>, No. CIV 08-1101 JB/RLP, 2010 WL 1631498, at *9 (D.N.M. Mar. 26, 2010).[35] The Court continues to believe this conclusion is correct.

---

[35] The Court also rejects the Defendants' argument that "[t]here was no evidence at trial that Dentsply/TDP agreed or even considered a term in the contract that would prevent them from competing against Guidance or testing Guidance's products." Motion at 19. The purpose of the implied covenant is to make up for holes in agreements that the parties did not contemplate. <u>See</u> <u>Dunlap v. State Farm Fire and Cas. Co.</u>, 878 A.2d at 442 ("Only when it is clear from the writing that the contracting parties <u>would have agreed</u> to proscribe the act later complained of <u>had they thought to negotiate</u> with respect to that matter may a party invoke the covenant's protections.")(citations and alterations omitted, emphasis added). If a party had to present evidence that the other party agreed to the term sought to be inferred, it would decrease that party's justification for omitting the term from the written agreement.

The cases that the Defendants cite again do not support vacating the verdict.  The majority

of them discuss whether the plaintiff properly alleged an implied-covenant claim.  See Motion at 17-

20 (citing Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 901 A.2d 106, 110 (Del. Supr.

2006)(reviewing dismissal for failure to state a claim); Anderson v. Wachovia Mortg. Corp., 497

F. Supp. 2d at 581-82 (ruling on a 12(b)(6) motion to dismiss); Kuroda v. SPJS Holdings, L.L.C.,

971 A.2d at 890-91 (ruling on the sufficiency of the plaintiff's pleadings)).[36]  The Defendants are

not assailing the Complaint's allegations, but rather argue that Guidance failed "to establish" an

implied-covenant claim.  In a letter by Ryan Flynn, one of Guidance's counsel, Guidance raised

several proposed specific implied contractual obligations that the Supply Agreement might have

placed upon the Defendants.  See Letter from Ryan Flynn to the Court, filed October 3, 2009

(Doc. 401).  One of those was the implied obligation not to use its status as Guidance's exclusive

manufacturer of endodontic products to secretly test Guidance's product side-by-side with the

Defendants' product and develop a disparaging brochure, and then to leak that brochure to the

Defendants' sales force.  See Letter from Ryan Flynn to the Court at 3-4.

   The Court agreed that this conduct, if proven, could constitute an arbitrary or unreasonable

act, which could have prevented Guidance from receiving some of the fruits of its agreement.  The

Court stated:

> Guidance's fourth alleged basis appears to present a breach-of-implied-covenant
> claim.  Guidance entered a Supply Agreement by which the Defendants would
> produce Guidance products based on specifications that Goodis would provide to

---

[36] The Defendants cite other cases mainly for the proposition that implied-covenant claims rarely succeed and that the implied-covenant should be narrowly construed.  See Motion at 17-20 (citing Cincinnati SMSA Ltd. P'ship v. Bell Cellular Sys. Co., 708 A.2d 989, 992 (Del. 1998); Dunlap v. State Farm Fire & Cas. Co., 878 A.2d at 442; Rizzitielo v. McDonald's Corp., 868 A.2d 825, 831 (Del. 2005); E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 442).

them. The parties were in a peculiar position, because Guidance was dependent upon the Defendants to supply the products but was also one of the Defendants' competitors. Evidence was produced at trial that, in addition to manufacturing Guidance products, the Defendants took advantage of their position as the manufacturer to take samples of the Guidance products and perform side-by-side tests, and then to develop a brochure underscoring the superiority of the Defendants' products by using those test results and commentary. The evidence also disclosed that the tests were performed, the first draft of the brochure was drafted, and that brochure was disseminated to some of the Defendants' sales force before the Defendants delivered the products to Guidance. That the parties were competitors made it reasonable to conclude that, if the issue had been raised, Guidance would have sought a paragraph requiring the Defendants not take advantage of their unique and powerful position as the manufacturers of Guidance's products to develop comparative marketing materials before supplying the goods to Guidance. The Court finds that a reasonable jury could conclude, on the record before the Court, that a promise that the Defendants would not exploit its position as Guidance's sole product manufacturer is fairly inferable from the Supply Agreement. The Court will deny the Defendants' motion for directed verdict as to Guidance's breach-of-implied-covenant claim.

Memorandum Opinion and Order at 9, filed March 26, 2010 (Doc. 533). See Motion at 17-18 (asserting that it must be clear from the express terms of the contract that the parties would have agreed to the term if the issue had been raised). The Court has reviewed the authorities that the parties have cited, and the Defendants have given the Court no sound reason to find that the Court's prior conclusion was erroneous.

## VI.   THE DEFENDANTS WAIVED OR FORFEITED THEIR ARGUMENTS REGARDING INSTRUCTION NO. 37.

Finally, the Defendants assert that the Court's Final Jury Instruction No. 37 was erroneous in several respects. Guidance argues that the Defendants failed to preserve any of these issues by proper objection at trial and that all of the arguments lack merit. The Court agrees that these issues were not properly preserved and that one of them was affirmatively waived. Moreover, the Court finds that, even if the issue for which the Defendants have the most colorable argument of preservation were preserved, it lacks a sound basis in the law and in the facts of this case.

## A.   THE DEFENDANTS FORFEITED THEIR ARGUMENTS REGARDING INSTRUCTION NO. 37.

The issues that the Defendants raise are alleged errors in the jury instructions, specifically Instruction No. 37.  Unlike the prior issues, for which it was unclear which Federal Rule of Civil Procedure applied, rule 51 governs these issues.  Under rule 51(d)(1)(A), "a party may assign as error an error in an instruction actually given, if that party properly objected."  Rule 51 also explains how one makes a proper objection.  "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. P. 51(c)(1).  In post-trial motions and on appeal, therefore, claims of error are forfeited if there was not a proper objection made at trial.  See Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d at 1179; Medlock v. Ortho Biotech, 164 F.3d at 553.

The Court concludes that the Defendants have failed to make an objection to the jury instructions on any of the bases that the Defendants now urge as error.  In summary, the Defendants now allege it was error to instruct the jury that it could impose punitive damages for a breach of contract accompanied by fraudulent conduct where Guidance did not plead or prove common-law fraud.  The Defendants assert that it was error to instruct the jury that it could award Guidance punitive damages if it found that the Defendants violated the NMUPA "because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement."  Court's Final Jury Instructions (Given), Instruction No. 37, at 37.  They argue that the Court erred in instructing the jury that it could award punitive damages for bad-faith breach of the implied covenant of good faith and fair dealing.  They argue that the Court erred because it "instructed the jury that it 'must' determine whether Dentsply and/or Tulsa Dental are liable to Guidance for punitive damages if it decides to award 'compensatory' damages on *either* Guidance's

-84-

breach of contract claim 'or' its breach of the implied covenant claim." Motion at 25. They contend that this instruction was error because the jury could not possibly find that Guidance incurred compensatory damages on its implied-covenant claim; rather, it was limited to nominal damages. Finally, the Defendants generally assert that Instruction 37, as a whole, was insufficient to properly instruct the jury.

First, as the Court discussed at length above in Part IV, the Defendants' third objection -- that the Court erred by instructing the jury that it could award punitive damages based on bad-faith -- has been waived under the invited-error doctrine. The Court will therefore not review this alleged error under any standard.

Second, the Defendants failed to preserve their remaining arguments. The Court has reviewed the portions of the record that the Defendants cited in their briefs and those portions of the record that Mr. Cruz cited for the Court during the hearing. After reviewing all of that material, and scouring the Court's own memory, the Court notes only one of these issues was arguably preserved for the Court's review, but finds even that issue fails for a lack of specificity.

First, the Defendants contend they preserved these issues by an objection on October 5, 2009. For this argument, the Defendants cite a snippet of a statement by the Court, in which it said:

> Now, also on the punitive damage that the plaintiffs claim, the way I understand the <u>DuPont</u> case is that . . . for a breach of implied covenant of good faith or for breach of contract there has to be an independent tort that could support <u>the</u> punitive-damage claim. Well, you can't get punitive damages for a UPA claim or for a Lanham Act claim, and so I don't see that claim, so I have taken out the punitive-damage claim for the plaintiffs, because I don't see an independent tort that exists. You can get it for breach of contract in Delaware if there is an independent tort that would support <u>a</u> punitive damages, but there not being one, I don't see the punitive-damage claim going to the jury on the plaintiffs' claims.

Oct. 5 Tr. at 3060:23-3061:10(Court)(emphasis added). In response to this oral ruling, Guidance

filed a letter in which it argued that its NMUPA claim was a statutory tort and that the treble

damages to which it is entitled if it can prove that the NMUPA violation was wilful are a form of

punitive damages.  Finding that argument persuasive, the Court allowed Guidance to continue to

seek punitive damages.  The Court's statement, however, did not alert the Court to the issues that

the Defendants now assert.

Second, the Defendants point to a snippet of a transcript from a bench conference held

October 7, 2009.  At that time, Ms. Avitia objected to Instruction No. 37 in the Court's Seventh

Proposed Jury Instructions.  Specifically, she said:

> On instruction 37, we object . . . [o]n the fourth paragraph . . . [o]f 37. -- it states
> under B that Dentsply's and/or Tulsa Dental's breach of contract was willful,
> malicious, wanton or with the intent to harm Guidance.  I think we've already been
> over this, that it has to have been an independent tort or fraud, and so that, again, the
> suggestion that it need only be willful we dispute.

Oct. 7 Tr. at 143:20-144:5 (Avitia).  She continued to press that "Delaware law [does not] allow[]

[punitive damages] simply because it's a willful breach."  Oct. 7 Tr. at 144:9-13 (Avitia).  She was

objecting to the fourth paragraph of the punitive-damages instruction, which then read:

> Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's
> breach of contract if you find one of the following: (a) that Dentsply's and/or Tulsa
> Dental's breach of the contract was accompanied by fraudulent conduct; (b) that
> Dentsply's and/or Tulsa Dental's breach of contract was willful, malicious, wanton,
> or if Dentsply and/or Tulsa Dental breached the contract with the intent to harm
> Guidance; or (c) that Dentsply's and/or Tulsa Dental's breach of contract also
> constituted a violation of the Lanham Act; or (d) that Dentsply's and/or Tulsa
> Dental's breach of contract also constituted a violation of the New Mexico Unfair
> Practices Act because they failed to deliver the quality or quantity of goods or
> services required by the Manufacturing and Supply Agreement.

Court's Seventh Proposed Jury Instructions, Instruction No. 37, at 47.  The Court ultimately

sustained Ms. Avitia's objection, and removed subsections (b) and (c) from Instruction No. 37.

Paragraph 4 of Instruction No. 37 stated:

> Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's breach of contract if you find one of the following: (a) that Dentsply's and/or Tulsa Dental's breach of the contract was accompanied by fraudulent conduct; (b) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of the New Mexico Unfair Practices Act because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement.

Court's Final Jury Instructions (Given), Instruction No. 37, at 37.  To the Court's knowledge, the Defendants raised no further objection once the Court sustained this objection and granted the Defendants the relief they requested.

Finally, the Defendants assert that they preserved these issues by two letters filed on the docket on October 6, 2009.  The first letter stated, in relevant part:

> This [punitive-damages] instruction should be deleted. . . . Under Delaware law, Guidance cannot seek punitive damages unless it also proves a fraud or tort.  E.g. E.I. DuPont v. Pressman, 679 A.2d 436 (Del. 1996)("Unless the bad faith rises to the level of an independent tort, which itself would support an award of punitive damages, mere bad faith on the part of a party to a contract will not give rise to punitive damages.")(quotation omitted).  Guidance has no remaining tort claims, has never pleaded a fraud claim, and cannot recover punitive damages under its two remaining statutory claims.  This instruction should, therefore, be deleted . . . .

Letter from Thomas Gulley to the Court at 4 (dated Oct. 4, 2009).  The second letter stated, in relevant part:

> This letter is in response to counsel for Guidance's letter dated October 5, 2009 (Doc. 409).  Dentsply and Tulsa Dental's objection to a punitive damages instruction for Guidance is quite simple. . . .  Pressman, 679 A.2d 436, 445 (Del. 1996), states that punitive damages are not available for a breach of contract claim unless the bad faith involved in the breach rises to the level of an independent tort which would support punitive damages.

Letter from Thomas Gulley to the Court at 1 (dated Oct. 6, 2009).  These two letters suggest that the Defendants take issue with Guidance's entitlement to punitive damages based on a breach of contract and a NMUPA violation.

In sum, the sole issue for which the Defendants have a colorable argument that they properly

preserved their objection is their objection to allowing punitive damages for a breach accompanied by fraudulent conduct. Mr. Gulley made a related argument in his letters. Mr. Gulley, however, did not specifically advance the argument that fraudulent conduct short of a tort cannot support punitive damages. Instead, he argued that Guidance had to prove "a fraud or tort," and that "Guidance had no remaining tort claims." Mr. Gulley's objection appears to address whether the violation of the NMUPA is a tort and not whether fraudulent conduct short of an independent tort can support punitive damages. Rule 51 of the Federal Rules of Civil Procedure instructs that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "To preserve the objection, a party must proffer the same grounds raised on appeal, with sufficient clarity to render the grounds 'obvious, plain, or unmistakable.'" Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d at 1179 (10th Cir. 2005)(quoting Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 660 (10th Cir. 1991))(internal citation omitted). Consequently, the Court finds that this statement did not fully inform the Court that Mr. Gulley was alleging that it was error to instruct the jury that it could award punitive damages for breach of contract accompanied by fraudulent conduct.

### B.   FRAUDULENT CONDUCT CAN SUPPORT PUNITIVE DAMAGES.

Even if the Defendants had preserved an objection to allowing the jury to award punitive damages for a breach of contract accompanied by fraudulent conduct, the Court committed no error -- plain or otherwise. First, the Defendants allege that paragraph four of Instruction No. 37 was erroneous, because it allowed the jury to award punitive damages for a breach of contract accompanied by fraudulent conduct. See Motion at 23-24. That paragraph states, in relevant part: "Guidance may only recover punitive damages from Dentsply's and/or Tulsa Dental's breach of

contract if you find one of the following: (a) that Dentsply's and/or Tulsa Dental's breach of the contract was accompanied by fraudulent conduct; . . . ." Court's Final Jury Instruction (Given), Instruction No. 37, at 37. Defendants argue that, for a plaintiff to recover punitive damages for a breach accompanied by fraudulent conduct, the plaintiff must plead and prove common-law fraud. See id. In other words, the Defendants equate the phrase "fraudulent conduct" with the word "fraud," and require that the fraud not just occur, but be properly pleaded and proven. Id.

The Court borrowed the language of this instruction, however, word-for-word from E.I. DuPont de Nemours & Co. v. Pressman, which states that one exception to the prohibition on punitive damages for breach-of-contract claims is "breach accompanied by fraudulent conduct." 679 A.2d at 446 (citing Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57, 63 (2d Cir. 1985)). Based on this Supreme Court of Delaware case, and the Defendants' citation to it, the Court worded Instruction No. 37 as it did. In E.I. DuPont de Nemours & Co. v. Pressman, the Supreme Court of Delaware attributed the expression "breach accompanied by fraudulent conduct" to a United States Court of Appeals for the Second Circuit opinion by Judge Friendly, who in turn relied on two authorities that support the Court's reading of "fraudulent conduct" and Instruction No. 37. Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d at 63 (citing E. Allan Farnsworth, Farnsworth on Contracts § 12.8 (1982)("Other courts impose [punitive damages] when the breach is accompanied by conduct that is 'fraudulent,' even in the absence of an independent tort that would justify punitive damages.")(footnote omitted); Timothy J. Sullivan, Punitive Damages in the Law of Contract, 61 Minn. L. Rev. 207, 229-36 (1977)("Courts understandably may deny a non-compensatory [punitive] award when the defendant is guilty of nothing more than a bare failure to perform the contract. Many cases, however, . . . fall into an uncertain twilight zone between 'mere' breach and obvious

tort.")).  Consequently, the Court does not believe the instruction was erroneous.

In support of this argument in their Motion, the Defendants cite only Tenth Circuit and New Mexico cases, see Motion at 23-24 (citing Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146 (10th Cir. 2008); Coleman v. B-G Maintenance Mgmt. of Colo., Inc., 108 F.3d 1199 (10th Cir. 1997); Roesler v. TIG Ins. Co., No. 05-7055, 2007 WL 2981366 (10th Cir. Oct. 12, 2007); Hardman v. AutoZone, Inc., No. 05-3447, 2007 WL 182535 (10th Cir. Jan. 27, 2007); Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 811 P.2d 1308 (1991); McLelland v. United Wisconsin Life Ins. Co., 127 N.M. 303, 980 P.2d 86, (Ct. App. 1999); Diversey Corp. v. Chem-Source Corp., 125 N.M. 748, 965 P.2d 332 (Ct. App. 1998)), notwithstanding that they have agreed that Delaware substantive law governs the circumstances under which the jury was allowed to award breach-of-contract punitive damages.  The Court is unpersuaded by these authorities.

In their reply brief, the Defendants cite some authority applying Delaware law.  They rely largely on a footnote in E.I. DuPont de Nemours & Co. v. Pressman for the proposition that the plaintiff must plead and prove fraud to recover punitive damages for a breach of contract accompanied by fraudulent conduct.  The Court believes the Defendants are again stretching the language of E.I. DuPont de Nemours & Co. v. Pressman beyond its intended meaning.  The footnote -- footnote 17 -- says, in its entirety:

> We need not decide the availability of punitive damages in an action sounding in tort based on these facts.  No claim based on a tort theory for malicious and fraudulent termination (assuming *arguendo* that there is such a tort) has been pleaded.  Pressman pleaded a tort claim for defamation against Pensak, but the jury found against Pressman on this claim.

In this footnote, the Supreme Court of Delaware declines to address whether punitive damages are available for fraud claims.  The Defendants, however, argue that this language shows that, for a

plaintiff to get punitive damages for a breach of contract accompanied by fraudulent conduct, it must plead and prove an independent claim of fraud arising out of the same facts, which would itself justify imposition of the jury's award of punitive damages.  The language of footnote 17 does not clearly support that conclusion.  The footnote states only that the Supreme Court did not need to discuss the law of punitive damages in tort actions.  The rules for awarding punitive damages in tort actions are different than the rules for awarding them in contract actions, as E.I. DuPont de Nemours & Co. v. Pressman demonstrates, and the Delaware Supreme Court was clarifying that it was discussing the latter and not the former.  The second sentence in footnote 17, that "[n]o claim based on a tort theory for malicious and fraudulent termination . . . has been pleaded," simply explains the first.  The Supreme Court of Delaware was explaining that it does not need to decide when punitive damages are available as a remedy for a tort claim because no tort claim reached the jury.  Instead, it devoted the opinion to the issue that is at the heart of this case: when are punitive damages an appropriate remedy for a breach of contract?

The footnote explicitly states that the Supreme Court "need not decide the availability of punitive damages in an action sounding in tort based on these facts."  E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 445 n.17.  Yet the Defendants ask the Court to assume that the Supreme Court of Delaware meant to say that it "need not decide the availability of punitive damages in an action sounding in contract based on conduct that amounts independently to a tort" or that it "need not decide the availability of punitive damages in an action sounding in contract based on a breach accompanied by fraudulent conduct."  Again, the Court is uncomfortable assuming, for almost any reason, that the highest court of a state said something that it did not mean. The footnote explained why the Supreme Court of Delaware was not discussing the availability of

punitive damages in an action sounding in tort, and the answer was that E.I. DuPont de Nemours & Co. v. Pressman contained no action sounding in tort.  The Court will instead give the Supreme Court of Delaware's language its plain meaning and find that footnote 17 has no bearing on situations in which a plaintiff may recover punitive damages for a breach of contract under Delaware law; rather, the footnote applies to "an action sounding in tort." E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 445 n.17.  In this case, Guidance alleged conduct that a jury could reasonably construe as fraudulent -- that Defendants' sales staff was spreading rumors that Guidance was going out of business or that Guidance could not supply products -- and presented evidence of that conduct.  Based upon those allegations and that evidence, the Court believes its Instruction was warranted.  In sum, the Court finds no error -- and no plain error -- in instructing the jury that it could award punitive damages based on a breach of contract accompanied by fraudulent conduct, as Delaware law appears to permit.  See E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d at 446.

The Defendants have cited two cases -- one from the Delaware Superior Court and one from a District of Delaware Bankruptcy Court.  See Reply at 20-21 (citing Segovia v. Equities First Holdings, LLC, C.A. No. 06C-09-149-JRS, 2008 WL 2251218, at *24 (Del. Super. May 30, 2008), and In re Grown-Simplimatic, Inc., 299 B.R. 319, 327 (Bankr. D. Del. 2003)).  Neither of these cases persuade the Court that its reading of E.I. DuPont de Nemours & Co. v. Pressman is in error.

The District of Delaware Bankruptcy Court's discussion of punitive damages in In re Grown-Simplimatic, Inc. stated, in its entirety:

Punitive Damages (Count VIII)

Although Bank asserts Adcor failed to plead an unlawful act or bad faith conduct on the Bank's part, to the extent Adcor is able to meet its burden regarding

the two negligence counts, recovery of punitive damages may be possible as to Bank.

> As to Debtors, the claim must be dismissed because punitive damages are not normally allowed in a breach of contract action. Because all other tort related claims have been dismissed and because both Adcor and Debtors acknowledge the [Asset Purchase Agreement's] existence, Adcor's punitive damages claim against Debtors will be dismissed.

299 B.R. at 327. In this section of its opinion, the Bankruptcy Court cited no authority, and offers the Court no insight into reading E.I. DuPont de Nemours & Co. v. Pressman, which is neither cited nor discussed in the opinion. Nowhere in the opinion does the Bankruptcy Court address the meaning of the term "fraudulent conduct." Furthermore, the Bankruptcy Court rejected Adcor's fraud claim as a matter of law. The claim was founded entirely on the allegation "that Debtors knew or should have known Mr. Gomez copied the intellectual property." 299 B.R. at 323. The Bankruptcy Court rejected this argument.

> Adcor failed to provide specific facts supporting its conclusory statement that Debtors knew or should have known that Mr. Gomez was copying the intellectual property, either for his employer's or for his own benefit. Adcor's only facts demonstrate that in conversations with Mr. Gomez, Mr. Gomez admitted to copying the intellectual property. Adcor has not plead facts sufficient to support the conclusion that Mr. Gomez's actions were encouraged by Debtors or that Debtors had any independent knowledge of Mr. Gomez's actions.

299 B.R. at 323. Consequently, the Bankruptcy Court did not address a situation where the plaintiff presented evidence of fraudulent conduct short of a independent tort of fraud. Because the case is factually distinguishable, and because the Bankruptcy Court offers no analysis on interpreting the meaning of "fraudulent conduct," the Court finds the case unenlightening on the issues before this Court.

The Delaware Superior Court in Segovia v. Equities First Holdings, LLC cited E.I. DuPont de Nemours & Co. v. Pressman in its discussion of punitive damages. The relevant section stated:

Because Plaintiffs cannot survive summary judgment on their fraud claim, and have presented no evidence of malicious conversion, they cannot sustain their claim for punitive damages or attorney's fees. . . .  As to punitive damages, the Court already has determined that Plaintiffs cannot prevail on their fraud claim as a matter of law. On the breach of contract claim, the law is settled that punitive damages are not available unless the breach also amounts to a tort.  E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436, 445 (Del. 1996).  The result is the same even if the defendant intentionally breached the contract.  Id.  ("[N]o matter how reprehensible the breach, damages that are punitive, in the sense of being in excess of those required to compensate the injured party for lost expectation, are not ordinarily awarded for breach of contract.")(citations and internal quotations omitted).  Punitive damages are only awarded in situations of "willful and outrageous" conduct that flows from "evil motive or reckless indifference to the rights of others."  Jardel Co. v. Hughes, 523 A.2d 518, 529 (Del. 1987).  While EFH did breach the loan documents and wrongfully converted the pledged stock, there is no evidence that would allow a reasonable fact finder to conclude that this conduct resulted from an "evil motive or reckless indifference to the rights of others."  Accordingly, Plaintiffs may not recover punitive damages.

2008 WL 2251218, at *24.  Unlike this case, the Delaware Superior Court found that the plaintiffs' fraud claim failed as a matter of law.  See 2008 WL 2251218, at *1 ("[The plaintiffs] also cannot prevail on their fraud claim because the undisputed facts of record do not demonstrate a knowingly false representation, concealment of facts in the face of a duty to speak, or reliance by the Plaintiffs.").  Nothing in the Delaware Superior Court's discussion suggests that the plaintiffs had established fraudulent conduct on the defendant's part that fell short of establishing a claim for fraud, and the Delaware Superior Court did not discuss the meaning of the term "fraudulent conduct."  Consequently, the Court finds that Segovia v. Equities First Holdings, LLC is factually distinguishable and that Delaware Superior Court does not address the relevant question of law: whether, under Delaware law, courts may "impose [punitive damages] when the breach is accompanied by conduct that is 'fraudulent,' even in the absence of an independent tort that would justify punitive damages."  Farnsworth, supra, § 12.8.  Because the references underlying the Supreme Court of Delaware's reasoning in E.I. DuPont de Nemours & Co. v. Pressman support this

-94-

Court's interpretation of the meaning of "fraudulent conduct," and the Defendants have produced no authority that causes the Court to rethink its analysis, the Court is not convinced that it erred based on these opinions. Thus, even if the Defendants had preserved this objection, the Court finds it committed no error, plain or otherwise.

### C.    THE DEFENDANTS' OTHER FORFEITED ISSUES ARE NOT PLAIN ERRORS.

The remainder of the Defendants' arguments demonstrate no error at all. Defendants argue that paragraph four was erroneous because it would allow the Defendants to find NMUPA liability based on a simple breach of contract. See Motion at 24. The instruction stated that the jury could award punitive damages if it found "(b) that Dentsply's and/or Tulsa Dental's breach of contract also constituted a violation of [the NMUPA] because they failed to deliver the quality or quantity of goods or services required by the Manufacturing and Supply Agreement." Court's Final Jury Instruction (Given), Instruction No. 37, at 37. They suggest that this language would have informed the jury that it could find NMUPA liability based solely on the Defendants' failure to deliver the quality or quantity of goods or services required by the Supply Agreement. The Court sees no error. For the jury to conclude, based on this instruction, that it could find NMUPA liability for failure to supply the quality or quantity of goods or services that the Supply Agreement requires, it would have to wholly ignore Instruction 31, which set forth the four core elements of an NMUPA claim. The Court has been shown no authority for the proposition that it may, much less must, assume that the jury failed to follow some instructions when assessing whether another instruction was erroneous. On the contrary, the Court "generally assumes jurors follow jury instructions." United States v. Black, 369 F.3d 1171, 1178 (10th Cir.2004). The instructions, as a whole, properly instructed the jury as to the elements of an NMUPA claim and under what circumstances the NMUPA claim could

authorize punitive damages for the breach-of-contract claim.

The Defendants next argue that paragraph three was erroneous because it "instructed the jury that it 'must' determine whether Dentsply and/or Tulsa Dental are liable to Guidance for punitive damages if it decides to award 'compensatory' damages on *either* Guidance's breach of contract claim 'or' its breach of the implied covenant claim."  Motion at 25 (emphasis in original).  That instruction stated:

> If you decide to award compensatory damages to Guidance on its breach of contract claims against Dentsply and/or Tulsa Dental, or on its claim that Dentsply and/or Tulsa Dental breached the implied covenant of good faith and fair dealing, you must determine whether Dentsply and/or Tulsa Dental are liable to Guidance for punitive damages.

Court's Final Jury Instruction (Given), Instruction No. 37, at 37.  They argue this instruction was erroneous "because Guidance was not permitted to seek any compensatory damages related to its implied covenant claim."  Motion at 25.  Again, the Court does not believe this issue was preserved. Moreover, the Court does not see this as an error that would warrant reversal.  The Court did not permit Guidance to recover compensatory damages on its implied-covenant claim; the jury, therefore, if it were following the Court's instructions -- which the Court believes it must assume, absent proof to the contrary -- would only have awarded punitive damages if it decided to award Guidance compensatory damages on its breach-of-contract claim.  The jury awarded compensatory damages on Guidance's breach-of-contract claim, and it awarded punitive damages.  It appears that the jury followed the instructions correctly.  That the Court instructed the jury that, if it found something that it did not find, it could take some action, does not make the instructions erroneous or misleading. The jury, if following its instructions, will not find that particular predicate, as the Court assumes that the jury did not find actual, non-nominal, compensatory damages for Guidance's

implied-covenant claim.  The Court finds no error.

The Defendants' last argument as to Instruction No. 37 is that the instruction, as a whole, failed to adequately guide the jury in its deliberations.  <u>See</u> Motion at 26.  As the Tenth Circuit has stated, however, "[w]e do not require jury instructions to be perfect.  Rather, we look to 'whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues.'" <u>Zierke v. Agri-Systems</u>, 992 F.2d 276 (10th Cir. 1993).  The Defendants have failed to point to any substantial errors in the jury instructions that would have misled the jury.  Rather, the jury properly filled out an elaborate nine-page verdict form consistently with the instructions that the Court gave them.  The jury's decision to find in favor of Guidance on some claims, and in favor of the Defendants on others, tells the Court that the jury was not merely eschewing the instructions and picking a winner and a loser.  Rather, the jury's responses to the verdict form questions suggest that the jury took its time and considered each instruction and interrogatory that the Court gave it.

The Defendants point to the jury's $200,000.00 nominal-damages award and suggest that this amount is evidence that the jury was confused.  The Court thinks it is likely that Mr. Bisceglie's closing argument, where he explained to them the rather large net worth of Dentsply, persuaded the jury.  The jury's instructions on punitive damages did not limit them to one dollar; rather, the instructions said:

> If you find that Guidance committed a breach of contract, and/or if you find that Guidance and/or Goodis committed unfair competition and/or misappropriation of trade value, you may award Dentsply and Tulsa Dental nominal damages, <u>such as one dollar</u>.  Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of Dentsply and Tulsa Dental.

Court's Final Jury Instructions (Given), Instruction No. 60, at 69 (emphasis added).  It is possible that the jury was frustrated with the Defendants' conduct and desired to award more than one dollar

for some of the claims upon which they were not permitted to award compensatory damages. Nevertheless, even if the nominal-damages instruction confused the jury, that possibility does not suggest to the Court that it was confused by the instructions as a whole.  In either event, the Court rejects all of the Defendants' arguments that Instruction No. 37 was erroneous.

In short, the Court rejects the Defendants' arguments that it erred in giving Instruction No. 37 to the jury.  Because the Court has rejected each of the Defendants' arguments in favor of vacating the jury's punitive-damages and implied-covenant verdicts, the Court denies the Defendants' motion.

**IT IS ORDERED** that Dentsply/TDP's Motion to Set Aside the Punitive Damages Award and the Breach of Implied Covenant Verdict and for Judgment Notwithstanding the Verdict is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
   Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, District of Columbia

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --


Thomas P. Gulley
Rebecca Avitia
Lewis and Roca, LLP
Albuquerque, New Mexico

   *Attorneys for the Defendants and Counterplaintiffs*