## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

      Plaintiff,

vs.                                                                No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

      Defendants,

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

      Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

      Counter Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Dentsply/TDP's Motion for a New Trial Based

on the Punitive Damages Limited Instruction, filed April 28, 2010 (Doc. 547)("Motion"). The Court

held a hearing on September 1 and 2, 2010. The primary issues are (i) whether the limiting

instruction on punitive damages that the Court gave in this case was a correct statement of the law;

and (ii) in the event that the limiting instruction is determined to be legally erroneous, whether the

jury might have based its verdict on the instruction such that judgment must be reversed.  Because the Court finds the instruction at issue to be a correct statement of the law, and because the instruction did not prejudice the Defendants, the Court finds no basis upon which to grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  The Court will therefore deny the Defendants' Motion.

## FACTUAL BACKGROUND

This lawsuit arises out of a business dispute between Plaintiff and Counter-Defendant Guidance Endodontics, LLC ("Guidance"), a small endodontic equipment company that Dr. Charles Goodis owns, and the much larger Defendants and Counter-Plaintiffs Dentsply International, Inc. ("Dentsply") and Tulsa Dental Products, LLC ("TDP")(collectively, "the Defendants"), who are both Guidance's rivals and its suppliers.  The Defendants are manufacturers and suppliers of certain endodontic instruments -- including endodontic files, obturators, and ovens -- that compete with Guidance's products.  Guidance and the Defendants were parties to a Manufacturing and Supply Agreement, which arose as a settlement of a separate intellectual-property dispute.  The Supply Agreement required the Defendants to supply Guidance with endodontic instruments, which Dr. Goodis designed and which Guidance planned to sell to end-users.

Guidance began selling its endodontic products at extremely low prices compared to the prices that the Defendants charged for the same or similar products.  Allegedly as a dirty business tactic to keep Guidance from underselling them in the marketplace, the Defendants stopped supplying endodontic obturators to Guidance.  In addition to ceasing the supply of obturators, the Defendants refused to manufacture a new endodontic file that Goodis designed -- the V2 file -- which Guidance intended to sell.  Finally, the Defendants, who dominate the endodontics instrument

market, initiated an organized marketing campaign to drive Guidance out of business.  Specifically,

Defendants' sales staff falsely represented to actual and potential Guidance customers that Guidance

was no longer able to supply endodontic files.  Based on these three categories of conduct, Guidance

filed this suit.

## PROCEDURAL BACKGROUND

Before the trial, on July 31, 2009, the Defendants filed a Motion in Limine (Doc. 224)

seeking to exclude certain evidence of the Defendants' prior litigation with competitors.  At a

hearing on the Motion in Limine, held September 2, 2009, the Court indicated its inclination was

to deny the bulk of the Motion in Limine, holding that it was "inclined not to preclude [the evidence

of prior litigation] pretrial."  Transcript of Motions Hearing at 84:5-15 (held September 2, 2009),

filed June 19, 2010 (Doc. 600)(noting the Court's belief that the evidence of the Defendants' prior

litigation was being offered not to prove that the Defendants' conduct in this case was in conformity

with their prior bad acts but instead was "being offered for other purposes, such as intent").  In the

Court's written opinion on the matter, the Court found that "[the Defendants'] prior litigation and

apparent efforts to drive companies out of business has some tendency to prove that the Defendants

are engaging in similar anti-competitive conduct this time."  Memo. Op. and Order at 9, filed March

18, 2010 (Doc. 523)("March 18, 2010 MOO").  The Court also found that the danger of unfair

prejudice or confusion did not substantially outweigh the probative value of the evidence pursuant

to Rule 403 of the Federal Rules of Evidence:

> The prejudice or confusion about which the Defendants are concerned is that the jury
> will believe that they regularly sue other companies and use that lawsuit to leverage
> them into supply agreements like the one that the Defendants entered with Guidance,
> causing the jury to dislike them.  While that is a valid concern, it is not one against
> which the Rules of Evidence will protect the Defendants in this case.  The Court
> finds that, while there is some danger of unfair prejudice, that danger does not

substantially outweigh the probative value of the evidence of prior litigation to prove the Defendants' state of mind.

March 18, 2010 MOO at 10.  Despite "some concern that Guidance is intending to present the challenged evidence for the forbidden inference of the Defendants' propensity -- that they engaged in a certain wrongful conduct in the past and therefore are more likely engaging in that conduct this time," March 18, 2010 MOO at 10 (addressing the Defendants' concerns pursuant to Fed.R.Evid. 404(b)) -- the Court ruled the evidence was admissible "for the permissible purpose of establishing the Defendants' state of mind," March 18, 2010 MOO at 11.

Like the evidence of the Defendants' prior litigation with Tycom, the Court also deemed that evidence of the Defendants' prior litigation with Guidance, specifically, the role of the Wong Patent in that litigation, was admissible.  In addition to the same reasons cited above with respect to the Defendants' prior litigation with Tycom, the Court noted that "the Wong Patent is, in many ways, the source of the dispute between the parties, without which one cannot tell the full story of this case."  March 18, 2010 MOO at 14-15.

Separate from and in addition to the Court's March 18, 2010 MOO, the Court ruled that the fact of the Defendants' prior litigation with Guidance was admissible at trial.  See Memorandum Opinion and Order at 12, filed September 29, 2009 (Doc. 378)(finding that attorney fees Guidance incurred in prior litigation with the Defendants was admissible "for the limited purpose of explaining why Guidance's financials may look deceptively dire").

The Court presided over a three-week jury trial of this case from Monday, September 21, 2009 through Thursday, October 8, 2009.  See Clerk's Minutes at 1, filed September 21, 2009 (Doc. 439).  On the second day of trial, Guidance attempted to elicit testimony concerning the Defendants' prior litigation with competitors from a witness who was the Defendants' former employee.  See

Transcript of Trial Proceedings at 107:23-109:8 (held September 22, 2009), filed December 8, 2009 (Doc. 483). The Defendants objected on the grounds that the witness' anticipated testimony was irrelevant, prejudicial, and inadmissible character evidence. See Sept. 22, 2009 Tr. of Trial at 109:12-18. Although the Court initially sustained the objection, see Sept. 22, 2009 Tr. of Trial at 116:14-16, it ultimately deemed the evidence of the Defendants' prior litigation with competitors to be admissible, see Sept. 22, 2009 Tr. of Trial at 152:16-153:5.

On two occasions throughout its consideration of the admissibility of the Defendants' prior litigation, the Court invited the Defendants to request a limiting instruction. Initially, the Court stated:

> I can give a limiting instruction, and I'd be glad, if you want to sketch one out, to give it to preclude the jury from using this to say, well, because they've done it in the past, they've done it before, but, you know, you may not want that instruction.
>
> So if you want to sketch something out, I'll be glad to consider it and probably give it so that it doesn't -- doesn't -- they don't use it for an improper purpose . . .

Sept. 22, 2009 Tr. of Trial at 110:14-22. Subsequently, while setting forth its reasoning for admitting the prior litigation evidence, the Court renewed its invitation to request a limiting instruction, stating: "Like I said, if you want some limiting instruction -- you may not, because it may highlight the evidence more than you want -- but I'll certainly consider that, but I think they -- that they are -- they pointed to a couple of permissible purposes." Sept. 22, 2009 Tr. of Trial at 150:18-22. The Defendants did not request a limiting instruction regarding their prior litigation until Guidance's closing argument.

During Guidance's closing argument, its attorney, Kyle Bisceglie, stated:

> So we've gone over these documents, so we won't spend a lot of time on

them now, but, you know, their play book is, Dentsply knows, over time we have recognized that NiTi manufacturing patents are not strong enough to fully protect our market position.  "Early litigation with Sybron (acquired Tycom IP) and Moyco ended in license agreements as we recognized that losing the litigation would eliminate our patent protection and thus open the market.  Fortunately, the other parties recognized this as well."

And they go on to say about Brasseler then entered into a license agreement to avoid litigation costs and gain access to the market.

So, essentially what we're talking about here is, Dentsply has a sue-and-license program, basically, where they sue everyone.  They've sued Moyco, which is another small company; they've sued Tycom, which is another small company; they've sued Miltex, which is another company.  We also learn they threatened Brasseler, forced them into a license agreement.  We also learned they threatened Sybron, forced them into a settlement and license agreement.  You might recall I talked about these documents with Mr. Addison.

If you recall Mr. Newell, he couldn't remember a single company in North America that Dentsply -- in the endodontic market that Dentsply hasn't sued.  He said, Oh there might be some Internet companies that supply product, I don't know the names of those, but every known endodontic company in North America Dentsply's sued.

Transcript of Trial Proceedings at 66:19-67:20 (held October 8, 2009), filed November 16, 2009

(Doc. 467).  Although the Defendants note these statements in their Motion, they made no objection

to them at trial.

The Defendants' attorneys objected later in Mr. Bisceglie's closing argument, after he made

the following statements:

There's an instruction, Instruction 37, and you can read it, but you're allowed in this case -- you'll have it in the jury room -- you're allowed in this case to award punitive damages, punitive damages to deter a company's behavior.  If you find certain things that Dentsply did were done in a way that's articulated in jury instruction number 37, you're allowed to punish Dentsply, send them a message.

And why am I asking you to do this?  I'm asking you to do this for a number of reasons.  I'm asking you to do this because Dentsply doesn't play fair, and it's a company that sued Guidance three times, it's a company that sued Tycom, sued Moyco, pushed Brasseler into a license agreement.

-6-

Oct. 8, 2009 Tr. of Trial at 108:20-109:6.  At this point, the Defendants' attorney, Thomas P. Gulley,

asked to approach and ultimately stated "we object to him referring to other conduct by anyone for

any purpose in the context of arguing for punitive damages in this case."  Oct. 8 Tr. of Trial at

109:7-110:23-25.  The Court responded as follows:

> THE COURT:     He's saying -- He's saying the Supreme Court case
> prohibits you from asking or referring to conduct to third parties.  I'm not sure it
> goes that far.  That's the reason I'm just not able to make a ruling on this without
> pulling out the Supreme Court case and seeing what it said, but it did put some
> restrictions on the jury's ability to award punitive damages for conduct to others.
> I'm not sure that it prohibits references and other things to conduct of other people,
> so I think the line is a little narrower than what you're making your objection, but I
> think I can inform you --
>
> MR. GULLEY:    Yeah, he's already said that Brasseler, Sybron, so I think
> I'm requesting a limiting instruction that the jury may not consider any conduct
> directed toward any other --
>
> THE COURT:     If you're going to push on, then I'll consider a limiting
> instruction after I review the Supreme Court case.  Is that all right?
>
> MR. BISCEGLIE:     Sorry, Your Honor?
>
> THE COURT:     If you're going to push on --
>
> MR. BISCEGLIE:     I'm not going to push on.
>
> THE COURT:     -- I'll consider a limiting instruction at another point.
>
> MR. BISCEGLIE:     If I don't push on, you're not going to provide a
> limiting instruction?
>
> THE COURT:     I just can't make an informed ruling without looking at the
> Supreme Court case.
>
> MR. BISCEGLIE:     Okay.
>
> THE COURT:     So we can --
>
> MR. BISCEGLIE:     Let me just look at my notes.

THE COURT:    We can take a break and come back and you can finish after lunch, or do you want to go ahead and argue now and avoid the objection?  But I can't make a ruling on the objection without taking a break.

MR. BISCEGLIE:    Let me just grab my notes and make sure I don't --

MR. GULLEY:    Before you leave, I just need to make sure I understand what "push on" means.  If it goes back to this same subject area --

THE COURT:    If you're going to refer to third parties, I need to take a break, if you're going to push on.

MR. BISCEGLIE:    I don't think I need to.

THE COURT:    Okay.

Oct. 8, 2009 Tr. of Trial at 111:6-112:22.  Mr. Bisceglie continued his closing remarks before the

jury:

MR. BISCEGLIE:    So where we are is, I'm asking you for some punitive damages.  And the question is, why am I asking for punitive damages?  And the question I want you to answer is, Does Dentsply play fairly, has Dentsply played fairly with Guidance, suing Guidance on its faulty patents --

MR. GULLEY:    Objection, Your Honor.

MR. BISCEGLIE:    -- not once --

MR. GULLEY:    May we approach?

THE COURT:    You may.

MR. GULLEY:    The only instruction in this case on punitives has nothing whatsoever to do with prior litigation, and the Court has made it clear that if they want to address that matter they need to go back to Pennsylvania.  This is a blatant and flagrant violation of the jury instructions and the Court's orders previously in this case.

. . . .

THE COURT:    . . .  What are you going to say about the -- about the Pennsylvania suit?  What were you intending to say on this?

MR. BISCEGLIE:     I was just intending to say that there's a lot of, you know, prior bad will, and it goes to their state of mind in this lawsuit.

THE COURT:     I think as long as he keeps it in sort of general tones it's a buildup to his point, that they need to, need to award punitive damages, so I'm going to overrule the objection.

Oct. 8, 2009 Tr. of Trial at 113:3-114:15.

After Guidance's closing argument, the jury was excused for lunch, and Mr. Gulley asked the Court to take up the issue of a limiting instruction. Oct. 8, 2009 Tr. of Trial at 119:24-25. The Court asked for the name of the Supreme Court case that governed the question, and Mr. Gulley responded, "Gore versus BMW, I think," adding, "That's the one I recall. There may be later cases that refer to Gore, but that's the one that I remember." Oct. 8, 2009 Tr. of Trial at 120:1-10. The Court agreed to review BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) over the lunch hour and suggested that Mr. Gulley review it as well. Oct. 8, 2009 Tr. of Trial at 120:11-15. Upon return to court after the lunch hour, the discussion regarding a limiting instruction continued:

THE COURT:     Mr. Gulley, after looking at the Supreme Court opinion in BMW versus Gore, did you see anything that we needed to address with the jury?

MR. GULLEY:     Yes, I did, Your Honor. There's a clear reference in that decision that references to conduct that has not been shown to be unlawful is improper as an alleged basis to award punitive damages, and certainly there's been nothing shown to be unlawful about suing Sybron or Brasseler or Guidance or anybody else.

THE COURT:     Refer me to the specific quote.

MR. GULLEY:     Okay.

THE COURT:     And have you drafted out a jury instruction, a limiting instruction?

MR. GULLEY:     No, but I'm going to ask Ms. Avitia about that.

-9-

Oct. 8, 2009 Tr. of Trial at 120:18-121:7.

After discussion of another subject, the Court requested the Defendants' attorneys to draft an appropriate limiting instruction, <u>see</u> Oct. 8, 2009 Tr. of Trial at 126:2-3, and the discussion continued:

> MR. GULLEY: I would be happy, Your Honor, if you just orally instructed the jury now, that they are not to consider any remarks that Mr. Bisceglie made about conduct in other lawsuits or any conduct that's not been shown to be unlawful.
>
> THE COURT: Well, I'm not sure that – I didn't – Unfortunately, I'd have to go back and look and see what it was that he said. I looked at the time, but I don't have it down, so I want to be more precise than just saying don't consider certain conduct. So I think I'd rather just give an instruction on the law.
>
> So why don't you maybe look at that and draft out something that's consistent with the Supreme Court opinion, and then I'll just give them that.
>
> MR. GULLEY: Yes, sir. . . .

Oct. 8, 2009 Tr. of Trial at 126:4-18. Mr. Gulley went on to discuss another matter with the Court before making his closing remarks on the Defendants' behalf. <u>See</u> Oct. 8, 2009 Tr. of Trial at 126:18-127:9. Both Guidance and the Defendants made rebuttal arguments through their attorneys, following which the Court called the attorneys to a bench conference.

> THE COURT: Here is the language I wrote out the best I could — Mr. Gulley, I wrote out the best I could what you said. I went back and looked, and there's the jury instruction I propose to give to the jury.
>
> MR. KELLY: What's the instruction? The jury may not award punitive damages in order to deter conduct that is lawful in other jurisdictions. That's not the holding of <u>BMW versus Gore</u> that the Court is suggesting it is.
>
> MR. BISCEGLIE: I also don't think it's necessary or appropriate.
>
> THE COURT: We can determine the holding of <u>Gore</u>. It says — it says — it's says, "nor may Alabama impose sanctions on BMW in order to deter conduct that is lawful in other jurisdictions."

        MR. KELLY:    Well, it does say that, but that's not the holding.

        THE COURT:    Well, that's the jury instruction I have proposed to give. Do you object to it?

        MR. KELLY:    Yes, I do, Your Honor.

        THE COURT:    All right.

        MR. KELLY:    And I'd like to say that factually, this case is very, very different. This case involved the question —

        THE COURT:    Let me ask you, Mr. Gulley. Do you —

        MR. GULLEY:    Well, I would prefer that it would say, in order to deter conduct that has not been shown to be unlawful in other jurisdictions, because they have not shown anything — any of these other suits are unlawful. I know the language in the <u>Gore</u> case, but our situation's slightly different here.

        THE COURT:    I think that's what I'll give.

        MR. GULLEY:    Okay. That's fine.

        THE COURT:    If you want to make your objection, Mr. Kelly —

        MR. KELLY:    Yes.

Oct. 8, 2009 Tr. of Trial at 173:4-174:12. After argument concerning the instruction from Guidance's attorneys, the Court asked for further argument from the Defendants.

        THE COURT:    All right. Anything further, Mr. Gulley?

        MR. GULLEY:    Well, you've already said you wouldn't do this, but I propose that it say, "where there's been no showing that the conduct is unlawful," because that's the implication raised by Mr. Bisceglie's argument, that this amounted to conduct, with respect to suing, I think he said in his argument — I think he actually said Moyco and Tyco, and then I think he said — he might have said Sybron. I don't remember. But, anyway, the implication was that somehow there was something unlawful and referenced suing Guidance in previous litigation. Maybe not that particular — those comments you looked at, but in that area, and I think it's clear ---

        THE COURT:    Would that solve any of the plaintiff's concerns, if I were

to rephrase it that way?

      MR. KELLY:    Rephrase it how?  I didn't —

      THE COURT:   The jury may not award punitive damages under — to deter conduct that was not shown to be —

      MR. KELLY:    No.  That's a worse.  That's a worse reading from our perspective, you know, I think.

      THE COURT:    Anything else you want to say, Mr. Gulley?

      MR. GULLEY:    No, sir.

      MR. KELLY:    I have nothing else, unless you're looking for something.

      THE COURT:    I'm sorry.

      MR. KELLY:    I'm sorry.  Unless there's something specifically Your Honor wanted to hear, I think we've said our p[ie]ce.

      THE COURT:    Okay.

Oct. 8, 2009 Tr. of Trial at 179:18-180:22.  Returning to open court, the Court read the following limiting instruction, based on BMW of North America v. Gore, 517 U.S. at 1597-98: "The jury may not award punitive damages in order to deter conduct that was lawful or to deter conduct occurring in other jurisdictions that was lawful where it occurred."  Oct. 8, 2009 Tr. of Trial at 181:1-3. Immediately thereafter, at 3:29 p.m., the Court dismissed the jury to the jury room to commence deliberations.  See Oct. 8, 2009 Tr. of Trial at 181:4-6.  Hence, the last instruction that the Court gave to the jury before it retired to commence deliberations was this instruction.

      Beginning approximately 40 minutes after the jury began deliberations, at 4:11 p.m., the Court conducted the following proceedings:

      THE COURT:    All right.  Let's go on the record.  We've received a note from the jury.  It said, "Your Honor, may we please have a read-back and brief explanation of the last set of verbal limiting instructions?"  Dated at Albuquerque on

-12-

10/08/09, time 3:45 p.m. . . .

I guess my thoughts would be I just write here on the note back to the jury what I read to them, and not attempt to bring them in and read it back or try to provide any explanation, but simply just write it out on the note back to the jury.

Your thoughts, Mr. Kelly?

MR. KELLY:   I think that's the right way to handle it the first — with this first question, is just to give it to them in writing, Your Honor.

THE COURT:    Do you agree with that, Mr. Gulley?  Ms. Avitia?

MS. AVITIA:    Your Honor, we don't oppose giving it to them in writing, but we think that the question they have is because the limiting instruction wasn't given until after our closing and it related to the closing of plaintiffs.  We think to clarify that we should state that the conduct that the Court was referring to was the patent litigations with other entities and what the instruction was, and then just give it to them in writing and we think that would sufficiently clarify for the jury what the instruction referred to.

I think had the instruction been given right away, which I understand for practical reasons was not possible, we probably wouldn't have this question, but in order to fix it, I think we need to clarify what the instruction — limiting instruction referred to.

THE COURT:    All right.  I'm just going to write out the jury instruction that I gave.

Oct. 8, 2009 Tr. of Trial at 195:23-196:5.  <u>See</u> Clerk's Minutes at Ex. E, filed Sept. 21, 2009 (Doc. 439-1).

After deliberations in this case, the jury awarded $4.08 million in compensatory damages, $200,000.00 in nominal damages, and $40 million in punitive damages in favor of Guidance and against the Defendants.  <u>See</u> Redacted Jury Verdict, filed October 9, 2009 (Doc. 441).  The jury also awarded $93,000.00 in compensatory damages in favor of the Defendants and against Guidance for false advertising.  <u>See</u> Redacted Jury Verdict at 8 (Doc. 441).  Based on the jury's verdict, the Court entered a net judgment in Guidance's favor in the amount of $44,216,232.88, together with post-

Judgment interest thereon.  See Amended Final Judgment, filed April 22, 2010 (Doc. 545).

The Defendants submitted this Motion to set aside the jury's punitive damages award and order a new trial under Rule 59 of the Federal Rules of Civil Procedure.  The Defendants contend that the Court should set aside the punitive damages award and order a new trial, because the punitive damages limiting instruction was "fatally flawed."  Motion at 1.  Guidance opposes the Motion.  See Plaintiff's Response to Motion for New Trial Based on the Punitive Damages Limiting Instruction [Dkt. 547], filed May 26, 2010 (Doc. 578)("Guidance's Response").  Guidance contends that the Defendants failed to object to the instruction when it was given and that the Defendants have not shown that the instruction prejudiced them.  See Guidance's Response at 13-15.

At the Court's hearing on the Motion, the Defendants conceded that the instruction "was not an incorrect statement of the law."  Transcript of Motions Hearing before the Honorable James O. Browning at 101:16-21 (held Sept. 1, 2010), filed Nov. 8, 2010 (Doc. 626)("First Motions Hearing Transcript").

> THE COURT:    So you're not conceding that it was not legally erroneous? You're not --
>
> MR. RADZELY:    Yes.  I mean, the statement you gave for what it was, no one can argue that the statement is [sic] a correct statement of the Supreme Court. The problem is in the argument that Mr. Gulley made and that we are making, is that because it was incomplete and didn't include everything that needed to be included it was an erroneous statement of the law and prejudiced us given --

Transcript of Motions Hearing before the Honorable James O. Browning (held Sept. 2, 2010), filed Nov. 8, 2010 (Doc. 627)("Second Motions Hearing Transcript") at 205:16-24.

The Defendants contend the limiting instruction was erroneous in that it was an incomplete statement of the law.  The Defendants' attorney, Howard Radzely, explained the alleged error:

> MR. RADZELY:      The problem is that you either didn't reference the

-14-

statements or didn't expressly state that the burden to prove that the conduct was unlawful was Guidance's burden, because the initial attempt that Mr. Gulley made – and I can put those transcript pages up – was that you should make it clear that where it's not proven to be unlawful, because although – this is said in their papers and I heard it again earlier this afternoon from Mr. Bisceglie.  He said, well, I never said it was unlawful.

Well, Your Honor, the jury had just spent, over defense counsel's objection, weeks hearing about this nefarious, suspicious, sue-and-license strategy, and I think a juror sitting through this is logically going to think, well, it must be unlawful conduct.

And again, in terms of the timing of the instruction and, for example, if they had asked for –

THE COURT:     Well, but let's think about that premise, because that is a big part of your premise, that because – because people would sit there and listen to people sued and not sued, that they would conclude that's unlawful, I mean, that is a leap.

MR. RADZELY:     No, no.  It's not just merely that they were describing this as a suit.  I mean, the whole strategy – I can put up earlier aspects of the argument where he talks literally about –

THE COURT:   Well, I'm not talking about the argument.  I'm talking about your argument.

MR. RADZELY:     Right, right.  But the evidence –

\*     \*     \*     \*

THE COURT:     Your argument is that the jury would have concluded – from listening to the three lawsuits that were talked about as evidence, they would have concluded that was unlawful conduct.  Tell me why.

MR. RADZELY:     Well, I think because of the way it was approached and the documents that were put in, is that they had, again, a nefarious scheme to file lawsuits to drive out competitors.

THE COURT:     Well, there's no doubt about it, that was the reason.

MR. RADZELY:     That was the whole theme.  And, again, because –

THE COURT:   That was the reason it was introduced.  But does that – does

-15-

that make it unlawful?

MR. RADZELY:   Well, Your Honor, I think, though, a juror sitting through the case and hearing this for days on end and then hearing it again in the closing argument and then hearing him specifically make the reference that you should award punitive damages because – and to punish Dentsply because of those prior lawsuits, I think, you know, a juror sitting there is certainly going to think that those prior lawsuits must have been unlawful.

And, again, it could have been solved by, you know, just adding the few words, which – under <u>BMW versus Gore</u>, it's if the plaintiff's going to try to use it, they need to demonstrate that that prior conduct was unlawful, and they clearly and unmistakably didn't do it, because it would have turned this court and this case into a patent-infringement case – not even a patent infringement with Guidance, but with other parties who were not before the Court.

So, Your Honor, I think it's because it was incomplete.  And I point to the note coming back as another opportunity to potentially correct it.  And Your Honor's right, in most cases jury instructions have been hard thought, they're thought out, you give the jury the 37 – fifty – sixty – whatever – I think it was 65 instructions in this case, and if they ask for an explanation, you say, read the instruction.

Unfortunately here, this was when Your Honor had to craft on the fly, because Mr. Bisceglie urged the jury, in closing argument, to do something that was in direct violation of the Constitution of the United States as expressly stated by the Supreme Court on a number of occasions.

First Motions Hearing Tr. at 109:18.

## <u>LAW REGARDING JURY INSTRUCTIONS</u>

With regard to jury instructions, the United States Court of Appeals for the Tenth Circuit has held: "We do not require perfection, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them."  <u>Gonzales v. Duran</u>, 590 F.3d 855, 859 (10th Cir. 2009).  "An erroneous jury instruction requires reversal 'only if the error is determined to have been prejudicial, based on a review of the record as a whole.'"  <u>Sherouse v. Ratchner</u>, 573 F.3d 1055, 1059-60 (10th Cir. 2009)(quoting <u>Durflinger v. Artiles</u>, 727 F.2d 888, 895 (10th Cir. 1984)).  <u>See also</u> <u>Townsend v. Lumbermens Mut. Cas. Co.</u>, 294 F.3d 1232, 1242 (10th

-16-

Cir. 2002)("A faulty jury instruction requires reversal when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." (internal quotations and citations omitted))  The inquiry is "not whether the instruction was completely faultless, but whether the jury was misled in any way."  Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1202 (10th Cir. 1997).

In cases where the district court has given a legally erroneous jury instruction, and where the jury might have based its verdict thereon, prejudice exists, and reversal is required.  See Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co., 891 F.2d 772, 779-80 (10th Cir. 1989)(finding prejudice that required reversal where (a) a jury instruction incorrectly placed the burden of proof on the defendant rather than the plaintiff and (b) the jury might have based its verdict thereon). Since the Adams-Arapahoe case, the Tenth Circuit has repeatedly restated its conclusion.  See, e.g., SEC v. Peters, 978 F.2d 1162, 1167 (10th Cir. 1992)("Where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction."); City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1495 (10th Cir. 1996)(same); Coleman, 108 F.3d at 1202 (same); Townsend, 294 F.3d at 1242 (same); Wankier v. Crown Equip. Corp., 353 F.3d 862, 867 (10th Cir. 2003)("Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed 'if the jury might have based its verdict on the erroneously given instruction.'"); Level 3 Comm'cns, LLC v. Liebert Corp., 535 F.3d 1146, 1159 (10th Cir. 2008)("Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." (quotations omitted, emphasis added)).

Most recently, the Tenth Circuit explained further that, "[t]he 'might have' threshold, as its

language suggests, requires reversal even if that possibility is <u>very</u> <u>unlikely</u>.   Only when the erroneous instruction could not have changed the result of the case can we say the error is harmless and does not require reversal."   <u>Level 3 Commc'ns, LLC v. Liebert Corp.</u>, 535 F.3d at 1158 (emphasis in original, citation omitted).

In <u>Wankier v. Crown Equipment Corp.</u>, for example, the district court declined to instruct the jury that the plaintiff in a products liability action bore the burden of showing that an alternative, safer design was available.   <u>See</u> 353 F.3d at 868.   The Tenth Circuit found that "there is no doubt that the erroneous instruction regarding Plaintiff's burden to show a safer alternative design may have misled the jury."   353 F.3d at 868.   Accordingly, the jury verdict in <u>Wankier v. Crown Equipment Corp.</u> was reversed, and the judgment entered thereon was vacated.   <u>See</u> 353 F.3d at 868.

<u>Level 3 Communications, LLC v. Liebert Corp.</u> involved a contract dispute where the district court instructed the jury that the contract at issue was not ambiguous as a matter of law.   <u>See</u> 535 F.3d at 1153.   After reaching the opposite conclusion -- that the contract was ambiguous as a matter of law -- on appeal, the Tenth Circuit recognized that the district court had given a legally erroneous instruction and held: "To conclude the error is not harmless, we must determine the error might have affected the jury's verdict."   535 F.3d at 1158-59.   With its erroneous instruction, the Tenth Circuit held that "the district court virtually assured that the jury would find for Level 3 on the breach of contract claim."   535 F.3d at 1159.   The Tenth Circuit therefore reversed and remanded the case for a new trial.   <u>See</u> <u>id.</u> at 1161.

In contrast to both <u>Wankier v. Crown Equipment Corp.</u> and <u>Level 3 Communications, LLC v. Liebert Corp.</u>, the Tenth Circuit found reversal was not required despite erroneous instructions in at least two recent cases.   In <u>Sherouse v. Ratchner</u>, 573 F.3d 1055 (10th Cir. 2009), a case

involving claims that police officers violated the civil rights of two young women suspected of robbery, the district court instructed the jury that "[a] police officer's probable cause determination is not negated if the officer reasonably but mistakenly believed that probable cause existed at the time of arrest."  573 F.3d at 1059.  The Tenth Circuit found this instruction to be legally incorrect, because, "[w]hile an officer's reasonable but mistaken understanding of the facts justifying a search or seizure does not negate the legitimacy of a probable cause determination, an officer's reasonable but mistaken understanding of the applicable law he is enforcing does."  573 F.3d at 1059.  Despite the erroneous instruction, the Tenth Circuit found no prejudice, because the only evidence as to any mistake in the case was the officer's misidentification of the plaintiffs -- a mistake of fact -- and "the plaintiffs [did] not identif[y] any misinterpretation of law that could have been pertinent to the officers' actions."  573 F.3d at 1060.

The Tenth Circuit similarly declined to reverse the district court's judgment despite a legally erroneous jury instruction in Gonzales v. Lopez, 590 F.3d 855 (10th Cir. 2009).  In that case, the Tenth Circuit found the district court's instructions on qualified immunity were incorrect, but deemed the error harmless because the special interrogatories to the jury revealed that the jury intended to find for the defendants on the merits of the case, without the need to consider the affirmative defense of qualified immunity.  See 590 F.3d at 862.

## LAW REGARDING PUNITIVE DAMAGES

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition."  BMW of North Am., Inc. v. Gore, 517 U.S. at 568.  Because one State's assessment of the degree of punishment and/or deterrence that is appropriate in a given situation may differ from that of another State, the Supreme Court of the

United States determined, in light of principles of state sovereignty and comity, "that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States."  517 U.S. at 572.  "Nor may [a state] impose sanctions on [a party] in order to deter conduct that is lawful in other jurisdictions."  517 U.S. at 573.

In BMW of North America, Inc. v. Gore, the Supreme Court elucidated these principles as background for its consideration of a punitive damages award of $2,000,000, affirmed after remittitur by the Alabama Supreme Court.  See 517 U.S. at 567.  Remittitur was required, according to the Alabama Supreme Court, because the jury had improperly multiplied the plaintiff's compensatory damages by the number of similarly situated individuals in other jurisdictions.  See 517 U.S. at 567 (noting that "[t]he [Alabama Supreme Court's] discussion of the amount of its remitted award expressly disclaimed any reliance on 'acts that occurred in other jurisdictions'"). Although the Supreme Court of the United States ultimately reversed the Alabama Supreme Court's remitted judgment, it approved of the Alabama Supreme Court's decision to "eschew[ ] reliance on BMW's out-of-state conduct, and base[ ] its remitted award solely on conduct that occurred within Alabama."  517 U.S. at 573-74 (internal citation omitted).

Beyond principles of state sovereignty and comity, the Supreme Court of the United States has noted its concern about basic fairness given "the imprecise manner in which punitive damages systems are administered."  State Farm Auto. Mut. Ins. Co. v. Campbell, 538 U.S. 408, 417 (2003)(noting that the "defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding").

> Our concerns are heightened when the decisionmaker is presented, as we shall discuss, with evidence that has little bearing as to the amount of punitive damages that should be awarded.  Vague instructions, or those that merely inform the jury to avoid 'passion or prejudice,' do little to aid the decisionmaker in its task of assigning

appropriate weight to evidence that is irrelevant and evidence that is tangential or only inflammatory.

538 U.S. at 418.  Thus, the Supreme Court in <u>State Farm Automobile Mutual Insurance Co. v. Campbell</u> held that "[a]ny proper adjudication of conduct that occurred outside [the state] to other persons would require their inclusion, and, to those parties, the [state] courts, in the usual case would need to apply the laws of their relevant jurisdiction."  538 U.S. at 421-22.  <u>See</u> <u>Philip Morris USA v. Williams</u>, 549 U.S. 346, 353 (2007)("In our view, the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation.").

Nonetheless, the Supreme Court has recognized that "[l]awful out-of-state conduct" may be probative in certain cases, such as

when it demonstrates deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff.  A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred.

<u>State Farm Auto. Mut. Ins. Co. v. Campbell</u>, 538 U.S. at 422.  The Supreme Court found that this standard was not met in <u>State Farm Automobile Mutual Insurance Co. v. Campbell</u>, where the plaintiff in an automobile insurance bad-faith case sought punitive damages on the basis of conduct by the insurance company defendant that was not at all similar to the conduct that injured the plaintiff.  <u>See</u> 538 U.S. at 423-424 ("Although evidence of other acts need not be identical to have relevance in the calculation of punitive damages, the Utah court erred here because evidence pertaining to claims that had nothing to do with a third-party lawsuit was introduced at length.").

-21-

**ANALYSIS**

The Court has carefully reviewed its limiting instruction and continues to believe -- and the Defendants do not dispute that -- it is a correct statement of the law. The Court is also not convinced that the instruction is incomplete, or so incomplete as to be erroneous. Moreover, even if the Court had added the additional statement the Defendants requested, the Court is not convinced that this extra statement might have made a difference in the jury's verdict.

**I.      THE COURT'S LIMITING INSTRUCTION ON PUNITIVE DAMAGES IS A CORRECT STATEMENT OF THE LAW.**

The Defendants' counsel has admitted the limiting instruction in this case is a correct statement of the law:

> Your Honor, we would concede, you know, given the time constraints that you were under, that it was not an incorrect statement of the law, but I think we would also agree that it was not a complete statement of the law and did not correct in the jury's mind the significant magnitude of the error.

Transcript of Motions Hearing before the Honorable James O. Browning, at 101:16-21 (held September 1, 2010), filed November 8, 2010 (Doc. 626)("First Motions Hearing Transcript"). See Transcript of Motions Hearing before the Honorable James O. Browning, at 76:18-20 (held September 2, 2010), filed November 8, 2010 (Doc. 627)("Second Motions Hearing Transcript")("Yes. I mean, the statement you gave for what it was, no one can argue that the statement is [not] a correct statement of the Supreme Court."). Indeed, the instruction is very nearly a direct quote from the Supreme Court's holding in State Farm Automobile Mutual Insurance Co. v. Campbell. Compare Trial Transcript at 181:1-3 ("The jury may not award punitive damages in order to deter conduct that was lawful or to deter conduct occurring in other jurisdictions that was lawful where it occurred."), with State Farm Auto. Mut. Ins. Co. v. Campbell, 538 U.S. at 421 ("A

State cannot punish a defendant for conduct that may have been lawful where it occurred.").

The Defendants' position is that the limiting instruction was incomplete in that it was given after the Defendants' closing argument and did not reference Guidance's closing statements concerning the Defendants' litigation with third parties -- the statements the instruction was intended to cure.  See First Motions Hearing Transcript at 106:21-22.  The Defendants also argued that the instruction should have "expressly state[d] that the burden to prove that the conduct was unlawful was Guidance's burden."  First Motions Hearing Transcript at 106:22-24.  See Second Motions Hearing Transcript at 77:13-17 ("[I]f they were going to try to rely on out-of-state conduct, clearly under BMW they had to establish that it was lawful, so in that sense, Your Honor, if they wanted to try to rely on it they did have the burden of proving that it was unlawful.").

The Court first finds that it was unnecessary to link the limiting instruction with any specific closing statements by Guidance's attorney.  Initially, and as the Court instructed the jury in this case, the jurors are "the sole judges of the facts of this case."  Court's Final Jury Instructions (GIVEN) at 2, filed Oct. 8, 2008 (Doc. 430).  See id. at 3 ("You, as jurors, are the judges of the facts.  But in determining what actually happened in this case – that is, in reaching your decision as to the facts – it is your sworn duty to follow the law I am now in the process of defining for you.").

Neither the Court nor the attorneys may interfere with the province of the jury in determining the facts.  See, e.g., Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1430 (10th Cir. 1990) (holding that "it is the sole province of the jury to appraise credibility, draw inferences, determine the weight to be given testimony and to resolve conflicts in the facts.").  Thus, the Court instructed the jury that the Court's role is limited:

In any jury trial there are, in effect, two judges.  I am one of the judges; the other is the jury.  It is my duty to preside over the trial and to determine what evidence is

relevant under the law for your consideration.  It is also my duty at the end of the trial to instruct you on the law applicable to the case.

Court's Final Jury Instructions (GIVEN) at 2, filed Oct. 8, 2008 (Doc. 430).

Likewise, the Court advised the jury, repeatedly, that statements made by the attorneys are not evidence.  For instance, the Court instructed the jury to:

> Remember that any statements, objections or arguments made by the lawyers are not evidence in the case.  The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.  **In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case.  What the lawyers say is not binding upon you.**

Court's Final Jury Instructions (GIVEN) at 2, filed Oct. 8, 2008 (Doc. 430)(emphasis added).  With specific regard to closing statements, the Court instructed the jury as follows:

> After these instructions on the law governing this case, the lawyers may make closing arguments, or statements, on the evidence and the law.  These summaries can be of considerable assistance to you in arriving at your decision and you should listen carefully.  You may give them such weight as you think proper.  However, **neither those final discussions nor any other remarks or arguments of the attorneys made during the course of the trial are to be considered by you as evidence or as correct statements of the law, if contrary to the law given to you in these instructions.**

Court's Final Jury Instructions (GIVEN) at 7, filed Oct. 8, 2008 (Doc. 430)(emphasis added).  The Court provided copies of these instructions to each of the jurors.  <u>See</u> Oct. 7, 2009 Tr. of Trial at 187:10-12 (advising the jury: "Please pay close attention to these instructions.  I will read them only once, but the written instructions will be given to you to take to the jury room."); Oct. 8, 2009 Tr. of Trial at 207:24-208:5 (instructing trial counsel: "[A]s we agreed, all -- we're sending back the jury instructions, and we gave them one set, so they each have -- there's nine sets there, and then each side has their exhibits in there."); Oct. 8, 2009 Tr. of Trial at 211:1-7 (advising trial counsel

-24-

to "check[] with Ms. Wild and ma[k]e sure that everything's been sent back to the jury room and is appropriate"); Transcript of Pre-Trial Conference at 55:22-56:4 (taken Sept. 1, 2009)(Doc. 525)(advising trial counsel that the Court provides each juror with a set of jury instructions and obtaining both counsel's approval).  At the jury's request, the Court also provided a written copy of the limiting instruction in this case.  See Oct. 8, 2009 Tr. of Trial at 196:4-12; Clerk's Minutes at Ex. E, filed September 21, 2009 (Doc. 439-1).

Again, the Court finds the statement of the law in the limiting instruction is correct.  No mention in the limiting instruction of the specific conduct at issue would have rendered the instruction more accurate.  And, importantly, the Court risks invading the province of the jury by addressing factual matters in the limiting instructions.

The Court also finds that any instruction as to Guidance's alleged burden to prove that the Defendants' conduct was unlawful would have rendered the limiting instruction legally incorrect. A litigant's out-of-state conduct does not have to be proven unlawful to be admissible and relevant to punitive damages.  As the Supreme Court has held, "[l]awful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious."  State Farm Auto. Mut. Ins. Co. v. Campbell, 538 U.S. at 422.  The Defendants' alleged pattern of suing its competitors and forcing them into licensing agreements, allegedly for the purpose of controlling prices in the endodontic market, has a sufficient nexus to the Defendants' actions toward Guidance.  See id. (requiring lawful out-of-state conduct to "have a nexus to the specific harm suffered by the plaintiff").  Such conduct is relevant to punitive damages not because it permits a jury to punish the Defendants for the out-of-state conduct, but because it tends to demonstrate that the Defendants' conduct toward Guidance was intended to cause

-25-

Guidance harm.

**II.    THE COURT CANNOT SAY, BASED ON A REVIEW OF THE RECORD AS A WHOLE, THAT THE JURY MIGHT HAVE BASED ITS PUNITIVE DAMAGES VERDICT ON THE ALLEGEDLY ERRONEOUS LIMITING INSTRUCTION SUCH THAT IT PREJUDICED DEFENDANTS.**

The Court's punitive damages limiting instruction was a correct statement of the law. Assuming, however, that the instruction was erroneous because it was incomplete, as the Defendants have argued, in that it failed to articulate Guidance's alleged burden to show that the Defendants' prior litigation was unlawful, the Court cannot reasonably say that the jury might have based its punitive damages verdict on the Defendants' lawful conduct toward third parties.

In arguing for punitive damages, Guidance's counsel focused on the Defendants' conduct toward Guidance and on consideration whether the Defendants "play[ed] fairly with Guidance." See Trial Transcript at 113:1-5 (emphasis added).  Moreover, the limiting instruction that was given in this case sufficiently advised the jury against inferring any connection between the Defendants' lawful conduct toward third parties and punitive damages to be awarded to Plaintiff.  See, e.g., Weeks v. Angelone, 528 U.S. 225, 234 (2000)("A jury is presumed to follow its instructions.").  In order to find that the jury might have based its punitive damages verdict on the limiting instruction, the Court would have to assume that the jury ignored the Court's instructions -- individually and as a whole -- and then made a factual link that Mr. Bisceglie did not expressly argue.

Besides the lack of any direct connection argued between the Defendants' prior litigation with third parties and punitive damages, the Verdict Form in this case asks pointed questions of the jury, tying any award of punitive damages to specific conduct by the Defendants towards Guidance. Punitive damages are not available on the Verdict Form unless the jury first concludes that the Defendants either "breached the Manufacturing and Supply Agreement" with Guidance or

"breach[ed] the implied covenant of good faith and fair dealing with Guidance."  Verdict Form

Question Nos. 5-6, at 2, filed October 9, 2009 (Doc. 441).  Thus, the only conduct for which punitive

damages could be awarded is Defendants' conduct toward Guidance.

Accordingly, the Court finds the limiting instruction on punitive damages is a correct

statement of the law.  The Court also cannot find that the jury "might have" based its award of

punitive damages in this case on any alleged errors in the limiting instruction.  The Court will

therefore decline to set aside the jury's punitive damages award.

**IT IS ORDERED** that Dentsply/TDP's Motion for a New Trial Based on the Punitive

Damages Limited Instruction, filed April 28, 2010 (Doc. 547) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
  Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Bannerman & Johnson, PA
Albuquerque, New Mexico

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, D.C.

  *Attorneys for the Defendants and Counterplaintiffs*