IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUIDANCE ENDODONTICS, LLC,
a New Mexico Limited Liability Company,

       Plaintiff,

vs.                                                                                                                 No. CIV 08-1101 JB/RLP

DENTSPLY INTERNATIONAL, INC.,
a Delaware Business Corporation, and
TULSA DENTAL PRODUCTS, LLC,
a Delaware Limited Liability Company,

       Defendants,

and

DENTSPLY INTERNATIONAL, INC.
and TULSA DENTAL PRODUCTS, LLC,

       Counter Plaintiffs,

vs.

GUIDANCE ENDODONTICS, LLC
and DR. CHARLES GOODIS,

       Counter Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Guidance Endodontics, LLC's and Counter-Defendant Charles J. Goodis' Motion for Judgment Pursuant to Fed.R.Civ.P. 50(b), filed April 28, 2010 (Doc. 548). The Court held a hearing on September 1 and 2, 2010. The primary issue is whether the court should find that Defendant Dentsply International, Inc.'s claim under the Lanham Act, 15 U.S.C. § 1125(a), fails as a matter of law. Because Guidance Endodontics'

statements are not "puffing" and because there is sufficient evidence that the statements are false, the Court denies the motion.

## FACTUAL BACKGROUND

This case concerns a lawsuit that Guidance Endodontics, a small endodontic-equipment company, brought against the much larger Defendants, who are both Guidance Endodontics' rivals and its suppliers. More background on the lawsuit generally is set forth in the Court's earlier opinion. See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2008 WL 6013069, at *1-5 (D.N.M. Dec. 15, 2008) (Browning, J.).

Among the Defendants' counterclaims in this lawsuit was a claim that Guidance Endodontics breached Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). See Defendants' First Amended Counterclaim Against Plaintiff and First Amended Counterclaim Against Dr. Charles Goodis ¶¶ 38-44, at 7-8, filed April 22, 2009 (Doc. 92)("Counterclaim"). Specifically, the Defendants allege that the following statements contained in Guidance Endodontics' promotional materials are false and deceptive and that the Defendants have been harmed because of them: (i) that OneFill is the "World's Best Thermal Filling Obturator"; (ii) that OneFill is the "Best Thermal Filling Obturation System in the World"; (iii) that "EndoTaper Complete is the best Endo System in the World"; (iv) that "EndoTaper is the Best NiTi File System in the World;" (v) that "[n]ow you can treat every case better, quicker and safer with EndoTaper"; and (vi) that EndoTaper "files can be used like ProTaper F1 to F5 or used in a Crown-Down like ProFile, GT, Endo Sequence, or K3 to create the perfect canal shape more efficiently and easier than any other file system." Counterclaims ¶¶ 40-41, at 8.

## PROCEDURAL BACKGROUND

On July 31, 2009, Guidance Endodontics moved for summary judgment on the Defendants'

Lanham Act claims, arguing that its statements were non-actionable puffery and that the claims should therefore fail as a matter of law. See Plaintiff Guidance Endodontics, LLC and Counterclaim Defendant Charles J. Goodis' Motion for Summary Judgment and Supporting Memorandum, filed July 31, 2009 (Doc. 226)("Summary Judgment Motion"). Guidance Endodontics further argued that the Defendants lacked evidence of "actual confusion," which Guidance Endodontics asserted was a required element of the Defendants' claim under the Lanham Act. Summary Judgment Motion at 15. The Defendants responded that Guidance Endodontics' statements were literally false and therefore actionable, even without evidence of "actual confusion." Defendants' Response to Guidance Endodontics' Motion for Summary Judgment and Supporting Memorandum at 10, filed August 17, 2009 (Doc. 251)("Summary Judgment Response"). The Court held a hearing on Guidance Endodontics' Motion on September 1, 2009. See Transcript of Motions Hearing held September 1, 2009 at 93-98, 118-119, and 123-124, filed March 20, 2010 (Doc. 525).

In its Memorandum Opinion and Order on the Summary Judgment Motion, the Court found that "most of Guidance Endodontics' alleged false advertising is non-actionable 'puffing.'" Memorandum Opinion and Order at 46, filed March 23, 2010 (Doc. 531)("Summary Judgment Opinion"). In particular, Statements 1-4 representing that Guidance Endodontics' products are "the best" were not actionable, because, as the Court explained, the description of something as "the best" is "distinctly subjective." Summary Judgment Opinion at 48. The context of the statements -- "in marketing materials, wherein a seller is expected to case his wares in the best possible light to tempt consumers to buy his product rather than any other" -- as well as the relative sophistication of Guidance Endodontics' consumers, "reinforce[d] the notion that the first through fourth statements of which the Defendants complain are puffery." Summary Judgment Opinion at 48.

The Court concluded that Guidance Endodontics' use of superlatives, such as "better," "quicker," and "safer," and its representations that its product could do something "more efficiently" and "easier," were "more problematic." Summary Judgment Opinion at 49-50. It found that Guidance Endodontics' use of these terms "is not so inherently clear that no reasonable consumer would believe that those statements could be true." Summary Judgment Opinion at 50. The statements "safer," "more efficiently," "easier," and "quicker" were "objectively verifiable and that a reasonable consumer might believe that the seller had actually engaged in some sort of testing before making the statements," and therefore declined to grant summary judgment. Summary Judgment Opinion at 51.

> Guidance does not seek summary judgment based on the truth of its advertising statements, but only on their status as "puffery" -- and resulting inability to be categorized as true or false -- and on the Defendants' lack of evidence of consumer confusion. On those bases, the Court will grant Guidance's motion as to the first through fourth statements alleged in the Defendants' Counterclaims, which refer to Guidance products as "the best in the world," but deny the motion as to statements five and six, which allege that the Guidance products are superior to other products in specific ways.

Summary Judgment Opinion at 52.

The Court presided over a three-week jury trial of this case from Monday, September 21, 2009 through Thursday, October 8, 2009. See Clerk's Minutes at 1, filed Sept. 21, 2009 (Doc. 439). On October 6, 2009, at the close of the Defendants' case, Guidance Endodontics moved for judgment as a matter of law pursuant to rule 50(a) of the Federal Rules of Civil Procedure, arguing that the Defendants had failed to present evidence of literal falsity. See Transcript of Trial Proceedings at 238:8-239:10 (held October 6, 2009), filed January 19, 2010 (Doc. 500)("Oct. 6, 2009 Tr. of Trial"). Guidance Endodontics also argued that the Defendants had failed to present

evidence of injury as a result of the alleged false advertising. See Oct. 6, 2009 Tr. of Trial at 241:1-9.

After taking some time to think about the directed verdict motions overnight, see Oct. 6, 2009 Tr. of Trial at 250:1 ("Well, let me think about those overnight."), the Court denied Guidance Endodontics' Rule 50(a) Motion, see Transcript of Trial Proceedings at 98:9-12 (held October 7, 2009), filed November 9, 2009 (Doc. 460)("Oct. 7, 2009 Tr. of Trial")("I have given to you the Court's Seventh Proposed Jury Instructions. This reflects some of the directed verdict decisions I have made."). See Court's Seventh Proposed Jury Instructions at 58-61, filed October 7, 2009 (Doc. 427)(containing jury instruction on the Defendants' false advertising claims). Thus, the Court permitted the jury to consider the Defendants' false advertising claim with regard to the following of Guidance Endodontics' statements:

- that "Now you can treat every case better, quicker and safer with EndoTaper"

- that EndoTaper "files can be used like the ProTaper F1 to F5 or used in a Crown-Down like ProFile, GT, EndoSequence, or KS to create the perfect canal shape more efficiently and easier than any other file system"

- that the EndoTaper is efficient, safe and flexible.

Court's Seventh Proposed Jury Instructions at 58.

Ultimately, the jury found that Guidance Endodontics had willfully engaged in false advertising. See Redacted Jury Verdict at 6-7, filed October 9, 2009 (Doc. 441). They awarded $93,000.00 in favor of the Defendants and against Guidance Endodontics for false advertising. See Redacted Jury Verdict at 8.

Guidance Endodontics timely filed its Motion for Judgement Pursuant to rule 50(b) on April 28, 2010, approximately six days after the Court's Amended Final Judgment, filed April 22, 2010

(Doc. 545).

## THE LAW REGARDING POST-TRIAL MOTIONS FOR JUDGMENT AS A MATTER OF LAW

"Rule 50(b) . . . sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400 (2006). The rule states:

> **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). Much like a rule 50(a) motion, "[a] renewed motion for judgment as a matter of law under Rule 50(b) . . . must state the grounds on which it was made." 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2537, at 604-05 (3d ed. 2008).

The standard for ruling on a rule 50(b) motion is similar to that for ruling on a rule 50(a) motion -- whether there was sufficient evidence upon which a reasonable jury could have arrived at the verdict that the jury returned. See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009)("A party is entitled to JMOL only if the court concludes that 'all of the evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the controlling law.'")(quoting Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d 1260, 1269 (10th Cir. 2008)). "In ruling on such a motion, the court should disregard any jury determination for

which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it." Fed. R. Civ. P. 50(b) advisory committee's note. See Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'"). The court, however, much like in ruling on a motion for summary judgment, must draw all reasonable inferences in favor of the non-moving party. See Wagner v. Live Nation Motor Sports, Inc., 586 F.3d at 1244 ("[W]e . . . will reverse the district court's denial of the motion for JMOL 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'")(quoting Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir. 2004)); Hysten v. Burlington N. Sante Fe Ry. Co., 530 F.3d at 1269. It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d at 1269.

A prerequisite to a rule 50(b) motion, and one implicit in its nature as a renewed motion for judgment as a matter of law, is that the moving party have made a rule 50(a) motion for judgment as a matter of law during trial, and that the party raise in the rule 50(a) motion all issues it seeks to raise in the subsequent rule 50(b) motion. See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009)("Kerr-McGee did not assert these arguments in its Rule 50(a) motion at the close of Mark's case-in-chief, and is thus precluded from relying on them as a basis for Rule 50(b) relief."); Marshall v. Columbia Lea Reg'l Hosp., 474 F.3d 733, 738 (10th Cir. 2007)(noting that raising a particular defense in a "pre-verdict Rule 50(a) motion . . . is a prerequisite to a post-verdict motion under Rule 50(b)."); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir. 2000)("[M]erely moving for directed verdict is not sufficient to preserve any and

all issues that could have been, but were not raised in the directed verdict motion."); First Sec. Bank of Beaver v. Taylor, 964 F.2d at 1057 ("[A] party is precluded from relying upon grounds in a [rule 50(b)] motion for judgment notwithstanding the verdict that were not previously raised in support of the [rule 50(a)] motion for a directed verdict.")(citing Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 n.2 (10th Cir. 1987)); 9B C. Wright & A. Miller, supra § 2537, at 603-04 ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter."); 9B C. Wright & A. Miller, supra § 2537, at 603-04 ("[T]he case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion."). The Advisory Committee notes to the 1991 amendment state that "[a] post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." Fed. R. Civ. P. 50 advisory committee's note (citing Kutner Buick, Inc. v. Am. Motors Corp., 848 F.2d 614 (3d Cir. 1989)).[1]

Finally, "Rule 50(b) allows a motion for a new trial under Rule 59 to be joined in the alternative with a renewed motion for judgment as a matter of law; subdivisions (c) and (d) make elaborate provision for when the two motions are made in the alternative." 9B C. Wright & A. Miller, supra, § 2521, at 222 (3d ed. 2008). The rule states: "[T]he movant may file a renewed

---

[1]The Advisory Committee reiterated this premise in its notes regarding the 2006 amendments to rule 50(b). The Committee stated:

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Fed. R. Civ. P. 50 advisory committee's note.

-8-

motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).  Even if no rule 50(a) motion was made and therefore the court cannot grant a rule 50(b) motion for judgment as a matter of law, the court is still permitted to entertain a rule 59 motion for new trial on the basis that the verdict was based on a quantum of evidence that is insufficient as a matter of law.  See Fed. R. Civ. P. 59. As Professors Charles Wright and Arthur Miller state:

> [I]f the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial.

9B C. Wright & A. Miller, supra § 2537, at 604.

## RELEVANT LAW REGARDING FALSE ADVERTISING
## UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)

While the Lanham Act is generally a statute governing trademarks and other marks, Section 43(a) "is one of the few provisions that goes beyond trademark protection."  Dastar Corp. v.Twentieth Century Fox Film Corp., 539 U.S. 23, 28-29 (2003).  Section 43(a) "created a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" Dastar Corp. v.Twentieth Century Fox Film Corp., 539 U.S. at 29.  The provision prohibits:

> A person [from], on or in connection with any goods or services, . . . us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

15 U.S.C. § 1125(a)(1)(Section 43(a) of the Lanham Act). Section 43(a) "prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill. It forbids, for example, the Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. at 32. It also encompasses more general claims of "false advertising." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 778 (1992)(commenting that, under the original Lanham Act, "[t]he phrase ['false description or representation'] encompassed two kinds of wrongs: false advertising and the common-law tort of 'passing off.'"); Marcinkowska v. IMG Worldwide, Inc., No. 2009-1213, 2009 WL 2562745, at *4 (Fed. Cir. Aug. 20, 2009)(stating that Section 43(a)(1)(B) "of the Lanham Act prohibits false advertising in connection with the name, description, or origin of 'goods or services' in the United States").

To sustain a claim of false advertising under the Lanham Act, the Defendants must prove: (i) that Guidance Endodontics made a false or misleading statement of fact in a commercial advertisement about its own or another's product; (ii) the misrepresentation is material, in that it is likely to influence the purchasing decision; (iii) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (iv) Guidance Endodontics placed the false or misleading statement in interstate commerce; and (v) the Defendants have been or are likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. See Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x 978, 982 (10th Cir. 2004) (unpublished). See also Marcinkowska v. IMG Worldwide, Inc., 2009 WL

2562745, at *4; Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002); Cashmere & Camel Hair Mfrs. Inst.v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002); IQ Prods. Co. v. Pennzoil Prods. Co., 305 F.3d 368, 375 (5th Cir. 2002); United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

**1. False or Misleading Statements.**

The "false or misleading" element can be satisfied in one of two ways. Either the statement must be literally false -- meaning "[u]ntrue," Black's Law Dictionary at 677 (9th ed. 2009) (defining false and citing "false statement" as an example) -- or it must be misleading -- meaning "literally true but likely to mislead or confuse consumers," Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x at 982 (citing Southland Sod Farms v. Stover Seed Co., 108 F.3d at 1139). The use of the disjunctive "or" implies that only one of the two need be shown, and if the statement is proved to be literally false, "a violation may be established without evidence of consumer deception." Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x at 982 (quoting Scotts Co. v. United Indus. Corp., 315 F.3d at 272). Literal falsity can be either on the face of the statement or by necessary implication. See Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x at 982 (citing Southland Sod Farms v. Stover Seed Co., 108 F.3d at 1139 (9th Cir. 1997)). Falsity on the face of the statement refers to where the statement, standing alone, is clearly not true. To prove falsity by necessary implication, on the other hand, "[the] plaintiff must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers." Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x at 982 (quoting

Scotts Co. v. United Indus. Corp., 315 F.3d at 272).[2]  It thus appears that only when a statement is literally false on its face can the plaintiff move forward with its claim without any extrinsic proof of either actual or likely confusion among the consumer public.

### 2.  Puffing, Puffery, to Puff.

A corollary to the "false or misleading statement" element is the concept of "puffing." Black's Law Dictionary defines puffing as:

> **puffing. 1.** The expression of an exaggerated opinion -- as opposed to a factual misrepresentation -- with the intent to sell a good or service.  Puffing involves expressing opinions, not asserting something as a fact. Although there is some leeway in puffing goods, a seller may not misrepresent them or say that they have attributes that they do not possess.

Black's Law Dictionary at 1353.  The Tenth Circuit's definition is similar: "The term puffery is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts."  Alpine Bank v. Hubbell, 555 F.3d 1097, 1106 (10th Cir. 2009).[3]  The Tenth Circuit has also quoted with approval Judge Learned Hand's characterization of this principle:

> There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity.  If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it.  Such statements, like the claims of campaign managers

---

[2]The United States Court of Appeals for the Tenth Circuit has explained that a claim is "literally false by necessary implication" when the false claim is not explicitly stated, but, "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been . . . ."  Zoller Labs., LLC. v. NBTY, Inc., 111 F. App'x 978, 982-83 (10th Cir. 2004). The Defendants do not base their Section 43(a) claim on any implied false statements, so the Court does not use this analysis.

[3]Although the Tenth Circuit was discussing puffery in the context of a negligent misrepresentation claim under Colorado law, it gave no indication that it was describing puffery solely as that doctrine applies under Colorado law.

> before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth. It is quite true that they induce a compliant temper in the buyer, but it is by a much more subtle process than through the acceptance of his claims for his wares.

Alpine Bank v. Hubbell, 555 F.3d at 1106 (quoting Vulcan Metals Co., Inc. v. Simmons Mfg. Co., 248 F. 853, 856 (2d Cir. 1918)). "[F]alse advertising law defines the puffery defense categorically [as] claims 'not capable of measurement' that 'consumers would not take seriously.'" David A. Hoffman, The Best Puffery Article Ever, 91 IOWA L. REV. 101, 108 (2006). In analyzing a statement to determine if it is puffery or an assertion of fact, the Tenth Circuit has advised that "context matters," and that "[t]he relative expertise of the speaker and the listener can be a critical factor." Alpine Bank v. Hubbell, 555 F.3d at 1106. Moreover, the size of the audience is yet another factor, and the larger the audience the more likely it is that the statement is puffery. See Alpine Bank v. Hubbell, 555 F.3d at 1106-07 (commenting that "mass advertising expressed in vague terms (as in political campaigns) is not relied on by rational adults."). As its definition implies, if a statement is "mere puffery," it cannot constitute a statement of fact and therefore cannot serve as the basis for a false advertising claim under the Lanham Act. See Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 495-96 (5th Cir. 2000).

## ANALYSIS

Guidance Endodontics' Motion argues that the Court should not have submitted the Defendants' Lanham Act claim to the jury because: (i) each of the three statements at issue is non-actionable puffery and (ii) the Defendants have not shown that any of the statements are false. See Motion at 5 ("As a matter of law, Defendants could not succeed on their Lanham Act claim because each of the Statements on which their claim is based constitute non-actionable puffery, and in any case, Defendants failed to affirmatively show that any of the Statements are not true."). The

-13-

Defendants dispute Guidance Endodontics' arguments, asserting first that the Statements "are capable of objective confirmation and are, therefore, not puffery." Dentsply/TDP's Opposition to Guidance's Motion for Judgment Pursuant to Fed.R.Civ.P. 50(b) at 4, filed May 17, 2010 (Doc. 569)("Response").  Additionally, the Defendants contend they have shown each of the Statements to be literally false.  See Response at 6.

## I. NONE OF THE THREE STATEMENTS AT ISSUE CONSTITUTES NON-ACTIONABLE PUFFERY.

The Court previously determined in its ruling on Guidance Endodontics' Summary Judgment Motion that Statements One and Two were not non-actionable puffery.  The Court previously determined that Guidance Endodontics' use of superlatives such as "better," "quicker," "safer," "more efficiently," and "easier" was "not so clearly of a subjective nature that it will dismiss the claims as a matter of law."  See Summary Judgment Opinion at 50 (also holding that "[i]t is not so inherently clear that no reasonable consumer would believe that those statements could be true."). Indeed, as the Court previously recognized: "One can potentially test whether one product performs a task 'quicker' or 'safer' than another product."  Summary Judgment Opinion at 50.  A reasonable consumer might therefore believe that Guidance Endodontics had actually engaged in some sort of testing before making these statements.  See Summary Judgment Opinion at 50-51.  The Court continues to believe that Statements One and Two are not mere puffery.

Statement Three, characterizing EndoTaper as "efficient, safe and flexible," is not puffery for a different reason.  "[E]fficient, safe and flexible," are statements of fact, not "vague generalities that no reasonable person would rely on as assertions of particular facts."  Alpine Bank v. Hubbell, 555 F.3d 1097, 1106 (10th Cir. 2009).  The Court therefore concludes that Statement Three is not puffery.

## II. THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S CONCLUSION THAT GUIDANCE ENDODONTICS' REPRESENTATIONS OF THE ENDOTAPER IN STATEMENTS ONE AND THREE AS "SAFE" OR "SAFER" CONSTITUTES FALSE ADVERTISING.

Despite asserting that "there is no meaningful evidence of [sic] the record that the EndoTaper is not safe," Guidance Endodontics cites "one instance of separation by Dr. Kratchman of a prototype of the V2 File and one email from a dentist stating that he is 'disappointed and scared' to use Guidance's files because they 'unwind quickly.'" Motion at 11-12 (citing Trial Exhibits EA, 77) (emphasis in original). In addition to this evidence, the Defendants note the testimony of their Technical Resource Manager Marcie Littleton, who allegedly "testified that the sharper the file, the less safe it is." Response at 8. Ms. Littleton's trial testimony was as follows, in relevant part:

> Q: . . . Why are there differences in flutes?
>
> A: Some doctors like safe-cutting files; some doctors like very efficient files. It's just the preference of the doctor.
>
> Q: What do you mean by a safe-cutting file?
>
> A: A safe-cutting file would have lands on it, like a ProFile ISO series or a ProFile 29 series.
>
> Q: Would the land make the file less sharp?
>
> A: Less sharp, yes, and safe.
>
> Q: And if there's no land it's sharper?
>
> A: It's very sharp.
>
> Q: And why is it -- I'm not -- I'm not sure the jury understands. Why would a land file be safer?
>
> A: Because on each flute -- if you can see, the flutes are very sharp at the edge -- they would actually have a land on top of them. That sharpness would be gone away and it would have a flat spot on the very top of it.

-15-

>Q: So a land, is that like a ledge on the blade, what I think of as the blade, so it doesn't cut as aggressively?
>
>A: Correct. It has cutting sides on each side of it, but it's got a land on top of it before it goes into the valley of the flutes.

Transcript of Trial Proceedings at 2948:19-2949:15 (held October 5, 2009) (Doc. 568).

Given the above-cited testimony and evidence, the Court cannot conclude that "the evidence points but one way." Hysten v. Burlington N. Santa Fe Ry., 530 F.3d 1260, 1269 (10th Cir. 2008)("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'"(internal citation omitted)). The Court finds there is sufficient evidence for the jury to reasonably conclude that Guidance Endodontics' representations of the EndoTaper as "safe" and/or "safer" in Statements 1 and 3 are literally false. In addition, the Court again finds that a reasonable consumer might believe that Guidance Endodontics had engaged in some sort of testing before making statements that the EndoTaper was "safe" and "safer." Summary Judgment Opinion at 51. That Guidance Endodontics performed no such testing in this case provides another way in which the jury could reasonably have concluded that Guidance Endodontics made false representations of safety. See, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 590 (3rd Cir. 2002)(holding that, "although the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, a court may find that a completely unsubstantiated advertising claim by the defendant is per se false without additional evidence from the plaintiff to that effect").

**III. SUFFICIENT EVIDENCE EXISTS TO SUPPORT THE JURY'S VERDICT THAT STATEMENT TWO, REPRESENTING THAT THE ENDOTAPER CAN BE USED "TO CREATE THE PERFECT CANAL SHAPE MORE EFFICIENTLY AND EASIER THAN ANY OTHER FILE SYSTEM," CONSTITUTES FALSE ADVERTISING.**

Guidance Endodontics contends that the Defendants "failed to meet their burden of showing that the EndoTaper <u>cannot</u> be used 'to create the perfect canal shape more efficiently and easier than any other file system.'"  Motion at 10 (emphasis in original).  In opposition, the Defendants rely on the doctrine of <u>per se</u> falsity that the Court of Appeals for the Third Circuit has set forth.  See Response at 9 (quoting <u>Novartis v. Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.</u>, 290 F.3d 578, 590 (3rd Cir. 2002)("[A]lthough the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, a court may find that a <u>completely unsubstantiated</u> advertising claim by the defendant is <u>per se</u> false without additional evidence from the plaintiff to that effect." (emphasis added)).  The Defendants also contend that Guidance Endodontics' advertising for another of its products, the V-Taper file, contradicts Statement Two.  Response at 12 (noting Guidance Endodontics' advertisement, in Trial Exhibit Ar, of the V-Taper as "easier, safer, more efficient, and less expensive than any other NiTi rotary file system in the world").

Construing the evidence pertaining to Statement Two, as the Court must, in the light most favorable to the Defendants, and noting that it is not the Court's province to weigh evidence, the Court concludes that there was sufficient evidence at trial to support the jury's finding of false advertising.  The Defendants' Technical Resources Manager Marcie Littleton testified that the EndoTaper was not what she would call a "safe-cutting file" because it did not have lands.  Tr. of Trial at 2948-2949 (held October 5, 2009) (Doc. 568).  Although Ms. Littleton also testified that

some doctors might prefer other files over a "safe-cutting file" because "some doctors like very efficient files," the Court finds that Ms. Littleton's testimony could reasonably be taken to mean that the EndoTaper was not "safer" or "safe" as represented by Guidance Endodontics in Statements One and Three.  Because Guidance Endodontics lacked any evidence of testing to suggest that the EndoTaper really could "create the perfect canal shape more efficiently and easier than any other file system," the Court similarly finds sufficient evidence to support the jury's finding of false advertising as to Statement Two.

Having found a legally sufficient evidentiary basis for the jury's finding of false advertising with respect to Statements One, Two and Three, the Court therefore denies Plaintiff Guidance Endodontics, LLC's and Counter-Defendant Charles J. Goodis' Motion for Judgment Pursuant to Fed.R.Civ.P. 50(b), filed April 28, 2010 (Doc. 548).

**IT IS ORDERED** that Plaintiff Guidance Endodontics, LLC's and Counter-Defendant Charles J. Goodis' Motion for Judgment Pursuant to Fed.R.Civ.P. 50(b), filed April 28, 2010 (Doc. 548), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kyle C. Bisceglie
Renee M. Zaystev
Olshan, Grundman, Frome, Rosenzweig
  & Wolosky, LLP
New York, New York

-- and --

John J. Kelly
Donald A. DeCandia
Ryan Flynn
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Plaintiff and Counterdefendants*

Brian M. Addison
   Vice President, Secretary, and General Counsel
Dentsply International, Inc.
York, Pennsylvania

-- and --

Thomas P. Gulley
Rebecca Avitia
Bannerman & Johnson, PA
Albuquerque, New Mexico

-- and --

R. Ted Cruz
Morgan Lewis & Bockius, LLP
Houston, Texas

-- and --

Howard M. Radzely
W. Brad Nes
Morgan Lewis & Bockius, LLP
Washington, D.C.

*Attorneys for the Defendants and Counterplaintiffs*